RECEIPT # _____
AMOUNT $ _____
SUMMONS ISSUED _____
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _____
DATE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WESTPORT INSURANCE )
CORPORATION, )
)
Plaintiff )                        Case No.
)
v. )
)
RICHARD C. HEIDLAGE; KOTIN, )
CRABTREE AND STRONG, LLP; )
CHARLES N. ZALIS, individually; )
CHARLES N. ZALIS, in his capacity as )
General Partner of the CHARLES N. )
ZALIS FAMILY LIMITED PARTNERSHIP; )
and NORTH   AMERICAN )    **05 cv 11780 NMG**
UNDERWRITING MANAGERS, INC., )
)
Defendants. )

## COMPLAINT FOR DECLARATORY JUDGMENT

Westport Insurance Corporation ("Westport"), by its undersigned attorneys, for its

Complaint for Declaratory Judgment, states as follows:

### Jurisdiction and Venue

1.    This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule

57 of the Federal Rules of Civil Procedure.

2.    The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332(a), as this

action is between citizens of different states and the amount in controversy exceeds $75,000.

3.    Venue is proper in the District of Massachusetts pursuant to § 1391(a), as the

insurance coverage dispute concerns a policy issued to a Massachusetts insured.

### The Parties

4.    Westport is an Indiana corporation with its principal place of business in Kansas.

5.    Richard C. Heidlage ("Heidlage") is a citizen of Massachusetts.

6.     Kotin, Crabtree and Strong, LLP is a Massachusetts limited liability partnership with its principal place of business in Massachusetts.

7.     Charles N. Zalis ("Zalis") is a citizen of Florida and a general partner of Charles N. Zalis Family Limited Partnership ("Limited Partnership"), a Virginia limited partnership.

8.     North American Underwriting Managers, Inc. ("NAUM") is a Florida corporation with its principal place of business in Florida.

### Background

9.     On or about May 14, 2003, Zalis; the Limited Partnership; NAUM; and North American Underwriting Managers Insurance Agency, Inc. filed a Complaint against Heidlage and others in the Circuit Court of the 11th Judicial Circuit, in and for Miami-Dade County, Florida, Case No. 03-011784 CA 30. An Amended Complaint deleted North American Underwriting Managers Insurance Agency, Inc. as a party. A Second Amended Complaint was filed , was filed on or about January 3, 2005. A true and accurate copy of the Second Amended Complaint ("underlying complaint") is attached hereto as Exhibit A.

10.     In the underlying complaint, Zalis, the Limited Partnership, and NAUM (collectively referred to hereafter as "Zalis") allege that through the Limited Partnership, Charles Zalis owned and operated NAUM, a wholesale life insurance business in Florida. It is further alleged that in 1997, it was agreed to merge the business with Gersten Financial & Insurance Company ("Gersten Financial"), a Massachusetts retail insurance business owned by Allan Gersten ("Gersten").

11.     Zalis alleges that pursuant to the agreement, the Limited Partnership transferred half of the stock of NAUM to Gersten, and Gersten was to transfer half of the stock of Gersten Financial to the Limited Partnership. It is alleged that in 1999, Zalis and Gersten formed North

American Underwriting Managers Agency, Inc., as one of the corporate vehicles to carry out the jointly-owned businesses.

12.    It is further alleged in the underlying complaint that Gersten failed to assign a substantial amount of commissions to NAUM; falsified the books of NAUM by failing to account for payments made to him, making it appear as though he was still owed that money; registered NAUM's web site and E-mail accounts in his name only; failed to split the net proceeds of the business evenly; used NAUM money to repair an office building owned by him and his wife; paid excessive salaries to his relatives; paid personal expenses out of company funds; refused to pay legitimate expenses associated with NAUM's Florida office; and, in late December 2000, formed a new company, First American Insurance Underwriters, Inc., and transferred to it all of the business, assets, and personnel of NAUM and NAUMIA.

13.    In January 2001, Gersten, et al. filed suit against Zalis in Massachusetts, and Zalis retained Heidlage, then with Prince Lobel Glovsky & Tye, LLP, as counsel. Prior to being served in the Massachusetts action, Zalis filed suit against Gersten, et al., in state court in Florida. In the Florida action, Zalis was initially represented by Manuel Kushner, then with Berger, Davis & Singerman, P.S.

14.    Gersten, et al. removed the suit to the U.S. District Court for the Southern District of Florida, where it was assigned Case No. 01-0432-CIV. Zalis alleges that in July 2001, Heidlage appeared on behalf of Zalis in the Florida action.

15.    Zalis alleges as a result of a fee dispute between Zalis and Kushner, in September 2001, Heidlage and the Prince, Lobel firm assumed the role of lead counsel in the suit.

16.    Zalis further alleges in the underlying complaint that in January 2002, the role of lead counsel was assumed by Franklin Zemel and Broad & Cassel. In March 2002, Zemel and

Broad & Cassel allegedly withdrew as counsel for Zalis, and Richard Brodsky was substituted as co-counsel with Heidlage. Brodsky allegedly initially served as local counsel. Zalis alleges, however, that in early July 2002, Brodsky became lead counsel for trial. Brodsky is not a defendant in the underlying lawsuit.

17.    It is alleged that on the third day of trial in August 2002, the matter was settled. Zalis alleges that malpractice on the part of his counsel resulted in a severe restriction of Zalis's ability to prove liability and damages, and that as a result, Zalis was forced to accept a settlement amount for less than attorneys' fees and costs.

### Allegations of Professional Negligence

18.    In the underlying complaint, several allegations of professional negligence are asserted against Heidlage, and the Prince, Lobel firm on the basis that Heidlage was acting as an agent, representative or employee of the Prince, Lobel firm. These allegations are  organized under the following headings: "Inadequacies of the Amended Complaint;" "Failure to name an expert witness or witnesses;"  "Inadequate discovery efforts;" and "Failure to renew claim for preliminary relief."

19.    In the single count (Count I) directed against Heidlage and the Prince, Lobel firm, Zalis alleges that Heidlage and the firm negligently omitted certain "critical" claims for breach of contract and unjust enrichment or quasi contract from the Amended Complaint against Gersten, et al, although those claims had been included in the original Complaint.  Zalis also alleges that the defendants negligently failed to name North American Underwriting Managers Insurance Agency, Inc. as a defendant.

20.    It is alleged that Heidlage and the Prince, Lobel firm negligently failed to name an expert witness either by the deadline of November 2, 2001 imposed by the court, or by the February 15, 2002 extension agreed upon by the parties.

21.    Zalis alleges that Heidlage and the firm negligently conducted discovery, in that they (1) failed to timely move to compel Gersten to produce banking and other financial documents bearing on Gersten's diversion of funds, as a result of which the motion was denied as untimely; (2) failed to depose Gersten's Massachusetts accountant, who was on record as having advised Gersten that he was failing to live up to his obligations to Zalis; and (3) failed to obtain documents from various insurance companies to disprove Gersten's counter-allegations that Zalis had misappropriated funds due the joint venture by depositing funds generated by the joint business into a preexisting NAUM bank account in Florida.

22.    Zalis further alleges that Heidlage and the Prince, Lobel firm negligently failed to renew the motion to appoint a receiver or to otherwise seek emergency relief to freeze substantial funds for end-of-year bonuses and commissions due to be paid, which motion had been made and granted in state court, but then abrogated by the removal to federal court.

## The Westport Policy

23.    Westport issued Policy No. MAL008857 to Kotin, Crabtree and Strong, LLP (the "Policy"). The Policy is effective March 8, 2002 to March 8, 2003 on a claims made and reported basis.

24.    On or about May 1, 2002, Heidlage became associated with Kotin, Crabtree and Strong, LLP in an of counsel capacity. Heidlage is no longer associated with Kotin, Crabtree and Strong, LLP.

25.    The Policy defines "insured," in relevant part, as follows:

B. "INSURED" WHENEVER USE IN THIS COVERAGE UNIT MEANS:

1. the NAMED INSURED;

2. any lawyer who is a past or present partner, officer, director, stockholder, shareholder, employee or "of counsel" of the NAMED INSURED, but only as respects legal services rendered on behalf of the NAMED INSURED;

3. any lawyer listed in the application who is a partner, officer, director, stockholder, shareholder or employee of the NAMED INSURED at the time the CLAIM is made, but only as respects legal services rendered by such individual while associated with a PRIOR FIRM;

26.    The Policy contains the following endorsement:

### LIMITATION OF INDIVIDUAL PRIOR ACTS

General Terms and Conditions, Section XIV, Exclusions, as respects only the Lawyers Professional Liability Coverage Unit and the Title Insurance Agent Liability Coverage Unit (where applicable) is amended to include:

This POLICY shall not apply to any CLAIM based upon, arising out of, attributable to, or directly or indirectly resulting from an act, error, omission or PERSONAL INJURY committed by the following INSURED(S) prior to the corresponding RETROACTIVE DATE (s):

Richard C. Heidlage – 05.01.2002

All other terms and conditions of the POLICY remain unchanged.

27.    Zalis's claim against Heidlage is based on alleged acts, error, or omissions which occurred prior to the May 1, 2002 Retroactive Date set forth in the Limitation of Individual Prior Acts Endorsement. Therefore, the Policy does not provide coverage for the claim against Heidlage.

28.    Westport is defending Heidlage in the underlying lawsuit under a reservation of rights.

29.    Heidlage is also being defended in the underlying lawsuit by Great American, professional liability insurer for Kotin, Crabtree and Strong, LLP.

30.     Westport contends that it has no obligation to defend or indemnify Heidlage in the underlying lawsuit. On information and belief, Heidlage contends that Westport has a duty to defend and indemnify him in the underlying lawsuit. Therefore, there is an actual controversy between the parties.

Wherefore, Westport respectfully requests that the Court enter judgment in its favor and against the defendants herein, and that the Court declare that Westport has no duty to defend or indemnify Richard C. Heidlage in connection with the underlying lawsuit filed against him, being Case No. 03-011784 CA 30 in the Circuit Court of the 11trh Judicial Circuit in and for Miami-Dade County, Florida.

Westport Insurance Corporation

By:

Steven J. Bolotin/BBO#564085
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210
(617) 439-7500

Jeffrey A. Goldwater
Robert A. Chaney
Bollinger, Ruberry& Garvey
500 W. Madison St.
Suite 2300
Chicago, Illinois 60661
(312) 466-800
(312) 466-8001 (fax)

ᴛ )                                         ( }                                      ͡ ͜ʊ

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 03-011784 CA 30

CHARLES N. ZALIS, individually,
CHARLES N. ZALIS, in his capacity as
General Partner of the CHARLES N. ZALIS
FAMILY LIMITED PARTNERSHIP, a
Virginia limited partnership, and NORTH
AMERICAN UNDERWRITING
MANAGERS, INC., a dissolved Florida corporation,

     Plaintiffs,

vs.

PRINCE, LOBEL GLOVSKY & TYE, LLP,
a Massachusetts limited liability partnership;
BROAD & CASSEL, P.A., a Florida
professional association, FRANKLIN L. ZEMEL, P.A.,
a Florida professional association;
RICHARD HEIDLAGE, ESQ., and
FRANKLIN L. ZEMEL, ESQ., individually,

     Defendants.



_____/

**SECOND
AMENDED COMPLAINT**

     The Plaintiffs, Charles N. Zalis ("Zalis"), individually, Charles N. Zalis, as General

Partner of the Charles N. Zalis Family Limited Partnership ("the Zalis Family Partnership"), a

Virginia limited partnership, and North American Underwriting Managers, Inc. ("NAUM"), a

dissolved Florida corporation, by and through undersigned counsel, sue the Defendants, Prince,

Lobel Glovsky & Tye, LLP, ("Prince, Lobel") a Massachusetts limited liability partnership,

Broad & Cassel, P.A. ("Broad & Cassel"), a Florida professional association, Franklin L. Zemel,

1

**BALES & SOMMERS, P.A.**
COURVOISIER CENTRE II · 601 BRICKELL KEY DRIVE · SUITE 702· MIAMI, FLORIDA 33131
Telephone: (305) 372-1200 · Facsimile: (305) 372-9008 · e-mail: rbalesjr@attglobal.net

Received   Jan-19-05  12:15pm     From-Faxination          To-                    Page  03

Ⓒ Resp txt. 1·19·05

( )                                              ( )

P.A. ("Zemel, P.A."), a Florida professional association, Richard Heidlage, Esq. ("Heidlage"),

and Franklin L. Zemel, individually ("Zemel"), and "state:

### JURISDICTION AND VENUE

1. This is an action for damages in excess of $15,000.00, exclusive of interest and costs,

   caused by the negligence of various law firms and lawyers in providing legal services to

   the Plaintiffs.

2. Venue is proper in this Court because the events complained of below occurred in

   substantial part in Miami-Dade County, Florida.

### PARTIES

3. Zalis is an individual who resides in Broward County, Florida.

4. Zalis also brings this action as the General Partner of the Charles N. Zalis Family Limited

   Partnership, a Virginia a limited partnership.

5. The Plaintiff North American Underwriting Managers, Inc. ("NAUM") is a dissolved

   Florida corporation which had its principal place of business is in Broward County,

   Florida.

6. The Zalis Family Partnership is the owner and principal shareholder of NAUM.

7. The Defendants, collectively, are various lawyers and law firms who represented Zalis,

   the Zalis Family Limited Partnership and NAUM in connection with claims against a

   former business partner, Allen Gersten, of Needham, Massachusetts, in an action in the

   United States District Court for the Southern District of Florida (Zalis, et al. v. Gersten, et

   al., Case Number 01-432-Civ-GOLD), which was maintained from January 2001 through

   August 2002 (the "Gersten Action").

**BALES & SOMMERS, P.A.**
COURVOISIER CENTRE II · 601 BRICKELL KEY DRIVE · SUITE 702· MIAMI, FLORIDA 33131
Telephone: (305) 372-1200 · Facsimile: (305) 372-9008  · e-mail: rbalesjr@attglobal.net

;  )                              ;  )

8.  The Defendant Prince, Lobel is a Massachusetts limited liability partnership which was
    specially admitted to practice in the United States District Court for the Southern District
    of Florida for purposes of the Gersten action.

9.  The Defendant Broad & Cassel is a Florida professional association with offices in
    Miami-Dade County and Broward County, Florida.

10. The Defendant Zemel, P.A. is a Florida professional association with offices in Broward
    County, Florida.

11. The Defendant Heidlage is an attorney licensed to practice law in the State of
    Massachusetts, who at all times relevant was specially admitted pro hac vice to practice
    before the United States District Court for the Southern District of Florida in the Gersten
    action.

12. At all times relevant the Defendant Heidlage was either acting as of counsel with the
    Defendant Prince, Lobel, or as of counsel with the Massachusetts law firm of Kotin
    Crabtree & Strong, P.A. At all times material hereto Heidlage was acting as an agent,
    representative or employee of Prince, Lobel and Kotin Crabtree & Strong, P.A. with the
    latter's full knowledge, approval and participation. The Defendant Prince, Lobel did the
    following acts and/or made the following representations which cloaked the Defendant
    Heidlage with the apparent authority to act for or on its behalf:

    a.    Prince, Lobel required or permitted the Defendant Heidlage
          to utilize its firm name and stationery in correspondence to
          the Plaintiffs which it knew or should have known would
          be sent to Florida;

    b.    Prince, Lobel required or permitted the Defendant Heidlage
          to utilize its name on pleadings which it knew would be
          filed on behalf of the Plaintiffs in the Florida litigation;

3

c.   Prince, Lobel required the Defendant Heidlage to submit to
     the Plaintiffs in Florida billing statements for fees incurred
     on its letterhead;

d.   Prince, Lobel accepted the Plaintiffs' checks for fees, some
     of which were made payable to Prince, Lobel, and then
     negotiated them through its bank accounts;

e.   Prince, Lobel charged the Plaintiffs for fees incurred by its
     employees, other than the Defendant Heidlage, for work
     done on behalf of the Plaintiffs which was intended to
     benefit the Plaintiffs in their disputes in Florida;

f.   Prince, Lobel failed to set forth in writing to the Plaintiffs
     the fact that the Defendant Heidlage was allegedly not
     acting on its behalf, and was, according to Prince, Lobel, no
     more than an independent contractor;

g.   Prince, Lobel required the Defendant Heidlage to obtain
     malpractice insurance coverage through Prince, Lobel's
     malpractice insurance policy.

13. The Plaintiffs justifiably and reasonably relied to their detriment on the acts as described

above in believing that the Defendant Heidlage was in fact the agent of Prince, Lobel and

therefore it, Prince, Lobel would be responsible for actions of Defendant Heidlage,

including acts of negligence committed by the Defendant Heidlage in the course of his

representation of the Plaintiffs. The Plaintiffs reasonably and justifiably believed that the

Defendant Heidlage had the full cooperation and/or back up of a multi-attorney law firm

when, in fact according to Prince, Lobel, the Defendant Heidlage did not have the

necessary back up available or, in any event, failed to take advantage of the back up if it

existed.

14. The actions of Prince, Lobel as described above which cloaked the Defendant Heidlage

with the actual or apparent authority to act on its behalf in connection with the Florida

representation, constitute contacts within the State of Florida sufficient to subject Prince,

4

**BALES & SOMMERS, P.A.**
COURVOISIER CENTRE II · 601 BRICKELL KEY DRIVE · SUITE 702· MIAMI, FLORIDA 33131
Telephone: (305) 372-1200 · Facsimile: (305) 372-9008 · e-mail: rbalesjr@attglobal.net

       ι )                                        ι )

Lobel to the jurisdiction of this Court pursuant to Florida's "long arm statute," Florida
Statutes §48.193.

15. The Defendant Zemel is an attorney licensed to practice law in the State of Florida who at
all times relevant practiced law through Defendants Zemel, P.A. and Broad & Cassel at
offices in Ft. Lauderdale, Florida. At all times material hereto, Zemel was acting as an
agent, representative or employee of Zemel, P.A. and Broad & Cassel with the latter's
full knowledge, approval and participation.

## ALLEGATIONS COMMON TO ALL COUNTS

### The Gersten Action

16. In September 1997, Zalis and Allan Gersten ("Gersten"), both licensed insurance agents,
orally agreed to pool their existing life insurance businesses and run them as one
company. At the time, Zalis, through the Zalis Family Limited Partnership, was the sole
owner of North American Underwriting Managers, Inc. (NAUM), a Florida corporation
with its principal place of business in Broward County, Florida which engaged in the
wholesale end of the life insurance business. Gersten was the sole owner of Gersten
Financial & Insurance, Inc. ("Gersten Financial"), a Massachusetts corporation with its
principal place of business in Needham, Massachusetts, which engaged primarily in the
retail end of the life insurance business.

17. The arrangement that Zalis and Gersten agreed to was that the Zalis would cause to be
transferred to Gersten a one-half (1/2) interest in NAUM, and the Gersten would transfer
a one-half (1/2) interest in Gersten Financial to Zalis, and ultimately to the Zalis Family
Limited Partnership.

**BALES & SOMMERS, P.A.**
COURVOISIER CENTRE II · 601 BRICKELL KEY DRIVE · SUITE 702· MIAMI, FLORIDA 33131
Telephone: (305) 372-1200 · Facsimile: (305) 372-9008 · e-mail: rbalesjr@attglobal.net

         ( )                  ( )

18. Zalis and Gersten agreed that Gersten would handle the operations and financial management of the combined business and that Zalis would build the business, primarily by marketing and by locating and developing additional insurance products, brokers, and businesses. Gersten and Zalis were both to devote full time to this enterprise and to be compensated equally.

19. All brokerage contracts were to be held by the jointly owned companies, or, if the contracts were written in the name of an individual licensed broker, then the commissions or overrides payable to either Zalis or Gersten, individually, with respect to new business were to be assigned to and pooled in the jointly-owned companies. All of the revenues and assets of Gersten Financial were to be contributed to the jointly-held companies, which, in turn, would pay Gersten Financial's expenses.

20. Gersten was also appointed as an officer and director of NAUM. The administrative functions – record-keeping, bill paying, accounting, etc. of NAUM began to be carried out at Gersten's office in Needham, Massachusetts, rather than in Florida.

21. In 1997 Zalis transferred a one-half interest in NAUM to Gersten. As Gersten had failed to transfer a one-half interest in Gersten Financial to the Zalis Family Limited Partnership, in August, 1998, after meeting with Marvin Klasfeld, C.P.A., the parties agreed that they would complete the unification of their business by having Gersten transfer 100% of Gersten Financial to NAUM (of which Gersten already owned one-half through Zalis' previous transfer to Gersten).

22. In 1999 Zalis and Gersten formed a new entity, North American Underwriting Managers Insurance Agency, Inc. (NAUMIA), a Massachusetts corporation of which each was half owner. NAUMIA was formed as an administrative convenience because of

**BALES & SOMMERS, P.A.**
COURVOISIER CENTRE II · 601 BRICKELL KEY DRIVE· SUITE 702· MIAMI, FLORIDA 33131
Telephone: (305) 372-1200 · Facsimile: (305) 372-9008 · e-mail: rbalesjr@attglobal.net

Massachusetts licensure restrictions on the ability of NAUM to do business in Massachusetts. Once formed NAUMIA became the entity through which the revenues of the parties' businesses were received and disbursed.

23. During the period September 1997 through December 2000, a large amount of life insurance business was generated by the jointly owned companies, resulting in the further generation of a substantial sum of commissions in excess of several million dollars. Additionally, during this period Zalis and Gersten engaged in the development of a valuable distribution list, a list of life insurance retailers through the United States who had expressed an interest in doing business with the Zalis and Gersten entities and appeared capable of generating profitable and ongoing business.

24. During this period Zalis rarely, if ever, received written financial reports from Gersten, relying instead on oral reports as to the volume of business being generated. Over time, however, Zalis, based on his knowledge of the business he was generating and of the insurance business generally, began to suspect that the compensation being received by him from Gersten did not represent his equal share as agreed upon, and that profits of the business were being siphoned off by Gersten to himself, his family, and Gersten's other businesses.

25. Specifically, (i) Gersten did not assign to NAUM a substantial amount of commissions he or Gersten Financial were to receive (ii) Gersten falsified the books of NAUM by failing to account for payments made to him, making it appear as though he was still owed that money, and (iii) Gersten registered NAUM's web site –Betterideaspeople.com – and e-mail accounts in the name of Gersten, individually.

**BALES & SOMMERS, P.A.**
COURVOISIER CENTRE II · 601 BRICKELL KEY DRIVE · SUITE 702· MIAMI, FLORIDA 33131
Telephone: (305) 372-1200 · Facsimile: (305) 372-9008 · e-mail: rbalesjr@attglobal.net

   ؛ )                                        ( )

26. Further, (i) Gersten did not split the net proceeds of the business evenly with Zalis; (ii)
    Gersten used NAUM money to repair the office building he and his wife owned (iii)
    Gersten paid excessive salaries to his relatives, whom he put on the payroll (iv) Gersten
    paid his personal expenses out of company funds, and (v) Gersten refused to pay
    legitimate expenses associated with NAUM's Florida office.

27. In 2000 Zalis arranged for the hiring of a new Chief Financial Officer for the jointly
    owned companies, who was to be based in Florida. When Zalis and the new Chief
    Financial Officer began to press Gersten for information and documentation, Gersten was
    uncooperative. Gersten then charged that Zalis had been siphoning off funds for himself
    through a preexisting NAUM bank account in Florida.

28. These disputes ended the business relationship between Zalis and Gersten and they began
    to discuss the separation of their interests. However, unbeknownst to Zalis, in late 2000
    Gersten had formed a new corporation, First American Insurance Underwriters, Inc., into
    which Gersten had transferred all of the business, personnel, and assets of NAUM and
    NAUMIA, including the Distribution List.

### Procedural History of the Gersten Action

29. In December 2000, Zalis retained the South Florida law firm of Berger, Davis &
    Singerman, P.A. (now known as Berger Singerman, P.A.) to bring an action against
    Gersten. Manuel Kushner, a partner and/or employee of Berger, Davis & Singerman,
    P.A. at that time, was assigned primary responsibility for the case.

30. In early January, 2001, Gersten and his various companies filed suit against Zalis and
    others in Massachusetts state court. Zalis and NAUM retained the Defendants Heidlage
    and Prince, Lobel to represent him in the Massachusetts case.

8
**BALES & SOMMERS, P.A.**
COURVOISIER CENTRE II · 601 BRICKELL KEY DRIVE · SUITE 702· MIAMI, FLORIDA 33131
Telephone: (305) 372-1200 · Facsimile: (305) 372-9008 · e-mail: rbalesjr@attglobal.net

ι )                                    { )

31. On January 11, 2001, while Zalis had notice of the Massachusetts action but had not
    been served, Kushner and Berger, Davis & Singerman, P.A. filed suit on behalf of Zalis,
    NAUM, and the Zalis Family Limited Partnership in Broward County Circuit Court
    against Gersten and Gersten Financial.

32. In late February, 2001, Gersten removed the Broward County action to the United States
    District Court for the Southern District of Florida on the basis of diversity of citizenship.
    The Gersten action was assigned to the Honorable Alan Gold in the Miami Division of
    the Court.

33. On June 11, 2001, Kushner left Berger, Davis & Singerman, P.A. to become a partner
    and/or employee of Kaye Scholer, LLP, a New York Limited Liability Partnership with
    offices in South Florida. Mr. Kushner took the Gersten Action with him to Kaye Scholer,
    LLP. Heidlage and Prince, Lobel moved for leave to appear pro hac vice in the Gersten
    Action, which motion was granted on July 25, 2001.

34. On August 28, 2001 Judge Gold entered a pretrial order which, among others:

    a. closed pleadings effective June 1, 2001;

    b. set trial to begin on June 17, 2002;

    c. imposed a general discovery deadline of November 16, 2001; and

    d. required Zalis, the Zalis Family Limited Partnership and NAUM to name their
       expert witnesses by November 2, 2001, and required Gersten to name his
       expert witnesses by December 3, 2001.

35. On September 6, 2001 the Defendants Heidlage and Prince, Lobel and Manuel Kushner
    and Kaye Scholer, LLP filed a proposed Amended Complaint. Leave to file the
    Amended Complaint was granted.

9

**BALES & SOMMERS, P.A.**

COURVOISIER CENTRE II · 601 BRICKELL KEY DRIVE· SUITE 702· MIAMI, FLORIDA 33131
Telephone: (305) 372-1200 · Facsimile: (305) 372-9008 · e-mail: rbalesjr@attglobal.net

( )                              ( )

36. At that time, Zalis and Kushner and Kaye Scholer, LLP had a material fee dispute and,
although Kushner did not immediately seek judicial approval to withdraw from the case,
by agreement with Zalis, Kushner and Kaye Scholer, LLP thereafter assumed a
substantially reduced role in representing the Plaintiffs in the Gersten Action. The
substantially reduced role of Kushner and Kaye Scholer, LLP as of early September,
2001 was specifically disclosed to the Defendants Heidlage and Prince, Lobel, who at the
time agreed to assume the responsibilities of lead counsel in the Gersten Action.

37. In early January 2002, the responsibilities of lead counsel for the Plaintiffs in the Gersten
Action were assumed by the Defendants, Zemel, Zemel, P.A., and Broad & Cassel. At
that time, the Defendants Zemel, Zemel, P.A. and Broad & Cassel knew that Kushner and
Kaye Scholer, LLP had previously assumed a substantially reduced role with the consent
and agreement of the Plaintiffs. On January 25, 2002 a formal withdrawal and
substitution of counsel was filed. Earlier in January, 2002, Zalis and Gersten, through
counsel, agreed to an extension of the deadlines in the Court's pretrial order such that
Zalis would have until February 15, 2002 and Gersten until March 1, 2002 to designate
expert witnesses, and general discovery would remain open until March 15. Based
primarily on the advice of Zemel, the Plaintiffs refused to agree to submit the agreement
for an extension of time to the Court for approval. Notwithstanding the decision by the
Defendant Zemel to not formally execute the stipulation, the parties proceeded as per the
oral agreement for extension and subsequently the Court acknowledged the extension.
However, at this time, the Defendant Zemel was made aware that by agreement, he and
the Plaintiffs had a limited period of time during which an expert could still be named.
Although Zemel in fact made at least one call to such an expert to determine the expert's

**BALES & SOMMERS, P.A.**
COURVOISIER CENTRE II · 601 BRICKELL KEY DRIVE · SUITE 702 · MIAMI, FLORIDA 33131
Telephone: (305) 372-1200 · Facsimile: (305) 372-9008 · e-mail: rbalesjr@attglobal.net

Case 1:05-cv-11780-DPW   Document 1-2   Filed 08/29/2005   Page 11 of 18
Wednesday 19 of Jan 2005, Faxination          ->                     Page 13 of
`O
l2  of  19)

( )                                    ( )

availability, thereby acknowledging the Defendant Zemel's awareness of the significance

of and need for an expert, the Defendant Zemel did nothing to protect the Plaintiffs'

position either by requesting a further extension or designating an expert.  The extended

time for Zalis to designate an expert passed without one being named.  This occurred

during the time Zemel was lead counsel, that is to say during the time Zemel assumed

primary responsibility for the case.

38. By stipulation dated February 28, 2002, and approved by the Court on March 19, 2002,

Zemel, Zemel, P.A. and Broad & Cassel withdrew as counsel for Zalis, and Richard E.

Brodsky of Miami, Florida was substituted as co-counsel of record with the Defendants

Heidlage and Prince, Lobel.  At the outset, Zalis and Brodsky agreed that Brodsky was to

serve only as local counsel and only perform tasks as requested by Heidlage.

39. On May 2, 2002, Heidlage provided notice of a change of firms, from Prince, Lobel to

Kotin, Crabtree & Strong, L.L.P., another Boston law firm.

40. On June 10, 2002, with trial now set to begin in early July, 2002 Zalis and Gersten

attempted, but failed to mediate their dispute.  At that point, Brodsky was requested to

assume the role of lead counsel for the trial of the case.

41. Trial was postponed for one month to permit the disposition of numerous pretrial motions

by a United States Magistrate.  Trial began on Monday, August 5, 2001.  On the third day

of trial the parties agreed to settle, with Zalis accepting a settlement amount which

covered only a portion of his accumulated attorneys' fees and costs and provided him

with no recovery on the underlying claims against Gersten.  As set forth below, this

outcome was directly and proximately caused by a series of prior instances of

professional negligence on the part of the Defendants, resulting in severe restrictions on

11
**BALES & SOMMERS, P.A.**
COURVOISIER CENTRE II  ·  601 BRICKELL KEY DRIVE · SUITE 702·  MIAMI, FLORIDA 33131
Telephone: (305) 372-1200 · Facsimile: (305) 372-9008  · e-mail: rbalesjr@attglobal.net

Received   Jan-19-05  12:15pm     From-Faxination        To-           Page  13

( )                                    ( )

Zalis' ability to prove liability and damages at trial. Were it not for the negligence of the
Defendants, as set forth below, Zalis would have prevailed at trial and recovered an
amount substantially in excess of the settlement obtained, or would have settled the case
for a substantially greater sum.

### INSTANCES OF PROFESSIONAL NEGLIGENCE

42. Zalis, the Zalis Family Limited Partnership, and NAUM had valid and substantial claims
    against Gersten and others.    Zalis, the Zalis Family Limited Partnership, and NAUM
    settled with Gersten under circumstances in which inadequate preparation of the case by
    the Defendants had placed him in a position where settlement for the amount received
    failed to compensate fully for their legal expenses and costs, and offered them effectively
    no recovery on their claims. The settlement obtained was, under the circumstances, the
    only viable option for Zalis, the Zalis Family Limited Partnership and NAUM.

43. The outcome of the Gersten action and the resulting damage to Zalis, the Zalis Family
    Limited Partnership and NAUM were the proximate result of various acts and omissions
    of the Defendants, all violations of applicable standards of due care exercised in the legal
    community in which these acts occurred, including but not limited to the following:

    a.  Inadequacies of the Amended Complaint
        (As to the Defendants Heidlage and Prince, Lobel)

        i.   First, certain critical claims for relief, namely breach of contract
             and unjust enrichment or quasi contract, were inexplicably omitted.
             Although the original Complaint contained twelve Counts, these
             critical Counts were not included in the Amended Complaint.
             Such claims would also have provided a basis pursuant to which

**BALES & SOMMERS, P.A.**
COURVOISIER CENTRE II · 601 BRICKELL KEY DRIVE · SUITE 702· MIAMI, FLORIDA 33131
Telephone: (305) 372-1200 · Facsimile: (305) 372-9008  · e-mail: rbalesjr@attglobal.net

{ )                              { )

Zalis could have recovered damages, individually, at a materially

reduced burden of proof;

ii.     Second, a critical party Plaintiff was omitted. Most of the claims

were brought solely in the name of NAUM. However, since

NAUM ceased to be actively involved in the parties' joint business

in 1999, with all revenue and expenses thereafter passing through

NAUMIA, NAUM had a substantially reduced connection with

Gersten's misappropriation of the money and assets of the joint

venture, and therefore its potential damages were severely limited.

NAUMIA was not even named as a party, a factor bearing not only

on the availability of damages, but also on the issue of federal

jurisdiction, since addition of NAUMIA as a Plaintiff would have

destroyed diversity jurisdiction and resulted in remand of the case

to state court in which it had originally been filed. Further, the

only claim for damages alleged on behalf of Zalis, individually,

was a damages claim for defamation.

   b.   Failure to name an expert witness or witnesses (As to all Defendants)

Zalis, the Zalis Family Limited Partnership, and NAUM required an expert

witness or witnesses to testify on at least two issues: (a) the value of the business Gersten

misappropriated in December 2000, and (b) the amount of money Gersten

misappropriated from the combined entities in excess of what Zalis received during the

period prior to the business divorce. Expert testimony on these subjects would have

required a detailed study of the available financial records. Zalis' counsel ignored this

13

BALES & SOMMERS, P.A.
COURVOISIER CENTRE II · 601 BRICKELL KEY DRIVE · SUITE 702 · MIAMI, FLORIDA 33131
Telephone: (305) 372-1200 · Facsimile: (305) 372-9008 · e-mail: rbalesjr@attglobal.net

vital element of preparation and never named an expert witness, either by the Court-imposed deadline of November 2, 2001 or by the agreed-upon extension date of February 15, 2002. In the absence of such an expert witness, the Plaintiffs were effectively foreclosed from presenting evidence as to the major elements of damage.

    c.  Inadequate discovery efforts.
       (As to the Defendants Heidlage and Prince, Lobel)

        i. ·In October 2001, counsel for Zalis, the Zalis Family Limited Partnership and NAUM filed a request for production of banking records and other vital financial documents bearing on Gersten's diversion of funds during the course of the joint business venture. However, when these records were not forthcoming, counsel failed to move to compel until May 2002, at which point the motion was denied as untimely.

       ii. Counsel failed to depose Gersten's Massachusetts accountant, Robert Brodsky, who was on record as having advised Gersten that he was failing to live up to his obligations to Zalis.

      iii. Counsel failed to obtain readily available documentation from various insurance companies which would have disproved Gersten's counter-allegations that Zalis had misappropriated funds due the joint venture by depositing funds generated by the joint business into a preexisting NAUM bank account in Florida.

**BALES & SOMMERS, P.A.**
COURVOISIER CENTRE II · 601 BRICKELL KEY DRIVE · SUITE 702· MIAMI, FLORIDA 33131
Telephone: (305) 372-1200 · Facsimile: (305) 372-9008 · e-mail: rbalesjr@attglobal.net

d.  Failure to renew claim for preliminary relief
(As to the Defendants Heidlage and Prince, Lobel)

Once the Gersten Action was removed to federal court, Zalis' counsel failed to

renew the Motion to Appoint Receiver or to otherwise seek emergency relief, initially

made and granted in state court but then abrogated by the removal to federal court, to

freeze substantial funds in the form of end-of-year bonuses and commissions which were

due to be paid to the joint venture.

## COUNT I

### PROFESSIONAL LIABILITY
### (Heidlage and Prince, Lobel)

44. The allegations of paragraphs 1 through 43 above are repeated and incorporated herein by
reference.

45. The Plaintiffs employed the Defendants to provide professional legal services in the
Gersten Action.  The Defendants owed to the Plaintiffs a duty to exercise a level of skill
and care that, in light of all of the circumstances, is recognized as acceptable and
appropriate by similar and reasonably careful commercial litigators.

46. In the conduct of their representation, the Defendants neglected reasonable duties of care
owed to the Plaintiffs by, among other things, failure to use due care and to follow
accepted standards of due care in the preparation of the Amended Complaint, failure to
name an expert witness or witnesses, failure to conduct adequate discovery, failure to
renew the Plaintiffs' Motion for the Appointment of a Receiver and emergency relief in
federal court, and failure to move for an enlargement of time to allow for the filing of a
Second Amended Complaint including claims for breach of contract and unjust
enrichment.   Additionally, the Defendants Heidlage and Prince, Lobel did not disclose,

**BALES & SOMMERS, P.A.**
COURVOISIER CENTRE II · 601 BRICKELL KEY DRIVE · SUITE 702· MIAMI, FLORIDA 33131
Telephone: (305) 372-1200 · Facsimile: (305) 372-9008  · e-mail: rbalesjr@attglobal.net

Case 1:05-cv-11780-DPW    Document 1-2    Filed 08/29/2005    Page 16 of 18
Wednesday 19 of Jan 2005, Faxination          ->          Page 18 of
.0
17 of 18)

and the Plaintiffs were not aware of, the lack of experience of Heidlage in matters of a
similar nature to the Gersten action and in the conduct of jury trials.

47. These negligent acts were the proximate cause of damage to the Plaintiffs, serving to
defeat their ability to obtain what otherwise would have been substantial recoveries on
meritorious claims.

WHEREFORE, the Plaintiffs, Charles N. Zalis, individually, and in his capacity as General
Partner of the Charles N. Zalis Family Limited Partnership, seek an award of damages, costs, and
for such other relief as may be appropriate.

## COUNT II

### PROFESSIONAL LIABILITY
### (Zemel, Zemel, P.A. and Broad & Cassel)

48. The allegations of paragraphs 1 through 42 and 43b. above are repeated and incorporated
herein by reference.

49. The Plaintiffs, Charles N. Zalis, individually, and in his capacity as General Partner of the
Charles N. Zalis Family Limited Partnership, employed the Defendants to provide
professional legal services in the Gersten Action. The Defendants owed to the Plaintiffs,
Charles N. Zalis, individually, and in his capacity as General Partner of the Charles N.
Zalis Family Limited Partnership, a duty to exercise a level of skill and care that, in light
of all of the circumstances, is recognized as acceptable and appropriate by similar and
reasonably careful commercial litigators.

50. In the conduct of their representation, the Defendants neglected reasonable duties of care
owed to the Plaintiffs, Charles N. Zalis, individually, and in his capacity as General
Partner of the Charles N. Zalis Family Limited Partnership, by failure to name an expert

**BALES & SOMMERS, P.A.**
COURVOISIER CENTRE II · 601 BRICKELL KEY DRIVE · SUITE 702 · MIAMI, FLORIDA 33131
Telephone: (305) 372-1200 · Facsimile: (305) 372-9008 · e-mail: rbalesjr@attglobal.net

witness or witnesses or to protect the Plaintiffs' right to name an expert witness or

witnesses.

51. These negligent acts were the proximate cause of damage to the Plaintiffs, Charles N.

Zalis, individually, and in his capacity as General Partner of the Charles N. Zalis Family

Limited Partnership, serving to defeat their ability to obtain what otherwise would have

been substantial recoveries on meritorious claims.

WHEREFORE, the Plaintiffs, Charles N. Zalis, individually, and in his capacity as General

partner of the Charles N. Zalis Family Limited Partnership, seek an award of damages, costs, and

for such other relief as may be appropriate.

The Plaintiffs demand trial by jury of all issues triable by jury.

BALES & SOMMERS, P.A.                    MARTIN L. NATHAN, P.A.
Suite 702, Courvoisier Centre           444 Brickell Avenue
601 Brickell Key Drive                  Suite 1000
Miami, Florida 33131                    Miami, Florida 33131
Telephone: 305-372-1200                 Telephone: 305-371-5588
Facsimile: 305-372-9008                 Facsimile: 305-371-2941
Attorneys for the Plaintiffs            Attorneys for the Plaintiff
Charles Zalis and the Charles           North American Underwriting
Zalis Family Limited Partnership        Mangers, Inc.

By: _____              By: _____
     Richard M. Bales, Jr.                   Martin L. Nathan
     Florida Bar No. 247952                  Florida Bar No. 124195

17
**BALES & SOMMERS, P.A.**
COURVOISIER CENTRE II · 601 BRICKELL KEY DRIVE · SUITE 702· MIAMI, FLORIDA 33131
Telephone: (305) 372-1200 · Facsimile: (305) 372-9008 · e-mail: rbalesjr@attglobal.net

Received    Jan-19-05  12:15pm    From-Faxination         To-          Page  19

( )                                            ⌒

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was faxed and

mailed this $\underline{30^{th}}$ day of December, 2004 to the following named addressees:

Joseph H. Lowe, Esq.
Stephens, Lynn, Klein, LaGava,
Hoffman & Puya, P.A.
9130 S. Dadeland Blvd., PH 1 & 2
Miami, Florida 33156

Isaac J. Mitrani, Esq.
Mitrani, Rynor, Adamsky & MacCaulay
One S.E. Third Avenue, Suite 2200
Miami, Florida 33131

Joseph Beasley, Esq.
Josephs, Jack & Miranda
2950 S.W. 27th Avenue
Miami, Florida 33133

_____
Richard M. Bales, Jr.

18
**BALES & SOMMERS, P.A.**
COURVOISIER CENTRE II · 601 BRICKELL KEY DRIVE · SUITE 702· MIAMI, FLORIDA 33131
Telephone: (305) 372-1200 · Facsimile: (305) 372-9008 · e-mail: rbalesjr@attglobal.net

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Westport Insurance Corporation

**DEFENDANTS**

Richard C. Heidlage, Koltin, Crabtree and S Strong, LLP, Charles N. Zais, Indiv. and as General Partner of Charles N. Zalis Family Ltd. Partnership, and North American Underwriting Managers, Inc.

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Steven J. Bolotin, Morrison Mahoney LLP
250 Summer Street, Boston, MA 02210

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☐ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☒ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                        and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motion to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE  8/29/05

SIGNATURE OF ATTORNEY OF RECORD
Steven J. Bolotin, Esq.

## FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. Title of case (name of first party on each side only) Westport Insurance Corporation v. Richard C. Heidlage, Koltin, Crabtree and Strong, LLP, Charles N. Zais, Individually and as General Partner of Charles N. Zalis Family Ltd. Partnership and North American Underwriting Managers, Inc.

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

- [ ] I. 160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.

- [ ] II. 195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,  *Also complete AO 120 or AO 121
  740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.    for patent, trademark or copyright cases

- [x] III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
  315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
  380, 385, 450, 891.

- [ ] IV. 220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,
  690, 810, 861-865, 870, 871, 875, 900.

- [ ] V. 150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
YES [ ]    NO [x]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?  (See 28 USC §2403)
YES [ ]    NO [x]
If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
YES [ ]    NO [ ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
YES [ ]    NO [x]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
YES [x]    NO [ ]

A. If yes, in which division do all of the non-governmental parties reside?
Eastern Division [x]    Central Division [ ]    Western Division [ ]

B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
Eastern Division [ ]    Central Division [ ]    Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
YES [ ]    NO [ ]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME        Steven J. Bolotin, Esq.
ADDRESS        Morrison Mahoney LLP, 250 Summer Street, Boston, MA 02210
TELEPHONE NO.    617-439-7500

(CategoryForm.wpd - 5/2/05)