**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **WESTPORT INSURANCE CORPORATION,** ) ) ) | |
| **Plaintiff** ) | |
| ) | **CA No. 05-11780NMG** |
| **v.** ) | |
| ) | |
| **RICHARD C. HEIDLAGE, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

### MEMORANDUM OF LAW IN SUPPORT OF
### WESTPORT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Westport Insurance Corporation ("Westport"), by its undersigned attorneys, submits this Memorandum of Law in support of its Motion for Summary Judgment on its Complaint for Declaratory Judgment and on the Counterclaim of Richard C. Heidlage.

### INTRODUCTION

In this action, Westport seeks a declaration that it has no duty to defend or indemnify Richard C. Heidlage ("Heidlage") in a legal malpractice action in which he is being jointly defended by Westport and Great American Insurance Company. The Westport policy was issued to Kotin, Crabtree & Strong, LLP, with whom Heidlage became associated in an of counsel capacity on May1, 2002. Prior to that date, Heidlage was of counsel to Prince, Lobel, Glovsky & Tye, LLP, Great American's named insured.

Westport contends that it is entitled to summary judgment on the basis of an endorsement that excludes coverage for claims based on acts, errors or omissions allegedly committed by Heidlage prior to May 1, 2002. Westport's contention is supported by the testimony of Charles Zalis, plaintiff in the malpractice action. Zalis alleges that Heidlage negligently represented him

in a suit filed against a former business partner. However, in his deposition in the malpractice action, Zalis testified that everything he contends Heidlage did wrong had already occurred by May 1, 2002, and that Heidlage did not do anything wrong after that date in connection with his representation of Zalis.

Westport's position is also supported by the fact what while Zalis sued the Prince, Lobel firm (Great American's named insured) on the basis of Heidlage's association with that firm prior to May 1, 2002, he chose not to sue Kotin, Crabtree & Strong (Westport's named insured). Additionally, Zalis did not sue an attorney who was co-counsel with Heidlage beginning in March 2002, and who became lead counsel shortly thereafter.

Finally, even in the absence of Zalis's testimony, Westport would be entitled to summary judgment on the basis of court orders entered in the lawsuit in which Zalis was represented by Heidlage. These orders establish that the acts, errors or omissions complained of in the malpractice action occurred prior to May 1, 2002, and that the alleged malpractice could not have been cured on or after that date.

## I.    STATEMENT OF UNDISPUTED MATERIAL FACTS

1.    For several years up to May 1, 2002, Heidlage was of counsel to Prince, Lobel, Glovsky & Tye, LLP ("PLGT"). *Affidavit of Ellen A. McCarthy* ("*McCarthy Aff.*"), ¶ 4, Exhibit 1.

2.    Great American Insurance Company is the professional liability insurer for PLGT. *McCarthy Aff.*, ¶ 7; *Answer of Kotin, Crabtree & Strong, LLP*, ¶ 29.

3.    On May 1, 2002, Heidlage became associated with Kotin, Crabtree & Strong, LLP in an of counsel capacity. *Heidlage Counterclaim*, ¶ 5.

A.    **The Westport Policy**

4.    Westport issued Lawyers Professional Liability Policy No. MAL008857, effective March 8, 2002 to March 8, 2003 on a claims made and reported basis, to Kotin, Crabtree & Strong, LLP (the "Policy"). *Complaint*, ¶ 23; *Answer of Kotin, Crabtree & Strong, LLP*, ¶ 23.

5.    The Policy defines "insured," in relevant part, as follows:

B.    "INSURED" WHENEVER USED IN THIS COVERAGE UNIT MEANS:

* * *

2.    any lawyer who is a past or present partner, officer, director, stockholder, shareholder, employee or "of counsel" of the NAMED INSURED, but only as respects legal services rendered on behalf of the NAMED INSURED;

*McCarthy Aff.*, ¶¶ 3-4, Exhibit A.

6.    Heidlage and a representative of Kotin, Crabtree & Strong signed a New Lawyer Application for the Westport Policy.  *McCarthy Aff.*, ¶¶ 4-5, Exhibit A.

7.    Item 11 in the Application inquired as to whether the firm wanted coverage for services rendered by Heidlage while he was associated with a prior law firm, or rather wanted to limit coverage to services rendered by Heidlage on behalf of Kotin, Crabtree & Strong. *McCarthy Aff.*, ¶¶ 4-5, Exhibit A.

8.    In response, the firm checked the box next to the following statement:

The firm desires to limit coverage to services rendered only on behalf of the firm and, therefore, the date of hire will be the limiting prior acts date for this new lawyer. **The firm has discussed this decision with this lawyer.** (Emphasis in original)

*McCarthy Aff.*, ¶¶ 4-5, Exhibit A.

9.    The Policy contains the following endorsement excluding coverage for claims based on acts, errors or omissions committed by Heidlage prior to May 1, 2002:

LIMITATION OF INDIVIDUAL PRIOR ACTS
* * *

This POLICY shall not apply to any CLAIM based upon, arising out of, attributable to, or directly or indirectly resulting from any act, error, omission or PERSONAL INJURY committed by the following INSURED(S) prior to the corresponding RETROACTIVE DATE(S):

Richard C. Heidlage – 05.01.2002

*McCarthy Aff.*, ¶¶ 3-4, Exhibit A.

10.    The Policy contains the following definition of "Retroactive Date:"

"RETROACTIVE DATE" MEANS the date, as specified in the declarations or in any endorsement attached hereto, on or after which any WRONGFUL ACT, as defined in each of the attached COVERAGE UNITS, must have occurred in order for CLAIMS arising therefrom to be covered under this POLICY. CLAIMS arising from any WRONGFUL ACT, as defined in each of the attached COVERAGE UNITS, occurring prior to this date are not covered by this POLICY;

*McCarthy Aff.*, ¶¶ 3-4, Exhibit A.

**B.    Allegations In The Underlying Malpractice Complaint**

**1.    The Zalis v. Gersten Lawsuit**

11.    On or about May 14, 2003, Charles N. Zalis ("Zalis"); the Charles N. Zalis Limited Partnership ("limited Partnership"); North American Underwriting Managers, Inc. ("NAUM"); and North American Underwriting Managers Insurance Agency, Inc. filed a Complaint alleging legal malpractice against Heidlage, PLGT and others in the Circuit Court of the 11th Judicial Circuit, in and for Miami-Dade County, Florida, Case No. 03-011784 CA 30. *Heidlage Counterclaim*, ¶3.

12.    A Second Amended Complaint naming Heidlage, PLGT, Broad & Cassel, P.A., Franklin L. Zemel, P.A., and Franklin L. Zemel, was filed on or about January 3, 2005

("underlying complaint"). *Heidlage Counterclaim*, ¶ 3.[1]

13.    The following is alleged in the underlying complaint: In 1997, NAUM, a Florida wholesale life insurance business owned by Zalis through the Limited Partnership, merged with Gersten Financial & Insurance Company ("Gersten Financial"), a Massachusetts retail life insurance business owned by Allan Gersten ("Gersten"). *Complaint*, Exhibit A, ¶ 16.

14.    Pursuant to the merger agreement, Zalis and Gersten transferred a one-half interest in their respective businesses to each other. *Complaint*, Exhibit A, ¶¶ 17, 21.

15.    Zalis alleges that during the period from September 1997 to December 2000, Gersten failed to assign a substantial amount of commissions to NAUM; falsified the books of NAUM by failing to account for payments made to him, making it appear as though he was still owed that money; registered NAUM's web site and E-mail accounts in his name only; failed to split the net proceeds of the business evenly; used NAUM money to repair an office building owned by him and his wife; paid excessive salaries to his relatives; paid personal expenses out of company funds; and refused to pay legitimate expenses associated with NAUM's Florida office. *Complaint*, Exhibit A, ¶¶ 25-26.

16.    In January 2001, Zalis, the Limited Partnership and NAUM ("Zalis plaintiffs") filed an action against Gersten and Gersten Financial (collectively "Gersten") in state court in Florida, subsequently removed to the United States District Court for the Southern District of Florida, Case No. 01-0432-CIV-GOLD/SIMONTON ("Zalis v. Gersten lawsuit"). *Complaint*, Exhibit A, ¶¶ 30, 32.

---

[1] / A copy of the underlying complaint is attached as Exhibit A to Westport's Complaint for Declaratory Judgment. North American Underwriting Managers Insurance Agency, Inc. was dropped as a defendant in the Second Amended Complaint.

17.    The Zalis plaintiffs were initially represented by Manuel Kushner. *Complaint*, Exhibit A, ¶¶ 29, 33.

18.    In July 2001, Heidlage, then with PLGT, appeared on behalf of the Zalis plaintiffs. *Complaint*, Exhibit A, ¶ 33.

19.    In September 2001, Heidlage and PLGT assumed the role of lead counsel and Kushner subsequently withdrew. *Complaint*, Exhibit A, ¶ 36.

20.    In January 2002, Franklin Zemel and Broad & Cassel assumed the role of lead counsel. ¶ 37. In March 2002, Richard Brodsky substituted for Zemel and Broad & Cassel as co-counsel for the Zalis plaintiffs. *Complaint*, Exhibit A, ¶ 38.

21.    In June 2002, Brodsky became lead counsel. *Complaint*, Exhibit A, ¶ 40.

22.    On the third day of trial in August 2002, the Zalis plaintiffs agreed to settle for an amount less than the attorneys' fees and costs incurred by Zalis to prosecute the case. *Complaint*, Exhibit A, ¶ 41.

### 2.    Alleged Legal Malpractice

23.    In the underlying complaint, Zalis, the Limited Partnership and NAUM allege that they were forced to accept the disadvantageous settlement because various acts of legal malpractice restricted their ability to prove liability and damages in the action against the Gersten defendants. *Complaint*, Exhibit A, ¶ 41.

24.    The following acts, errors or omissions are alleged against Heidlage and PLGT under four headings in the underlying complaint:

**Inadequacies of the Amended Complaint**

- Failure to include claims for breach of contract and unjust enrichment or quasi contract in the First Amended Complaint, although those claims had been included in the original Complaint. *Complaint*, Exhibit A, ¶ 43.a.i.

- Failure to name North American Underwriting Managers Insurance Agency, Inc. as a defendant. *Complaint*, Exhibit A, ¶ 43.a.ii.

**Failure to Name an Expert Witness or Witnesses**

- Failure to name an expert witness by the November 2, 2001 deadline imposed by the court, or by the February 15, 2002 extension agreed on by the parties. *Complaint*, Exhibit A, ¶ 43.b.

**Inadequate Discovery Efforts**

- Failure to move to compel Gersten to produce banking and other financial documents until May 2002, as a result of which the motion was denied as untimely. *Complaint*, Exhibit A, ¶ 43.c.i.

- Failure to depose Gersten's accountant, who allegedly advised Gersten that he was failing to live up to his obligations to Zalis. *Complaint*, Exhibit A, ¶ 43.c.ii.

- Failure to obtain documents from various insurance companies to disprove Gersten's counterclaim that Zalis had misappropriated funds due the joint venture by depositing funds generated by the joint business into a preexisting NAUM bank account. *Complaint*, Exhibit A, ¶ 43.c.iii.

**Failure to Renew Claim for Preliminary Relief**

- Failure to renew the motion to appoint a receiver or to otherwise seek emergency relief to freeze substantial funds for end-of-year bonuses and commissions due to

be paid, which motion had been made and granted in state court, but then abrogated by removal of the case to federal court. *Complaint*, Exhibit A, 43.d.

**C.    Orders And Rulings In the Zalis v. Gersten Lawsuit**

25.    On August 20, 2001, the court in the Zalis v. Gersten action entered a scheduling order setting the following deadlines, among others:

November 16, 2001  - all non-expert discovery to be completed

November 2, 2001 -  plaintiffs to disclose experts

December 3, 2001  - defendants to disclose experts

February 1, 2002 – all expert discovery to be completed

March 1, 2002 – all dispositive motions must be filed

June 17, 2002 – trial

*Affidavit of Robert A. Chaney* ("*Chaney Aff.*"), ¶ 2, Exhibit 2.

26.    On October 2, 2001, the court granted plaintiffs' motion for leave to file a First Amended Complaint, which did not include counts for breach of contract and unjust enrichment or quasi contract included in the original Complaint. *Chaney Aff.*, ¶ 3-4, Exhibit B, C.

27.    On March 19, 2002, the court entered an order approving the substitution of Richard E. Brodsky for Franklin L. Zemel of Broad & Cassel as counsel for the Zalis plaintiffs. *Chaney Aff.*, ¶ 5, Exhibit D.

28.    On March 1, 2002, the Gersten defendants disclosed their expert witness. *Chaney Aff.*, ¶ 6, Exhibit E.

29.    On April 17, 2002, the Gersten defendants filed a Motion for Sanctions and/or to Strike the Pleadings of the Plaintiffs for Failure to Comply with Pretrial Order and Motion to Exclude Plaintiffs' Expert Witnesses. *Chaney Aff.*, ¶ 7, Exhibit F.

30.    Therein, the defendants stated that the parties had agreed to extend expert disclosure to February 15, 2002, for the plaintiffs, and March 1, 2002, for the defendants. *Id.* at p. 2.

31.    In a response filed on April 29, 2002, the Zalis plaintiffs stated the following:

Finally, as to the request that Plaintiffs be barred from listing an expert witness, Plaintiffs have not listed an expert witness and have not sought leave to list an expert witness. Not every case needs an expert witness to succeed. Plaintiffs' is one of them.

*Chaney Aff.*, ¶ 8, Exhibit G, p. 5.

32.    On May 15, 2002, the court denied the Zalis plaintiffs' motion to compel production of documents. *Chaney Aff.*, ¶ 9, Exhibit H.

33.    On June 6, 2002, the defendants filed their Motion to Strike plaintiffs' Summary of Damages Claim and Use of Summaries; (2) to Exclude Testimony of Ronald Rice, CPA; and (3) to Exclude Testimony of Charles Zalis on Loss of Value of Business. *Chaney Aff.*, ¶ 10, Exhibit I.

34.    Therein, the defendants argued that plaintiffs' summary of damages claim required expert testimony, and that although Rice was labeled as a "summary witness," plaintiffs actually intended to use him as an expert. *Id.* at pp. 3-8.

35.    The defendants further contended that Zalis had insufficient knowledge of the day-to-day operations of the business and the financial record to testify concerning the value of the business, and therefore the plaintiffs required an expert to prove the loss of value of the business. *Chaney Aff.*, ¶ 10, Exhibit I., pp. 8-14.

36.    On July 12, 2002, the plaintiffs filed a Motion for Leave to Amend First Amended Complaint, with a proposed Second Amended Complaint adding a count based on quasi-contract and unjust enrichment, and a for breach of contract. *Chaney Aff.*, ¶ 11, 14, Exhibits J, M.

37.    On July 29, 2002, the court entered an Omnibus Order and Recommendations denying plaintiffs' motion on the following basis:

> Prejudice and undue delay are inherent in an amendment asserted after close of discovery and after the time has expired for filing dispositive motions. (citations omitted)
>
> * * *
>
> Therefore, . . . the undersigned Magistrate Judge finds and concludes that . . .the Defendants would be unduly prejudiced if the amended complaint were permitted at this time.

*Chaney Aff.,* ¶ 12, Exhibit J, p.15.

38.    In the order, the court also granted the Gersten defendants' motion to exclude the testimony of Charles Zalis concerning damages, and his testimony as to the value of NAUM. *Id.* at pp. 16-20, 41.

**D.    Testimony of Charles Zalis**

39.    In the underlying case, Charles Zalis testified as follows as to whether Heidlage committed malpractice after May 1, 2002:

> Question:    Is it fair to say that as of May 1st, 2002, whatever you contend Mr. Heidlage did wrong in his representation of you had already happened?
>
> Answer:    In my opinion, yes.
>
> Question:    And that he did not do anything wrong in your opinion after that date?
>
> Answer:    I don't think it mattered. Whether it was wrong or right, I think it was over. * * *

*Chaney Aff.,* ¶ 13, Exhibit L.

**D.    Defense of Heidlage**

40.    Westport is defending Heidlage under a reservation of rights. *Westport Complaint*, ¶ 28; *Heidlage Answer*, ¶ 28.

41.    Great American Insurance Company is also defending Heidlage under its policy issued to PLGT. *Westport Complaint*, ¶ 29; *Heidlage Answer*, ¶ 29; *McCarthy Aff.*, ¶ 7.

42.    The Great American policy provides a $10,000,000 limit of liability. *McCarthy Aff.*, ¶ 8.

### E.    The Declaratory Judgment Action

43.    On August 29, 2005, Westport filed its Complaint for Declaratory Judgment against Heidlage; Kotin, Crabtree & Strong, LLP; Zalis; and NAUM. Westport seeks a declaration that it does not have a duty to defend or indemnify Heidlage in the underlying malpractice action. *Complaint.*

44.    On November 28, 2005, Heidlage filed a Counterclaim. In Count I, Heidlage seeks a declaration that Westport has a duty to defend and indemnify Heidlage in the underlying lawsuit. In Count II, Heidlage contends that Westport committed willful and knowing violation of G.L.c. 176D and 93A, §§ 2 and 11. *Heidlage Counterclaim.*

45.    On December 2, 2005, Westport filed a Notice of Dismissal of Zalis following receipt by Westport's attorney of a letter from Zalis's attorney stating that Zalis would not be proffering a defense in this action. On January 5, 2006, following Westport's Motion for Entry of Default against NAUM, the Clerk of Court entered a Notice of Default.

## II.    ARGUMENT

### A.    Choice of Law

When jurisdiction is predicated on diversity of citizenship, the court must apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 85 L.Ed. 1477, 61 S.Ct. 1020 (1941). Massachusetts has adopted a functional choice-of-law approach. *Bushkin Assocs., Inc. v. Raytheon Co.*, 393 Mass. 622, 631, 473 N.E.2d 662 (1985)

("[We] seek instead a functional choice-of-law approach that responds to the interests of the parties, the States involved, and the interstate system as a whole"). The Massachusetts functional approach is guided by the Restatement (Second) Conflict of Laws (1971). *Kahn v. Royal Ins. Co.*, 429 Mass. 572, 576, 709 N.E.2d 822 (1999).

Under the Restatement, the first step is to as ascertain whether section 193 concerning the principles applicable to disputes under insurance contracts will resolve the matter. *Clarendon National Ins. Co. v. Arbella Mut. Ins. Co.*, 60 Mass.App.Ct. 492, 803 N.E.2d 750, 752-753 (2004). Section 193 provides that the rights created by a casualty insurance policy are to be determined by the local law of the state that the parties to the contract understood would be the principal location of the insured risk, unless some other state has a more significant relationship. *Restatement (Second) Conflict of Laws*, § 193 (1971).

Here, the Westport policy was issued to Kotin, Crabtree & Strong, LLP, a law firm whose sole office is located in Boston, Massachusetts. As the firm and Westport would obviously have understood Massachusetts to be the principal location of the insured risk, the court should apply Massachusetts law to resolve this dispute. *See Clarendon*, 60 Mass.App.Ct. 492, 803 N.E.2d 750, 753 (2004); *Aetna Cas. & Surety Co. v. Clasby*, 788 F.Supp. 61 (D.Mass. 1991).

**B.    The Underlying Action Is Based On Alleged Acts, Errors or Omissions Committed Prior To The May 1, 2002 Retroactive Date**

The Westport Policy provides coverage for claims first made within the March 8, 2002 to March 8, 2003 policy period and reported within the policy period or within sixty days thereafter. Within the claims made and reported parameters, claims made policies such as the Westport policy may provide coverage for claims irrespective of when the alleged acts, errors or omissions giving rise to the claim occurred. Claims made policies, however, "routinely provide a

12

retroactive date" in order to limit coverage to claims arising out of acts, errors or omissions occurring on or after the retroactive date. *James J. Mawn Enterprises, Inc. v. Liquor Liab. Joint Underwriting Assoc.*, 42 Mass.App.Ct. 417, 420, 677 N.E.2d 1162, 1164 (1997). Here, the Westport Policy provides full prior acts coverage, with the exception that pursuant to the Limitation of Prior Acts Endorsement, claims are excluded that are "based upon, arising out of or attributable to, or directly or indirectly resulting from an act, error, [or] omission" committed by Richard Heidlage prior to May 1, 2002.[2]

Massachusetts courts have enforced similar prior acts or retroactive date limitations. *See James J. Mawn Enterprises*, 42 Mass.App.Ct. 417, 677 N.E.2d 1162 (1997) (retroactive date coinciding with effective date of policy is valid and enforceable); *Aviles v. Mier*, 2005 Mass.Super. LEXIS; *Derran v. Shorton*, 12 Mass.L.Rep. 258, 2000 Mass.Super. LEXIS 326. Courts in many other jurisdictions have also enforced retroactive date provisions or prior acts exclusions contained in claims made policies. *See, e.g., Colip v. Clare*, 26 F.3d 712 (7th Cir. 1994); *Coregis Ins. Co. v. Blancato*, 75 F.Supp.2d 319 (S.D.N.Y. 1999); *RHI Holdings, Inc. v. National Union Fire Ins. Co.*, 1994 WL 167946 (E.D.Pa. 1994); *Yazoo County, Miss. v. International Surplus Lines Ins. Co.*, 616 F.Supp. 153 (S.D.Miss. 1985); *Daly v. Ass'n of Trial Lawyers Assur. Mut.*, 1994 WL 144906 (E.D.Pa.); *Hutchinson III v. Attorneys Ins. Mut. of Alabama, Inc.*, 631 So.2d 975 (Ala. 1994); *General Ins. Co. v. McManus, Inc.*, 650 N.E.2d 1080 (Ill.App. 1995); *30 West 15th Street Owners Corp. v. Travelers Ins. Co.*, 165 A.D.2d 731, 563 N.Y.S.2d 784 (1st Dept. 1990); *Matthew v. Home Ins. Co.*, 916 S.W.2d 666 (Tex.Ct.App. 1996).

Here, there can be no genuine dispute that the malpractice claim against Heidlage is based on acts, errors or omissions which occurred, if at all, prior to the May 1, 2002 retroactive

---

[2] /  The Policy also contains a Limitation of Individual Prior Acts Endorsement pertaining to another attorney, which is not involved in this dispute.

date set forth in the Limitation of Prior Acts Endorsement. Charles Zalis, principal of the claimants in the malpractice suit, acknowledged in his deposition in the malpractice action that everything he contends Heidlage did wrong in the course of his representation of the Zalis plaintiffs "had already happened" by May 1, 2002, and that Heidlage "did not do anything wrong in . . .[his] opinion after that date."[3]

Even had Zalis not so testified, it would be apparent that the underlying plaintiffs believe that Heidlage's alleged malpractice occurred prior to May 1, 2002.  Westport's named insured, Kotin, Crabtree & Strong, with whom Heidlage became associated on May 1, 2002, was not made a defendant in the malpractice action. Had the underlying plaintiffs contended that Heidlage committed malpractice on or after May 1, 2002, they would have sued Kotin, Crabtree & Strong, as they did Prince, Lobel Glovsky & Tye, LLP, with whom Heidlage was associated prior to May 1, 2002. The position of the underlying plaintiffs is further evidenced by the fact that they chose not to sue Richard Brodsky, who in March 2002 entered his appearance as co-counsel for the Zalis plaintiffs, and shortly thereafter assumed the role of lead counsel.

Apart from this evidence, court ruling and orders in the Zalis v. Gersten lawsuit confirm Charles Zalis's belief that nothing Heidlage could have done on or after May 1, 2002 could have cured the acts, errors or omissions allegedly committed by him prior to May 1, 2002. It is alleged in the underlying complaint that Heidlage failed to name North American Underwriting Managers Insurance Agency, Inc. as a defendant and failed to include claims for breach of breach of contract and unjust enrichment or quasi contract in the First Amended Complaint. The court, however, had ordered that non-expert and expert discovery be completed by November 16,

---

[3] /  In the underlying complaint, Zalis is alleged to be the general partner of the Charles N. Zalis Family Limited Partnership. *Complaint*, Exhibit A, ¶ 4.  Zalis is also the former registered agent, president and a director of North American Underwriting Managers, Inc., a dissolved corporation, the only other plaintiff in the malpractice action other than Zalis himself.

2001, and February 1, 2002, respectively, and that dispositive motions be filed by March 1, 2002. This is significant because in denying the Zalis plaintiffs' motion to file a second amended complaint to add the missing claims, the court did so on the basis that "[p]rejudice and undue delay are inherent in an amendment asserted after close of discovery and after the time has expired for filing dispositive motions." Thus, any error committed by Heidlage in failing to cure the alleged inadequacies of the First Amended Complaint occurred no later than the March 1, 2002 dispositive motion deadline.

It is also alleged in the underlying complaint that Heidlage failed to name an expert witness or witnesses to testify as to the value of the business Gersten allegedly misappropriated, and as to the amount of funds that were allegedly misappropriated by Gersten in excess of what Zalis received. As noted, the deadline for the Zalis plaintiffs to name experts was November 16, 2001, which the parties contended was informally extended by agreement to February 15, 2002. However, in a brief signed by Heidlage and filed on April 29, 2002, the Zalis plaintiffs state that they had decided not to disclose an expert because an expert was not necessary. Thus, the decision not to name an expert and the deadline to name an expert both occurred prior to the May 1, 2002 retroactive date.

Similarly, the various acts of malpractice allegedly committed by Heidlage in connection with discovery obviously occurred prior to the discovery deadlines that had come and gone by May 1, 2002. Thus, the Zalis plaintiffs' motion to compel Gersten to produce banking and other records was denied on May 16, 2002, on the basis that the motion was filed more than six months after the deadline for completion of discovery.

Finally, the malpractice plaintiffs complain that Heidlage "failed to renew the Motion to Appoint Receiver or to otherwise seek emergency relief, initially made and granted in state court

but then abrogated by the removal to federal court [on February 2, 2001], to freeze substantial funds in the form of end-of-year bonuses and commissions which were due to be paid to the joint venture." Obviously, any possibility of successfully renewing a motion for appointment of a receiver or for emergency relief, originally made prior to February 2, 2001, was extinguished long before May 1, 2002.

In sum, the malpractice plaintiffs have admitted that Heidlage committed no malpractice on or after May 1, 2002. Various court orders and rulings establish that any malpractice that occurred prior to that date could not have been cured on or after May 1, 2002. Accordingly, the Limitation of Individual Prior Acts Endorsement precludes coverage for the malpractice claim against Heidlage, as the claim is "based upon, arising out of, attributable to, or directly or indirectly resulting from" alleged acts, errors or omissions committed by him prior to the May 1, 2002 retroactive date contained in the Endorsement. Therefore, Westport has no duty to defend Richard Heidlage in the underlying lawsuit.

### C.    Westport Has No Duty To Indemnify

As Westport has no duty to defend Heidlage in connection with the underlying lawsuit, it "necessarily follows" that Westport can have no duty to indemnify Heidlage for any judgment entered against him with respect to the malpractice action. *Bagley v. Monticello Ins. Co.*, 430 Mass. 454, 720 N.E.2d 813, 817 (Mass. 1999); *See also Liberty Mut. Ins. Co. v. Metropolitan Life Ins. Co.*, 260 F.3d 54, 62 (1st Cir. 2001); *Transamerica Ins. Co. v. KMS Patriots, L.P.*, 52 Mass.App.Ct. 189, 752 N.E.2d 777, 783 (2001).

### D.    Heidlage Has No Claim Under MGL.c. 176 or 93A

Similarly, as Westport has no duty to defend or indemnify Heidlage, Westport can not

16

have breached MG.L.c. 176D or 93A, §§ 2 and 11, as alleged in Count II of Heidlage's Counterclaim. *See Polaroid Corp. v. Travelers Indem. Corp.*, 414 Mass. 747, 754, 610 N.E.2d 912 (1993) (If "an insurer could reasonably have concluded that no aspect of the [insured's] claims was within the scope of coverage and that, therefore, there was no duty to defend [the insured] . . .an insurer's refusal to defend, even if ultimately determined to be wrong, does not support a claim under G.L.c. 93A) *See also LaFrance v. Travelers Ins. Co.*, 32 Mass.App.Ct. 987, 594 N.E.2d 550, 551 (1992); *Webb v. Metropolitan Property & Cas. Ins. Co.*, 1996 Mass.Super.LEXIS 320, *7; *Hillcrest Educational Center, Inc. v. Continental Ins. C*o., 1995 Mass.Super.LEXIS 582, *9; *SCA Disposal Services of New England, Inc. v. Central National Ins. Co.*, 1994 Mass.Super.LEXIS 617

## CONCLUSION

For the reasons stated above, Westport respectfully requests that the Court grant summary judgment in favor of Westport and against Richard C. Heidlage and Kotin, Crabtree & Strong, LLP on Westport's Complaint for Declaratory Judgment; that the Court grant summary judgment in favor of Westport and against Richard C. Heidlage on Heidlage's Counterclaim; and that the Court enter a declaration that Westport has no duty to defend or indemnify Heidlage in the underlying legal malpractice action, and that Westport may withdraw from the defense of Heidlage undertaken jointly with Great American Insurance Company.

Respectfully submitted,

Westport Insurance Corporation

By:  /s/sbolotin
    One of its Attorneys

17

Steven J. Bolotin
BBO #564085
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210
(617) 439-7500

Jeffrey A. Goldwater
Robert A. Chaney
Bollinger, Ruberry& Garvey
500 W. Madison St.
Suite 2300
Chicago, Illinois 60661
(312) 466-800
(312) 466-8001 (fax)

## <u>CERTIFICATE OF SERVICE</u>

    I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on June 5, 2006.

                /s/sbolotin_____
                Steven J. Bolotin

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| WESTPORT INSURANCE | ) |
| CORPORATION, | ) |
| | ) |
|     Plaintiff | ) |
| | )     **CA No. 05-11780NMG** |
|     v. | ) |
| | ) |
| RICHARD C. HEIDLAGE, et al., | ) |
| | ) |
|     Defendants. | ) |
| | ) |

**AFFIDAVIT OF ELLEN A. MCCARTHY**

    I, Ellen A. McCarthy, on oath depose and state that I am competent to testify to the following, and if called as a witness, will testify as follows:

    1.    I am employed by Westport Insurance Corporation ("Westport") as a Senior Claims Specialist - Lawyers.

    2.    In that capacity, I have claim handling responsibility for the claim of Charles N. Zalis, the Charles N. Zalis Family Limited Partnership, and North American Underwriting Managers, Inc., against Richard Heidlage, as set forth in the lawsuit captioned *Charles N. Zalis, et al, v. Prince, Lobel, Glovsky & Tye, LLP, et al,* Case No. 03-011784 CA 30, in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade county, Florida (the "malpractice lawsuit").

    3.    I am familiar with the file materials maintained at Westport concerning the aforementioned claim, and with respect to Westport Policy No. MAL-008857-8, effective March 8, 2002 to March 8, 2003 on a claims made and reported basis, issued to Kotin, Crabtree & Strong, LLP (the "Policy").

    4.    Attached hereto is a true and accurate copy of the Policy, including the



**EXHIBIT**

1

(Page 5 of 23)

application for the Policy and the New Lawyer Application pertaining to Richard C. Heidlage, which are made part of the Policy.

    5.    In the New Lawyer Application signed by him, Mr. Heidlage states that he was of counsel with Prince, Lobel Glovsky & Tye, LLP until he joined Kotin, Crabtree & Strong, LLP on May 1, 2002, in an of counsel capacity.

    6.    Westport is defending Richard C. Heidlage in the malpractice lawsuit pursuant to a reservation of rights under the Policy.

    7.    Westport is sharing the costs of the defense with Great American Insurance Company, which is defending Mr. Heidlage under Great American policy No. 355-92-33-03 issued to Prince, Lobel Glovsky & Tye, LLP.

    8.    I have been informed by my counterpart at Great American that the Great American policy provides a $10,000,000 limit of liability.

    Further Affiant Sayeth Not.

_____
Ellen A. McCarthy

Subscribed and Sworn
before me this 15th day
of May , 2006.
_____
Notary Public

APRIL G NERO
NOTARY PUBLIC
HOWARD COUNTY
MARYLAND
My Commission Expires Sept. 6, 2009

2

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WESTPORT INSURANCE CORPORATION, | ) ) ) |
| Plaintiff | ) |
| | )     CA No. 05-11780NMG |
| v. | ) ) |
| RICHARD C. HEIDLAGE, et al., | ) ) |
| Defendants. | ) ) |

## AFFIDAVIT OF ROBERT A. CHANEY

I, Robert A. Chaney, on oath depose and state that I have personal knowledge of the matters set forth below, and if called as a witness, would testify as follows:

1.  I am a partner with the law firm of Bollinger, Ruberrry & Garvey, and am lead counsel for Westport Insurance Corporation ("Westport") in this lawsuit. I make this affidavit in support of Westport's Motion for Summary Judgment.

2.  Attached hereto as Exhibit A is a true and accurate copy of the order entered on August 20, 2001, in *Charles N. Zalis, et al., Plaintiffs vs. Allan D. Gersten, et al., Defendants*, Case No. 01-0432-CIV-GOLD/SIMONTON in the United States District Court for the Southern District of Florida ("Zalis v. Gersten lawsuit").

3.  Attached hereto as Exhibit B is a true and accurate copy of the order entered October 2, 2001, in the Zalis v. Gersten lawsuit.

4.  Attached hereto as Exhibit C is a true and accurate copy of the First Amended Verified Complaint for Injunctive Relief and Damages in the Zalis v. Gersten lawsuit.

5.  Attached hereto as Exhibit D is a true and accurate copy of the order entered on



EXHIBIT

2

March 19, 2002, in the Zalis v. Gersten lawsuit.

    6.    Attached hereto as Exhibit E is a true and accurate copy of the Defendants' Notice of Filing Expert Witness Disclosure filed on March 1, 2002, in the Zalis v. Gersten lawsuit.

    7.    Attached hereto as Exhibit F is a true and accurate copy of Defendants' Motion for Sanctions, Contempt and/or to Strike the Pleadings of the Plaintiffs for Failure to Comply With Pretrial Order and Motion to Exclude Plaintiffs' Expert Witnesses, filed on April 17, 2002, in the Zalis v. Gersten lawsuit.

    8.    Attached hereto as Exhibit G is a true and accurate copy of Plaintiffs' Response to Defendants' Motion for Sanctions, etc., filed on April 29, 2002, in the Zalis v. Gersten lawsuit.

    9.    Attached hereto as Exhibit H is a true and accurate copy of the order entered May 15, 2002, in the Zalis v. Gersten lawsuit, in which the Court denied the Zalis plaintiffs' motion to compel.

    10.    Attached hereto as Exhibit I is a true and accurate copy of Defendants' Motion: (1) to Strike Plaintiffs' Summary of Damages Claim and Use of Summaries; (2) to Exclude Testimony of Ronald Rice, CPA; and., (3) to Exclude Testimony of Charles Zalis on Loss of Value of Business, which was filed on June 6, 2002, in the Zalis v. Gersten lawsuit.

    11.    Attached hereto as Exhibit J is a true and accurate copy of plaintiffs' proposed Second Amended Complaint in the Zalis v. Gersten lawsuit.

    12.    Attached hereto as Exhibit K is a true and accurate copy of the Omnibus Order and Recommendations entered on July 29, 2002, in the Zalis v. Gersten lawsuit.

    13.    Attached hereto as Exhibit L are true and accurate copies of pages 654-655 of the transcript of deposition of Charles N. Zalis taken on June 1, 2005, in the underlying legal malpractice suit, Case No. 03-11784 CA 30, in the Circuit Court of the 11th Judicial Circuit in and for Miami-

Dade County, Florida.

14.    Attached hereto as Exhibit M is a true and accurate copy of the docket report for the

Zalis v. Gersten lawsuit obtained from PACER.

FURTHER AFFIANT SAYETH NOT.

Robert A. Chaney

Subscribed and Sworn
before me this ___ day
of _____ 2006.

_____
Notary Public

SUE RAGSDALE
MY COMMISSION EXPIRES
OCTOBER 11, 2009

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 01-0432-CIV-GOLD/SIMONTON

CHARLES N. ZALIS, individually and
as General Partner of the CHARLES N.
ZALIS FAMILY LIMITED PARTNERSHIP
a Virginia limited partnership,

        Plaintiffs,

vs.

ALLAN D. GERSTEN and GERSTEN
FINANCIAL & INSURANCE, INC., a
Massachusetts corporation,

        Defendant.       /



FILED by _____ D.C.

AUG 20 2001

CLARENCE MADDOX
CLERK, U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## ORDER SETTING PRETRIAL AND TRIAL DATES
## AND ESTABLISHING PRETRIAL PROCEDURES

        Based upon the parties' Joint Scheduling Report, dates for the pretrial conference, calendar call, and trial of this case are set forth below. Counsel shall carefully review and comply with the following requirements concerning the pretrial conference.

### Pretrial Conference

        1. The pretrial conference is set pursuant to Fed.R.Civ.P. 16 for at **May 17, 2002 9:30 a.m.** Unless instructed otherwise by subsequent order, the trial and all other proceedings shall be conducted at 301 North Miami Avenue, 10th floor, courtroom ten, Miami, Florida 33128. Pursuant to S.D.Fla.L.R. 16.1(C), each party shall be represented at the pretrial conference and at the meeting required by S.D.Fla.L.R. 16.1(D) by the attorney who will conduct the trial, except for good cause shown.

        2. Trial is set for the two-week calendar commencing **Monday, June 17, 2002 at 9:00 a.m.** Counsel for all parties shall appear at a Calendar Call on **Wednesday, June 12, 2002 at 1:30 p.m.**

EXHIBIT

A

/00 *

### Telephonic Conferencing for Calendar Call

3. When practical, counsel are urged to utilize telephonic conferencing for the calendar call, as follows: (i) coordinate with counsel for all parties for purposes of determining who else will be appearing in this manner, (ii) schedule the telephonic conference through an **operator-assisted** service, and (iii) file a notice of intention to appear telephonically five (5) business days prior to the calendar call.

### Providing Word Perfect Compatible Disk to the Court

4. Each counsel shall provide the court with a formatted 3.5 diskette for the following motions and responses:

(i) memoranda of law in accordance with S.D.Fla.L.R.16.1(K); (ii) class action certification motions; (iii) dispositive motions; (iv) proposed jury instructions and verdict forms; (v) proposed findings of fact and conclusions of law, and (vi) proposed substantive orders. Each diskette shall be clearly labeled as to the case style and the items recorded on each diskette.

### Pretrial Schedule and Pretrial Stipulation

5. All counsel shall comply with S.D.Fla.L.R. 16.1(D) regarding the preparation of the joint Pretrial Statement. **Not later than 15 days prior to the due date of the joint pretrial stipulation,** lead counsel shall meet at a mutually convenient location and accomplish the matters set forth in S.D.Fla.L.R. 16.1(D) 1 through 6, and prepare a **joint** pretrial stipulation in compliance with S.D.Fla.L.R. 16.1(E). **The court will not accept unilateral pretrial stipulations, and will strike sua sponte, any such submissions. Should any of the parties fail to cooperate in the preparation of the joint stipulation, all other parties shall file a certification with the court stating the circumstances. Upon receipt of such certification, the court shall issue an order requiring the non-cooperating party or parties to show cause why such party or parties (and their respective**

attorneys) should not be held in contempt, and sanctions be imposed, for failure to comply with the court's order.

6. **The joint pretrial stipulation and the pretrial conference is of critical importance to the court. Counsel are expected to do everything reasonably possible to prepare the joint pretrial statement in good faith with the goal in mind to shorten the amount of time required to try the case. To this end, counsel shall eliminate all unnecessary witnesses, stipulate to all uncontested facts, and reduce the number of exhibits to a minimum.**

7. The joint pretrial stipulation **also shall include** the following information:

(i) Counsel shall prepare a joint statement of the case which the court will read to the jury in introducing the case to the jury panel during voir dire examination.

(ii) The preparation of the joint statement of stipulated facts is not regarded as a *pro forma* requirement. Counsel shall carefully prepare the joint statement after reviewing all admissions contained in the pleadings and in discovery. The purpose of the statement is to eliminate unnecessary testimony from witnesses on undisputed matters of fact. The statement shall be introduced into evidence as a court exhibit and shall be read to the jury. When necessary, counsel may be permitted to elicit admitted facts by testimony or to lay a predicate for further testimony.

(iii) Counsel shall prepare his or her witness list by disclosing those witnesses whom counsel believes in good faith he or she intends to call in their case. To the extent counsel wishes to list other witnesses who *may* be called in response to the other parties' evidence and testimony, these witnesses shall be identified in a separate witness list designated as "List of Other Possible Witnesses." Counsel shall specify which witnesses he or she intends to call "live" and which witnesses will be presented through the reading of depositions. As to the latter, counsel shall estimate the amount of time required to read the deposition testimony. If the time required is more

3

than twenty minutes, counsel should consider presentation of the testimony by video deposition.

(iv) Counsel shall prepare his or her exhibit list by identifying those exhibits which counsel believes in good faith that he or she intends to introduce in their case, excluding impeachment exhibits. To the extent counsel wishes to list other exhibits he or she *may* introduce in response to the opposing parties' evidence and testimony, such exhibits shall be identified in a separate exhibit list designated as "List of Other Possible Exhibits."

As to those exhibits on the primary list, counsel shall **carefully** note the basis for their objections in accordance with S.D.Fla.L.R. 16.1(E)(9). **The court will not accept general objections based on matters such as authenticity without an accompanying motion in limine which addresses the basis for such objections. Counsel shall realistically consider their objections and agree on trial exhibits which may be entered into evidence without objection in order to conserve trial time. Any failure to abide by these instructions may result in sanctions.**

(v) Counsel shall discuss and set forth in the joint pretrial statement their estimate as to the amount of trial time necessary to complete their respective cases. Counsel are advised that court shall be in session from 9:00 A.M. to 4:30 P.M., with one hour for lunch, Monday through Thursday of each week. Each counsel shall estimate carefully the time for direct examination of their respective witnesses and also provide an estimate of the amount of time needed for cross-examination, re-direct and re-cross examination. **Counsel are hereby warned that the court has successive two week calenders and numerous criminal trials with speedy trial requirements. Any failure to advise the court in good faith of the estimated trial time may not only delay conclusion of the trial, but may also result in sanctions against counsel.**

(vi) Counsel shall enumerate with particularity the legal and factual issues which are

4

pending for trial. The court considers such delineation to be critical, and a good faith effort is mandatory. In the event of a significant disagreement, the parties shall set forth the reason(s) for their disagreement and provide a modified statement of the issue(s) which such party proposes to be tried.

(vii) The joint pretrial stipulation shall include the names, addresses, resumes, and brief summaries of the opinions of all expert witnesses expected to be called at trial.

(viii) All motions *in limine* shall be filed with the Joint Pretrial Stipulation, including motions to strike expert testimony under the authority of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 125 L.Ed.2d 469, 113 S.Ct. 2786 (1993) and *Kumho Tire Co. v.Carmichael*, _ U.S. _, S.Ct. 1167, 143 L.Ed.2d 238 (1999). Any *Daubert/Kumho* motion shall be accompanied by appropriate affidavits.

## Time Schedule

8. The following time schedule shall gov'n unless modified by court order after a showing of compelling circumstances. Absent a court order, a motion to dismiss shall not stay discovery.

| <u>DATE</u> | <u>ACTION</u> |
|---|---|
| By    6-1-01 | All non-dispositive pretrial motions (including motions pursuant to Fed.R.Civ.P. 14, 15, 18 through 22, and 42 motions) shall be filed. Any motion to amend or supplement the pleadings filed pursuant to Fed.R.Civ.P. 15(a) or 15(d) shall comport with S.D.Fla.L.R. 15.1 and shall be accompanied by the proposed amended or supplemental pleading and a proposed order as required. **Prior to filing any non-dispositive motion, counsel for the moving party shall confer, or make reasonable effort to confer, with counsel for the opposing party in a good faith effort to resolve the matter, and shall include in the motion a statement certifying that this has been done.** |

5

| By | 11-2-01 | Plaintiff shall furnish opposing counsel with a written list containing the names and addresses of all expert witnesses intended to be called at trial and only those expert witnesses listed shall be permitted to testify. |
| By | 12-3-01 | Defendant shall furnish opposing counsel with a written list containing the names and addresses of all expert witnesses intended to be called at trial and only those expert witnesses listed shall be permitted to testify. |
| By | 1-3-02 | The parties shall comply with S.D.F.la.L.R. 16.1 K concerning the exchange of expert witness summaries and reports. This date shall supercede any other date in local rule 16.1 K. |
| By | 2-1-02 | All expert discovery shall be completed. |
| By | 11-16-01 | All non-expert discovery shall be completed. |
| By | 3-1-02 | All dispositive pretrial motions and memoranda of law must be filed. **If any party moves to strike an expert affidavit filed in support of a motion for summary judgment** [for reasons stated in *Daubert v. Merrill Dow Pharmaceuticals, Inc,* 509 U.S. 579, 125 L.Ed. 2d 469, 113 S.Ct. 2786 (1993) and *Kumho Tire Company, Ltd. v. Carmichael,* _- U.S._, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)], **the motion to strike shall be filed with that party's responsive memorandum.** |
| By | 3-15-02 | Mediation shall be completed. |
| By | 4-17-02 | **Pretrial Stipulation and *Motions in Limine.*** The joint pretrial stipulation shall be filed pursuant to S.D.Fla.L.R. 16.1(E). In conjunction with the Joint Pretrial Stipulation, the parties shall file their motions in limine. |

**Miscellaneous Matters**

9. It is further ordered that any party filing a written **simple** motion shall submit one original

**proposed order** granting the motion. **The proposed order shall also contain a complete service**

list, including the names and addresses of all attorneys or parties. **In the event there are pro se litigants, a pre-addressed stamped envelope shall be provided for those parties.**

10. A motion for continuance shall not stay the requirement for filing a joint pretrial stipulation and, unless an emergency situation arises, a motion for continuance will not be considered unless it is filed at least twenty days prior to the scheduled trial date.

11. Counsel are reminded that admission to the Bar of this district is a prerequisite to appearing before this court for trial, as provided by the Local Rules of the Southern District of Florida. Counsel who are not members of the Bar of the Southern District of Florida will be permitted to appear for trial if assisted throughout the duration of trial by a member of the Southern District Bar.

12. Non-compliance with any provision of this order may subject the offending party to sanctions or dismissal. It is the duty of all counsel to enforce the timetable set forth herein in order to ensure an expeditious resolution of the case. **Failure to file a Joint Pretrial Stipulation on or before the date set forth above shall be grounds for dismissal.**

**ORDERED** and **SIGNED** in Chambers at Miami, Florida, this $l$ day of August, 2001.

_____
**ALAN S. GOLD**
**UNITED STATES DISTRICT JUDGE**

Copies furnished:
**U.S. Magistrate Judge Andrea Simonton**
**Manuel Kushner, Esq. (561) 802-3217**
777 South Flagler Drive
West Tower, Suite 900
West Palm Beach, FL 33401
**Andrew C. Hall, Esq. & Adam Lamb, Esq. (305) 374-5033**
1428 Brickell Ave., PH
Miami, FL 33131-9113



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 01-0432-CIV-GOLD/SIMONTON

CHARLES N. ZALIS, individually and
as General Partner of the CHARLES N.
ZALIS FAMILY LIMITED PARTNERSHIP
a Virginia limited partnership,

        Plaintiffs,

vs.

ALLAN D. GERSTEN AND GERSTEN
FINANCIAL & INSURANCE, INC., a
Massachusetts corporation,

        Defendants.
_____/

## ORDER ON PLAINTIFFS' MOTION FOR
## LEAVE TO FILE FIRST AMENDED COMPLAINT

THIS CAUSE is before the Court on Plaintiffs' Motion for Leave to File First Amended

Complaint for Injunctive Relief and Damages [D.E. 114], filed on September 6, 2001. On

September 19, 2001, Defendants filed their Notice of Withdrawal of Opposition to Plaintiffs'

Motion for Leave to File First Amended Complaint [D.E. 122]. In light of Defendants' notice

that they no longer oppose Plaintiff's Motion and upon review of Plaintiffs' Motion, it is

**ORDERED AND ADJUDGED** that Plaintiffs' Motion for Leave to File First Amended

Complaint for Injunctive Relief and Damages is GRANTED.

DONE AND ORDERED in Chambers at Miami, Florida, this ___ day of September,

2001.

                ALAN S. GOLD
                UNITED STATES DISTRICT JUDGE

EXHIBIT
B

Copies furnished:
**U.S. Magistrate Judge Andrea M. Simonton**
**Manuel Kushner, Esq.**
777 South Flagler Drive
West Tower, Suite 900
West Palm Beach, FL 33401
**Andrew C. Hall, Esq. & Adam Lamb, Esq.**
1428 Brickell Ave, PH
Miami, FL 33131-9113
**Nicholas P. Alexander, Esq.**
**Douglas B. Otto, Esq.**
Morrison, Mahoney & Miller, LLP
250 Summer Street
Boston, MA 02210

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

CHARLES N. ZALIS, individually, as
General Partner of the CHARLES N. ZALIS
FAMILY LIMITED PARTNERSHIP, a
Virginia limited partnership, and NORTH
AMERICAN UNDERWRITING
MANAGERS, INC., a Florida Corporation,

     Plaintiffs,

vs.

ALLAN D. GERSTEN, GERSTEN
FINANCIAL & INSURANCE, INC., a
Massachusetts Corporation, and FIRST
AMERICAN INSURANCE UNDERWRITERS,
INC., a Massachusetts Corporation,

     Defendants.

_____/

Case No.: 01-0432-CIV-GOLD
Magistrate Judge: Simonton

## FIRST AMENDED VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Comes now Plaintiffs, Charles N. Zalis, individually and as the General Partner of the

Charles N. Zalis Family Limited Partnership, and North American Underwriting Managers, Inc., a

Florida corporation ("North American") and sue Defendants Allan D. Gersten ("Gersten"), Gersten

Financial & Insurance, Inc. ("Gersten Financial") and First American Insurance Underwriters, Inc.

("First American") and say:

### INTRODUCTION

This is an action for injunctive relief and damages in excess of $75,000, against Gersten for

breach of fiduciary duty and misappropriation of corporate opportunities; against Gersten Financial

and First American for violation of Massachusetts General Laws Chapter 93A, Florida Statutes



EXHIBIT

C

*Zalis v. Gersten*
*Case No.: 01-0432-CIV-GOLD*
*First Amended Verified Complaint*
*and Injunctive Relief and Damages*

Section 688.001 et seq. and for a constructive trust of the assets and corporate opportunities of North

American that were improperly transferred to Gersten, Gersten Financial and First American by

Gersten in breach of his fiduciary duties to North American; and a direct action against Gersten for

libel and slander. Plaintiff seeks injunctive relief and damages against all defendants and seeks the

appointment of a receiver of the assets and business of Defendants Gersten Financial and First

American.

### PARTIES AND JURISDICTION

1.      This action was originally brought in the Circuit Court of the 17th Judicial Circuit in

and for Broward County, Florida and was removed to this Court. Jurisdiction in this Court is based

on 28 U.S.C. § 1332, based on the diverse citizenship of the parties and that the matter in

controversy exceeds $75,000, exclusive of interest and costs.

2.      Plaintiff, Charles N. Zalis ("Zalis") is a natural person and a resident of Broward

County, Florida. Zalis is a general partner of the Charles N. Zalis Family Limited Partnership, a

Virginia limited partnership (the "Zalis Limited Partnership"), located in Broward County, Florida.

At all times relevant to this action, the Zalis Limited Partnership was a 50% shareholder of North

American. At all times relevant to this action, Zalis was the President and one of the two directors

of North American.

3.      Plaintiff North American is a corporation duly organized and existing under the laws

of Florida. North American is a Brokerage General Agent ("BGA"), which brokers insurance to

-2-

*Zalis v. Gersten*
*Case No.: 01-0432-CIV-GOLD*
*First Amended Verified Complaint*
 *and Injunctive Relief and Damages*

agents, who then sell the insurance to their individual clients. North American is an expert in impaired risk underwriting, is licensed to do business in the state of Florida, and does business in the state of Florida. North American is a close corporation.

4.    Defendant, Allan D. Gersten ("Gersten"), is an individual residing at 79 Stratford Road, Needham, Massachusetts. Gersten is an insurance agent licensed in the state of Florida, who engages in substantial and not isolated activity in Florida. In addition, Gersten is subject to the jurisdiction of the courts of the state of Florida by reason of his having committed tortious acts within Florida; his having breached a contract in this state by failing to perform acts required by the contract to be performed in this state; and his having caused injury to persons within this state at a time when he was engaged in solicitation or service activities within this state. Gersten did business with North American in Florida whereby North American operated as his agent to solicit new business and sales in Florida, and opened an office in Florida in his behalf as part of the business venture. At all times relevant to this action, Gersten was Secretary, Treasurer and the other of the two directors of North American. In his positions, Gersten was the chief administrative officer for North American, and had supervisory responsibility for employees and maintenance of the books and records of account for the corporation. Gersten was responsible for the proper allocation of contracts, revenues and expenses to North American.

5.    Defendant, Gersten Financial & Insurance, Inc. ("Gersten Financial"), is a corporation duly organized and existing under the laws of Massachusetts with a principal place of business

*Zalis v. Gersten*
*Case No.: 01-0432-CIV-GOLD*
*First Amended Verified Complaint*
*and Injunctive Relief and Damages*

located at 189 Reservoir Street, Needham, Massachusetts. Gersten Financial does business in the state of Florida. Gersten Financial did business with North American in Florida whereby North American operated as its agent to solicit new business and sales in Florida, and opened an office in Florida in its behalf as part of the business venture. Gersten is the agent for Gersten Financial as to the matters alleged in this Amended Verified Complaint that affect Gersten Financial. On information and belief, at all times relevant to this action Gersten Financial is and has been operated by Gersten as a direct competitor of North American.

6.      Defendant First American Insurance Underwriters, Inc. ("First American") is a corporation duly organized and existing under the laws of the Commonwealth of Massachusetts, with its principal place of business located at 189 Reservoir Street, Needham, Massachusetts. First American does business in the state of Florida and Gersten is the agent for First American as to the matters alleged in this Amended Verified Complaint that affect First American. Gersten is its sole officer and director. On information and belief, First American is the entity to which Gersten, while still an officer and director of and in breach of his fiduciary duties to North American, transferred the assets and business of North American. First American is a direct competitor of North American.

## GENERAL ALLEGATIONS

7.      On information and belief, prior to September 1, 1997, the Zalis Limited Partnership was the sole shareholder of North American and Gersten was the sole shareholder of Gersten

-4-

*Zalis v. Gersten*
*Case No.: 01-0432-CIV-GOLD*
*First Amended Verified Complaint*
*and Injunctive Relief and Damages*

Financial. At some point immediately prior to September 1, 1997, Zalis, individually and on behalf

of the Zalis Limited Partnership, and Gersten for himself and Gersten Financial, entered into a verbal

agreement to pool their insurance businesses going forward (the "Shareholders' Agreement"). Under

the Shareholders' Agreement, the parties agreed that the Zalis Limited Partnership would transfer

one-half if its interest in North American to Gersten. Gersten, in turn, was supposed to transfer

100% of his interest in Gersten Financial to North American. Thereafter, the two companies were

to operate as one unified business. Under the terms of the Shareholders' Agreement, it was agreed

that Gersten would handle all of the operational and financial management of the two companies,

in an appropriate and ethical manner, and Zalis would build the business, primarily by marketing and

advertising and by locating, acquiring and developing additional insurance products, agents, brokers

and businesses. Gersten and Zalis were to devote their full time best efforts to the business, and both

individuals were to be compensated equally. The parties further agreed actively to promote the

"North American" name, and to place all new insurance products in the name of North American,

where the BGA contracts and licenses were already being held, or in its affiliated entities. The

parties agreed that the operations of Gersten Financial would be phased out, so that eventually, all

of the business would be conducted through North American and North American's affiliate entities.

      8.     In accordance with the Shareholders' Agreement, on or about September 1, 1997, the

Zalis Limited Partnership transferred to Gersten fifty percent ownership of North American.

Immediately prior thereto, and pursuant to the terms of the Shareholders' Agreement, Gersten was

*Zalis v. Gersten*
*Case No.: 01-0432-CIV-GOLD*
*First Amended Verified Complaint*
*and Injunctive Relief and Damages*

appointed as an officer and director of North American. In addition, the parties established an

affiliated entity with its corporate domicile in Massachusetts, North American Underwriting

Managers Insurance Agency, Inc. ("North American - Massachusetts") in which Gersten and Zalis

were the sole shareholders. North American - Massachusetts had its principal place of business in

North American's Massachusetts offices located at 189 Reservoir Street, Needham, Massachusetts.

North American - Massachusetts also provided underwriting services to insurance companies and

performed reinsurance placements for small to medium-sized insurance companies and is also a

close corporation under Massachusetts law.

  9.  To date, Gersten has failed to transfer his ownership interest in Gersten Financial, to

North American, and has further failed to make Zalis an officer or director of Gersten Financial, as

was agreed upon by the parties in the Shareholders' Agreement.

  10.  Notwithstanding the Shareholders' Agreement and his duties to North American and

the Zalis Limited Partnership, Gersten operated North American for his own benefit, siphoning off

the assets of North American to Gersten Financial, First American and, on information and belief,

to himself personally, and directing corporate opportunities of North American to Gersten Financial,

First American and, on information and belief, to himself personally. For example, rather than

writing contracts for North American's business through North American, Gersten wrote the

business in his own name or in the name of Gersten Financial. This included contracts that Zalis had

negotiated on behalf of North American. On information and belief, when Gersten received these

*Zalis v. Gersten*
*Case No.: 01-0432-CIV-GOLD*
*First Amended Verified Complaint*
*and Injunctive Relief and Damages*

blank contracts that Zalis had sent to him to be completed, rather than filling them out in North

American's name, Gersten filled them out in his own name or that of Gersten Financial, bypassing

North American altogether.    He even had North American's internet domain name,

*betterideaspeople.com*, registered in his own name.

11.    On information and belief, notwithstanding the Shareholders' Agreement and his

duties to North American and the Zalis Limited Partnership, Gersten committed wasteful acts with

North American corporate assets for his own personal benefit and that of his family and friends and

to the detriment of the corporations, including: a) causing North American to pay to Gersten's

separate entity, as landlord, rent, common area maintenance, taxes and insurance charges that far

exceed the fair rental value of such leasehold space; b) causing North American to employ Gersten's

relatives for compensation far in excess of the value of the services provided; and c) causing North

American to pay the personal expenses of Gersten and his family and friends.

12.    Notwithstanding the Shareholders' Agreement and his duties to North American and

the Zalis Limited Partnership, Gersten has refused to pay legitimate expenses associated with the

business of the Florida office of North American, thereby jeopardizing the ability of that office to

continue its operations.  For example, Gersten has caused Florida personnel to be excluded from

access to the company credit card, has failed to pay the long distance phone bill for the Florida office

(and further failed to notify Zalis of such failure so that the bill could be paid without interruption

of services) and has failed to pay employees, agents and creditors of the Florida office, in a proper

-7-

*Zalis v. Gersten*
*Case No.: 01-0432-CIV-GOLD*
*First Amended Verified Complaint*
 *and Injunctive Relief and Damages*

and timely manner, thereby undermining the morale and reputation of North American's operations. As a direct result of Gersten's action, the Florida office of North American will close its doors as of September 30, 2001.

13.    Notwithstanding the Shareholders' Agreement and his duties to North American and the Zalis Limited Partnership, Gersten has otherwise mismanaged the affairs of North American by, among other things, failing to establish effective internal controls within the corporations to safeguard the assets, thereby causing a deterioration of their value; jeopardizing the continued viability of the businesses by failing to properly pay operational expenses; allowing unlicenced employees to take insurance applications without the personal participation of licensed individuals; signing agent insurance applications for agents who take the applications but who are not properly licensed to do business in that particular jurisdiction; violating all states' insurance laws by paying commissions to unlicenced and/or non-appointed agents; and violating insurance company contracts by making commission side deals with agents; and maintaining incomplete and inaccurate accounting records, and refusing to provide basic accounting records to Zalis and the companies' certified public accountant and outside representatives, resulting in the imposition of various penalties and fines, as well as the companies' failure to file federal and state income tax returns for several years.

14.    Notwithstanding the Shareholders' Agreement and his duties to North American and the Zalis Limited Partnership, Gersten caused all of the assets and employees of North American to

-8-

*Zalis v. Gersten*
*Case No.: 01-0432-CIV-GOLD*
*First Amended Verified Complaint*
 *and Injunctive Relief and Damages*

be transferred to First American and Gersten Financial such that North American was left without any assets or employees or the ability to carry on any business. On information and belief, Gersten has begun directing North American's business through First American. First American is now using the North American *betterideaspeople.com* domain name and materials developed for North American for its internet website.

15.     As part of his campaign to induce broker managers and others affiliated with North American to terminate their affiliation with North American and to affiliate with First American, Gersten told at least one of them that Zalis had stolen money from North American. Gersten admitted that he "may have" had similar conversations with other broker managers. Such statements were false and defamatory, were made with the intent to cause and did cause Zalis injury in his trade or business.

**COUNT I**

**BREACH OF FIDUCIARY DUTY TO NORTH AMERICAN**

(Gersten)

16.     Plaintiff incorporates herein by reference and realleges as if set forth in full herein the allegations contained in paragraphs 1-14 hereof.

17.     As an officer and director of North American, Gersten owed to it a fiduciary duty of care and a paramount duty of loyalty. He was bound to act in all matters regarding the corporation

*Zalis v. Gersten*
*Case No.: 01-0432-CIV-GOLD*
*First Amended Verified Complaint*
*and Injunctive Relief and Damages*

with absolute fidelity and was required to place his duties to the corporation above every other

financial or business obligation.

18.    Defendant Gersten has, by his actions alleged above, breached his fiduciary duties

of care and loyalty to North American.

19.    North American has been irreparably harmed and continues to be irreparably harmed

by the aforesaid acts.

20.    Because such damages are difficult to determine and may be impossible to recover,

a damages remedy is wholly inadequate to compensate North American.

<u>**COUNT II**</u>

<u>**DIVERSION OF CORPORATE OPPORTUNITIES BELONGING
TO NORTH AMERICAN**</u>

(Gersten, Gersten Financial and First American)

21.    Plaintiff incorporates herein by reference and realleges as if set forth in full herein

the allegations contained in paragraphs 1-19 hereof.

22.    As an officer and director of North American, Gersten owed to it a fiduciary duty of

care and a paramount duty of loyalty. He was bound to act in all matters regarding the corporation

with absolute fidelity and was required to place his duties to the corporation above every other

financial or business obligation. Specifically, he was required to make available to the corporation

and cause it to participate in any business opportunities to which he became aware.

-10-

*Zalis v. Gersten*
*Case No.: 01-0432-CIV-GOLD*
*First Amended Verified Complaint*
*and Injunctive Relief and Damages*

23.    Defendant Gersten has, by diverting insurance brokerage business opportunities, broker relationships and other business opportunities to himself and to Gersten Financial and First American, breached his fiduciary duties of care and loyalty to North American. Gersten Financial and First American, by receiving said corporate opportunities belonging to North American, have aided and abetted Gersten's breach of his duties to North American and have been unjustly enriched thereby.

24.    North American has been irreparably harmed and continues to be irreparably harmed by the aforesaid acts.

25.    Because damages are difficult to determine and may be impossible to recover, a damages remedy is wholly inadequate to compensate North American.

26.    North American is entitled to damages and injunctive relief to compensate it for and to return to it the business opportunities that were misappropriated by Gersten, Gersten Financial and First American.

## COUNT III

### MISAPPROPRIATION OF CONFIDENTIAL AND PROPRIETARY INFORMATION AND VIOLATION OF M.G.L. c. 93 AND 93A

(Gersten)

27.    Plaintiff incorporates herein by reference and realleges as if set forth in full herein the allegations contained in paragraphs 1-25 hereof.

-11-

*Zalis v. Gersten*
*Case No.: 01-0432-CIV-GOLD*
*First Amended Verified Complaint*
*and Injunctive Relief and Damages*

28.    North American possessed, used and maintained substantial confidential and proprietary information that was vital to its business and success. As a result of his employment by and positions as an officer of North American, Gersten has a contractual and fiduciary obligation not to disclose any trade secrets or confidential information he acquired during the course of his employment. He also has a common law duty not to use or disclose trade secrets and confidential information belonging to North American and any such disclosure constitutes a violation of the common law and Massachusetts General Laws Chapters 93, §§ 42, 42A and 93A, § 11.

29.    By misappropriating North American's confidential and proprietary business information, disclosing it to defendants Gersten Financial and First American, and using said information for himself and on behalf of Gersten Financial and First American, Gersten has breached and is continuing to breach his contractual and fiduciary obligations to North American and his statutory obligations as referred to above.

30.    North American has been and is continuing to be irreparably harmed by the unauthorized disclosure and use of its confidential and proprietary information as aforesaid.

31.    North American is entitled to injunctive relief to prevent such continued disclosure and use, i.e. by temporarily, preliminarily and permanently enjoining defendants as requested in the prayers for relief with regard to Count IV below.

32.    North American is also entitled to the damages caused by the unauthorized disclosure of its confidential and proprietary information as aforesaid in an amount to be proved at trial.

-12-

*Zalis v. Gersten*
*Case No.: 01-0432-CIV-GOLD*
*First Amended Verified Complaint*
*and Injunctive Relief and Damages*

## COUNT IV

## MISAPPROPRIATION OF CONFIDENTIAL AND PROPRIETARY INFORMATION, INTERFERENCE WITH CONTRACT AND VIOLATION OF M.G.L. c. 93 AND 93A

(Gersten Financial and First American)

33.    Plaintiff incorporates herein by reference and realleges as if set forth in full herein the allegations contained in paragraphs 1-31 hereof.

34.    As a result of his employment by and positions as an officer of North American, Gersten has a contractual and fiduciary obligation not to disclose any trade secrets or confidential information he acquired during the course of his employment. He also has a common law duty not to use or disclose trade secrets and confidential information belonging to North American and any such disclosure constitutes a violation of the common law and Massachusetts General Laws Chapters 93, §§ 42, 42A and 93A, § 11.

35.    Defendants Gersten Financial and First American knew or should have known of Gersten's contractual, common law and statutory duties to North American and their duty not to use or disclose to any third party any of North American's confidential or proprietary information.

36.    By participation in Gersten's misappropriation of North American's confidential and proprietary business information, and receiving and using said information for themselves and to compete with North American, Gersten Financial and First American have interfered and are continuing to interfere with North American's contractual relations with Gersten and are continuing to participate with him in his breach of his contractual, common law and statutory obligations as

-13-

*Zalis v. Gersten*
*Case No.: 01-0432-CIV-GOLD*
*First Amended Verified Complaint*
*and Injunctive Relief and Damages*

referred to above and are themselves in violation of the common law and Massachusetts General

Laws Chapters 93, §§ 42, 42A and 93A, § 11.

37.    North American has been and is continuing to be irreparably harmed by the

unauthorized disclosure and use of its confidential and proprietary information as aforesaid.

38.    North American is entitled to injunctive relief to prevent such continued disclosure

and use, i.e. by temporarily, preliminarily and permanently enjoining defendants as requested in the

prayers for relief with regard to Count V below.

39.    North American is also entitled to the damages caused by the unauthorized disclosure

of its confidential and proprietary information as aforesaid in an amount to be proved at trial.

**COUNT V**

**MISAPPROPRIATION OF CONFIDENTIAL AND PROPRIETARY INFORMATION
AND VIOLATION OF FLORIDA STATUTES CHAPTER 688**

(Gersten)

40.    Plaintiff incorporates herein by reference and realleges as if set forth in full herein

the allegations contained in paragraphs 1-38 hereof.

41.    North American possessed, used and maintained substantial confidential and

proprietary information that was vital to its business and success. As a result of his employment by

and positions as an officer of North American, Gersten has a contractual and fiduciary obligation not

to disclose any trade secrets or confidential information he acquired during the course of his

employment. He also has a common law duty not to use or disclose trade secrets and confidential

-14-

*Zalis v. Gersten*
*Case No.: 01-0432-CIV-GOLD*
*First Amended Verified Complaint*
 *and Injunctive Relief and Damages*

information belonging to North American and any such disclosure constitutes a violation of the common law and Florida Statutes Chapter 688.

42.    By misappropriating North American's confidential and proprietary business information, disclosing it to defendants Gersten Financial and First American, and using said information for himself and on behalf of Gersten Financial and First American, Gersten has breached and is continuing to breach his contractual and fiduciary obligations to North American and his statutory obligations as referred to above.

43.    North American has been and is continuing to be irreparably harmed by the unauthorized disclosure and use of its confidential and proprietary information as aforesaid.

44.    North American is entitled to injunctive relief to prevent such continued disclosure and use, i.e. by temporarily, preliminarily and permanently enjoining defendants as requested in the prayers for relief with regard to Count VI below.

45.    North American is also entitled to the damages caused by the unauthorized disclosure of its confidential and proprietary information as aforesaid in an amount to be proved at trial.

*Zalis v. Gersten*
*Case No.: 01-0432-CIV-GOLD*
*First Amended Verified Complaint*
*and Injunctive Relief and Damages*

## COUNT VI

## MISAPPROPRIATION OF CONFIDENTIAL AND PROPRIETARY INFORMATION, INTERFERENCE WITH CONTRACT AND VIOLATION OF FLORIDA STATUTES CHAPTER 688

(Gersten Financial and First American)

46.     Plaintiff incorporates herein by reference and realleges as if set forth in full herein the allegations contained in paragraphs 1-44 hereof.

47.     As a result of his employment by and positions as an officer of North American, Gersten has a contractual and fiduciary obligation not to disclose any trade secrets or confidential information he acquired during the course of his employment. He also has a common law duty not to use or disclose trade secrets and confidential information belonging to North American and any such disclosure constitutes a violation of the common law and Florida Statutes Chapter 688.

48.     Defendants Gersten Financial and First American knew or should have known of Gersten's contractual, common law and statutory duties to North American and their duty not to use or disclose to any third party any of North American's confidential or proprietary information.

49.     By participation in Gersten's misappropriation of North American's confidential and proprietary business information, and receiving and using said information for themselves and to compete with North American, Gersten Financial and First American have interfered and are continuing to interfere with North American's contractual relations with Gersten and are continuing to participate with him in his breach of his contractual, common law and statutory obligations as

-16-

*Zalis v. Gersten*
*Case No.: 01-0432-CIV-GOLD*
*First Amended Verified Complaint*
*and Injunctive Relief and Damages*

referred to above and are themselves in violation of the common law and Florida Statutes Chapter

688.

50.    North American has been and is continuing to be irreparably harmed by the

unauthorized disclosure and use of its confidential and proprietary information as aforesaid.

51.    North American is entitled to injunctive relief to prevent such continued disclosure

and use, i.e. by temporarily, preliminarily and permanently enjoining defendants as requested in the

prayers for relief with regard to Count VII below.

52.    North American is also entitled to the damages caused by the unauthorized disclosure

of its confidential and proprietary information as aforesaid in an amount to be proved at trial.

## COUNT VII

## BREACH OF DUTY OF GOOD FAITH AND LOYALTY TO ZALIS AND THE ZALIS LIMITED PARTNERSHIP

(Gersten)

53.    Plaintiff incorporates herein by reference and realleges as if set forth in full herein

the allegations contained in paragraphs 1 - 51 hereof.

54.    As an officer, director and 50% shareholder of North American Gersten owed to the

other shareholder, the Zalis Limited Partnership, a duty of utmost good faith and loyalty in the

operation of North American.

55.    Defendant Gersten has, by his actions alleged above, breached his fiduciary duties

of utmost good faith and loyalty to the Zalis Limited Partnership.

-17-

*Zalis v. Gersten*
*Case No.: 01-0432-CIV-GOLD*
*First Amended Verified Complaint*
*and Injunctive Relief and Damages*

56.    The Zalis Limited Partnership has been irreparably harmed and is continuing to be irreparably harmed by the aforesaid acts.

57.    Because such damages are difficult to determine and may be impossible to recover, a damages remedy is wholly inadequate to compensate the Zalis Limited Partnership and Zalis.

## COUNT VIII

## BREACH OF M.G.L. c. 93A

(All Defendants)

58.    Plaintiff incorporates herein by reference and realleges as if set forth in full herein the allegations contained in paragraphs 1-56 hereof.

59.    The parties hereto are engaged in "trade or commerce" as those terms are defined and used in Massachusetts General Laws Chapter 93A, and the actions alleged herein occurred primarily within the Commonwealth of Massachusetts.

60.    The above-referenced acts of the defendants constitute unfair or deceptive trade practices and are a willful and knowing violations of G.L. c. 93A, §§ 2 and 11.

61.    As a result of the above-referenced violations of G.L. c. 93A, North American has suffered and will continue to suffer immediate and irreparable injury to its business, including the loss of sales, loss of customers, and loss of income, unless enjoined by this Court.

-18-

*Zalis v. Gersten*
*Case No.: 01-0432-CIV-GOLD*
*First Amended Verified Complaint*
 *and Injunctive Relief and Damages*

## COUNT IX

## ACCOUNTING

(All Defendants)

62.    Plaintiff incorporates herein by reference and realleges as if set forth in full herein the allegations contained in paragraphs 1-60 hereof.

63.    As a result of the actions of defendants as aforesaid, there are assets and sums held by the defendants that belong to the plaintiffs in this action.

64.    Defendants have never rendered an accounting of the funds and assets that they have misappropriated from Plaintiffs. It is believed that the unaccounted for revenue exceeds $4 million dollars.

65.    Plaintiffs are unable to determine the amounts due to them on account of defendants actions without an accounting.

66.    Accordingly, defendants are liable to the plaintiffs to render an accounting for the monies and assets they have misappropriated as set forth above and further to return to and reimburse the plaintiffs for said assets and monies plus interest, costs and reasonable attorneys fees.

-19-

*Zalis v. Gersten*
*Case No.: 01-0432-CIV-GOLD*
*First Amended Verified Complaint*
 *and Injunctive Relief and Damages*

## COUNT X

### CONSTRUCTIVE TRUST

(Gersten, Gersten Financial and First American)

67.    Plaintiff incorporates herein by reference and realleges as if set forth in full herein

the allegations contained in paragraphs 1-65 hereof.

68.    As a result of Gersten's actions as aforesaid, Gersten, Gersten Financial and First

American have received and are in the possession of assets that rightfully belong to North American.

69.    Said assets are held in an equitable constructive trust for North American.

70.    North American is entitled to a return of said assets.

## COUNT XI

### APPOINTMENT OF A RECEIVER

(Gersten Financial and First American)

71.    Plaintiff incorporates herein by reference and realleges as if set forth in full herein

the allegations contained in paragraphs 1- 69 hereof.

72.    As a result of Gersten's actions as aforesaid Gersten Financial and First American

have received and are in the possession of assets that rightfully belong to North American.

73.    Given Gersten's total control over Gersten Financial and First American, unless the

Court appoints a receiver, the assets of said corporations will be dissipated or otherwise concealed

to defraud North American, the Zalis Limited Partnership and Zalis.

-20-

.

*Zalis v. Gersten*
*Case No.: 01-0432-CIV-GOLD*
*First Amended Verified Complaint*
*and Injunctive Relief and Damages*

74.    North American is entitled to have a receiver appointed to conserve the assets of

Gersten Financial and First American until further order of the Court.

## COUNT XII

### DEFAMATION

(Gersten)

75.    Plaintiff incorporates herein by reference and realleges as if set forth in full herein

the allegations contained in paragraphs 1- 73 hereof.

76.    Gersten's statements to North American's broker managers and others that Zalis had

stolen money from North American were false and defamatory *per se*. They represent false

representations of fact and/or opinions that imply the existence of undisclosed, defamatory facts.

77.    Gersten's statements were knowingly false or made with reckless disregard of the

truth.

78.    Such statements were made maliciously, without any legitimate business interest and

with the intent to humiliate and injure Zalis in his trade or business.

79.    Gersten's statements have held Zalis up to scorn, hatred, ridicule and contempt in the

minds of a considerable and respectable segment of the community, have injured him in his trade

and business and have impugned his integrity and honesty.

80.    As a result of Gersten's wrongful conduct, Zalis has suffered humiliation, ridicule,

harm to his personal and business reputation, great emotional distress and other damages.

-21-

*Zalis v. Gersten*
*Case No.: 01-0432-CIV-GOLD*
*First Amended Verified Complaint*
*and Injunctive Relief and Damages*

## PRAYERS FOR RELIEF

WHEREFORE plaintiff respectfully requests that the Court issue relief as follows:

1. On Count I,

    a.    Issue preliminary and permanent injunctions in appropriate form against defendant Gersten;

    b.    Enter judgment against Gersten awarding North American damages in such amount as is proved at trial, plus interest and costs including reasonable attorneys fees; and

    c.    Enter judgment against Gersten awarding North American such other and further relief as the Court deems just.

2. On Count II,

    a.    Issue preliminary and permanent injunctions in appropriate form against defendants Gersten, Gersten Financial and First American;

    b.    Enter judgment against defendants Gersten, Gersten Financial and First American awarding North American damages in such amount as is proved at trial, plus interest and costs including reasonable attorneys fees; and

    c.    Enter judgment against Gersten, Gersten Financial and First American awarding North American such other and further relief as the Court deems just.

*Zalis v. Gersten*
*Case No.: 01-0432-CIV-GOLD*
*First Amended Verified Complaint*
*and Injunctive Relief and Damages*

3.  On Count III,

a.    Issue preliminary and permanent injunctions in appropriate form against defendant Gersten;

b.    Enter judgment against Gersten awarding North American damages in such amount as is proved at trial, plus interest and costs including reasonable attorneys fees; and

c.    Enter judgment against Gersten awarding North American such other and further relief as the Court deems just.

4.  On Count IV,

a.    Issue preliminary and permanent injunctions in appropriate form against defendants Gersten, Gersten Financial and First American;

b.    Enter judgment against Gersten Financial and First American awarding North American damages in such amount as is proved at trial, plus interest and costs including reasonable attorneys fees; and

c.    Enter judgment against Gersten Financial and First American awarding North American such other and further relief as the Court deems just.

5.  On Count V,

a.    Issue preliminary and permanent injunctions in appropriate form against defendant Gersten;

*Zalis v. Gersten*
*Case No.: 01-0432-CIV-GOLD*
*First Amended Verified Complaint*
 *and Injunctive Relief and Damages*

   b.  Enter judgment against Gersten awarding North American damages in such

amount as is proved at trial, plus interest and costs including reasonable attorneys fees; and

   c.  Enter judgment against Gersten awarding North American such other and

further relief as the Court deems just.

  6. On Count VI,

   a.  Issue preliminary and permanent injunctions in appropriate form against

defendants Gersten, Gersten Financial and First American;

   b.  Enter judgment against Gersten Financial and First American awarding North

American damages in such amount as is proved at trial, plus interest and costs including reasonable

attorneys fees; and

   c.  Enter judgment against Gersten Financial and First American awarding North

American such other and further relief as the Court deems just.

  7. On Count VII,

   a.  Issue preliminary and permanent injunctions in appropriate form against

defendants Gersten, Gersten Financial and First American;

   b.  Enter judgment against Gersten awarding the Zalis Limited Partnership

damages in such amount as is proved at trial, plus interest and costs including reasonable attorneys

fees; and

-24-

*Zalis v. Gersten*
*Case No.: 01-0432-CIV-GOLD*
*First Amended Verified Complaint*
*and Injunctive Relief and Damages*

    c.  Enter judgment against Gersten awarding Zalis and the Zalis Limited

Partnership damages as are proved at trial plus such other and further relief as the Court deems just.

  8. On Count VIII,

    a.  Issue preliminary and permanent injunctions in appropriate form against all

defendants;

    b.  Enter judgment against all defendants awarding North American and the Zalis

Limited Partnership damages in such amount as is proved at trial trebled, plus interest and costs

including reasonable attorneys fees; and

    c.  Enter judgment against all defendants awarding North American and the Zalis

Limited Partnership such other and further relief as the Court deems just.

  9. On Count IX,

    a.  Order an accounting from each of the defendants with regard to the disposition

of the assets of North American;

    b.  Enter judgment against all defendants awarding North American and the Zalis

Limited Partnership damages in such amount as is established pursuant to said accounting, plus

interest and costs including reasonable attorneys fees; and

    c.  Enter judgment against all defendants awarding North American and the Zalis

Limited Partnership such other and further relief as the Court deems just.

*Zalis v. Gersten*
*Case No.: 01-0432-CIV-GOLD*
*First Amended Verified Complaint*
*and Injunctive Relief and Damages*

   10. On Count X,

     a. Enter an Order declaring that the assets of North American that were misappropriated by defendants are held in constructive trust for North American;

     b. Enter judgment against all defendants awarding North American and the Zalis Limited Partnership damages in such amount as is held in said trusts, plus interest and costs including reasonable attorneys fees; and

     c. Enter judgment against all defendants awarding North American and the Zalis Limited Partnership such other and further relief as the Court deems just.

   11 On Count XI,

     a. Enter preliminary and permanent orders appointing a receiver over the assets of Gersten Financial and First American;

     b. After trial, enter an order directing the receiver to liquidate the assets of Gersten Financial and First American in sufficient amounts to satisfy the judgment entered against Gersten, Gersten Financial and First American in this action; and

     c. Enter judgment against Gersten, Gersten Financial and North American awarding North American and the Zalis Limited Partnership such other and further relief as the Court deems just.

*Zalis v. Gersten*
*Case No.: 01-0432-CIV-GOLD*
*First Amended Verified Complaint*
*and Injunctive Relief and Damages*

    12.    On Count XII,

        a.    Enter judgment against Gersten awarding Zalis damages in such amount as

is established at trial, plus interest and costs including reasonable attorneys fees; and

        b.    Enter judgment against Gersten awarding Zalis such other and further relief

as the Court deems just.

### PUNITIVE DAMAGES

Plaintiffs reserve the right to amend this Complaint to add a request for punitive damages

at such time as Plaintiffs can present evidence that such damages are appropriate.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as to all issues so triable.

    Respectfully submitted,

    KAYE SCHOLER, LLP
    Attorneys for Plaintiffs
    Phillips Point, West Tower
    777 North Flagler Drive, Suite 900
    West Palm Beach, FL 33301
    (561) 802-3230    Telephone
    (561) 802-3217    Facsimile
    Email:  mkushner@kayescholer.com

    By: _____
    Manuel Kushner
    Florida Bar No.: 330957

-27-

*Zalis v. Gersten*
*Case No.: 01-0432-CIV-GOLD*
*First Amended Verified Complaint*
 *and Injunctive Relief and Damages*

PRINCE, LOBEL, GLOVSKY & TYE, LLP
585 Commercial Street
Boston, MA  02109
(617) 456-8195        Telephone
(617) 456-8100        Facsimile
Email: rcheidlage@plgt-law.com

By: _____
    Richard C. Heidlage, BBO# 228940
    Of Counsel

Dated: September *6*, 2001

-28-

<u>VERIFICATION</u>

I, Charles N. Zalis, being first duly sworn, depose and state that I have read the foregoing complaint and that the factual allegations stated therein are true to the best of my knowledge and belief and are based on my personal knowledge except where stated to be on information and belief, as to which allegations. I believe them to be true. This verification is made under the pains and penalties of perjury this _31_ day of August, 2001.

_____
Charles N. Zalis

STATE OF FLORIDA          )
                          ) SS.:
COUNTY OF BROWARD   )

BEFORE ME, the undersigned authority, personally appeared Charles N. Zalis, who was sworn and says the he is the Plaintiff in the above-styled action, that he has read the foregoing Complaint, and that each and every matter in it is true and correct.

Sworn to before me on this _31_ day of August, 2001.

_____
Notary Public

My Commission Expires:

Sandra Canto
My Commission CC731271
Expires April 8, 2002

–29–

*Zalis v. Gersten*
*Case No.: 01-0432-CIV-GOLD*
*First Amended Verified Complaint*
*and Injunctive Relief and Damages*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Plaintiffs' First

Amended Verified Complaint for Injunctive Relief and Damages was furnished by telecopy

and U.S. mail to Andrew Hall, Esq., Hall, David & Joseph, P.A., 1428 Brickell Avenue,

Penthouse, Miami, Florida 33131; Nicholas P. Alexander, Esq. and Douglas B. Otto, Esq.,

Morrison, Mahoney & Miller, LLP, 250 Summer Street, Boston, MA 02210, this _6th_ day

of September 2001.

KAYE SCHOLER, LLP
Attorneys for Plaintiffs
Phillips Point, West Tower
777 North Flagler Drive, Suite 900
West Palm Beach, FL 33301
(561) 868-7517 Direct Dial
(561) 802-3230    Telephone
(561) 802-3217    Facsimile
Email: mkushner@kayescholer.com

By: _____
Manuel Kushner
Florida Bar No.: 330957

-30-

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 01-0432-CIV-GOLD

Magistrate Judge Andrea M. Simonton

FILED by _____ D.C

MAR 1 9 2002

CLARENCE MADDOX
CLERK U.S. DIS., CT.
S.D. OF FLA. · MI MI

CHARLES N. ZALIS, individually, as
General Partner of the CHARLES N. ZALIS
FAMILY LIMITED PARTNERSHIP, a
Virginia limited partnership, and NORTH
AMERICAN UNDERWRITING
MANGERS, INC. a Florida Corporation,

      Plaintiffs,

v.

ALLAN D. GERSTEN, GERSTEN
FINANCIAL & INSURANCE, INC., a
Massachusetts Corporation, and FIRST
AMERICAN INSURANCE UNDERWRITERS,
INC., a Massachusetts Corporation,

      Defendants.

_____/

### ORDER APPROVING SUBSTITUTION OF COUNSEL

On the Stipulation filed by BROAD AND CASSEL and RICHARD E.

BRODSKY, P.A. on or about March 6, 2002 (DE 138) which Stipulation was

agreed to by the client, it is hereby

ORDERED AS FOLLOWS:

1.    RICHARD E. BRODSKY, P.A. is hereby substituted as counsel for

BROAD AND CASSEL, for Plaintiffs, CHARLES N. ZALIS, individually, and as

General Partner of the CHARLES N. ZALIS FAMILY LIMITED PARTNERSHIP, a

Virginia Limited Partnership.



EXHIBIT

D

2.    All future correspondence, pleadings, motions, notices, etc.,

pertaining to this matter shall be sent to: RICHARD E. BRODSKY, RICHARD E.

BRODSKY, P.A., 25 Southeast 2nd Avenue, Suite 919, Miami, Florida 33131,

Telephone No. (305) 755-9470; Telefax No. (305) 381-7708.

3.    BROAD AND CASSEL is relieved of all responsibilities in this

matter.

DONE AND ORDERED this _17_ day of March 2002, in Chambers, Miami,

Florida.

_____
ALAN S. GOLD, U.S.D.J

Copies to:
Richard E. Brodsky
RICHARD E. BRODSKY, P.A.
25 SE Second Avenue, Suite 919
Miami, Florida 33131

Richard C. Heidlage, BBO No. 228940
PRINCE, LOBEL, GLOVSKY & TYE LLP
585 Commercial Street
Boston, MA 02109

Andrew C. Hall
HALL, DAVID AND JOSEPH, P.A.
1428 Brickell Avenue, Penthouse
Miami, Florida 33131

Nicholas P. Alexander
BBO No.: 544173
Douglas B. Otto, Esq.
BBO No.: 555269
MORRISON, MAHONEY & MILLER, LLP
250 Summer Street
Boston, MA 02210

2

# UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA

### Case No.: 01-0432-CIV-GOLD/SIMONTON



CHARLES N. ZALIS, individually, and as
General Partner of the CHARLES N. ZALIS
FAMILY LIMITED PARTNERSHIP, a
Virginia limited partnership, and NORTH
AMERICAN UNDERWRITING
MANAGERS, INC., a Florida Corporation

       Plaintiffs,

vs.

ALLAN D. GERSTEN, GERSTEN
FINANCIAL & INSURANCE, INC., a
Massachusetts corporation, and FIRST
AMERICAN INSURANCE UNDERWRITERS,
INC., a Massachusetts Corporation,

       Defendants.

_____/

## DEFENDANTS' NOTICE OF FILING EXPERT WITNESS DISCLOSURE

Defendants, Allan D. Gersten ("Gersten"), Gersten Financial & Insurance, Inc. ("Gersten

Financial"), and First American Insurance Underwriters, Inc. ("First American"), by and through

their undersigned counsel, hereby give notice of disclosing the following expert witness to the

Plaintiffs, Charles N. Zalis, individually and as General Partner of the Charles N. Zalis Family

Limited Partnership ("Zalis") and North American Underwriting Managers, Inc. ("North

American"):

                Carl F. Jenkins, CPA/ABV, CFE
                Brown & Brown, LLP
                90 Canal Street
                Boston, MA 02114
                (617) 227-4645



EXHIBIT

E

Respectfully Submitted,

HALL, DAVID AND JOSEPH, P.A.
1428 Brickell Avenue, Penthouse
Miami, Florida 33131
(305) 374 -5030 (telephone)
(305) 374-5033 (facsimile)

_____
ANDREW C. HALL
Fla. Bar No.: 111480
ADAM J. LAMB
Fla. Bar No.: 899046

and

Nicholas P. Alexander, Esq.
BBO No.: 544173
Douglas B. Otto, Esq.
BBO No.: 555269
MORRISON, MAHONEY & MILLER, LLP
Counsel for Defendants, *Pro Hac Vice*
250 Summer Street
Boston, MA  02210

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was served via facsimile and U.S. Mail on this 1st day of March, 2002 to: Franklin Zemel, Esq., Broad & Cassel, 500 E. Broward Boulevard, Suite 1130, Fort Lauderdale, Florida 33394 and Richard C. Heidlage, Esq., Prince, Lobel, Glovsky & Tye, LLP, 585 Commercial Street, Boston, MA 02109.

_____
ADAM J. LAMB

NOT8132c102.expertwitness.wpd



## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA

### Case No.: 01-0432-CIV-GOLD/SIMONTON

CHARLES N. ZALIS, individually, and as
General Partner of the CHARLES N. ZALIS
FAMILY LIMITED PARTNERSHIP, a
Virginia limited partnership, and NORTH
AMERICAN UNDERWRITING
MANAGERS, INC., a Florida Corporation

      Plaintiffs,

vs.

ALLAN D. GERSTEN, GERSTEN
FINANCIAL & INSURANCE, INC., a
Massachusetts corporation, and FIRST
AMERICAN INSURANCE UNDERWRITERS,
INC., a Massachusetts Corporation,

      Defendants.

_____/

## DEFENDANTS' MOTION FOR SANCTIONS, CONTEMPT AND/OR TO STRIKE THE PLEADINGS OF THE PLAINTIFFS FOR FAILURE TO COMPLY WITH PRETRIAL ORDER AND MOTION TO EXCLUDE PLAINTIFFS' EXPERT WITNESSES

      Defendants, Allan D. Gersten ("Gersten"), Gersten Financial & Insurance, Inc. ("Gersten

Financial") and First American Insurance Underwriters, Inc. ("First American"), by and through

their undersigned counsel, hereby file this motion for sanctions, contempt and/or to strike the

pleadings of the Plaintiffs, Charles N. Zalis, individually and as General Partner of the Charles N.

Zalis Family Limited Partnership ("Zalis") and North American Underwriting Managers, Inc.

("North American") for failing to comply with this Court's Pretrial Order and move to exclude

Plaintiffs' expert witnesses and as grounds therefor, the Defendants state as follows:

1

**EXHIBIT**

F

157 A

## Introduction

The Plaintiffs have engaged in a continued a pattern of delay and callous indifference regarding their obligations set forth in this Court's Order Setting Pretrial and Trial Dates and Establishing Pretrial Procedures dated August 17, 2001 (the "Pretrial Order").   Despite numerous requests from the Defendants to comply with these obligations, and despite the upcoming trial calendar commencing June 17, 2002, the Plaintiffs have failed to disclose their expert witnesses, have failed to provide discovery regarding their alleged damages, and have refused to participate in drafting the Joint Pretrial Stipulation which is due today.

## Expert Witnesses

The Pretrial Order required the Plaintiffs to provide the Defendants with a written list of all expert witness by November 2, 2001 and with a summary of the expert(s) reports by January 3, 2002.   By agreement of counsel, and as confirmed by correspondence, these dates were extended.   (A copy of the correspondence is attached as Exhibit "A").   Under this agreement, Plaintiffs expert witness disclosure was due on February 15, 2002.   The Defendants agreed to disclose its expert by March 1, 2002 and did so.   The Plaintiffs failed to timely make any disclosure.

Thereafter, counsel for Defendants made numerous requests for the Plaintiffs' to disclose their expert witness.   Defendants reminded the Plaintiffs of their obligations under the Pretrial Order and warned the Plaintiffs that the Defendants would seek to exclude the expert witnesses if they were not timely disclosed.   Despite these multiple requests to comply with the Court's Order, the Plaintiffs failed to disclose any their expert witness(es) and at this late date, continue to refuse to disclose their expert(s).

Despite Plaintiffs' non-compliance, on or about March 1, 2002, the Defendants timely

2

disclosed their expert witness, Carl Jenkins, C.P.A. While Mr. Jenkins is expected to set forth some affirmative opinions, a significant portion of his testimony was in the form of expected rebuttal to the testimony of Plaintiffs' expert regarding damages. Because Plaintiffs refuse to disclose their expert, Mr. Jenkins is unable to complete his report.

Notwithstanding that the Plaintiffs' are in blatant violation of the Pretrial Order, the Plaintiffs bad faith motivation behind their failure to disclose is self-evident. The Plaintiffs intend a "trail by ambush" in this matter. Yesterday, April 16, 2002, the Defendants commenced the deposition of Plaintiff Zalis. During the deposition, the undersigned inquired of Mr. Zalis regarding certain categories of damages which Zalis claims to seek in this lawsuit. Mr. Zalis refused to provide any detail supporting these general categories of damages and the methodology by which they were calculated. When the undersigned inquired as to when Zalis intended to disclose this information, Zalis coyly replied "Oh, I think by mid-June I'll have it down" apparently referring the June 17, 2002 trial date. (See Zalis deposition excerpt Exhibit "B" at p.3-4). Further, Zalis refused to disclose who his expert witness was regarding damages. It is apparent that Zalis intends to keep his damage calculations and his expert witness a secret until the trial. The Pretrial Order and the Federal Rules of Civil Procedure prohibit such bad faith conduct which ignores the direct orders of this Court.

As more fully set forth in the Memorandum of Law *infra*, in addition to sanctioning the Plaintiffs for failing to comply with the Pretrial Order, the Plaintiffs request that this Court prohibit the Plaintiffs from submitting any expert testimony at trial.

### Failure to Provide Discovery

The Plaintiffs have also been dilatory and evasive during discovery. On September 28, 2001, Gersten and Gersten Financial served the Plaintiffs with a First Request for Production of

3

Documents and First Set of Interrogatories. By agreement of counsel, the Defendants granted an extension to the Plaintiffs to respond by the end of December 2001. Commencing in January 2002, the Defendants requested that Plaintiffs finally respond to the outstanding discovery requests. In response, Plaintiffs' counsel agreed to provide the subject responses on or before January 28, 2002. Despite this agreement, Plaintiffs failed to timely provide any documents or written response to the discovery.

The Defendants were forced to file a motion to compel. After filing the motion, the Plaintiffs indicated that responses would be forthcoming immediately. In the spirit of cooperation, the Defendants agreed to the entry of an Order declaring the motion to compel moot. Plaintiffs subsequently provided Defendants with so-called "responses" to the discovery. The "responses" contained blanket objections and were patently evasive and non-responsive. The Defendants sent correspondence to the Plaintiffs on March 28, 2002 setting forth in detail the deficiencies in the responses. (See correspondence attached as Exhibit "C"). In keeping with their pattern of conduct, Plaintiffs responded that Defendants would get nothing further as Plaintiffs were solely going to determine relevance based upon the allegations in Plaintiffs' case, ignoring Defendants' counterclaims. The Defendants are in the process of drafting a second motion to compel regarding this issue which Defendants expect to be filed in the near future.

### Pretrial Stipulation

The Pretrial Order requires the filing of a Joint Pretrial Stipulation by today, April 17, 2002. The Order also requires counsel to confer prior to that date regarding the Pretrial Stipulation. Despite attempts to confer with counsel, and despite requests to the Plaintiff to provide a draft of the Pretrial Stipulation, Plaintiff has failed and refused to do so.

Specifically, on April 9, 2002, after the conclusion of a deposition in this case, co-counsel for

4

Defendants, Douglas Otto, inquired of Plaintiff' counsel as to whether Plaintiffs had a draft of the Pretrial Stipulation and/or what their disclosures were. The Plaintiffs counsel indicated he was unprepared and said "I'll have to get back to you on that." During a break in the deposition of Charles Zalis yesterday, the undersigned also inquired regarding the Pretrial Stipulation and the Plaintiffs' counsel indicated he would have to deal with the issue later. During the deposition of Mr. Zalis, the undersigned inquired of the witness regarding status of the Pretrial Stipulation and Zalis was unable to provide an answer as to why the Plaintiffs had failed to cooperate or provide a draft of the Pretrial Stipulation. Zalis' counsel objected to the questions designed to uncover issues related to the expert disclosures and instructed his client not to respond. (See Exhibit "B" at p. 4-6).

The Defendants are prepared to draft and submit a Unilateral Pretrial Stipulation. However, the Pretrial Order expressly prohibits the submission of such a unilateral pleading. Accordingly, this motion shall serve as the undersigned's certification setting forth in detail Plaintiffs' failure to cooperate in drafting the Joint Pretrial Stipulation and Defendants' request that this Court issue on Order to Show Cause to the Plaintiffs why they should not be held in contempt and sanctions be imposed for failing to comply with the Pretrial Order.

## MEMORANDUM OF LAW

### A. The Plaintiffs Conduct Warrants Sanctions and The Striking of Its Pleadings

The court has authority to dismiss an action with prejudice for failure to comply with court orders. F.R.C.P. 41(b); Omaha Indian Tribe v. Tract I - Blackbird Bend Area, 933 F.2d 1462 (8th Cir. 1991). Striking a party's pleadings or entry of a dismissal with prejudice is appropriate where a party has failed to comply with the pretrial orders of the court. Omaha, *supra*; MCI Worldcom Communications, Inc. v. Gamma Communications Group, Inc., 204

5

F.R.D. (S.D. N.Y. 2001). Where the party's failure to comply with the court's orders hinders the court's management of its docket, the ultimate sanction of dismissal is appropriate. See, Jones v. Thompson, 996 F.2d 261 (10th Cir. 1993). The severest sanctions are permitted where the court finds that the party's conduct in violating the orders is intentional or wilful. Omaha, 933 F.2d 1462 at 1469.

For example, in Omaha, the court dismissed the plaintiff's action with prejudice where the plaintiff wilfully violated the court's orders and failed to properly submit a pretrial order. The plaintiff had been previously sanctioned for failing to comply with the court's orders regarding discovery. Omaha, 933 F.2d at 1469. The court warned the plaintiff that it needed to file an adequate pretrial order. Id. Subsequently, the plaintiff filed a completely inadequate pretrial order. The court found that this violation was wilful as the plaintiff failed to make a good faith effort to stipulate to facts to narrow issues, contained claims the court had previously barred and failed to disclose other alleged wrongdoings which were critical to plaintiffs' case. Id.

The court also noted that the plaintiff had previously engaged in a pattern of delaying tactics. Id. at 1470. Noting the prejudice to the defendants in having to pay excessive expenses because of the delays and would be unfairly prejudiced if the plaintiff was allowed to proceed with its action despite its non-compliance. Id. Accordingly, the appellate court affirmed the trial court's dismissal of the action with prejudice. Id. at 1471.

Similarly, in MCI, the court struck the pleadings of the defendants and entered a default judgment where the defendant failed to obey the orders of the court. In MCI, the defendants failed to comply with discovery timetables set in the court's scheduling orders and failed to offer any appropriate explanation for their non-compliance. MCI, 204 F.R.D. at 259. The court noted

6

that while it had many possible sanctions at its disposal, the fact that the defendants failed to respond in any way indicated the ultimate sanction of striking the pleadings was appropriate. Id. at 262. See also, Jones, *supra* (Dismissal with prejudice was appropriate sanction for plaintiff's repeated failure to comply with court orders and in light of plaintiffs failure to prosecute their case and their abuse of the discovery process).

In the instant case, the Plaintiffs conduct warrants the severest of sanctions. Plaintiffs have recalcitrantly refused to comply with the pretrial orders of this Court. The Plaintiffs have refused to confer regarding or participate in drafting the Joint Pretrial Stipulation and offer no credible explanation for their failure to do so. Despite repeated requests, and the Court's Order, the Plaintiffs have refused to disclose their expert witness or their calculation of damages, yet appear to intend to introduce such evidence at trial. The Plaintiffs have been dilatory, evasive and ultimately non-responsive in discovery. The Plaintiffs conduct is not inadvertent. It is wilful. The Plaintiffs have been reminded by Defendants at every turn regarding their obligations but they remain steadfast in their refusal to comply without any explanation. The Plaintiffs bad faith conduct warrants sanctions including the striking of their pleadings.

**B.  The Plaintiff's Should Be Precluded From Introducing Expert Testimony at Trial**

The failure of a party to timely disclose and expert's identity and opinions in contravention of a pretrial order is sufficient grounds to justify exclusion of the expert's testimony at trial. Konstantopoulos v. Westvaco Corp., 112 F. 3d 710 (3rd Cir. 1997); Trilogy Communications v. Times Fiber Communications, Inc., 109 F.3d 739 (Fed. Cir. 1997). See also, Pride v. BIC Corp., 218 F.3d 566 (6th Cir. 2000) (district courts have broad discretion to exclude untimely disclosed expert-witness testimony); Industrial Hard Chrome, Ltd., IHC v. Hetran, Inc., 92 F.Supp.2d 786 (N.D. Ill. 2000)(Expert witness not permitted to testify as an expert where

7

witness was not disclosed as an expert).

In Triology, the court discussed four factors to be considered in striking expert testimony: (1) the importance of the excluded testimony; (2) the explanation of the party for its failure to comply with the court's order; (3) the potential prejudice that would arise form allowing the testimony; and (4) the availability of a continuance to cure such prejudice. Triology, 109 F.3d at 739. In Triology, the court found that the party's failure to timely disclose its expert witness in accordance with the Court's pretrial order warranted striking the proposed expert testimony.

The court reasoned that the party's failure to provide any adequate explanation for failing to comply with the court's order weighed "heavily" against it. Id. at 744. With regard to the third and fourth factors, the court noted that when scheduling orders are violated, an opposing party is prejudiced by the ensuing delay and resultant expense. Id. at 745. The court also noted that granting a continuance would not serve to deter future dilatory behavior or enforce the court imposed scheduling order. Id. The court stated that "adherence to reasonable court deadlines is critical to restoring integrity in court proceedings. We will not lightly disturb a court's enforcement of those deadlines and find no reason for doing so here. Id. citing Geiserman v. MacDonald, 893 F.2d 787 (5th Cir. 1990). The court noted that even if the other party was not prejudiced by allowing the testimony, prohibiting the testimony for violating the scheduling order was proper. Id.

Similarly, in Westvaco, the court excluded expert testimony which had not been timely disclosed by the relevant pretrial order. The court, examining similar factors as those in Triology, noted that the violating party was "flagrant" in its disregard of the court's scheduling order. Westvaco, 112 F.3d at 719. Further, the court noted the prejudice to the defendant

8

because it was not advised until three weeks prior to the trial whom the plaintiff intended to call and waited another week to disclose the substance of the testimony. Further, no written report was ever provided. Id. at 719-720.

In the instant case, the Plaintiffs should likewise be precluded from submitting expert testimony at trial. Even at this late date, over two months since the Plaintiffs' disclosure was due under the extended deadline, the Plaintiffs have failed to disclose their expert or the substance of his/her proposed testimony. Zalis refused to answer any questions regarding this topic at his deposition yesterday. The Plaintiff have offered no explanation for their failure to comply with the Court's Pretrial Order. The Plaintiffs have never filed a motion for enlargement of time regarding this disclosure.

The Defendants are prejudiced by Plaintiffs failure to comply with the Court's order. The trial is now two months away. The Defendants' expert cannot even begin to analyze the necessary documents in this case to rebut the Plaintiffs' experts opinions because he does not know what they are. There are literally tens of thousands of documents in this matter. The Defendants will be unable to adequately prepare for trial. The trial date has been set since August 2001. A continuance would only unfairly increase Defendants' expenses and unnecessarily prolong this case. Defendants have worked diligently to prepare for trial. The Plaintiffs have delayed and failed to comply with this Court's Orders. The Plaintiffs should not be rewarded for this behavior with a continuance. Rather, because the Plaintiffs have failed to comply with the Court's Pretrial Order, and are now two months past the due date for expert disclosures, they should be precluded from submitting any expert testimony at trial.

HALL, DAVID AND JOSEPH, P.A., PENTHOUSE, 1428 BRICKELL AVENUE, MIAMI, FLORIDA 33131-3491 • TEL. (305) 374-5030 • FAX (305) 374-5033

## CONCLUSION

The Defendants request the following relief:

a)      The entry of an Order to Show Cause as to why the Plaintiffs should not be held in contempt and sanctions imposed for failing to cooperate in filing the Joint Pretrial Stipulation;

b)      The entry of an Order prohibiting the Plaintiffs from introducing any expert testimony at trial for their failure to timely disclose their expert witness in accordance with the Pretrial Order (extended by agreement) which failure continues to date;

c)      Sanctions be imposed, including the striking of Plaintiffs' pleadings, for their bad faith conduct and their failure to comply with the Pretrial Order as set forth herein;

d)      Such other relief as this Court deems just and proper.

Respectfully Submitted,

HALL, DAVID AND JOSEPH, P.A.
1428 Brickell Avenue, Penthouse
Miami, Florida 33131
(305) 374 -5030 (telephone)
(305) 374-5033 (facsimile)

ANDREW C. HALL
Fla. Bar No.: 111480
ADAM J. LAMB
Fla. Bar No.: 899046

and

Nicholas P. Alexander, Esq.
BBO No.: 544173
Douglas B. Otto, Esq.
BBO No.: 555269
MORRISON, MAHONEY & MILLER, LLP
Counsel for Defendants, *Pro Hac Vice*
250 Summer Street
Boston, MA 02210

10

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was served via hand-delivery on this _12_ day of February, 2002 to: Richard C. Heidlage, Esq., Prince, Lobel, Glovsky & Tye, LLP, 585 Commercial Street, Boston, MA 02109 and via fax and U.S. Mail to: Richard E. Brodsky, Esq., Richard E. Brodsky, P.A., 25 Southeast 2nd Avenue, Suite 919, Miami, FL 33131.

ANDREW HALL

MOT8132d1702.sanctions.wpd

11

# MORRISON, MAHONEY & MILLER, LLP

### COUNSELLORS AT LAW

Douglas B. Otto
Direct Dial: 617-737-8873
Direct Fax: 617-342-4970
dotto@mail.mm-m.com

250 SUMMER STREET
BOSTON, MASSACHUSETTS 02210-1181
617-439-7500
FACSIMILE 617-439-7590

MASSACHUSETTS    CONNECTICUT
BOSTON                   HARTFORD
RAYNHAM
SPRINGFIELD           NEW YORK
WORCESTER            NEW YORK

RHODE ISLAND       ENGLAND
PROVIDENCE           LONDON

January 10, 2002

Richard C. Heidlage, Esq.
Prince, Lobel, Glovsky & Tye, LLP
585 Commercial Street
Boston, MA 02109

Re:    **Gersten Financial & Insurance, Inc., et al. Vs. Zalis, et al.**
       **Civil Action No: 000010**
       **Our File No. F-3023**

Dear Dick:

Further to our recent discussions about the discovery timetable, this letter confirms the agreement amongst counsel about the modified schedule, as follows:

1.    Experts named by Zalis: February 15, 2002;

2.    Experts named by Gersten: March 1. 2002;

3.    Non-expert and expert discovery completed: March 15, 2002;

4.    Dispositive motions filed: April 15, 2002; and,

5.    Mediation completed: April 15, 2002.

Please contact me immediately if I am mistaken as to any of the foregoing agreed-upon dates. Thank you for your attention to this matter.

Very truly yours,

Douglas B. Otto/ljn

Douglas B. Otto

DBO/ljn
cc:    Andrew C. Hall, Esq.
       Nicholas P. Alexander, Esq.
       Allan Gersten

958344.1


EXHIBIT
A

AJL

1

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

Case No.  01-0432-CIV-GOLD/SIMONTON

CHARLES N. ZALIS, individually,
And as General Partner of the
CHARLES N. ZALIS FAMILY LIMITED
PARTNERSHIP, a Virginia limited
partnership, and NORTH AMERICAN
UNDERWRITING MANAGERS, INC.,
a Florida Corporation,

       Plaintiffs,

vs.

ALLAN D. GERSTEN, GERSTEN
FINANCIAL & INSURANCE, INC.,
a Massachusetts corpration, and
FIRST AMERICAN INSURANCE UNDERWRITERS,
INC., a Massachusetts Corporation,

       Defendants.

_____/


E X C E R P T S

VIDEOTAPED DEPOSITION

OF

CHARLES ZALIS




1428 Brickell Avenue
Penthouse
Miami, Florida
April 16, 2002
10:00 a.m.

EXHIBIT
*B*

2

APPEARANCES:

       PRINCE, LOBEL, GLOVSKY & TYPE, LLP
       By:  RICHARD C. HEIDLAGE, ESQ.,
       appearing on behalf of the Plaintiff

       HALL, DAVID AND JOSEPH, P.A.
       By:  ANDREW C. HALL, ESQ.
       and ADAM LAMB, ESQ.,
       appearing on behalf of the Defendant

       MORRISON, MAHONEY & MILLER, LLP
       By:  DOUGLAS B. OTTO, ESQ.,
       co-counsel appearing on behalf
       of the Defendant

ALSO PRESENT:

       BROWN & BROWN, LLP
       By:  CARL F. JENKINS, CPA

       ALLAN D. GERSTEN

       VIDEO FOR THE LEGAL PROFESSION
       By:  TODD COHEN, Videographer
       - - - - - - - - -

I N D E X

Witness                                              Page
CHARLES ZALIS
    Direct Examination by Mr. Hall            3

3

         The videotaped deposition of CHARLES

ZALIS, a witness of lawful age, taken for the

purpose of discovery and for use as evidence in the

above-styled cause, pending in the United States

District Court for the Southern District of Florida,

pursuant to notice, before D. LISA KING, a Shorthand

Reporter and Notary Public in and for the State of

Florida at Large, at the time and place aforesaid.

                    - - - - - - - - -

Thereupon:

                    CHARLES ZALIS

was called as a witness by the Defendant, and being

first duly sworn, was examined and testified on his

oath as follows:

                DIRECT EXAMINATION

        *   *   *   *   *   *   *   *   *   *   *   *

BY MR. HALL:

        Q.    How much rent were you charged unfairly?

        A.    I don't know.  We would have to sit and

think about that.

        Q.    Well, how many more months do you need

you need to think?

        A.    Oh, I think by mid-June I'll have it

down.

        Q.    You think just about the time we try the

4

case you'll figure it out?

    A.    Yes.

    *  *  *  *  *  *  *  *  *  *  *

    MR. HALL:  Sir, under the Judge Gold's order you are obligated to furnish us with your expert witnesses.  We even now, don't have them.

    We don't have the names.  And we don't have summaries, resumes at all.

    May I inquire what your intent is?

    MR. HEIDLAGE:  My expectation is that we will probably be before the Court to deal with the issue of the experts for both parties. And then we will deal with whatever the Court tells us to do.

    MR. HALL:  Well, sir, my statement is to you be advised we will be moving for sanctions for not complying with the rule, not being able to complete our expert witness discovery.

    We will be requesting and it is nonnegotiable that all expert testimony be on your side be excluded.

    We've asked you on a number of occasions for these things in writing.  Have not gotten them.  And if you think that is a problem that

5

you may require in your noticing of a carrier

in light of Mr. Zalis' warm attitude towards

prior counsel perhaps, you ought to notify

your carrier as well.

MR. HEIDLAGE:  Let me just say that I

understand that with regard to the notice for,

of expert witnesses and so on, I have sent in

writing correspondence to Mr. Otto -- I

believe you have received a copy of it -- of

our position with regard to your notice of

with regard to experts.

MR. HALL:  You see the problem with that

is, sir, that our experts have to respond to

yours.

That's why the order provides that you

go first, because you are the plaintiff.

MR. HEIDLAGE:  Fine.  I hear you, sir,

and I --

MR. HALL:  We've designated our expert.

And we did it within the time provided by the

agreement.

MR. HEIDLAGE:  What you have done is you

have designated.  You have given the name of

the expert.

MR. HALL:  Yes, sir.  That's right.  And

6

if you read the court order the name is and

the address is the first thing to be provided.

We've done that.

    With respect to the exchange of resumes,

with summaries we can't do that until we get

yours.  We have none.

    MR. HEIDLAGE:  I understand.

    MR. HALL:  There's nothing for us to be

able to do.

    MR. HEIDLAGE:  I understand your

position.

    MR. HALL:  So I will tell you right now

that you may find yourself not trying this

case on an involuntary basis and in that case,

I suspect you're going to have a client that's

going to be mighty steamed at you.

    MR. HEIDLAGE:  Thank you.

    MR. HALL:  Be governed accordingly.

    MR. HEIDLAGE:  Thank you, sir.

    *   *   *   *   *   *   *   *   *   *   *   *

7

# CERTIFICATE

STATE OF FLORIDA
COUNTY  OF  DADE

       I, the undersigned authority, certify

that CHARLES ZALIS appeared before me and was duly

sworn; that I was authorized to and did

stenographically report the foregoing videotaped

deposition; and that the transcript is a true record

of the testimony given by the witness.

       I further certify that I am not a

relative, employee, attorney or counsel of any of the

parties, nor am I a relative or employee of any of

the parties' attorney or counsel connected with the

action, nor am I financially interested in the

action.

       Dated the 17th day of April 2002.


              _____

              DAIREN LISA KING, Shorthand
              Reporter and Notary Public,
              State of Florida at Large

My Commission Expires:
May 29, 2004
Commission No.  CC940568

# MORRISON, MAHONEY & MILLER, LLP

COUNSELLORS AT LAW

Douglas B. Otto
Direct Dial: 617-737-8873
Direct Fax: 617-342-4970
dotto@mail.mm-m.com

250 SUMMER STREET
BOSTON, MASSACHUSETTS 02210-1181
617-439-7500

MASSACHUSETTS    CONNECTICUT
BOSTON                  HARTFORD
FALL RIVER
SPRINGFIELD            NEW YORK
WORCESTER            NEW YORK

RHODE ISLAND        ENGLAND
PROVIDENCE            LONDON

March 28, 2002

**VIA FACSIMILE/FIRST CLASS MAIL**

Richard C. Heidlage, Esq.
Prince, Lobel, Glovsky & Tye, LLP
585 Commercial Street
Boston, MA 02109

> Re:   **Zalis v. Gersten and Gersten Financial & Insurance, Inc.**
>        **Case No.: 01-0432-C.V.-GOLD**
>        **Our File No. F-3023**

Dear Dick:

This letter is intended to narrow the areas of disagreement with respect to your client's Answers to Defendant, Allan D. Gersten's First Set of Interrogatories as well as his Response to Defendants' First Request for the Production of Documents and Things. Given that these Responses were seriously overdue in the first place and further considering that we agreed to the entry of an Order declaring our Motion to Compel as being moot, we request your immediate response to the items set forth herein to forestall a Motion to Compel. The Responses which we feel are deficient or have determined to be incomplete in some respect, are detailed below.

### Responses to Interrogatories

1.     Interrogatory Response No. 3: We believe your client's reference to third-parties is vastly incomplete. To which third-parties is he referring? Your reference to a dispute over monies is likewise incomplete. Your Response on the whole is incomplete against available discovery. For example, there is no discussion in your client's Response with respect to conversations with agents, underwriters or insurance executives. Your client has in fact had such discussions, if not about the lawsuit per se, than about the facts involved in this lawsuit. The Interrogatory specifically addresses this area. We request that your client supplement this Response with names, dates together with the substance of specific discussions.

970451.1



MM&M    .    3/29/02 9:42  PAGE  3/8    RightFAX

**MORRISON, MAHONEY & MILLER, LLP**

Richard C. Heidlage, Esq.
March 28, 2002
Page 2

    2.     <u>Interrogatory Response No. 5</u>:  The business purpose and holdings of the Zalis Family Limited Partnership are relevant and constitute discoverable matter. First and foremost, the Zalis Family Limited Partnership is a Plaintiff in this case. Your client has alleged that prior to September, 1997, the Zalis Limited Partnership owned North American and that subsequent to September, 1997, it transferred to Gersten 50% ownership of North American. Moreover, in your client's Amended Complaint, he has alleged that Gersten owed duties to, *inter alia*, the Zalis Limited Partnership pursuant to some shareholders' agreement. This allegation is made repeatedly in Zalis' Amended Complaint. Count VII of his Amended Complaint alleged breaches of good faith and loyalty to the Zalis Limited Partnership. Gersten has long disputed having any such agreement with Zalis, not to mention the Zalis Limited Partnership itself. We are entitled to explore on what basis the Zalis Family Limited Partnership is even a Plaintiff in this matter, much less a party to a so-called unknown shareholders' agreement. Further, as a matter of damage in this case, we are entitled to explore North American's business interest prior to the formation of Zalis' and Gersten's relationship. By your client's Amended Complaint, the Zalis Family Limited Partnership owned North American. We therefore request supplementation of this Response immediately.

    3.     <u>Interrogatory Response No. 6</u>: Zalis' Response to Interrogatory No. 6 is clearly deficient and incomplete for reasons included in No. 1 above (Interrogatory Response No. 3). He is making no effort to review his own internal documentation to provide a response as to who "the others" were. Further, available discovery materials suggest that conversations were being held past January, 2001. Further, available discovery suggests that the conversations included more than just "Allan and I were splitting up". We request supplementation and specificity with this Response.

    4.     <u>Interrogatory Response No. 7</u>: "Side brokerage agreement" is a phrase that your client and counsel used first. We are of course suspicious that such a phrase is so vague to him as to make a response impossible. Further, we believe the records with respect to commissions and overrides since January 1, 2001 produced by your client are incomplete; and where they are incomplete, we request that your client supplement this Response with appropriate identifying information.

    5.     <u>Interrogatory Response No. 10</u>:  Your client's Response to this Interrogatory is incomplete. The Interrogatory requests specific information about not only lawsuits, per se, but complaints, written grievances, demands and any other such adversarial action brought against him. There is no disclosure about grievances or demands that have been made about him, or against him with respect to his self-proclaimed role in the company. Such demands and grievances relate to matters other than those detailed in a license application. We therefore request immediate supplementation of this Response.

970451.1

MORRISON, MAHONEY & MILLER, LLP

Richard C. Heidlage, Esq.
March 28, 2002
Page 3

    6.    <u>Interrogatory Response No. 11</u>: We request specificity with your client's Response in order to defend against that which he is vaguely referring to. First, where in Allan Gersten's deposition or affidavits, with specific reference, did he "admit" that "he caused First American to hire away all of North American's Massachusetts employees and all of its independent contractor brokerage managers ...". We are entitled to know on what your client relies. Second, we are entitled to know on what your client bases his contention that Mr. Gersten "contacted these North American employees and independent contractors". Finally, with respect to the "solicitations" to which your client refers "as early as October or November of 2000", we are entitled to know who he is referring to, on what date the supposed solicitations occurred, and what was said. We request that you supplement this Interrogatory Response immediately.

    7.    <u>Interrogatory Response No. 13</u>: Again, the terms "side deals, specials deals or private arrangements" are those used by your client. Therefore, I cannot appreciate an objection stating that such terms are vague so as to make a response impossible. Zalis' conduct prior to September, 1997 is directly relevant based on his motives for entering into this relationship. His response that he does not recall any such side deals, special deals or private agrangements is inconsistent with discovery produced to date. We therefore request that he supplement this Response immediately.

    8.    <u>Interrogatory Response No. 16</u>: We request specificity with respect to affidavit and testimony in which you claim that our client made various admissions. We are entitled to explore the basis for your allegations in order to prepare a proper defense. Please supplement this Response immediately.

    9.    <u>Interrogatory Response No. 17</u>: Please be specific with respect to which contracts your client negotiated, rather than alleging that he "negotiated most of the contracts". Further, is your client basing his allegation that certain contracts should have been written in North American's name, but were not, solely on Van Vooren deposition Exhibit 3? If so, please be specific with respect to which contracts. Again, we are entitled to more specificity in order to determine the basis for your client's allegations. Please supplement this Response immediately.

    10.    <u>Interrogatory Response No. 18</u>: Are we correct that your client does not have a single record identifying the "fair rental value" of the leasehold space in Needham? What, specifically, are the records that show that Gersten "at least for 2000, allocated all expenses of the Needham facility to North American"? To which records is your client refering?

    11.    <u>Interrogatory Response No. 19</u>: Intially, I note that you have incorporated by reference your Response Nos. 16, 17 and 18 which, themselves are incomplete, but which are also non-responsive

970451.1

MM&M          3/29/02 9:42  PAGE  5/6   RightFAX

MORRISON, MAHONEY & MILLER, LLP

Richard C. Heidlage, Esq.
March 28, 2002
Page 4

to this Interrogatory. This Interrogatory seeks specific information that is being alleged by your client.
Specifically, what "effective internal controls" is your client referring to?  Who are the "unlicensed
employees" to which you refer and what are the "insurance applications" you are making reference to?
Your client states that he is being informed "by agents", but does not state who these agents are and what
applications he is referring to.  Your client states that he does not know what a side deal is, but goes on
to allege side deals, a term coined by him and his lawyers in earlier pleadings and discovery.  This
Interrogatory seeks specificity about names, identity of contracts, and any other information that is
loosely being referred to by your client in making very serious allegations.  Incorporating by reference
accounting records is not a response to your client's allegations about inaccurate accounting.  What is
your client alleging to be inaccurate about the accounting records?  It is your client who amended his
Complaint last August to make such sweeping, serious allegations, but to date, has not substantiated
them with any evidence.  This Interrogatory, including all others, seeks specific information to enable
our client and his attorneys to prepare a defense.  Please supplement this Interrogatory immediately.

### Zalis' Response to Defendants' First Request for Production of Documents

1.      Response to Requests Nos. 1 and 2:  This Request specifically seeks production and
income documents from calendar year 2001.  All that was produced by way of income information was
various commission statements for a finite period.  Your client obviously has other records of
production, income and related insurance company information including renewed contracts, transaction
and financial deposit records, as well as the usual computer program-related information.  The extent
and type of business your client did in calendar year 2001 is directly relevant to numerous of his causes
of action as well as damage.  That information is discoverable and we are entitled to it.

2.      Responses to Requests Nos. 3, 5, 13, 16, 25, 27 and 31:  Bank account and tax records
are directly relevant to the claims being made in this case as well as the level of potential damage.  The
contributions that Zalis allegedly made to the joint relationship are directly relevant and are measured
in dollars.  Your client has alleged having done a certain level of business which my client disputes and
that the Zalis Family Limited Partnership owned North American.  How the parties fared during the
relationship versus how they performed prior to the relationship, including what each party brought to
the relationship is relevant and discoverable.  We request production of this information and if there is
any basis for privilege as you infer, you need to produce a log.

3.      Response to Request No. 7:  This Request seeks agreements and contracts entered into
by Zalis or North American for the years 1995, 1996 and 1997, before entering into a relationship with
Allan Gersten.  These documents are directly relevant to your client's contributions to the relationship,

970451.1

MORRISON, MAHONEY & MILLER, LLP

Richard C. Heidlage, Esq.
March 28, 2002
Page 5

what he allegedly gave up, and other of our client's claims with respect to his inability to obtain contracts and licenses.

4.    Response to Request No. 11:  This Request seeks computer-related information maintained by Zalis whether at his home or at North American's office; in particular, for the two-year time period before establishing a relationship with Allan Gersten. As above, such records are directly relevant to the extent and level of business your client was doing prior to the relationship, which business, as your client knows, is measured in dollars, contracts, licensing ability, and agent relationships. The information is discoverable and relates to the claims he is making.

5.    Response to Request No. 12:  Our client does not, and has never maintained control over Zalis' credit card receipts, statements or other transaction-like documents. These documents are directly relevant to your client's spending habits, and repayment through company funds extraordinary, non-business expense during the term of the relationship. We have alleged your client's misappropriation of funds and we are entitled to discovery of such documents.

6.    Response to Request No. 17:  Your objection purports to withhold any such documents after January, 2001. Such documents during calendar year 2001 are directly relevant to the claims and defenses being made in this case. We expect that your client has documents to produce regarding communications with insurance company underwriters and executives, agents and brokers, as the existing discovery in this case suggests. As such, we are entitled to discovery of these documents right through the present date.

7.    Response to Request No. 18:  Such documents are directly relevant to your client's manner of conduct both before and during the relationship. Such documents, again, are directly relevant to the claims and defenses being made in this case. Documents which exist for the two year period before the beginning of the relationship are relevant to your client's contributions; in this case, the extent to which he needed Allan Gersten. The documents sought by this Request relate to not only complaints filed in a Court of law, but other forms of complaint, demand or written grievance against your client; documents which we believe to exist. It is more than likely that your client would retain such documents.

8.    Response to Request No. 21:  This Request specifically seeks documents not in the possession of my client, and for the period beginning 1995 through present. Again, the Request directly relates to claims and defenses being made in this case, and your client's objection that he is unaware of any such documents referencing side deals or private arrangements is inconsistent with discovery to date.

970451.1

MM&M    .    3/29/02 9:42  PAGE  7/8  RightFAX

**MORRISON, MAHONEY & MILLER, LLP**

Richard C. Heidlage, Esq.
March 28, 2002
Page 6

9.    Response to Requests Nos. 23 and 24: This Request specifically seeks documents within your client's possession, custody and control with respect to the time period beginning January 1, 1995. Your objection that documents will not be produced from any time earlier than September, 1997, frustrates the claims and defenses being made in this case, especially with regard to the contributions by each party, including their contracting and licensing ability.

10.    Response to Request No. 29: It is unclear by your Response whether all documents have been produced, or additional documents exist which you are refusing to produce. Please clarify this Response. If you are refusing to produce documents that refer to entities owned or controlled by the Zalis Family Limited Partnership, then we contend they are directly relevant because: 1) the Family Limited Partnership is a Plaintiff in this case; and, 2) you are contending through your pleadings that the Zalis Family Limited Partnership owned North American and was a party to some shareholder agreement. As you know by now, we dispute such claims. Therefore, we are entitled to explore the basis for your allegations.

11.    Response to Request No. 34: This Request seeks records controlled solely by Zalis. It further seeks records outside of subpoenas, including a subpoena to West Coast Life. Specifically, it seeks commission statements and other such relevant records which related to either first year or renewal income pertaining to Chubb/Jefferson Pilot, Old Lion Life, Canada Life and other such companies with whom Zalis enjoyed a direct deposit relationship. Your objection is misplaced since my client has always contended that he has not been privy to such information; and, that your client misappropriated these funds.

12.    Response to Request No. 36: By this objection, you are apparently refusing to produce any such financial documents for the Zalis Family Limited Partnership. In addition to the reasons cited above, it is our contention that this Family Limited Partnership was the beneficiary of misappropriated funds. We are entitled to explore to what extent the Family Limited Partnership benefited from misappropriated monies. Therefore, it is our contention that this Request may very well lead to the discovery of admissible evidence.

13.    Response to Request No. 44: We note that you have produced certain computer-generated calendars for the period cited in your Response. However, in addition to the fact that this Request seeks all such "diaries, journals and calendars maintained by Zalis", meaning especially those that are not computer-generated, it particularly seeks copies of such diaries, journals and calendars for the time period beginning January 1, 1996. The formation of the parties relationship is directly relevant to this case and such documents may well explain, or provide support to certain of the vague references regarding how and when these parties formed their relationship.

970451.1

MM&M            3/29/02 9:42    PAGE    6/6    RightFax

**MORRISON, MAHONEY & MILLER, LLP**

Richard C. Heidlage, Esq.
March 28, 2002
Page 7


As you can see, we are taking exception to your client's selective Production of Documents and vague Responses to Interrogatory Requests. We request immediate supplementation. Please call me after you have had a chance to review the foregoing and tell me your intentions. Thank you very much.

Very truly yours,

Douglas B. Otto

DBO/ljn
cc:    Andrew Hall, Esq.
       Nicholas Alexander, Esq.
       Allan Gersten
       Richard E. Brodsky, Esq.

970451.1



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE No.: 01-0432-CIV-GOLD
Magistrate Judge: Simonton

CHARLES N. ZALIS, individually, as
General Partner of the CHARLES N. ZALIS
FAMILY LIMITED PARTNERSHIP, a
Virginia limited partnership, and NORTH
AMERICAN UNDERWRITING
MANAGERS, INC., a Florida corporation,

      Plaintiffs,

vs.

ALLAN D. GERSTEN, GERSTEN
FINANCIAL & INSURANCE, INC., a
Massachusetts Corporation, and FIRST
AMERICAN INSURANCE UNDERWRITERS,
INC., a Massachusetts corporation,

      Defendants.

_____/

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SANCTIONS, ETC.

This is Plaintiffs' response to "Defendants Motion for Sanctions, Contempt and/or to Strike the Pleadings of the Plaintiffs for Failure to Comply with Pretrial Order and Motion to Exclude Plaintiffs' Expert Witnesses."

Defendants ask this Court to strike Plaintiffs' pleadings, which is akin to a dismissal with prejudice. The very case on which Defendants principally rely, <u>Omaha Indian Tribe v. Tract I - Blackbird Bend Area</u>, 933 F.2d 1462, 1468 (8th Cir. 1991), states that "[d]ismissal with prejudice should be used sparingly because it is a drastic sanction." Indeed, Defendants would make it appear that the relief sought is to be routinely granted by the court every time a court

<table>
<tr><td>EXHIBIT<br>G</td></tr>
</table>

155t

deadline is met by one of the parties. That is not the law in any circuit in this land, not least the Eleventh Circuit.

The extreme sanction of dismissal is reserved for the rare case involving repeated, conscious flouting of the court's authority. Thus, in Goforth v. Owens, 766 F.2d 1533, 1535 (11th Cir. 1985), the Eleventh Circuit, while labeling a dismissal "a sanction of last resort, applicable only in extreme circumstances," found such a remedy where one party had engaged in "a pattern of delay and deliberately refused to comply with the directions of the court," by, among other things, counsel's refusing to submit a preliminary statement "[d]espite the court's repeated insistence that [he do so]," counsel's failure to appear for a pretrial conference, and counsel's "disobey[ing] the court's instruction to be ready to proceed with trial."

To paraphrase a well-known aphorism, the remedy must fit the violation. The remedy sought here has always been reserved for cases involving multiple violations of court orders, truly contumacious conduct that threatens the dignity

of the court.[1]  See, e.g., SEC v. First Financial Group of Texas, Inc., supra

(dismissal warranted in light of defendants' "unrelenting and abject refusal to

satisfy their [discovery] obligations").  As Judge Rubin wrote in John v.

Louisana, 828 F.2d 1129, 1131-32 (5th Cir, 1987), even in cases where counsel

have repeatedly violated court deadlines, made tardy response to discovery

requests, filed a late pretrial order, failed to make timely filings immediately

before the trial date, the appellate court will not sanction counsel's client with the

extreme sanction of dismissal ("counsel's conduct, while careless, inconsiderate,

and understandably exasperating to a conscientious trial judge, more closely

approximates the kind of negligence that does not warrant dismissal with

prejudice than the stubborn resistance to authority that does").

    Nothing remotely akin to the kind of misbehavior warranting dismissal is

present in this record.  Plaintiffs were unable to file the Joint Pretrial Stipulation

on time.  Plaintiffs did not seek to hide this fact from the Court, but, instead,

sought from this Court a limited, thirteen-day extension of the deadline.  See

---

[1]    As Rule 16(f) explicitly states, sanctions under Rule 16(f) are governed by
the standards established under Rule 37. It is black letter law that Rule 37(b)
aresnactions meant to be remedial, not punitive, in nature. National Hockey
League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 643 (1976) (per
curiam).  Striking pleadings or entering a default judgment is a drastic remedy, a
last resort appropriate only when "less draconian but equally effective sanctions
were available." Adolph Coors Co. v. Movement Against Racism & the Klan, 777
F.2d 1538, 1543 (11th Cir.1985). The drastic remedy of dismissal is not
appropriate where violation of a discovery order is caused by "simple negligence,
misunderstanding, or inability to comply." Malautea v. Suzuki Motor Co., Ltd.,
987 F.2d 1536, 1542 (11th Cir. 1993).  See also U.S. v. Certain Real Property
Located at Route 1, Bryant, Ala., 126 F.3d 1314 (11th Cir. 1997). Sanctions as
severe as dismissal or striking of pleadings are reserved for cases of "willful bad
faith and callous disregard" of court directives.  SEC v. First Financial Group of
Texas, Inc., 659 F.2d 660, 666 (5th Cir.1981).

Plaintiffs' Motion to Extend Time to File Pretrial Stipulation and Motions in Limine, filed April 17, 2002. As that Motion shows, the parties have both been conducting discovery after the Court-imposed deadline, and no prejudice will be caused Defendants by this modest delay. Moreover, the trial date will not be disturbed.

Moreover, Plaintiffs have not been unilaterally dilatory in this matter and have not been the only ones to miss the dates imposed by the Court's scheduling order. The original date for the completion of all non-expert discovery was November 16, 2001. As set forth in Defendants' counsel's letter of January 30, 2002, it was not until on or about January 28, 2002 that defendants produced 23,675 of the documents that they had agreed to produce (Exhibit A). Another batch of documents received pursuant to subpoenas was not delivered until February 11 and 21 (Exhibit B); approximately 4,000 were delivered on or about March 15 (Exhibit C), and 953 were not delivered until April 1, 2002 (Exhibit D). As a result of not receiving these documents until so late, Plaintiffs were unable to depose Defendants' principal, Allan Gersten, and their bookkeeper, Lori Palladino, two of the most critical witnesses, until April 3 and 4 and April 8 and 9, respectively. Following those depositions taken in Boston, defendants noticed the depositions of Jeffrey Farlow, the plaintiff corporation's CFO, for April 11 in Orlando; the deposition of plaintiff Charles Zalis for April 16 and 17, and the deposition of Marvin Klasfeld, the Plaintiff corporation's accountant, for April 18 in Ft. Lauderdale.

4

Under this schedule and circumstances it was simply not possible to prepare the Joint Pretrial Stipulation prior to the depositions. Nonetheless, as called for by the Motion, Plaintiffs supplied Defendants a proposed Joint Pretrial Stipulation on April 23, 2002. We are still awaiting Defendants' response, and anticipate, with Defendants' cooperation, the filing of the Joint Pretrial Stipulation on or before April 30, 2002.

Finally, as to the request that Plaintiffs be barred from listing an expert witness, Plaintiffs have not listed an expert witness and have not sought leave to list an expert witness. Not every case needs an expert witness to succeed. Plaintiffs' is one of them.

We can only assume that Defendants' raising this issue is pretextual, based on the hope that by raising this issue somehow Defendants' tardy and procedurally insufficient expert designation will somehow be excused by the Court. This misdirection play will not work because Plaintiffs do not contest that they did not designate an expert. On the other hand, the Court should not permit Defendants to get away with their violation of the Pretrial Order by their late and insufficient notice of their expert. (This issue will shortly be raised by separate motion.)

In summary, under no circumstances could the failure to meet the submission date be considered a willful disregard of the Court's order or "a pattern of delay and deliberate[] refus[al] to comply with the directions of the court." Dismissal is unwarranted, nor is any other sanction required to move this case to trial. Defendants do not and cannot argue to the contrary.

WHEREFORE, Plaintiffs respectfully request that this Court deny "Defendants Motion for Sanctions, Contempt and/or to Strike the Pleadings of the Plaintiffs for Failure to Comply with Pretrial Order and Motion to Exclude Plaintiffs' Expert Witnesses."

RICHARD E. BRODSKY, P.A.
25 SE Second Avenue, Suite 919
Miami, FL 33131
Tel.:  (305) 755-9470
Fax:  (305) 381-7708
Email: reb@reblaw.com

By: _____
Richard E. Brodsky
Florida Bar No. 322520

PRINCE, LOBEL, GLOVSKY & TYE, LLP
585 Commercial Street
Boston, MA  02109
Tel.:  (617) 456-8195
Fax:  (617) 456-8100
Email: rcheidlage@plgt-law.com

By: _____
Richard C. Heidlage, BBO# 228940
Of Counsel

Attorneys for Plaintiffs

Dated: April 29, 2002

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the following attorney(s) of record: via facsimile transmission and first class mail, postage prepaid, upon Adam J. Lamb, Esq. and Andrew C. Hall, Esq., Hall, David and Joseph, P.A., 1428 Brickell Avenue, Miami, FL 33131, and via first

class mail, postage prepaid upon Douglas B. Otto, Esq. and Nicholas A. Alexander,

Morrison, Mahoney & Miller LLP, 250 Summer Street, Boston, MA 02210 on

April 29, 2002.

MAIN:Users:richard:P.A. FILES:Zalis:ple:Response...r SanctionsF.doc

APR-26-2002 FRI 04:41 PM                    FAX NO.                              P. 02

# MORRISON, MAHONEY & MILLER, LLP

COUNSELLORS AT LAW

| | | | |
|---|---|---|---|
| Douglas B. Otto | 250 SUMMER STREET | MASSACHUSETTS | CONNECTICUT |
| Direct Dial: 617-737-8873 | BOSTON, MASSACHUSETTS 02210-1181 | BOSTON | HARTFORD |
| Direct Fax: 617-342-4970 | 617-439-7500 | FALL RIVER | |
| dotto@mail.mm-m.com | | SPRINGFIELD | NEW YORK |
| | | WORCESTER | NEW YORK |
| | | RHODE ISLAND | ENGLAND |
| | | PROVIDENCE | LONDON |

January 30, 2002

## VIA FACSIMILE AND FIRST CLASS MAIL

Richard C. Heidlage, Esq.
Prince, Lobel, Glovsky & Tye, LLP
585 Commercial Street
Boston, MA 02109

      **Re:**   **Gersten Financial & Insurance, Inc., et al. Vs. Zalis, et al.**
             **Civil Action No: 000010**
             **Our File No. F-3023**

Dear Dick:

      Pursuant to our telephone conversation yesterday relating to Merrill's direct shipment of documents produced by the Defendants in response to Plaintiff's First Request for Production of Documents (Bates nos. G1847-G25522), I am designating pages G2012-2555 as being "Confidential" and G22437-22819 as being "Highly Confidential" under the Confidentiality Agreement and Protective Order entered by the Court. As we discussed, Merrill mistakenly, yet inadvertently neglected to stamp documents according to the instruction by our Firm. As we agreed, kindly set these documents aside until such time as we can arrange for someone from Merrill or this office to go to your Firm and stamp these pages as appropriate. Thank you for your cooperation in this regard.

                          Very truly yours,

                          Douglas B. Otto

DBO/ljn
cc:   Brian Danilecki, Merrill Corporation

961310.1                                    **EXHIBIT "A"**

APR-26-2002 FRI 04:41 PM                    FAX NO.                        P. 03

# MORRISON, MAHONEY & MILLER, LLP

### COUNSELLORS AT LAW

Douglas B. Otto
Direct Dial: 617-737-8873
Direct Fax: 617-342-4970
dotto@mail.mm-m.com

250 SUMMER STREET
BOSTON, MASSACHUSETTS 02210-1181
617-439-7500

| | |
|---|---|
| MASSACHUSETTS | CONNECTICUT |
| BOSTON | HARTFORD |
| FALL RIVER | |
| SPRINGFIELD | NEW YORK |
| WORCESTER | NEW YORK |
| | |
| RHODE ISLAND | ENGLAND |
| PROVIDENCE | LONDON |

February 11, 2002

**BY HAND**

Richard C. Heidlage, Esq.
Prince, Lobel, Glovsky & Tye, LLP
585 Commercial Street
Boston, MA 02109

Re:   Gersten Financial & Insurance, Inc., et al. Vs. Zalis, et al.
        Civil Action No: 000010
        Our File No. F-3023

Dear Dick:

    I enclose herewith documents returned from insurance companies pursuant to subpoena. Please call me if you have any questions on the enclosed material.

Very truly yours,

Douglas B. Otto

DBO/ljn
Enclosures

**EXHIBIT "B"**

962605.1

# MORRISON, MAHONEY & MILLER, LLP

COUNSELLORS AT LAW

Douglas B. Otto
Direct Dial: 617-737-8873
Direct Fax: 617-342-4970
dotto@mail.mm-m.com

250 SUMMER STREET
BOSTON, MASSACHUSETTS 02210-1181
617-439-7500

MASSACHUSETTS        CONNECTICUT
BOSTON               HARTFORD
FALL RIVER
SPRINGFIELD          NEW YORK
WORCESTER            NEW YORK

RHODE ISLAND         ENGLAND
PROVIDENCE           LONDON

February 21, 2002

**BY HAND**

Richard C. Heidlage, Esq.
Prince, Lobel, Glovsky & Tye, LLP
585 Commercial Street
Boston, MA 02109

      Re:    **Zalis v. Gersten and Gersten Financial & Insurance, Inc.**
            **Case No.: 01-0432-C.V.-GOLD**
            **Our File No. F-3023**

Dear Dick:

    I enclose herewith documents recently produced by CNA pursuant to subpoena.

                    Very truly yours,

                    Douglas B. Otto

DBO/ljn
Enclosures

**EXHIBIT "B"**

964119.1

# MORRISON, MAHONEY & MILLER, LLP

COUNSELLORS AT LAW

Douglas B. Otto
Direct Dial: 617-737-8873
Direct Fax: 617-342-4970
dotto@mail.mm-ca.com

250 SUMMER STREET
BOSTON, MASSACHUSETTS 02210-1181
617-439-7500

MASSACHUSETTS    CONNECTICUT
BOSTON           HARTFORD
FALL RIVER
SPRINGFIELD      NEW YORK
WORCESTER        NEW YORK

RHODE ISLAND     ENGLAND
PROVIDENCE       LONDON

March 15, 2002

**VIA FACSIMILE/FIRST CLASS MAIL**

Richard C. Heidlage, Esq.
Prince, Lobel, Glovsky & Tye, LLP
585 Commercial Street
Boston, MA 02109

Re:  **Zelis v. Gersten and Gersten Financial & Insurance, Inc.**
     **Case No.: 01-0432-C.V.-GOLD**
     **Our File No. F-3023**

Dear Dick:

This letter responds to your recent inquiry about production of company databases. Initially, I note that Merrill has recently produced commission statements for approximately the past one year, amounting to another 4,167 pages of document production.

With respect to production of the databases over the relevant time period for 1) all broker transactions; and 2) all accounting transactions, I submit the following:

1.    The FDP Program was utilized from September, 1997 through Spring, 1999 and reflects broker transactions. AgencyWorks was utilized from Spring, 1999 through July, 2001. Please recall that our recent discussion on this topic centered around what we have already produced, what your client already has and, what he has access to. As you well know, data on AgencyWorks can be accessed through the FTP website using a password and username. By calling AgencyWorks, one can obtain access to the FTP site of North American and access the information. It is my understanding that Farlow transmitted the password and username to your client so that he might access AgencyWorks through the FTP website. You revealed to me in our last telephone conversation that, indeed, your client had been accessing AgencyWorks using the internet. I note further as clarification that it is not a database, per se, but rather data that is saved into random files.

2.    The Filemaker program has been utilized from the end of 1998 through the present and essentially lumps all broker transactions together. Quickbooks is the program that then breaks this information out.

968162.1

**EXHIBIT "C"**

APR-26-2002 FRI 04:42 PM　　　　　　　　FAX NO.　　　　　　　　　　　P. 06

MM&M　　　　　　3/15/02 3:49　PAGE 3/3　RightFax

**MORRISON, MAHONEY & MILLER, LLP**

Richard C. Heidlage, Esq.
March 15, 2002
Page 2


It is my belief that we have produced the vast majority of this information already, or that your client has always possessed it. In fact, by your own admission, your client has been accessing the data on AgencyWorks through the FTP website. In light of the foregoing, your request for complete production of all database information appears somewhat disingenuous. Despite our objection that such production is unreasonably duplicative and overly burdensome, we are endeavoring to produce such information, in total, irrespective of the fact that your client either has it or has been accessing it. That information has been turned over to Merrill for photocopying and stamping as appropriate and should be delivered to you by the close of this week (approximately 4,000 pages).

By separate letter, I will address First American database information.

Very truly yours,

Douglas B. Otto

DBO/ljn
cc:　　Andrew Hall, Esq.
　　　 Nicholas Alexander, Esq.
　　　 Allan Gersten

968162.1

# MORRISON, MAHONEY & MILLER, LLP

COUNSELLORS AT LAW

Douglas B. Otto
Direct Dial: 617-737-8873
Direct Fax: 617-342-4970
dotto@mail.mm-m.com

250 SUMMER STREET
BOSTON, MASSACHUSETTS 02210-1181
617-439-7500

MASSACHUSETTS        CONNECTICUT
BOSTON               HARTFORD
FALL RIVER
SPRINGFIELD          NEW YORK
WORCESTER            NEW YORK

RHODE ISLAND         ENGLAND
PROVIDENCE           LONDON

April 1, 2002

**BY HAND**

Richard C. Heidlage, Esq.
Prince, Lobel, Glovsky & Tye, LLP
585 Commercial Street
Boston, MA 02109

Re:     <u>**Zalis v. Gersten and Gersten Financial & Insurance, Inc.**</u>
        **Case No.: 01-0432-C.V.-GOLD**
        **Our File No. F-3023**

Dear Dick:

Enclosed please find documents stamped 38138 through G39091 representing our clients'
supplementation of earlier discovery responses. These documents predominately relate to First
American for the year 2001. They are marked "highly confidential" and in conjunction with our last
conversation about these documents, we expect that you will adhere to both the letter and spirit of the
Confidentiality Agreement and Protective Order presently in place. Accordingly, as discussed and as
agreed to by you, we expect that you will seek our agreement or an Order from the Court prior to sharing
the content of these documents with your client. Thank you for your attention to this matter.

Very truly yours,

*Douglas B. Otto / ljn*

Douglas B. Otto

DBO/ljn
Enclosures
cc:     Andrew Hall, Esq.
        Nicholas Alexander, Esq.
        Allan Gersten
        Richard E. Brodsky, Esq.

**<u>EXHIBIT "D"</u>**

970778.1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 01-0432-CIV-GOLD/SIMONTON

CHARLES N. ZALIS, et al.,

      Plaintiffs,

v.

ALLAN D. GERSTEN, et al.,

      Defendants.

_____/



### ORDER DENYING DEFENDANTS' MOTION FOR SANCTIONS AND CANCELING HEARING

    Presently pending before this Court is Defendants' Motion For Sanctions, Contempt and/or To Strike The Pleadings of The Plaintiffs For Failure To Comply With Pretrial Order and Motion To Exclude Plaintiffs' Expert Witnesses (DE #151, filed 4/17/02). This motion has been referred to the undersigned Magistrate Judge to take all necessary and proper action as required by law (DE #153). This motion has been fully briefed (DE ##155, 162). Oral argument on this motion was previously set for 4:30 p.m. on May 15, 2002. However, based upon a review of the record in this case, the undersigned Magistrate Judge has determined that oral argument on this motion is not necessary.

    Defendants move to hold Plaintiffs in contempt and to sanction Plaintiffs by striking their pleadings for allegedly failing to comply with this Court's Pretrial Order. Defendants also move to exclude Plaintiffs' expert witnesses for failure to timely disclose their identity. For the reasons stated below, Defendants' motion is denied.

    A. <u>Defendants' Motion To Strike Plaintiffs' Expert Witnesses Is Denied As Moot</u>

    Defendants move to strike Plaintiffs' expert witnesses because Plaintiffs failed to



EXHIBIT

H

disclose the identity of their expert witnesses by February 15, 2002, as ordered by this Court, or thereafter, as late as April 16, 2002. In their response to Defendants' motion, Plaintiffs stated that they do not intend to call any expert witnesses at trial (DE #155, at p. 5). Therefore, Defendants' Motion To Strike Plaintiffs' Expert Witnesses is denied as moot.

### B. Defendants' Motion For Sanctions and/or Contempt Is Denied

Defendants' motion for sanctions and/or contempt is denied. Defendants have not shown that Plaintiffs repeatedly and willfully flouted Court orders, which is the kind of misconduct necessary to strike Plaintiffs' pleadings, the relief requested by Defendants. Indeed, Plaintiffs have not violated any Court order in regard to discovery, and have obtained extensions from the District Court to file the Joint Pretrial Stipulation.

### 1. Plaintiffs' Alleged Failure To Provide Discovery

Defendants allege that Plaintiffs have been dilatory in providing discovery which Defendants originally requested in late September, 2001. In their April 17, 2002 motion, Defendants state that they are in the process of drafting a motion to compel regarding the discovery which they expected to file in the near future. Defendants did not file this motion until May 13, 2002 (DE #166).[1]

In their Reply, Defendants, for the first time, complain that Plaintiffs have not identified the amount of their damages or how those damages have been computed. Local Rule 7.1 C does not permit a movant to raise new matters in a Reply. Therefore, the issue of whether and/or how Plaintiffs should be sanctioned for failing to provide discovery concerning their damages will not be considered in this Order. However, the

---

[1] By separate Order, Defendants' Motion To Compel is denied as untimely filed.

2

Court notes that Plaintiffs were required to provide damage computations as part of their initial disclosures, pursuant to Rule 26(a)(1)(C), and that Plaintiffs were also required to supplement this information seasonally, apart from any specific discovery requests or questions at depositions regarding the issue of their damages.

2. Plaintiffs' Failure To Participate In The Preparation of The Pretrial Stipulation

Defendants contend that Plaintiffs have failed to participate in the drafting of a Joint Pretrial Stipulation which was due to be filed on April 17, 2002. However, on April 18, 2002, Plaintiffs filed a motion to extend the time to file the Joint Pretrial Stipulation until April 30, 2002, which was granted (DE #154). Subsequently, on May 14, 2002, the District Court further extended until Wednesday, May 15, 2002 at 5:00 p.m. the time to file a Joint Pretrial Stipulation. The extension of time to file the Pretrial Stipulation appears justified, as the parties have been conducting discovery after the November 16, 2001 deadline imposed by the Court (DE #100). For example, Plaintiffs' response to this motion makes reference to a deposition set for April 18, 2002 (DE #155, at p. 4).

3. Analysis

The District Court has authority to dismiss an action with prejudice for a party's failure to comply with court orders or with the Federal Rules of Civil Procedure. See Rule 41(b). Rules 16(f) and 37(b) also permit dismissal as a sanction for a party's willful failure to obey the court's orders. Dismissal with prejudice should be used sparingly as a sanction because it is drastic. See Omaha Indian Tribe v. Tract I-Blackbird Bend Area, 933 F.2d 1462, 1468-69 (8th Cir. 1991). However, no sanctions are warranted in this case because, Defendants have not shown that Plaintiffs have failed to comply with the orders of this Court. While Plaintiffs did not designate an expert witness within the time set by the Court, Plaintiffs have stated that they are not utilizing any expert witnesses.

3

This does not violate the Court's scheduling order. Similarly, Plaintiffs have obtained an extension of time to file the Joint Pretrial Stipulation. Defendants have not shown that Plaintiffs have violated any orders regarding the production of discovery.[2]

Therefore, it is hereby

**ORDERED AND ADJUDGED** that Defendants' Motion For Sanctions, Contempt and/or To Strike The Pleadings of The Plaintiffs For Failure To Comply With Pretrial Order (DE #151, filed 4/17/02), is **DENIED**. It is further

**ORDERED AND ADJUDGED** that Defendants' Motion To Exclude Plaintiffs' Expert Witnesses (DE #151, filed 4/17/02), is **DENIED as moot**. It is further

**ORDERED** that the hearing on Defendants' Motion For Sanctions, Contempt and/or To Strike The Pleadings of The Plaintiffs For Failure To Comply With Pretrial Order (DE #151, filed 4/17/02), set for May 15, 2002, is **CANCELED**.

**DONE AND ORDERED** in Miami, Florida, this 15th day of May, 2002.

ANDREA M. SIMONTON
UNITED STATES MAGISTRATE JUDGE

Copies to:
The Honorable Alan S. Gold
  United States District Judge
Richard E. Brodsky, Esq.
  25 S.E. Second Avenue, Suite 919
  Miami, Florida 33131
  Fax #(305)381-7708
  (Co-counsel for Plaintiffs)

---

[2] Indeed, concerning the parties' failure to comply with Court orders, the undersigned Magistrate Judge notes that the District Court's scheduling order calls for mediation to be complete by March 15, 2002, and that mediation has not yet occurred.

4

Richard C. Heidlage, Esq.
    Prince, Lobel, Glovsky & Tye, LLP
    585 Commercial Street
    Boston, Massachusetts 02109
    Fax #(617)456-8100
    (Co-counsel for Plaintiffs)
Adam J. Lamb, Esq.
    Hall, David & Joseph, P.A.
    1428 Brickell Avenue, Penthouse
    Miami, Florida 33131
    Fax #(305)374-5033
    (Co-counsel for Defendants)
Nicholas A. Alexander, Esq.
    Morrison, Mahoney & Miller, LLP
    250 Sumner Street
    Boston, Massachusetts 02210
    Fax #(617)439-7590
    (Co-counsel for Defendants)

5

**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 01-0432-CIV-GOLD/SIMONTON**

NIGHT BOX
FILED

JUN 0 6 2002

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

CHARLES N. ZALIS, individually, and as
General Partner of the CHARLES N. ZALIS
FAMILY LIMITED PARTNERSHIP, a
Virginia limited partnership, and NORTH
AMERICAN UNDERWRITING
MANAGERS, INC., a Florida Corporation

       Plaintiffs,

vs.

ALLAN D. GERSTEN , GERSTEN
FINANCIAL & INSURANCE, INC., a
Massachusetts corporation, and FIRST
AMERICAN INSURANCE UNDERWRITERS,
INC., a Massachusetts Corporation,

       Defendants.

_____/

## DEFENDANTS' MOTION: (1) TO STRIKE PLAINTIFFS' SUMMARY OF DAMAGES CLAIM AND USE OF SUMMARIES; (2) TO EXCLUDE TESTIMONY OF RONALD RICE, CPA; AND, (3) TO EXCLUDE TESTIMONY OF CHARLES ZALIS ON LOSS OF VALUE OF BUSINESS

Defendants, Allan D. Gersten ("Gersten"), Gersten Financial & Insurance, Inc. ("Gersten

Financial") and First American Insurance Underwriters, Inc., ("First American"), by and through

their undersigned counsel, hereby move: ( 1) to strike the Plaintiffs' Summary of Damages Claim and

use of summaries; (2) to exclude the testimony of Ronald Rice, CPA; and, (3) to exclude the

testimony of Charles Zalis on loss of value of business and in support thereof, states as follows:

980442.1



EXHIBIT
I

### Introduction

The basis for these three motions is as follows. First, the Plaintiffs, after almost after one year and a half of discovery in this matter during which they repeatedly confessed to have no expert witness at all, now seek to have an accountant by the name of Ronald Rice, CPA, testify as an expert by cleverly slapping the label "summary witness" on him. Rice has no apparent relationship to the case or to the documents which he purports to summarize and, as his credentials suggest, he is clearly going to be offering opinion testimony as an expert. Second, the specifics of Rice's anticipated testimony have not been disclosed, so no *Daubert* analysis whatsoever can be conducted on its integrity, even if he were timely and appropriately disclosed, which he was not. Third, the summaries themselves fail to meet any of the essential aspects of FRE 1006 as, among other defects, they are not prepared from source documents. Finally, the plaintiffs seek to have Zalis testify on their largest component of damage - - the value of businesses - - in spite of Zalis' extensive, repeated prior sworn testimony to the effect that he is without the foundational prerequisites of FRE Rule 701(c) (See Argument, infra).

The Defendants are greatly prejudiced by the Plaintiffs' last minute identification of an expert accountant as a "summary witness", by testimony that is devoid of specifics that cannot be challenged under *Daubert* by the use of such foundation-less summaries, and by the Plaintiffs' desperate efforts to maintain their claim by having Zalis reverse his deposition testimony and now claim to be knowledgeable in business evaluations after having claimed no such knowledge about his own company at deposition.

HALL, DAVID AND JOSEPH, P.A., PENTHOUSE, 1428 BRICKELL AVENUE, MIAMI, FLORIDA 33131-3491 • TEL. (305) 374-5030 • FAX (305) 374-5033

## A.    The Pretrial Order and Bases for Defendants' Motion

This Court's May 17, 2002 Order required the Plaintiffs to submit to the Defendants "a detailed breakdown of their damage claims, including all elements and amounts claimed "and to do so" within 10 days from the date of this Order" (Paragraph 18). On May 28, 2002, after the disclosure deadline expired, the Plaintiffs delivered to Defendants their purported Summary of Damages Claim together with 12 summaries of various financial and accounting data, plus another 10 schedules or statements of similar type. In conjunction with this Court's Order to revise Exhibit and Witness Lists, namely, to delineate "A" and "B" lists and to provide time estimates for testimony, the Plaintiffs disclosed for the first time this date (May 28th) the identity of Ronald Rice, CPA, an accountant based in Chestnut Hill, Massachusetts. With that disclosure, the Plaintiffs have afforded Mr. Rice 3 hours of testimony "as a records summary witness." They further added to their Exhibit List Mr. Rice's Curriculum Vitae.

The Plaintiffs clearly seek, in effect, to add Mr. Rice as an expert witness. Their disclosure of him as "a summary records witness" under FRE 1006 is a thinly-veiled attempt to circumvent not only the Court's deadline for expert disclosure, but also the Plaintiffs' earlier, self -proclaimed commitment to not use an expert in this case. The Plaintiffs are just now learning that the accounting and bookkeeping records may only properly be summarized and explained by an expert.[1]

---

[1] The Plaintiffs likely came to this realization after the Defendants disclosed the identity of the summaries they would be using as Exhibits and provided to the Plaintiffs their expert's report before the Pretrial Conference this past May 17, 2002. The Defendants disclosed the identity of Carl Jenkins, CPA/ABV and CFE over three (3) months ago and invited Plaintiffs to take his deposition which they have apparently declined to do. Further, at Mr. Zalis' deposition this past April 16-17, 2002, the Plaintiffs were given the benefit of various analyses by Mr. Jenkins in the form of shared exhibits.

**B.    Defendants are Being Severely Prejudiced**

The Defendants are greatly prejudiced as a result of the Plaintiffs' months-long repeated denial of having any expert witness. By continuing to deny their use of an expert they have effectively robbed the Defendants of any opportunity to formulate an effective defense against such an expert.

The Plaintiffs' Verified Complaint essentially alleges a *de facto* merger of two sophisticated business enterprises. Hence, the Defendants long surmised that the Plaintiffs would disclose either a business valuation expert, or forensic accountant, or other financial expert to conduct a rigorous analysis on damages and to testify on behalf of the Plaintiffs. Accordingly, the Defendants repeatedly and timely requested that the Plaintiffs disclose their experts and the *specific* opinions and basis for same. Clearly, the Court Orders required the Plaintiffs to disclose such experts. Yet, the Plaintiffs continued to maintain that no such experts would be called. Now, with discovery having been closed, with the time for depositions having passed, the Plaintiffs disclose Mr. Rice as a "summary witness."

There is no doubt that Mr. Rice is being called as an expert. Mr. Rice has, presumably, no first-hand knowledge of the documents he seeks to summarize. He does not purport to have been affiliated or associated with Mr. Zalis, or any of the parties or any of the businesses involved in this matter. If Mr. Rice were simply in the process of truly compiling "and summarizing" voluminous data such as income and expense statements, he would not need to bring a background in accounting to do so. The Plaintiffs' intent is to have Mr. Rice share his analysis with the jury and to have him opine on damages.

HALL, DAVID AND JOSEPH, P.A., PENTHOUSE, 1428 BRICKELL AVENUE, MIAMI, FLORIDA 33131-3491 • TEL. (305) 374-5030 • FAX (305) 374-5033

Yet, Mr. Rice's opinions characterized as "summaries" are not even disclosed. Neither the Plaintiffs' purported Summary of Damages Claim nor their compilation of summaries identify assumptions, reasoning, analysis, basis or purported conclusions. Presumably, the Defendants will learn, for the first time at the trial of this matter, the precise methodology by which Mr. Rice reaches his opinions. The Defendants will find themselves in the untenable position attacking opinion testimony for the first time at trial. This prejudice, in addition to prejudice which the Defendants have already encountered - - namely that they were forced to disclose their own expert and identify his opinions and conclusions entirely in anticipation of the Plaintiffs' damages claims - - are greatly prejudicial.

The Plaintiffs' mistakenly draw parallels between Defendants' expert witness, Carl Jenkins, who has prepared summaries <u>and</u> is identified as an expert witness and Plaintiffs' disclosure of Mr. Rice as a "summary witness." Jenkins was fully disclosed as an expert witness and, as one with specialized knowledge, skills and experiences, will testify as an expert. Mr. Rice is identified as a summary witness but will testify as an expert.

In their Summary of Damages Claim, the Plaintiffs seek to have Mr . Zalis testify on the subject of "loss of value of business" attributable to North American-Massachusetts, North American-Florida and Gersten Financial as of January 1, 2001. In this disclosure, the Plaintiffs plan to have Mr. Zalis testify about a "rule of thumb" having no applicability to the facts or businesses at issue, which "rule of thumb" is based on a gross commissions figure which Mr. Zalis claims was told to him by the Defendants. Mr. Zalis seeks to give an opinion about a company for which he had no involvement (Gersten Financial), and on subject matter (commission accounting and bookkeeping) in which he claims to have played no role. At his deposition one month ago, Mr.

HALL. DAVID AND JOSEPH. P.A., PENTHOUSE. 1428 BRICKELL AVENUE, MIAMI, FLORIDA 33131-3491 · TEL. (305) 374-5030 · FAX (305) 374-5033

Zalis was asked repeatedly about his damage claim and he had no such information to disclose. He appeared coy and evasive and declined to testify. (See Argument, infra). Moreover, even if the disclosure had been appropriately and timely disclosed as an expert opinion, assuming further that Mr. Zalis was confident to testify to such, the actual opinion itself would be grossly defective. By way of example only, the guidelines on which Mr. Zalis seeks to testify would have no applicability to the facts of this case, appears to have followed no legitimate methodology and therefore has not and cannot identify any peer review method or testing or verifying such opinions. As such, even if Mr. Rice were timely, and properly disclosed as an expert, his opinions would not withstand *Daubert* scrutiny.

**C.    Plaintiffs' Damages Claim is Based on Summaries Which, Regardless of their Validity, Require Expert Testimony**

The summaries produced by Plaintiffs are not summaries within the meaning of Rule 1006. The summaries present a variety of defects including primarily the fact that they are not representative of their source documents. Rather, they purport to be the beginnings of an expert's report because they contain numerous assumptions of facts in contention as well as interpretation of data. For such reports to be accurate, they require a thorough understanding of income and expense allocation between the companies, as well as a detailed analysis of their source documents. They further require that a methodology be undertaken with respect to different categories of documents. Moreover, they require fact-finding through interviews of parties/employees in conjunction with analysis of third-party insurance records. In some cases, the summaries are simply based on previously summarized computer records capable of manipulation by Plaintiffs.

HALL, DAVID AND JOSEPH, P.A., PENTHOUSE, 1428 BRICKELL AVENUE, MIAMI, FLORIDA 33131-3491 • TEL. (305) 374-5030 • FAX (305) 374-5033

In short, the Plaintiffs seek to introduce an expert's analyses. Notwithstanding that Ronald Rice is attempting to perform an expert's function, no disclosure has been made as to Mr. Rice's methodology for how records were summarized or the extent to which pertinent records were taken into account.

Rule 403 provides that "[a ]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Even where Rule 1006 evidence is relevant and authentic, this Court has discretion to exclude it where such Rule 403 dangers are presented. 31 Fed. Prac. & Proc. Evid. at §8043 (Wright & Miller); also, <u>U.S. v. Lemire</u>, 720 F.2d. 1327,1348 (D.C. Cir. 1983). This Court has such discretion where, for example, Rule 1006 evidence "is misleading because it omits important aspects of the voluminous source materials or adds matters not present in those materials." 31 Fed. Prac. & Proc. Evid at §8043. Rule 1006 evidence is often the basis for expert testimony since, by its very nature, it embodies an opinion that it accurately interprets or summarizes the contents of the voluminous source material. <u>Id</u>. Although there is opinion inherent in any summary material, that should be distinguished from opinion concerning the meaning of Rule 1006 evidence. <u>Id</u>.

Such presentation and opinion, if allowed, could be "misleading in that it incorrectly suggests to the jury that the opinion is merely part of the summary of the source materials." <u>U.S. v. Smyth</u>, 556 F.2d. 1179, 1184 (5th Cir. 1977).

Under Rule 1006, the Plaintiffs cannot demonstrate that otherwise voluminous source materials are what they claim them to be by their summaries. 31 Fed. Prac. & Proc. Evid. at §8043;

HALL, DAVID AND JOSEPH, P.A., PENTHOUSE, 1428 BRICKELL AVENUE, MIAMI, FLORIDA 33131-3491 • TEL. (305) 374-5030 • FAX (305) 374-5033

See also Rule 901(a). The Plaintiffs cannot show that their summary evidence accurately summarizes the source materials. Id.; Rule 1006.

**D.    Zalis Cannot Testify to Loss of Value of Business**

Plaintiff Zalis wants to testify about the values attributable to the businesses of North American-Massachusetts, North American-Florida and Gersten Financial as of January 1, 2001. Mr. Zalis is purportedly going to base his testimony on a "rule of thumb" used in valuing a life insurance brokerage business which, Mr. Zalis argues, was personally familiar to him. That is simply not enough under well-established case law and Rule 701(c). His starting point is a figure of $3.6 million dollars in gross commissions, which Mr. Zalis will report was told to him by the Defendants. Defendants adamantly dispute ever having made such statements to Zalis. Mr. Zalis' testimony in this regard is aspirational and hugely speculative.

To begin with, he is not, nor has he ever been a shareholder, officer or director of Gersten Financial. He had no involvement in the business of Gersten Financial, and had no access to its books or records. Whereas Mr . Zalis' background is in wholesale brokerage, Gersten Financial is a retail insurance business with a securities division. He is not an owner of Gersten Financial and is not familiar with its business operations.

At his deposition on May 9, 2001, in connection with the Massachusetts action filed by these Defendants as Plaintiffs, Zalis testified about his knowledge of Gersten Financial, including his review of financial and accounting records. In relevant part, in response to questions about what financial records he looked at for Gersten Financial and whether he learned anything about the financial worth of the company, he responded that he did not look at any accounting records, nor bookkeeping records, nor any other type of corporate due diligence records (pages 95-96). He

HALL, DAVID AND JOSEPH, P.A., PENTHOUSE, 1428 BRICKELL AVENUE, MIAMI, FLORIDA 33131-3491 • TEL. (305) 374-5030 • FAX (305) 374-5033

testified that he learned nothing about the financial worth of the company (page 96). He testified that

he did not know if Gersten Financial loaned money to North American, and that he had never seen

any check deposits or loan related documentation (pages 119-120). In response to questions

designed to elicit information about what records, if any, he had ever seen about Gersten Financial,

Zalis testified candidly that he had never seen any of the financial records for Gersten Financial.

Specifically, he testified that he had not seen any income schedules or statements for Gersten

Financial, nor had he ever seen any general ledgers for Gersten Financial. Further, he had never seen

any tax returns for Gersten Financial. When asked if he had any interest in what the income for

Gersten Financial is, he replied "no". (Pages 131-132). Finally, at that first deposition, when asked

a series of questions as to whether he knew whether a Gersten Financial tax return had been filed for

the years 1997, 1998, 1999 and 2000, Zalis replied, "no idea", to each question for each year. (Page

182).

He was not that familiar with the businesses of North American either. He testified that he

did not monitor the books and records for these companies, but yet applies a "rule of thumb" having

no basis in reality. At his deposition in this case on August 2, 2001, in response to questions about

his access and review of financial books and records for either Gersten Financial or North American,

Zalis replied that he "didn't have access to the books and records of North American", "never...to

neither company, nor [had he] ever seen them to this day." (Page 144).

It is well-established that rules of thumb should never be relied on as a primary appraisal

method. *Desmond*, Handbook of Small Business Valuations Formulas and Rules of Thumb. Our

Courts are not inclined to accept them either. For example, the Court in <u>Bostwick</u> said:

HALL, DAVID AND JOSEPH, P.A., PENTHOUSE, 1428 BRICKELL AVENUE, MIAMI, FLORIDA 33131-3491 • TEL. (305) 374-5030 • FAX (305) 374-5033

[These] formulas..."are in reality the starting point of negotiation; and should not be confused with a valuation procedure"...Formulas based on gross billings are usually converted to a time pay-out of the purchase price and, as such can be misleading because they are often negotiated more over the terms of payment than over the actual value of the business being acquired...While "rules of thumb may be helpful to accountants or business people to gauge the overall fairness of a particular transaction," i.e. whether it is "in the ballpark," they are not at all helpful to the Court in fixing a specific value on a specific economic enterprise in an ancillary proceeding. . .A rule of thumb by definition provides no theory . At best it is a guide or points out direction. At worst, it is nothing.

1991 WL 42628 (Del. Fam. Ct. 1991), see also Bolan v. Bolan, 32 Ark. App. 65, 796 S.W. 2d 358 (1990) and Young v. Young, 606 So. 2d 1267 (Fla. 1st DCA 1992).

To be able to value these businesses requires expert testimony. The general approval afforded by Rule 701 (c) is conditioned on the witness have "particularized knowledge" by virtue of his participation "in the day-to-day affairs of the business". Rule 701 Advisory Committee Note. The 2000 Amendment "does not purport to change [the] analysis" requiring that the witness have particularized knowledge by virtue of his position in the business. Rule 701 Advisory Committee Note. In this regard, Rule 701 incorporates the requirements of Rule 602 requiring that the witness satisfy the "elements of proper sensory perception, comprehension, present recollection, and ability to testify as to the matter perceived". KW Plastics v. United States Can Co., 131 F. Supp.2d. 1265 (2001), 29 Federal Practice and Procedure (Wright & Gold), §6254 at p. 126 (1997). "A witness who cannot recall the matters perceived cannot offer any opinions, for his testimony would be little more than speculation or conjecture". Id. at p.127, 134-135. In point of fact, Zalis does not have the required sense of perception, because he has never seen or analyzed the necessary documents.

HALL, DAVID AND JOSEPH, P.A., PENTHOUSE, 1428 BRICKELL AVENUE, MIAMI, FLORIDA 33131-3491 • TEL. (305) 374-5030 • FAX (305) 374-5033

In its discussion of whether a company's general manager would be permitted to testify, the Court in KW Plastics mandated that such a person must be in a position to have access to, and to understand "the numbers, information, assumptions, and reasoning", if that witness hopes to testify to the same. KW Plastics, 131 F. Supp.2d at 1273 where such a person "cannot 'do the math,' then he cannot testify as to what the 'bottom line number' should be". In the Court's discussion of Rule 701's requirement that the opinion be "rationally based on the perception of the witness", it agreed with the prospect that 'the nature and extent of the contacts and the observations of the witness [] be as detailed as possible." Id. at p. 1274, United States v. Pickett, 470 F.2d 1255, 1258 (D.C. Cir. 1972). Thus, such opinion testimony is only admissible if the Court is satisfied that an adequate foundation has been established. Id. Here, we do not need to get to that point as Plaintiff Zalis has established through prior deposition testimony that he does not have the requisite foundation.

By contrast, general manager in KW Plastics had dozens of years of experience from which he wanted to testify "about his businesses' revenues, costs, profit margins and the like." Id. at p. 1274. The Court in KW Plastics likened this general manager to the corporate executive in the Lightning Lube case, where both claimed to have "kept abreast of market trends, thereby establishing the basis and personal knowledge of [their] opinions about lost future profits resulting from lost future customers". Id. The general manager in KW Plastics reached a multi-million dollar figure which he extrapolated from "damages in conjunction with his accountant...who merely 'crunched the numbers' based on assumptions and data supplied by [the general manager]." Id. Thus, in KW Plastics, that general manager had far more information at his disposal and within his field of knowledge than does Mr . Zalis. Even so, the Court in KW Plastics held under Rule 701 that "the witness cannot simply assert conclusions; his testimony must rest upon an antecedent predicate and

HALL, DAVID AND JOSEPH, P.A., PENTHOUSE, 1428 BRICKELL AVENUE, MIAMI, FLORIDA 33131-3491 • TEL. (305) 374-5030 • FAX (305) 374-5033

foundation." Id., citing Kinetico, 482 N.E. 2d at 1352. The Court found that the general manager's testimony would not be helpful to the jury. Id. The Court further concluded that this general manager had no ability to explain or apply the damages calculation provided him, and he could not reproduce many of the figures identified nor discuss how he arrived at bottom line numbers contained in the ultimate calculation. Id. Most noteworthy is the fact that the Court found that the general manager's testimony should not be substituted for an accountant's absent sufficient personal knowledge, and it further opined that such objections usually require some form of expert testimony. Id. at p. 1275.

At his deposition, Mr . Zalis provided no indication that he would be attempting to assess the value of businesses. When asked if accountants were working on his damage's claim, he was evasive and declined to answer. Zalis himself is plainly not qualified to value the North American businesses, to say nothing of Gersten Financial. This Court in its Pretrial Order required the Plaintiffs to provide a detailed damage analysis. Mr. Zalis makes no allowance for company liabilities, nor does he set forth the basis for an earnings figure or capitalization rate. Such factors need be determined based upon the facts and circumstances of the company to be valued. According to Shannon Pratt, the Dean of Business Appraisers and author of several books on business valuation, "the key is that the income stream being capitalized must be clearly defined in the capitalization rate or the multiple chosen must be a rate that is appropriate for the particular income stream as defined." See, Handbook of Small Businesses Valuations Formulas and Rules of Thumb.

There are many factors that must be considered in determining the proper number to use in determining the earnings base. For example, most small companies use cash flow before taxes but

after allowances for owner's salaries and other unusual items. The base must first be accurately measured and then analyzed as to whether it can be compared to other comparable companies in order to determine appropriate capitalization rates. Zalis provides no such detailed analysis. He has offered no assessment, whatsoever, as to the continuity of revenue or production. Mr. Zalis apparently makes no allowance for the continuity of a sales force which is essential to a service business. Further, he offers no assessment of North American's dependency on key personnel as of January 1, 2001. In point of fact, Mr. Farlow testified repeatedly that there was no communication at that time, that he (Farlow) was just trying to hold the company together. Zalis wrote to Mr. Gersten that it was "shut down time". Mr. Zalis was completely ignorant of how cash flow was managed and how the North American companies were funded. Although Zalis always got his draw on time, he testified repeatedly that he did not know, nor did he care whether Mr. Gersten was receiving his draw. Whereas Gersten, Jeffrey Farlow, Lori Palladino and Janet Fitzgerald each testified that Allan Gersten loaned personal funds to keep the company afloat, Zalis claimed to not know that Gersten ever loaned money to the company. Zalis cannot credibly assess the values for these businesses. Without consideration of the specific facts and circumstances of these companies, his approach to valuation is thoroughly inadequate.

To allow Mr. Zalis to testify according to the Plaintiffs' Damages Disclosure would be exceedingly prejudicial to the Defendants. The Plaintiffs would be rewarded for their gamesmanship in discovery. At his deposition, Zalis refused to disclose any damage element to his case, but instead deferred to his counsel "or others working on it", thus refusing to answer. As Mr. Zalis' purported testimony is based on specialized knowledge within the scope of Rule 702, he should be precluded from testifying on the value of a business where his testimony is clearly not based on sufficient facts

HALL, DAVID AND JOSEPH, P.A., PENTHOUSE, 1428 BRICKELL AVENUE, MIAMI, FLORIDA 33131-3491 • TEL. (305) 374-5030 • FAX (305) 374-5033

or data; nor is it based on reliable principles and methods. There is no indication that he has applied

any such reliable principles and methods to the facts of this case.

E.    **Conclusion**

For the foregoing reasons, the Defendants respectfully request that this Court (1) Strike

Plaintiffs' Summary of Damages Claim and Use of Summaries; (2) Exclude Testimony of Ronald

Rice, CPA; and, (3) Exclude Testimony of Charles Zalis on Loss of Value of Business.

> Respectfully Submitted,
> HALL, DAVID AND JOSEPH, P.A.
> 1428 Brickell Avenue, Penthouse
> Miami, Florida 33131
> (305) 374 -5030 (telephone)
> (305) 374-5033 (facsimile)
>
> _____
> ANDREW C. HALL
> Fla. Bar No.: 111480
> ADAM J. LAMB
> Fla. Bar No.: 899046
>
> and
>
> Nicholas P. Alexander, Esq.
> BBO No.: 544173
> Douglas B. Otto, Esq.
> BBO No.: 555269
> MORRISON, MAHONEY & MILLER, LLP
> Counsel for Defendants, *Pro Hac Vice*
> 250 Summer Street
> Boston, MA  02210

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that a true and correct copy of the foregoing was faxed and mailed
on this 6ᵗʰ day of June, 2002 to: Richard C. Heidlage, Esq., Kotin, Crabtree & Strong, LLP, 1
Bowdoin Square, Boston, MA 02114 and Richard E. Brodsky, Esq., Richard E. Brodsky, P.A., 25
Southeast 2ⁿᵈ Avenue, Suite 919, Miami, FL 33131.

> _____
> ADAM J. LAMB

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

Case No.: 01-0432-CIV-GOLD/SIMONTON

CHARLES N. ZALIS, individually, as
General Partner of the CHARLES N. ZALIS
FAMILY LIMITED PARTNERSHIP, a
Virginia limited partnership, and NORTH
AMERICAN UNDERWRITING
MANAGERS, INC., a Florida Corporation,

     Plaintiffs,

vs.

ALLAN D. GERSTEN, GERSTEN
FINANCIAL & INSURANCE, INC., a
Massachusetts Corporation, and FIRST
AMERICAN INSURANCE UNDERWRITERS,
INC., a Massachusetts Corporation,

     Defendants.

_____/

## SECOND AMENDED COMPLAINT FOR
## EQUITABLE RELIEF AND FOR DAMAGES

     Come now Plaintiffs, Charles N. Zalis, individually and as the General Partner of the

Charles N. Zalis Family Limited Partnership, and North American Underwriting Managers,

Inc., a Florida corporation ("North American") and sue defendants Allan D. Gersten ("Gersten"),

Gersten Financial & Insurance, Inc. ("Gersten Financial") and First American Insurance

Underwriters, Inc. ("First American") and say:

## INTRODUCTION

     This is an action for equitable relief and for damages in excess of $75,000.

EXHIBIT

J

## PARTIES AND JURISDICTION

1.      This action was originally brought in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida and was removed to this Court. Jurisdiction in this Court is based on 28 U.S.C. § 1332, based on the diverse citizenship of the parties and that the matter in controversy exceeds $75,000, exclusive of interest and costs.

2.      Plaintiff, Charles N. Zalis ("Zalis") is a citizen and resident of Broward County, Florida. Zalis is a general partner of the Charles N. Zalis Family Limited Partnership, a Virginia limited partnership (the "Zalis Limited Partnership"), located in Broward County, Florida, and all of the partners of which are citizens of Florida. At all times since its formation, Zalis was the President and a director of North American.

3.      Plaintiff North American is a corporation duly organized and existing under the laws of Florida. North American is a Brokerage General Agent ("BGA"), which brokers insurance to agents, who then sell the insurance to their individual clients. North American is an expert in impaired risk underwriting, is licensed to do business in the state of Florida, and does business in the state of Florida. Zalis was the sole shareholder (owning 1000 shares) of North American from its formation until on or about May 25, 1994, when he transferred his shares to the Zalis Limited Partnership.

4.      Defendant, Allan D. Gersten ("Gersten"), is an individual residing at 79 Stratford Road, Needham, Massachusetts. Gersten is an insurance agent licensed in the state of Florida, who engages in substantial and not isolated activity in Florida. In addition, Gersten is subject to the jurisdiction of the courts of the state of Florida by reason of his having committed tortious acts within Florida, his having breached a contract in this state by failing to perform acts required by the contract to be performed in this state; and his having caused injury to persons within this state at a time when he was engaged in solicitation or service activities within this state. Gersten

2

did business with North American in Florida whereby North American operated as his agent to solicit new business and sales in Florida, and opened an office in Florida in his behalf as part of the business venture. On or about September 1, 1997, based on an oral understanding with Zalis described below, Gersten became Secretary, Treasurer and a director of North American, and was issued 1000 shares of North American, equal to 50% of its outstanding shares. In his positions, Gersten was the chief administrative officer for North American, and had supervisory responsibility for employees and maintenance of the books and records of account for the corporation. Gersten was responsible for the proper allocation of contracts, revenues and expenses to North American.

5.      Defendant, Gersten Financial & Insurance, Inc. ("Gersten Financial"), is a corporation duly organized and existing under the laws of Massachusetts with a principal place of business located at 189 Reservoir Street, Needham, Massachusetts. Gersten Financial does business in the state of Florida. Gersten Financial did business with North American in Florida whereby North American operated as its agent to solicit new business and sales in Florida, and opened an office in Florida in its behalf as part of the business venture. Gersten is the agent for Gersten Financial as to the matters alleged in this Amended Verified Complaint that affect Gersten Financial. On information and belief, at all times relevant to this action Gersten Financial is and has been operated by Gersten as a direct competitor of North American. At all times, Gersten has been Gersten Financial's sole officer, director and shareholder.

6.      Defendant First American Insurance Underwriters, Inc. ("First American") is a corporation duly organized and existing under the laws of the Commonwealth of Massachusetts, with its principal place of business located at 189 Reservoir Street, Needham, Massachusetts. First American does business in the state of Florida and Gersten is the agent for First American as to the matters alleged in this Amended Verified Complaint that affect First American.

3

Gersten is its sole officer and director. On information and belief, First American is the entity to which Gersten, while still an officer and director of and in breach of his fiduciary duties to North American, transferred all of the assets and business of North American. First American is a direct competitor of North American. At all times, Gersten has been First American's sole officer, director and shareholder.

## GENERAL ALLEGATIONS

7.     On or about September 1, 1997, Zalis, individually and on behalf of the Zalis Limited Partnership, and Gersten for himself and Gersten Financial, entered into a verbal agreement to pool their insurance businesses going forward (the "Shareholders' Agreement"). Under the Shareholders' Agreement, the parties agreed that the Zalis Limited Partnership would transfer one-half if its interest in North American to Gersten. Gersten, in turn, was supposed to transfer 100% of his interest in Gersten Financial to North American. Thereafter, the two companies were to operate as one unified business. Under the terms of the Shareholders' Agreement, it was agreed that Gersten would handle all of the operational and financial management of the two companies, in an appropriate and ethical manner, and Zalis would build the business, primarily by marketing and advertising and by locating, acquiring and developing additional insurance products, agents, brokers and businesses. Gersten and Zalis were to devote their full time best efforts to the business, and both individuals were to be compensated equally. Further, Gersten (either directly or through Gersten Financial) and Zalis (either directly or through the Zalis Limited Partnership), were to receive the same benefits. If they terminated this business relationship, North American and its assets were to revert to Zalis and the Zalis Limited Partnership, and Gersten Financial and its assets were to revert to Gersten. The parties further agreed actively to promote the "North American" name, and to place all new insurance products in the name of North American, where the BGA contracts and licenses were already being held,

4

or in its affiliated entities. The parties agreed that the operations of Gersten Financial would be phased out, so that eventually, all of the business would be conducted through North American and North American's affiliate entities.

8. In accordance with the Shareholders' Agreement, on or about September 1, 1997, the Zalis Limited Partnership transferred to Gersten fifty percent ownership of North American. Immediately prior thereto, and pursuant to the terms of the Shareholders' Agreement, Gersten was appointed as an officer and director of North American. In 1999, Gersten and Zalis caused to be organized under the laws of the Commonwealth of Massachusetts North American Underwriting Managers Insurance Agency, Inc. ("North American-Massachusetts"), in which Gersten and Zalis were equal shareholders. North American- Massachusetts had its principal place of business in North American's Massachusetts offices located at 189 Reservoir Street, Needham, Massachusetts. North American-Massachusetts was formed to allow North American to have a separate Massachusetts identity, and to hold licenses that North American, as a Florida corporation, was unable to hold. North American-Massachusetts also provided underwriting services to insurance companies and performed reinsurance placements for small to medium-sized insurance companies and is also a close corporation under Massachusetts law.

9. To date, Gersten has failed to transfer his ownership interest in Gersten Financial, to North American, and has further failed to make Zalis an officer or director of Gersten Financial, as was agreed upon by the parties in the Shareholders' Agreement.

10. Notwithstanding the Shareholders' Agreement and his duties to North American and the Zalis Limited Partnership, Gersten operated North American for his own benefit, siphoning off the assets of North American to Gersten Financial, First American and, on information and belief, to himself personally, and directing corporate opportunities of North American to Gersten Financial, First American and, on information and belief, to himself

5

personally. For example, rather than writing contracts for North American's business through

North American, Gersten wrote the business in his own name or in the name of Gersten

Financial. This included contracts that Zalis had negotiated on behalf of North American. On

information and belief, when Gersten received these blank contracts that Zalis had sent to him to

be completed, rather than filling them out in North American's name, Gersten filled them out in

his own name or that of Gersten Financial, bypassing North American altogether. He even had

North American's internet domain, www.betterideaspeople.com, which Zalis developed,

registered in the name of Gersten Financial.

11.    On information and belief, notwithstanding the Shareholders' Agreement and his

duties to North American and the Zalis Limited Partnership, Gersten committed wasteful acts

with North American corporate assets for his own personal benefit and that of his family and

friends and to the detriment of the corporations, including: a) causing North American to pay to

Gersten's separate entity, as landlord, rent, common area maintenance, taxes and insurance

charges that materially exceed the fair rental value of such leasehold space; b) causing North

American to employ Gersten's relatives for compensation materially in excess of the value of the

services provided; and c) causing North American to pay the personal expenses of Gersten and

his family and friends.

12.    Notwithstanding the Shareholders' Agreement and his duties to North American

and the Zalis Limited Partnership, Gersten has refused to pay legitimate expenses associated with

the business of the Florida office of North American, thereby jeopardizing the ability of that

office to continue its operations. For example, Gersten has caused Florida personnel to be

excluded from access to the company credit card, has failed to pay the long distance phone bill

for the Florida office (and further failed to notify Zalis of such failure so that the bill could be paid

without interruption of services) and has failed to pay employees, agents and creditors of the

6

Florida office, in a proper and timely manner, thereby undermining the morale and reputation of North American's operations. As a direct result of Gersten's actions, the Florida offices of North American had to close their doors by the fall of 2001.

13.    Notwithstanding the Shareholders' Agreement and his duties to North American and the Zalis Limited Partnership, Gersten has otherwise mismanaged the affairs of North American by, among other things, failing to establish effective internal controls within the corporations to safeguard the assets, thereby causing a deterioration of their value; jeopardizing the continued viability of the businesses by failing to properly pay operational expenses; allowing unlicensed employees to take insurance applications without the personal participation of licensed individuals; signing agent insurance applications for agents who take the applications but who are not properly licensed to do business in that particular jurisdiction; and violating all states' insurance laws by paying commissions to unlicensed and/or non-appointed agents; violating insurance company contracts by making commission side deals with agents; and maintaining incomplete and inaccurate accounting records, and refusing to provide basic accounting records to Zalis and the companies' certified public accountant and outside representatives, resulting in the imposition of various penalties and fines, as well as the companies' failure to file federal and state income tax returns for several years.

14.    Notwithstanding the Shareholders' Agreement and his duties to North American and the Zalis Limited Partnership, Gersten caused all of the assets and employees of North American to be transferred to First American and Gersten Financial such that North American was left without any assets or employees or the ability to carry on any business. On information and belief, Gersten has begun directing North American's business through First American. First American is now using the North American *betterideaspeople.com* domain name and materials developed for North American for its internet website.

7

15.    In 2000, Zalis and Gersten terminated their business relationship. During the time the business relationship was in effect, North American developed valuable assets, including but not limited to a confidential list (the "List") of some 15,000 life insurance agents who had expressed an interest in doing business with North American. Zalis had a significant role, if not the principal role, in developing the List, and Gersten had full access to the List. At all times Gersten knew the significance of the List, its value, and the role that Zalis played in developing it.

16.    During the time the Zalis-Gersten business relationship was in effect, Gersten was able, through his control of the combined administrative and accounting apparatus of North American, North American-Massachusetts and Gersten Financial, to obtain substantially more financial benefits (through receipt of payments of draws, company payment of expenses or other company payments on his behalf) than were obtained by Zalis or the Zalis Limited Partnership, in violation of the understanding between Zalis and Gersten that Zalis or the Zalis Limited Partnership, on the one hand, and Gersten, on the other hand, would receive equal benefits.

17.    Since the termination of the Zalis-Gersten business relationship, Gersten has retained the assets of North American, including the List, for his personal benefit, either directly or through Gersten Financial, First American or some other entity unknown to Zalis. Neither Zalis nor the Zalis Limited Partnership has had use of or access to the First American assets retained by Gersten.

## COUNT I

## BREACH OF FIDUCIARY DUTY TO NORTH AMERICAN

(Gersten)

18.    Plaintiffs incorporate herein by reference and reallege as if set forth in full herein the allegations contained in paragraphs 1-17 hereof.

8

19.    As an officer and director of North American, Gersten owed to it a fiduciary duty of care and a paramount duty of loyalty.  He was bound to act in all matters regarding the corporation with absolute fidelity and was required to place his duties to the corporation above every other financial or business obligation.

20.    Defendant Gersten has, by his actions alleged above, breached his fiduciary duties of care and loyalty to North American.

21.    North American has been irreparably harmed and continues to be irreparably harmed by the aforesaid acts.

22.    Because such damages are difficult to determine and may be impossible to recover, a damages remedy is wholly inadequate to compensate North American.

**COUNT II**

**DIVERSION OF CORPORATE OPPORTUNITIES
BELONGING TO NORTH AMERICAN**

(Gersten, Gersten Financial and First American)

23.    Plaintiffs incorporate herein by reference and reallege as if set forth in full herein the allegations contained in paragraphs 1-17 hereof.

24.    As an officer and director of North American, Gersten owed to it a fiduciary duty of care and a paramount duty of loyalty.  He was bound to act in all matters regarding the corporation with absolute fidelity and was required to place his duties to the corporation above every other financial or business obligation.  Specifically, he was required to make available to the corporation and cause it to participate in any business opportunities that he became aware of.

25.    Defendant Gersten has, by diverting insurance brokerage business opportunities, broker relationships and other business opportunities to himself and to Gersten Financial and First American, breached his fiduciary duties of care and loyalty to North American.  Gersten

9

Financial and First American, by receiving said corporate opportunities belonging to North American, have aided and abetted Gersten's breach of his duties to North American and have been unjustly enriched thereby.

26.    North American has been irreparably harmed and continues to be irreparably harmed by the aforesaid acts.

27.    Because damages are difficult to determine and may be impossible to recover, a damages remedy is wholly inadequate to compensate North American.

28.    North American is entitled to damages and injunctive relief to compensate it for and to return to it the business opportunities that were misappropriated by Gersten, Gersten Financial and First American.

## COUNT III

### MISAPPROPRIATION OF CONFIDENTIAL AND PROPRIETARY INFORMATION AND VIOLATION OF M.G.L. c. 93 AND 93A

(Gersten)

29.    Plaintiffs incorporate herein by reference and reallege as if set forth in full herein the allegations contained in paragraphs 1-17 hereof.

30.    North American possessed, used and maintained substantial confidential and proprietary information that was vital to its business and success. As a result of his employment by and positions as an officer North American, Gersten has a contractual and fiduciary obligation not to disclose any trade secrets or confidential information he acquired during the course of his employment. He also has a common law duty not to use or disclose trade secrets and confidential information belonging to North American and any such disclosure constitutes a violation of the common law and Massachusetts General Laws Chapters 93, §§ 42, 42A and 93A, § 11.

10

31.    By misappropriating North American's confidential and proprietary business information, disclosing it to defendants Gersten Financial and First American, and using said information for himself and on behalf of Gersten Financial and First American, Gersten has breached and is continuing to breach his contractual and fiduciary obligations to North American and his statutory obligations as referred to above.

32.    North American has been and is continuing to be irreparably harmed by the unauthorized disclosure and use of its confidential and proprietary information as aforesaid.

33.    North American is entitled to injunctive relief to prevent such continued disclosure and use, i.e. by temporarily, preliminarily and permanently enjoining defendants as requested in the prayers for relief below.

34.    North American is also entitled to the damages caused by the unauthorized disclosure of its confidential and proprietary information as aforesaid in an amount to be proved at trial.

## COUNT IV

### MISAPPROPRIATION OF CONFIDENTIAL AND PROPRIETARY INFORMATION, INTERFERENCE WITH CONTRACT AND VIOLATION OF M.G.L. c. 93 AND 93A

(Gersten Financial and First American)

35.    Plaintiffs incorporate herein by reference and reallege as if set forth in full herein the allegations contained in paragraphs 1-17 hereof.

36.    As a result of his employment by and positions as an officer of North American, Gersten has a contractual and fiduciary obligation not to disclose any trade secrets or confidential information he acquired during the course of his employment. He also has a common law duty not to use or disclose trade secrets and confidential information belonging to North American

11

and any such disclosure constitutes a violation of the common law and Massachusetts General Laws Chapters 93, §§ 42, 42A and 93A, § 11.

37.     Defendants Gersten Financial and First American knew or should have known of Gersten's contractual, common law and statutory duties to North American and their duty not to use or disclose to any third party any of North American's confidential or proprietary information.

38.     By participation in Gersten's misappropriation of North American's confidential and proprietary business information, and receiving and using said information for themselves and to compete with North American, Gersten Financial and First American have interfered and are continuing to interfere with North American's contractual relations with Gersten and are continuing to participate with him in his breach of his contractual, common law and statutory obligations as referred to above and are themselves in violation of the common law and Massachusetts General Laws Chapters 93, §§ 42, 42A and 93A, § 11.

39.     North American has been and is continuing to be irreparably harmed by the unauthorized disclosure and use of its confidential and proprietary information as aforesaid.

40.     North American is entitled to injunctive relief to prevent such continued disclosure and use, i.e. by temporarily, preliminarily and permanently enjoining defendants as requested in the prayers for relief below.

41.     North American is also entitled to the damages caused by the unauthorized disclosure of its confidential and proprietary information as aforesaid in an amount to be proved at trial.

## COUNT V

## MISAPPROPRIATION OF CONFIDENTIAL AND PROPRIETARY INFORMATION AND VIOLATION OF FLORIDA STATUTES CHAPTER 688

(Gersten)

42.    Plaintiffs incorporates herein by reference and reallege as if set forth in full herein the allegations contained in paragraphs 1-17 hereof.

43.    North American possessed, used and maintained substantial confidential and proprietary information that was vital to its business and success. As a result of his employment by and positions as an officer of North American, Gersten has a contractual and fiduciary obligation not to disclose any trade secrets or confidential information he acquired during the course of his employment. He also has a common law duty not to use or disclose trade secrets and confidential information belonging to North American and any such disclosure constitutes a violation of the common law and Florida Statutes Chapter 688.

44.    By misappropriating North American's confidential and proprietary business information, disclosing it to defendants Gersten Financial and First American, and using said information for himself and on behalf of Gersten Financial and First American, Gersten has breached and is continuing to breach his contractual and fiduciary obligations to North American and his statutory obligations as referred to above.

45.    North American has been and is continuing to be irreparably harmed by the unauthorized disclosure and use of its confidential and proprietary information as aforesaid.

46.    North American is entitled to injunctive relief to prevent such continued disclosure and use, i.e. by temporarily, preliminarily and permanently enjoining defendants as requested in the prayers for relief below.

## COUNT VI

### MISAPPROPRIATION OF CONFIDENTIAL AND PROPRIETARY INFORNIATION, INTERFERENCE WITH CONTRACT AND VIOLATION OF FLORIDA STATUTES, CHAPTER 688

(Gersten Financial and First American)

47.    Plaintiffs incorporate herein by reference and reallege as if set forth in full herein the allegations contained in paragraphs 1-17 hereof.

48.    As a result of his employment by and positions as an officer of North American, Gersten has a contractual and fiduciary obligation not to disclose any trade secrets or confidential information he acquired during the course of his employment. He also has a common law duty not to use or disclose trade secrets and confidential information belonging to North American and any such disclosure constitutes a violation of the common law and Florida Statutes Chapter 688.

49.    Defendants Gersten Financial and First American knew or should have known of Gersten's contractual, common law and statutory duties to North American and their duty not to use or disclose to any third party any of North American's confidential or proprietary information.

50.    By participation in Gersten's misappropriation of North American's confidential and proprietary business information, and receiving and using, said information for themselves and to compete with North American, Gersten Financial and First American have interfered and are continuing to interfere with North American's contractual relations with Gersten and are continuing to participate with him in his breach of his contractual, common law and statutory obligations as referred to above and are themselves in violation of the common law and Florida Statutes Chapter 688.

14

51.    North American has been and is continuing to be irreparably harmed by the unauthorized disclosure and use of its confidential and proprietary information as aforesaid.

52.    North American is entitled to injunctive relief to prevent such continued disclosure and use, i.e. by temporarily, preliminarily and permanently enjoining defendants as requested in the prayers for relief with regard to Count VII below.

53.    North American is also entitled to the damages caused by the unauthorized disclosure of its confidential and proprietary information as aforesaid in an amount to be proved at trial.

**COUNT VII**

**BREACH OF DUTY OF GOOD FAITH AND LOYALTY
TO ZALIS AND THE ZALIS LIMITED PARTNERSHIP**

(Gersten)

54.    Plaintiffs incorporate herein by reference and reallege as if set forth in full herein the allegations contained in paragraphs 1-17 hereof.

55.    As an officer, director and 50% shareholder of North American Gersten owed to the other shareholder, the Zalis Limited Partnership, a duty of utmost good faith and loyalty in the operation of North American.

56.    Defendant Gersten has, by his actions alleged above, breached his fiduciary duties of utmost good faith and loyalty to the Zalis Limited Partnership.

57.    The Zalis Limited Partnership has been irreparably harmed and is continuing to be irreparably harmed by the aforesaid acts.

58.    Because such damages are difficult to determine and may be impossible to recover, a damages remedy is wholly inadequate to compensate the Zalis Limited Partnership and Zalis.

## COUNT VIII

## BREACH OF M.G.L. c. 93A

(All Defendants)

59.     Plaintiffs incorporate herein by reference and reallege as if set forth in full herein the allegations contained in paragraphs 1-17 hereof.

60.     The parties hereto are engaged in "trade or commerce" as those terms are defined and used in Massachusetts General Laws Chapter 93A, and the actions alleged herein occurred primarily within the Commonwealth of Massachusetts.

61.     The above-referenced acts of the defendants constitute unfair or deceptive trade practices and are a willful and knowing violations of G.L. c. 93A, §§ 2 and 11.

62.     As a result of the above-referenced violations of G.L. c. 93A, North American has suffered and will continue to suffer immediate and irreparable injury to its business, including the loss of sales, loss of customers, and loss of income, unless enjoined by this Court.

## COUNT IX

## ACCOUNTING

(All Defendants)

63.     Plaintiffs incorporate herein by reference and reallege as if set forth in full herein the allegations contained in paragraphs 1-17 hereof.

64.     As a result of the actions of defendants as aforesaid, there are assets and sums held by the defendants that belong to the plaintiffs in this action.

65.     Defendants have never rendered an accounting of the funds and assets that they have misappropriated from Plaintiffs.

66.     Plaintiffs are unable to determine the amounts due to them on account of defendants actions without an accounting.

16

67.    Accordingly, defendants are liable to the plaintiffs to render an accounting for the
monies and assets they have misappropriated as set forth above and further to return to and
reimburse the plaintiffs for said assets and monies plus interest, costs and reasonable attorneys
fees.

## COUNT X

### CONSTRUCTIVE TRUST

(Gersten, Gersten Financial and First American)

68.    Plaintiffs incorporate herein by reference and reallege as if set forth in full herein
the allegations contained in paragraphs 1-17 hereof.

69.    As a result of Gersten's actions as aforesaid, Gersten, Gersten Financial and First
American have received and are in the possession of assets that rightfully belong to North
American.

70.    Said assets are held in an equitable constructive trust for North American.

71.    North American is entitled to a return of said assets.

## COUNT XI

### (QUASI-CONTRACT/UNJUST ENRICHMENT
### (All Defendants)

72.    Plaintiffs incorporates herein by reference and realleges as if set forth in full
herein the allegations contained in paragraphs 1-17 hereof.

73.    By reason of the events, conditions acts and practices described above,
Defendants, and each of them, received substantial benefits from Gersten's association with
Zalis, much of which benefits resulted from the substantial efforts of Zalis in building the
business of North American.  These benefits included the financial benefits received from the
combined operations of the companies in excess of what Zalis or the Zalis Limited Partnership

17

received, and the use of the assets of North American, including the List, to the exclusion of Zalis or the Zalis Limited Partnership. Defendants have accepted and retained the benefits conferred. The circumstances are such that it would be inequitable for them to retain these benefits without paying fair value to Zalis and the Zalis Family Partnership therefor.

74.     As a direct and proximate result, Zalis and the Zalis Family Partnership have been damaged.

## COUNT XII

### BREACH OF CONTRACT
### (Gersten)

75.     Plaintiffs incorporates herein by reference and realleges as if set forth in full herein the allegations contained in paragraphs 1-17 hereof.

76.     By reason of the events, conditions acts and practices described above, and, in particular, Paragraphs 9 to 17, Gersten breached the Shareholder Agreement with Zalis referred to in Paragraph 7 above.

77.     As a direct and proximate result, Zalis has been damaged.

## PRAYERS FOR RELIEF

WHEREFORE plaintiff respectfully requests that the Court issue relief as follows:

1.  On Count I,

    a.  Issue preliminary and permanent injunctions in appropriate form against defendant Gersten;

    b.  Enter judgment against Gersten awarding North American damages in such amount as is proved at trial, plus interest and costs; and

c.  Enter judgment against Gersten awarding North American such other and further relief as the Court deems just.

2.  On Count II,

a.  Issue preliminary and permanent injunctions in appropriate form   defendants Gersten, Gersten Financial and First American;

b.  Enter judgment against defendants Gersten, Gersten Financial and First American awarding North American damages in such amount as is proved at trial, plus interest and costs; and

c.  Enter judgment against Gersten, Gersten Financial and First American awarding North American such other and further relief as the Court deems just.

3.  On Count III,

a.  Issue preliminary and permanent injunctions in appropriate form against defendant Gersten;

b.  Enter judgment against Gersten awarding North American damages in such amount as is proved at trial, plus interest and costs; and

c.  Enter judgment against Gersten awarding North American such other and further relief as the Court deems just.

4.  On Count IV,

a.  Issue preliminary and permanent injunctions in appropriate form against defendants Gersten, Gersten Financial and First American;

b.  Enter judgment against Gersten Financial and First American awarding North American damages in such amount as is proved at trial, plus interest and costs including reasonable attorneys fees; and

19

    c.  Enter judgment against Gersten Financial and First American awarding North American such other and further relief as the Court deems just.

    5.  On Count V,

       a.  Issue preliminary and permanent injunctions in appropriate form against defendant Gersten;

       b.  Enter judgment against Gersten awarding North American damages in such amount as is proved at trial, plus interest and costs; and

       c.  Enter judgment against Gersten awarding North American such other and further relief as the Court deems just.

    6.  On Count VI,

       a.  Issue preliminary and permanent injunctions in appropriate form against defendants Gersten Financial and First American;

       b.  Enter judgment against Gersten awarding North American damages in such amount as is proved at trial, plus interest and costs; and

       c.  Enter judgment against Gersten awarding North American such other and further relief as the Court deems just.

    7.  On Count VII,

       a.  Issue preliminary and permanent injunctions in appropriate form against defendants Gersten, Gersten Financial and First American;

       b.  Enter judgment against Gersten awarding the Zalis Limited Partnership damages in such amount as is proved at trial, plus interest and costs; and

       c.  Enter judgment against Gersten awarding the Zalis Limited Partnership such other and further relief as the Court deems just.

    8.  On Count VIII,

        a.  Issue preliminary and permanent injunctions in appropriate form against all

defendants;

        b.  Enter judgment against all defendants awarding North American and the Zalis

Limited Partnership damages in such amount as is proved at trial trebled, plus interest and costs;

and

        c.  Enter judgment against all defendants awarding North American and the Zalis

Limited Partnership such other and further relief as the Court deems just.

    9.  On Count IX,

        a.  Order an accounting from each of the defendants with regard to the acts and

practices complained of herein, including but not limited to:  the payment of personal expenses

on behalf of Gersten or his family; the diversion of business from North American-Massachusetts

or North American-Florida to Gersten Financial, Gersten or First American; excess benefits

received by Gersten from the operation of the joint enterprise; and any other violative or

wrongful act as found by the jury herein.

        b.  Enter judgment against all defendants awarding North American, Zalis and/or

the Zalis Limited Partnership damages in such amount as is established pursuant to said

accounting, plus interest and costs; and

        c.  Enter judgment against all defendants awarding North American, Zalis and/or

the Zalis Limited Partnership such other and further relief as the Court deems just.

    10. On Count X,

        a.  Enter an Order declaring that the assets of North American that were

misappropriated by defendants are held in constructive trust for North American;

b.  Enter judgment against all defendants awarding North American and the Zalis Limited Partnership damages in such amount as is held in said trusts, plus interest and costs including reasonable attorneys fees; and

c.  Enter judgment against all defendants awarding North American and the Zalis Limited Partnership such other and further relief as the Court deems just.

11.  On Count XI,

a.  Enter judgment against all defendants awarding Zalis and the Zalis Limited Partnership damages in such amount as is proved at trial, plus interest and costs; and

b.  Enter judgment against all defendants awarding Zalis and the Zalis Limited Partnership such other and further relief as the Court deems just.

12.  On Count XII,

a.  Enter judgment against Gersten awarding Zalis damages in such amount as is proved at trial, plus interest and costs; and

b.  Enter judgment against Gersten awarding Zalis such other and further relief as the Court deems just.

## PUNITIVE DAMAGES

Plaintiffs reserve the right to amend this Complaint to add a request for punitive damages at such time as Plaintiffs can present evidence that such damages are appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as to all issues so triable.

Respectfully submitted,

RICHARD E. BRODSKY, P.A.
25 SE Second Ave., Suite 919
Miami, Florida 33131
(305) 755-9470 (telephone)
(305) 381-7708 (facsimile)


_____
RICHARD E. BRODSKY
Fla. Bar No. 322520

KOTIN, CRABTREE & STRONG, LLP
1 Bowdoin Square
Boston, MA 02114
(617) 227-7031 (telephone)
(617) 367-2988 (facsimile)


_____
Richard C. Heidlage, BBO No. 228940
Of Counsel
Counsel for Plaintiffs, *Pro Hac Vice*

Dated: July 15, 2002

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served via telecopier and first class mail, postage prepaid upon the following attorney(s) of record: Adam J. Lamb, Esq. and Andrew C. Hall, Esq., Hall, David and Joseph, P.A., 1428 Brickell Avenue, Miami, FL 33131, Douglas B. Otto, Esq. and Nicholas A. Alexander, Morrison, Mahoney & Miller LLP, 250 Summer Street, Boston, MA 02210 on July 15, 2002.


_____

23

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FILED by ⟨⟩ D.C.

JUL 29 2002

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S. D. OF FLA.

CASE NO. 01-432-CIV-GOLD/SIMONTON

CHARLES N. ZALIS, individually, and
as General Partner of the CHARLES N.
ZALIS FAMILY LIMITED PARTNERSHIP,
and NOTH AMERICAN UNDERWRITING
MANAGERS, INC.

      Plaintiffs,

v.

ALLAN D. GERSTEN, GERSTEN FINANCIAL
& INSURANCE, INC., and FIRST AMERICAN
INSURANCE UNDERWRITERS, INC.,

      Defendants.

_____/

## OMNIBUS ORDER AND RECOMMENDATIONS

This Omnibus Order and Recommendations addresses all matters referred to the undersigned Magistrate Judge, pursuant to the Orders of Reference entered by the Honorable Alan S. Gold, United States District Judge, on June 28, 2002 (DE #207) and on July 16, 2002 (DE #228). This Order does not address whether an accounting should be determined by a jury or as a matter in equity by the Court, and whether Rule 11 sanctions should be imposed. Those matters will be addressed by separate Order.

### I. BACKGROUND

Plaintiffs have filed a twelve-count Amended Complaint (DE #112, filed 9/6/01) seeking injunctive relief and damages from Defendants stemming from their former business relationship. The Plaintiffs are CHARLES ZALIS, individually and as the General Partner of the CHARLES ZALIS FAMILY LIMITED PARTNERSHIP ("ZALIS FAMILY PARTNERSHIP"), and NORTH AMERICAN UNDERWRITING MANAGERS, INC. ("NORTH AMERICAN–FLORIDA"). The Defendants are ALLAN D. GERSTEN, GERSTEN FINANCIAL

EXHIBIT

K

255 fr

& INSURANCE, INC. ("GERSTEN FINANCIAL") and FIRST AMERICAN INSURANCE UNDERWRITERS, INC. ("FIRST AMERICAN").

GERSTEN and GERSTEN FINANCIAL have filed a ten-count counterclaim against ZALIS and NORTH AMERICAN.

A. Facts

The following facts are taken from the Joint Pretrial Stipulation (DE #174), and are undisputed except as otherwise stated. At all times material to this lawsuit, NORTH AMERICAN–FLORIDA was a Florida corporation that brokered insurance to agents who then sold the insurance to their individual clients. (DE #174 at 15). Prior to September 1997, either ZALIS or the ZALIS FAMILY PARTNERSHIP was the sole shareholder of NORTH AMERICAN–FLORIDA and ZALIS was its President and sole director.

The corporate defendants are Massachusetts corporations. At all relevant times, GERSTEN was the President, Director and sole shareholder of GERSTEN FINANCIAL and FIRST AMERICAN.   GERSTEN FINANCIAL was formed in 1980. FIRST AMERICAN was formed on December 18, 2000,[1] and began operating in approximately February 2001.

North American Underwriting Managers Insurance Agency, Inc. ("North American–Massachusetts") is not a party to this action. It was incorporated under the laws of Massachusetts in 1999 to hold licenses and conduct business in the name of NORTH AMERICAN in the state of Massachusetts, since under Massachusetts law NORTH AMERICAN–FLORIDA was unable to conduct such business in the state of Massachusetts. GERSTEN and ZALIS were each a 50% shareholder and directors of

---

[1] Although the Pretrial Stipulation states that FIRST AMERICAN was formed on December 18, 2001, rather than 2000, this is appears to be a typographical error. (DE #174 at 17).

2

North American–Massachusetts.

On September 1, 1997, ZALIS and GERSTEN reached an oral agreement regarding their business relationship. Plaintiffs refer to this agreement in the First Amended Complaint as a shareholders' agreement (DE #112 ¶7). The parties agree that there was an agreement, but disagree over the terms of that agreement. In pertinent part, Plaintiffs contend that ZALIS and GERSTEN agreed to pool their respective business insurance businesses and run them as one company. The ZALIS FAMILY PARTNERSHIP would transfer one-half the stock of NORTH AMERICAN–FLORIDA to GERSTEN, and GERSTEN would transfer one-half of the stock of GERSTEN FINANCIAL to the ZALIS FAMILY PARTNERSHIP. Plaintiffs further contend that in August 1998, the parties agreed that they would complete the unification of their businesses by transferring all of the stock of GERSTEN FINANCIAL to NORTH AMERICAN–FLORIDA. The operations of GERSTEN FINANCIAL were to be phased out so that eventually all of the business would be conducted in the name of NORTH AMERICAN–FLORIDA or its affiliates in various states.

According to Plaintiffs, GERSTEN handled all of the operational and financial management aspects of the business, and ZALIS was responsible for building the business through marketing and advertising, and acquiring and developing additional insurance products. Under the agreement, both ZALIS and GERSTEN were to be compensated equally.

Defendants contend that the agreement was that GERSTEN would receive one-half of the stock of NORTH AMERICAN–FLORIDA, and would contribute a $1,000.00 check, his insurance relationships and brokerage infrastructure. GERSTEN and GERSTEN FINANCIAL agreed that after paying their own expenses, they would fund NORTH AMERICAN–FLORIDA by depositing overrides and bonuses derived from new

3

business accruing after September 1997, into the NORTH AMERICAN accounts. Defendants contend that transferring the stock of GERSTEN FINANCIAL was never part of the arrangement, and that GERSTEN's personal production and GERSTEN FINANCIAL's retail commission income were to remain with GERSTEN and GERSTEN FINANCIAL.

The parties agree that any revenues resulting from insurance policies procured prior to September 1, 1997, and renewals of those policies were to be retained by ZALIS and GERSTEN, and were not to be shared as a part of their arrangement going forward. (DE #174 at 18).

It is undisputed that after September 1997, the principal administrative functions of the joint business were conducted in the Massachusetts office, and that GERSTEN FINANCIAL, North American–Massachusetts and NORTH AMERICAN–FLORIDA each had separate tax identification numbers and maintained separate bank accounts in Massachusetts. NORTH AMERICAN–FLORIDA also had an account in the First Western Bank in Florida that was maintained and controlled by ZALIS. Commission income from several insurance companies, including West Coast Life Insurance Company, was deposited into this account by check or electronic funds transfer. Some of the funds deposited into this account were attributable to policies procured after September 1, 1997. GERSTEN contends that this account was concealed from him, and that ZALIS used this account to embezzle funds that rightfully belonged to NORTH AMERICAN–FLORIDA.

In approximately November 2000, GERSTEN advised ZALIS that he was terminating their relationship.

The parties agree that ZALIS and GERSTEN owed each other a fiduciary

4

duty (DE #174 at 22).

### B. Description of Plaintiffs' Claimed Damages

Plaintiffs have identified their damages in three categories (DE #190, attached Summary of Damages Claim):

Category 1: Gersten Excess Draws – Plaintiffs contend that the agreement between ZALIS and GERSTEN was that they would each receive equal amounts from their joint insurance business. Plaintiffs contend that GERSTEN withdrew $950,429 more than ZALIS, as detailed exhibits A-1 and A-2 of their damage summary, marked for trial as exhibits 155 and 156.

Category 2: NORTH AMERICAN – Plaintiff NORTH AMERICAN–FLORIDA seeks recovery of revenues received by GERSTEN, First American and the deposits into the North American–Massachusetts accounts in the amount of $1,478,892.97, as set forth in Exhibit B of their damage summary, marked for trial as exhibits 75, 96, 97, 101 and 104. These damages consist of money that was deposited into the bank accounts of GERSTEN FINANCIAL for the years 2000 and 2001, and into the bank account of FIRST AMERICAN for the year 2001.

Category 3: Loss of Value of Business – Plaintiffs contend that Defendants owe Plaintiffs one-half the value of North American-Massachusetts, NORTH AMERICAN-FLORIDA, and GERSTEN FINANCIAL as of January 1, 2001, which is the date Plaintiffs allege that defendants improperly transferred the business of North American-Massachusetts, NORTH AMERICAN-FLORIDA, and GERSTEN FINANCIAL to FIRST AMERICAN.

In addition to the monetary damages described above, Plaintiffs also seek other relief, specified in Category 4, in the form of specific performance of the transfer of 100%

of the stock of GERSTEN FINANCIAL and FIRST AMERICAN to NORTH

AMERICAN–FLORIDA, and an accounting. Although appointment of a receiver is also

specified in the damage summary, Plaintiffs advised the Court at the hearing that they no

longer seek appointment of a receiver.

C. Choice of Law

At the hearing before the undersigned on July 19, 2002, the parties agreed that

Florida law and Massachusetts law are the same with respect to all matters except for

the statutory counts, and with respect to the measure of damages for loss of corporate

opportunities. Where the laws of the two possible states are not in conflict, no

comprehensive conflicts-of-law analysis is necessary. Tune v. Philip Morris, Inc., 766

So. 2d 350, 353 (Fla. 2d Dist. 2000); Del Monte Fresh Produce Co. v. Dole Food Co., 148 F.

Supp. 2d 1326, 1334 (S.D. Fla. 2001). With respect to the measure of damages for loss of

corporate opportunities of NORTH AMERICAN–FLORIDA, the parties agree that the law

of Florida would apply; with respect to damages for loss of corporate opportunities of

North American–Massachusetts, the law of Massachusetts would apply.

D. Description of the First Amended Complaint

The general allegations of the Complaint set forth the facts upon which Plaintiffs

rely to support their various claims for relief. These facts which form the breach of

fiduciary duties and statutory causes of action are contained primarily in paragraphs 9

through 14 of the Complaint, and are summarized as follows in the Plaintiffs' Statement

of the Facts contained in the Joint Pretrial Stipulation:

> Mr. Gersten never transferred any of the stock in Gersten
> Financial to Mr. Zalis or to North American-Florida, as had been
> agreed. Mr. Gersten also failed to do the paperwork necessary
> to carry out the parties' agreement. In addition, he ran North
> American-Florida and Gersten Financial as if he were their only

owner.  For example, he did not assign to North American-Florida commissions he or Gersten Financial were to receive; he falsified the books of North American-Florida by failing to account for payments made to him, making it appear that he was still owed that money; and he registered North American's web site, Betterideaspeople.com, and email accounts in Gersten Financial's name.  In addition, he did not split the net proceeds of the business 50/50 with Mr. Zalis, used North American-Florida's money to repair the office building he and his wife owned, paid excessive salary to his relatives, whom he put on the various companies payrolls, and paid his personal expenses out of the companies' funds.  He also refused to pay legitimate expenses associated with North American's Florida office.  Finally, he kept inaccurate and incomplete accounting records and kept accounting information from Mr. Zalis.

In January 2001, while still an officer and 50% shareholder of North American, Mr. Gersten formed a new company, First American, and transferred to it all of the personnel, business and assets of North American, while continuing to keep for himself, in violation of his agreement with Mr. Zalis, all of the contracts, revenues and other assets of Gersten Financial.

(DE #174 at 6-7).  The Complaint contains more detailed allegations of the alleged

improprieties of defendant GERSTEN, including allegations of wasteful acts, failure to

establish effective internal controls, and mismanagement.

The following is a description of each count in the  First Amended Complaint,

which identifies the relevant parties, the categories of damages that Plaintiff(s) seek(s)

to recover, and the applicable choice of law.

Count 1 alleges breach of fiduciary duty owed to NORTH AMERICAN–FLORIDA by

defendant Gersten, seeking injunctive relief and damages.  As damages, NORTH

AMERICAN–FLORIDA seeks recovery of all three categories of damages, as well as

injunctive relief.  The parties agree that there is no difference in the law, and Florida law

therefore applies.

Count 2 alleges diversion of corporate opportunities belonging to NORTH

7

AMERICAN–FLORIDA by defendants GERSTEN, GERSTEN FINANCIAL, and FIRST
AMERICAN.  Plaintiff alleges that defendant GERSTEN, in concert with his corporate co-
defendants,  diverted insurance brokerage business opportunities, broker relationships
and other business opportunities to himself and his corporate co-defendants.  NORTH
AMERICAN–FLORIDA seeks recovery of all three categories of damages, and injunctive
relief. Regarding choice of law, the parties agree that Florida law would apply to the
diversion of corporate opportunities with respect to plaintiff NORTH AMERICAN–
FLORIDA, and Massachusetts law would apply with respect to the diversion of corporate
opportunities of non-party North American–Massachusetts.  Defendant contends that
there is no claim for relief with respect to corporate opportunities of non-party North
American–Massachusetts, and therefore there is no need to apply Massachusetts law.
Plaintiffs stated that they were likely to limit their claim to plaintiff NORTH AMERICAN–
FLORIDA, but were not prepared to do so at the hearing.  Plaintiff NORTH AMERICAN–
FLORIDA  could not articulate a theory under which it would be entitled to recover for
the lost corporate opportunities of North American–Massachusetts.  North
American–Massachusetts was a separate entity incorporated under the laws of
Massachusetts, with GERSTEN and ZALIS as the sole shareholders.

　　　Count 3 alleges misappropriation of Confidential and proprietary information
belonging to NORTH AMERICAN–FLORIDA by defendant GERSTEN under common law
and Massachusetts General Laws, chapter 93, §§ 42 and 42A, and chapter 93A, § 11.
NORTH AMERICAN–FLORIDA seeks recovery of category three damages (loss of value
of business), and injunctive relief.  The parties agree that Massachusetts law applies.

　　　Count 4 alleges misappropriation of confidential and proprietary information of
NORTH AMERICAN–FLORIDA by GERSTEN FINANCIAL and FIRST AMERICAN, and

8

interference with contract, under common law and Massachusetts General Laws,

chapter 93, §§ 42 and 42A, and chapter 93A, § 11. NORTH AMERICAN–FLORIDA seeks

recovery of category three damages (loss of value of business), and injunctive relief.

The parties agree that Massachusetts law applies.

Count 5 alleges misappropriation of confidential and proprietary information of

NORTH AMERICAN–FLORIDA by defendant GERSTEN, under common law and Florida's

Uniform Trade Secrets Act, Fla. Stat. § 688.001 et. seq. NORTH AMERICAN–FLORIDA

seeks recovery of category three damages (loss of value of business), and injunctive

relief. The parties agree that Florida law applies.

Count 6 alleges misappropriation of confidential and proprietary information and

interference with contract, of NORTH AMERICAN–FLORIDA by defendants GERSTEN

FINANCIAL and FIRST AMERICAN, under common law and Florida's Uniform Trade

Secrets Act, Fla. Stat. § 688.001 et. seq. NORTH AMERICAN–FLORIDA seeks recovery of

category three damages (loss of value of business), and injunctive relief. The parties

agree that Florida law applies.

Count 7 alleges breach of the duty of good faith and loyalty owed by defendant

GERSTEN to plaintiff ZALIS FAMILY PARTNERSHIP. Plaintiff seeks recovery of all three

categories of damages, and possibly injunctive relief.[2] The parties agree that there is no

substantive difference in the law of Massachusetts and the law of Florida, and therefore

Florida law applies.

---

[2] It is unclear whether injunctive relief is sought with respect to Count VII; it is not
sought in the body of the Count, as it is with respect to all other counts where injunctive
relief is sought; however, it is included in the prayer for relief at the end of the
Complaint. In addition, although the caption of Count VII includes Plaintiff ZALIS, the
body of the Count only alleges a breach of fiduciary duty owed to ZALIS FAMILY
PARTNERSHIP.

9

Count 8 alleges that all defendants committed unfair and deceptive trade practices as to plaintiff NORTH AMERICAN–FLORIDA under Massachusetts General Laws, chapter 93A, §§2 and 11. Plaintiff NORTH AMERICAN–FLORIDA seeks recovery of all three categories of damages and injunctive relief. The parties agree that Massachusetts law applies.

Count 9 seeks an accounting from all defendants of the amounts of money allegedly misappropriated from all Plaintiffs. The parties agree that Florida law applies.

Count 10 seeks to impose a constructive trust for the benefit of plaintiff NORTH AMERICAN–FLORIDA with respect to the assets received by and in the possession of all defendants, and which rightfully belong to NORTH AMERICAN–FLORIDA. The parties agree that Florida law applies.

Count 11, which seeks appointment of a receiver, has been withdrawn by Plaintiff.

Count 12 alleges defamation of Plaintiff ZALIS by Defendant GERSTEN, in connection with statements allegedly made by GERSTEN that ZALIS had stolen money from NORTH AMERICAN–FLORIDA. Plaintiff ZALIS has not specified particular damages, but contends that the statements were defamatory per se, and damages are presumed in an amount to be determined by the jury. The parties agree that there is no substantive difference in the law, and therefore Florida law applies.

A chart summarizing the above information is attached to this Order.

E.  DESCRIPTION OF THE COUNTERCLAIM

GERSTEN and GERSTEN FINANCIAL have filed a ten-count counterclaim against ZALIS and NORTH AMERICAN–FLORIDA.

In Count 1, GERSTEN has brought a shareholder derivative claim for conversion against ZALIS, alleging that ZALIS converted approximately $500,000.00 belonging to

10

plaintiff corporation NORTH AMERICAN–FLORIDA and non-party North American
Underwriting Managers Insurance Agency, Inc. ("North American-Massachusetts").
GERSTEN, on behalf of NORTH AMERICAN--FLORIDA and North American-
Massachusetts seeks damages from ZALIS. The parties agree that Florida law applies.

In Count 2, GERSTEN has brought a shareholder derivative claim for diversion of
corporate assets against ZALIS, alleging that ZALIS diverted funds belonging to plaintiff
corporation NORTH AMERICAN–FLORIDA and non-party North American-Massachusetts
by transferring funds into a separate bank account in Florida. GERSTEN, on behalf of
NORTH AMERICAN–FLORIDA and North American-Massachusetts seeks damages from
ZALIS. The parties agree that Florida law applies.

In Count 3, GERSTEN has brought a shareholder derivative claim for breach of
fiduciary duty against ZALIS, alleging that ZALIS diverted funds that were loaned by
GERSTEN and GERSTEN FINANCIAL to plaintiff corporation NORTH AMERICAN–
FLORIDA for operating expenses, and used those funds for personal use. GERSTEN, on
behalf of NORTH AMERICAN–FLORIDA and North American-Massachusetts seeks
damages from ZALIS. The parties agree that Florida law applies.

In Count 4, GERSTEN alleges a breach of contract against ZALIS, alleging that
ZALIS breached his implied covenant of good faith and fair dealing in connection with
their agreement to enter into the wholesale insurance business as equal partners to
share in the profits of plaintiff NORTH AMERICAN–FLORIDA by failing to provide
GERSTEN with 50% of the profits, failing to generate sufficient income for NORTH
AMERICAN–FLORIDA, failing to provide sufficient marketing, and misappropriating
funds. GERSTEN seeks compensatory damages from ZALIS. The parties agree that
there is no substantive difference in the law of Massachusetts and the law of Florida

11

applies.

In Count 5, GERSTEN alleges breach of fiduciary duty by ZALIS, alleging that ZALIS diverted funds GERSTEN loaned to NORTH AMERICAN–FLORIDA for his own use and benefit, and misappropriated funds belonging to NORTH AMERICAN–FLORIDA by depositing them in a bank account in Florida. GERSTEN seeks compensatory damages from ZALIS. The parties agree that the law of Florida applies.

In Count 6, GERSTEN and GERSTEN FINANCIAL seek recovery from NORTH AMERICAN–FLORIDA of money lent to NORTH AMERICAN–FLORIDA for operating expenses. As damages, GERSTEN and GERSTEN FINANCIAL seek recovery of $540,000 in loans and deferred salary never taken by GERSTEN. The parties agree that the law of Massachusetts apply, although they also agree that there is no substantive difference between the law of Florida and the law of Massachusetts.

In Count 7, GERSTEN and GERSTEN FINANCIAL alleged unjust enrichment against NORTH AMERICAN–FLORIDA, seeking recovery of loans made by GERSTEN and GERSTEN FINANCIAL. The parties agree that the law of Florida applies.

In Count 8, GERSTEN and GERSTEN FINANCIAL allege unjust enrichment against ZALIS, seeking recovery of monies lent to NORTH AMERICAN–FLORIDA that ZALIS wrongfully misappropriated. The parties agree that the law of Florida applies.

In Count 9, GERSTEN and GERSTEN FINANCIAL sought an accounting from ZALIS and NORTH AMERICAN–FLORIDA; however, at the hearing they announced that this claim was withdrawn, and an accounting is no longer sought.

In Count 10, GERSTEN and GERSTEN FINANCIAL seek recovery for unfair and deceptive trade practices under Massachusetts General Laws, chapter 93A. The parties agree that Massachusetts law applies.

12

II.   **MOTION FOR LEAVE TO AMEND FIRST AMENDED COMPLAINT (DE #221) IS DENIED.**

On July 12, 2002, Plaintiffs filed a Motion for Leave to Amend First Amended Complaint (DE #221). The Proposed Second Amended Complaint (DE #226--corrected version; redlined First Amended Complaint contained at DE #224) makes various typographical changes, adds a specification that the assets allegedly misappropriated included a confidential list of 15,000 life insurance agents who had expressed an interest in doing business with NORTH AMERICAN, adds two counts, and eliminates two counts. This motion has been fully briefed and argued (DE ##224, 236, 243, 244, 245).

Plaintiffs seek to add a new Count 11, which seeks recovery against all defendants based upon theories of quasi-contract and unjust enrichment. In this Count, Plaintiffs alleged that the defendants received substantial benefits from GERSTEN's association with ZALIS, much of which resulted from the substantial efforts of ZALIS in building the business of North American, including financial benefits received from the combined operations of the companies, in excess of the what ZALIS and the ZALIS FAMILY PARTNERSHIP received, and that it would be inequitable to permit them to retain those benefits. The initial Complaint filed in this action contained a count seeking recovery under this theory for unjust enrichment (DE #1, Notice of Removal, Ex. A); that Count was dropped when the First Amended Complaint was filed.

Plaintiff ZALIS also seeks to add a new Count 12, which is a breach of contract claim against GERSTEN. Plaintiff ZALIS alleges that GERSTEN breached the Shareholders' Agreement under which ZALIS and GERSTEN agreed to pool their insurance businesses. The initial Complaint filed in this action also contained a Count seeking recovery from GERSTEN for Breach of Shareholders' Agreement (DE #1, Notice

13

of Removal, Ex. A)., and this Count was dropped when the First Amended Complaint was filed.

Plaintiffs omit their claim for a receivership and their claim for defamation in the proposed Second Amended Complaint.

Plaintiffs argue strenuously that the changes and additional counts will not prejudice Defendants, and that all discovery on these matters has already been concluded. Defendants respond that these theories of recovery were dropped from the case with the filing of the First Amended Complaint, that they would be required to conduct additional discovery regarding the changes, that they are not prepared to address these new theories, and that requiring Defendants to devote time and attention to preparation of legal and factual defenses so close to the trial date will deprive them of valuable trial preparation time. Relying on <u>Sosa v. Airprint Systems, Inc.</u>, 133 F.3d 1417 (11th Cir. 1998), Defendants contend that Plaintiffs have failed to establish good cause for permitting an Amended Complaint past the deadline of June 1, 2001, established under this Court's Scheduling Order, entered pursuant to Fed. R. Civ. P. 16(b) (DE #100). The Scheduling Order was entered on August 20, 2001, and therefore the deadline for amending pleadings had passed; although Plaintiffs were permitted to file their First Amended Complaint on September 6, 2001 (DE #124). Defendants also contend that an amendment at this late date is impermissible under Fed. R. Civ. P. 15 since the delay was unjustified, the proposed amendments interject new issues into the lawsuit, and the Defendants are prejudiced in their ability to address these issues, both factually and legally, where the amendment is proposed so close to the trial date.

At the outset, the undersigned Magistrate Judge notes that the proposed Amended Complaint was filed after the scheduled trial date in this case, and during the

14

period of time the trial was delayed for specific purposes related to damages and expert testimony. Prejudice and undue delay are inherent in an amendment asserted after the close of discovery and after the time has expired for filing dispositive motions. Campbell v. Emory Clinic, 166 F.3d 1157, 1161-62 (11th Cir. 1999); Technical Resource Services, Inc. v. Dornier Medical Systems, Inc., 134 F.3d 1458, 1463-64 (11th Cir. 1998) (trial count did not abuse its discretion in denying motion to amend made after the close of discovery, with trial five months away, on the ground that the plaintiff had known of the new claim for several months, but had failed to move to amend sooner, and that granting motion would delay trial).

Plaintiffs have offered no good reason for the untimely filing of this motion, and allowing the amendment would result in undue delay and prejudice to Defendants. See Dickerson v. Alachua County Commission, 200 F.3d 761, 767, n. 7 (11th Cir. 2000). Defendants allege that the purpose of the amendment is to avoid the defenses that have been asserted in their motion in limine to exclude damages, and to avoid the defense that Plaintiffs claims are barred by the economic loss rule, and argue that all facts which form the basis for the relief claimed in the proposed amendments were well known to Plaintiffs at the time they filed their initial complaint.

Therefore, based upon a review of the record as a whole, and considering the memoranda filed by the parties and the oral argument, the undersigned Magistrate Judge finds and concludes that Plaintiffs have failed to establish good cause to permit the amended complaint, and that the Defendants would be unduly prejudiced if the amended complaint were permitted at this time. In reaching this conclusion, the undersigned Magistrate Judge does not address the issue of whether the issue of the allegedly misappropriated list of insurance agents is included within the claims set forth

15

in the First Amended Complaint.  However, it should be noted that there are no damages allocated to this, or any other specific item allegedly misappropriated; although it appears that injunctive relief has been claimed with respect to allegedly misappropriated property.

III.    DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS' PROPOSED TESTIMONY OF ITS RULE 701 WITNESS, CHARLES N. ZALIS REGARDING DAMAGES (DE #216) IS GRANTED

Defendants seek to exclude the lay opinion testimony of Plaintiff ZALIS regarding damages (DE #216, filed 7/12/02).  The relief sought in this motion is part of the same relief that was sought in Defendants' earlier Motion To Exclude Testimony of Charles Zalis on Loss of Value of Business (DE #185).  The issue presented is whether Plaintiff ZALIS can be permitted to offer his lay opinion testimony concerning the value of NORTH AMERICAN–FLORIDA, which is specified as category 3 of Plaintiffs' damages. Defendants contend that this testimony is expert testimony being offered under the guise of lay opinion testimony, and thus barred by the failure of Plaintiffs to designate an expert witness, by the fact that ZALIS does not have the background and experience to qualify as an expert witness, and by the fact that ZALIS opinion is not based upon reliable principles and methods.  This matter has been fully briefed (DE ##190, 204, 217, 234, 235, 240, 241).  The undersigned Magistrate Judge held an evidentiary hearing at which ZALIS testified concerning his opinion regarding damages.

In Category 3 of its specification of damages, Plaintiffs seek to recover what they denominate as  "Loss of Value of Business."  Plaintiffs have provided the following description of these damages, which they intend to introduce through the lay opinion testimony of Plaintiff ZALIS :

Defendants owe damages to Plaintiffs in the amount of

16

half the value of North American–Massachusetts, NORTH AMERICAN–FLORIDA, and GERSTEN FINANCIAL on or about January 1, 2001, when Defendants improperly transferred the business of North American–Massachusetts, NORTH AMERICAN–FLORIDA, and GERSTEN FINANCIAL to FIRST AMERICAN. The rule of thumb used in valuing a life insurance brokerage business, with which Mr. ZALIS was personally familiar, is a multiple of 6 times the pre-tax earnings (i.e., benefits received by the owner(s) of the business (salary, bonuses, and fringes). Mr. Zalis further knew that a brokerage business can be expected to net 22% of gross collected premiums.

Defendants told Mr. Zalis at or about that time that the company had produced approximately $3.6 million in gross commissions. On the basis of that number and the above rules of thumb, Mr. ZALIS believes that the value of North American–Massachusetts, NORTH AMERICAN– FLORIDA, and GERSTEN FINANCIAL at that time was approximately $4,752,000.

Plaintiffs do not contend that ZALIS is qualified as an expert witness, and they

do not offer this testimony as expert testimony under Federal Rule of Evidence 702.

Instead, they offer this testimony as lay opinion testimony under Rule 701. Thus the

Daubert/Kumho Tire[3] gatekeeping analysis does not apply because it is inapplicable to

evidence offered under Rule 701.

Rule 701, which governs the Opinion Testimony by Lay Witnesses provides:

If the witness is not testifying as an expert, the witness' testimony in the form of opinion or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

The Advisory Committee Notes indicate that subsection (c) of this Rule was

added in 2000 "to eliminate the risk that the reliability requirements set forth in Rule 702

---

[3] Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993); Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999).

17

will be evaded through the simple expedient of proffering an expert in lay witness

clothing. Under the amendment, a witness' testimony must be scrutinized under the

rules regulating expert opinion to the extent that the witness is providing testimony

based on scientific, technical, or other specialized knowledge within the scope of Rule

702."

The Advisory Committee Notes also recognize the propriety of permitting an

owner of a business to provide lay witness testimony about the value or projected

profits of the business, provided there is an adequate foundation:

> [M]ost courts have permitted the owner or officer of a business
> to testify to the value or projected profits of the business,
> without the necessity of qualifying the witness as an
> accountant, appraiser, or similar expert. See, e.g., Lightning
> Lube, inc. v. Witco Corp., 4 F.3d 1153 (3d Cir. 1993) (no abuse
> of discretion in permitting te plaintiff's owner to give lay
> opinion testimony as to damages, as it was based on his
> knowledge and participation in the dy-to-day affairs of the
> business). Such opinion testimony is admitted not because of
> experience, training or specialized knowledge within the realm
> of an expert, but because of the particularized knowledge that
> the witness has by virtue of his or her position in the business.
> The amendment does not purport to change this analysis.

The three issues which must be decided are:

(1) whether the testimony of ZALIS is rationally based on his perception;

(2) whether the testimony is helpful to a clear understanding of the witness'

testimony or the determination of a fact in issue, and

(3) whether the testimony of ZALIS is based on scientific, technical, or other

specialized knowledge within the scope of Rule 702.

In every case cited by Plaintiffs where a lay witness has been permitted to testify

concerning the matters analogous to the value of a business, the witness has been

involved in the day-to-day operations of the business, and during the course of that

18

activity has gained personal knowledge upon which to base his opinion. There are several deficiencies in the proposed testimony of ZALIS which lead the undersigned Magistrate Judge to conclude that none of the three prerequisites for admission of this testimony have been met.

First, ZALIS has failed to establish that his testimony is rationally based on his perception, i.e., that he has personal knowledge of the facts upon which his testimony is based. ZALIS was not involved in the financial operations of the business, and has no knowledge of the actual figures contained in the books and records. ZALIS claims that he was advised by GERSTEN during the course of their business that the companies were earning approximately $300,000 per month in gross commission revenues. Therefore, he multiplied this figure by 12 months to reach an annual gross revenue of $3.6 million.

Assuming that this testimony is admissible as the admission of a party opponent, there is no evidence of any personal knowledge regarding the net profits of the business. ZALIS assumed that the net profits were 22% of the gross commissions, i.e., $792,000.00, but this is sheer speculation which is not based upon any admissible evidence.

In addition, ZALIS used a multiplier of 6 to determine the value of the business based upon his discussions with other persons that insurance brokerage businesses should be valued at six times their net profits, thus leading to his opinion that the value of the business was $4,752,000.

Since ZALIS failed to establish that he had personal knowledge of the profits of the business, he has failed to meet the requirement that his opinion be based on personal knowledge.

19

Second, ZALIS' testimony is based on specialized knowledge within the scope of Rule 702.[4] The parties also disagree over the propriety of the use of a "rule of thumb" or multiplier of six times the net profits to determine valuation. A review of the cases cited by the parties reveals that if "rule of thumb" testimony is admissible, it is admissible as expert testimony and the use of a "rule of thumb" must meet the requirements of reliability as applied to the specific scenario at issue. See United States v. 2,847.58 Acres of Land, 529 F.2d 682, 685 (6th Cir. 1976); Weinstock v. Weinstock, 634 So. 2d 775, 776 (Fla. 5th Dist. Ct. App. 1994); Overstreet v. Dean, 219 So. 2d 752, 753 (Fla. 3rd Dist. Ct. App. 1969); Bostwick v. Bostwick, 1991 WL 42628, *9 (Del. Fam. Ct. 1991) (citing cases). In the case at bar, ZALIS is not an expert, and the testimony he seeks to offer regarding the use of a "rule of thumb" to evaluate the value of insurance brokerage businesses is the type of specialized knowledge which is the subject of expert testimony.

Based on a review of the record as a whole, the memoranda submitted by the parties, and the testimony of ZALIS presented at the evidentiary hearing, the undersigned Magistrate Judge finds and concludes that the proposed testimony of ZALIS regarding Category 3 damages is not rationally based on his perceptions, and is based on technical, or other specialized knowledge within the scope of Rule 702. Therefore, it is not admissible as lay opinion testimony under Rule 701, and Defendants' Motion to Exclude this testimony is granted.

---

[4] It is clear from ZALIS' testimony that he would not qualify as an expert witness if Plaintiffs were to seek to use him for this purpose.

IV.  **DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' SUMMARY OF DAMAGES CLAIM AND USE OF SUMMARIES AND THE TESTIMONY OF RONALD RICE (DE #185) IS DENIED**

Federal Rule of Evidence 1006 governs the use of summaries at trial.  It provides:

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation.    The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.

The essential requirement is that the charts be based on admissible evidence, and that any assumptions made be supported by evidence in the record.  The ultimate decision concerning the weight to be given to this evidence is to be made by the jury. United States v. Diez, 515 F.2d, 892, 905 (5th cir. 1975); United States v. Richardson, 233 F.3d 1285, 1293 (11th Cir. 2000).

Based upon the analysis set forth below, the undersigned Magistrate Judge finds and concludes that the summaries are a compilation of documents or records that are too voluminous to be conveniently examined in court, that the underlying records and information contained in the summaries are admissible in evidence, and that Defendants have had a full and fair opportunity to examine the underlying documents, records and information.

This ruling, however, is not a determination that the summaries are adequate, in and of themselves, to support the damages claimed by Plaintiffs; the undersigned Magistrate Judge has only determined that the summaries summarize relevant admissible information and are accurate. The undersigned Magistrate Judge notes that Defendants have mounted a persuasive challenge to the claim that the summaries used specifically to support the damages claimed in Categories 1 and 2 are adequate, in and

21

of themselves, for that purpose. Defendants have moved to strike the summary of damages claim on the grounds that Plaintiffs' calculations are insufficient as a matter of law, since they do not take into account various adjustments that require expert analysis. The undersigned Magistrate Judge has determined that this aspect of the motion is in the nature of a Motion for Partial Summary Judgment on the issue of damages and that although a persuasive argument has been made by Defendants, a motion for partial summary judgment is untimely, and the record as it presently stands is not sufficiently complete to make this determination. Therefore it is denied without prejudice to renew at the appropriate time during the trial.

Defendants object to the use of certain summaries by Plaintiffs on the grounds that they do no accurately summarize the underlying documents, but interject arguments and opinions into the summaries (DE #185). Defendants have filed objections to each of the summaries listed on Plaintiffs' exhibit list, based on this Motion to Strike (DE #209). The matter has been fully briefed (DE ##190, 204, 217, 222, 234). An evidentiary hearing was held to determine whether, under Fed. R. Evid. 104, the foundational requirements for the admissibility of these summaries was established.

Defendants initially contended that the summaries were inaccurate because they were based on copies of the Quickbooks electronic files that were in the possession of Jeffrey Farlow, and that Farlow had altered these records. The undersigned Magistrate Judge finds that Jeffrey Farlow sufficiently authenticated the electronic files he had as the books and records of the companies whose transactions were summarized. This finding is supported by the testimony of Defendant's expert, Carl Jenkins, who testified, to meet the objection that he had not produced to Plaintiffs the underlying records upon which he relied, that Plaintiffs had the electronic records because they were the same as

22

the ones that Farlow had provided to Plaintiffs.

At the hearing, Defendants acknowledged that they are not challenging the accuracy of many of the summaries as accurate compilations of voluminous records, rather they are challenging the use of these exhibits on the grounds that they are not relevant evidence. Defendants do not challenge the accuracy or the Rule 1006 foundation of the summaries contained in Plaintiffs' Exhibits 75, 96 (referred to as B-1 on Plaintiffs' damage summary), 97(referred to as B-2 on Plaintiffs' damage summary), 101 (referred to as B-4 on Plaintiffs' damage summary), 104 (referred to as B-3 on Plaintiffs' damage summary), 155 (with title modified to reflect that it is a summary of ZALIS' withdrawals paid out of Massachusetts, referred to as A.2 on Plaintiffs' damage summary), 158, 159, 160, 161, and 162. Independently of Defendants' agreement, the undersigned Magistrate Judge has reviewed these exhibits and considered the testimony offered at the evidentiary hearing, and concludes that these are accurate summaries of bank records and business records maintained in the ordinary course of business.

Plaintiffs' Exhibits 32, 33, 34 and 35 are summaries of records from the First Western Bank checking account in the name of NORTH AMERICAN–FLORIDA, that was maintained in Florida by ZALIS, and which Defendants contend was used by ZALIS to embezzle funds from NORTH AMERICAN–FLORIDA.

Plaintiffs' Exhibit 32 is a summary of cleared checks from the First Western Bank checking account . Defendants do not challenge the accuracy of this summary.[5]

---

[5] Initially, Defendants challenged the accuracy on the grounds that the total of the checks included here was different than the total they reached. Defendants stated that if they were unable to resolve this difference, they would advise the Court the following morning. No additional challenge was made, and to the extent there is any inaccuracy in

23

Plaintiffs' Exhibits 33, 34 and 35 are summaries of selected checks from Exhibit 32, which ZALIS testified were used to pay business expenses. ZALIS testified that he had personal knowledge of these expenses, and that he made a list of the checks contained in the summaries based upon that knowledge. These summaries are, respectively, a summary of cleared checks relating to business expenses (Ex. 33), a summary of cleared checks relating to Barbara Metcalf (Ex. 34), and a summary of cleared checks related to household expenses allocable to the office (Ex. 35). Since the summaries accurately reflect the checks posted to the account, and since the testimony of ZALIS, if believed by the jury, establishes personal knowledge for the allocation of the funds, a proper foundation under Rule 1006 has been established.

Plaintiffs' Exhibit 47 is a summary prepared by Ronald Rice of ALLAN GERSTEN'S personal expenses paid by GERSTEN FINANCIAL, and shown on the Shareholder Receivable Account in the Quickbooks records of GERSTEN FINANCIAL. This summary shows charges to ALLAN GERSTEN and payments by ALLAN GERSTEN as recorded in the books and records of  GERSTEN FINANCIAL for the periods of time between 9/1/97 and 12/31/97; 1/1/98 and 12/31/98; and 1/1/1999 through 5/11/99. The net totals for each period of time are $11,105.31, $72,548.56, and $22,994.14, which equal $106,648.00.[6] Plaintiffs' Exhibit 46 contains the underlying data contained in the Quickbooks records. This summary accurately reflects the business records of GERSTEN FINANCIAL, and therefore a foundation has been laid under Rule 1006. Although Defendants contend

---

recording any checks, this may be brought to the attention of the jury through cross-examination.

[6] As explained infra., this grand total is then used on Exhibit 156 (also referred to as Ex.A.1 attached to Plaintiffs' damage summary).

that certain items should be credited which were not included, these matters can be addressed in cross-examination. The summary is what it purports to be–a listing of money paid by GERSTEN FINANCIAL for the personal benefit of GERSTEN, and a listing of money paid by GERSTEN on behalf of GERSTEN FINANCIAL.

Plaintiffs' Exhibit 48 is a summary prepared by Jeffrey Farlow of personal expenses of ALLAN GERSTEN paid by GERSTEN FINANCIAL which were not shown on the shareholder receivable account. Jeffrey Farlow testified that he was hired by ZALIS and GERSTEN as the Chief Financial Officer of NORTH American–florida, North American–Massachusetts, and GERSTEN FINANCIAL. His first day of work was September 11, 2000, and he was employed until January 19, 2001. As such, he testified that he became familiar with the books and records of all three companies. One of his responsibilities was to review the records of all three companies to determine why the expenses were so high and the companies were cash poor. He regularly received electronic copies of the Quickbooks records maintained by each of the three companies from the bookkeeping staff in Massachusetts. The last copy he received was on January 10, 2001, and these Quickbooks records were provided to Plaintiffs for use in this case. The Quickbooks electronic records contain a "detail" section which he used to identify which expenses were personal to GERSTEN and which were business expenses. In addition, Farlow had personal knowledge that some of the items were for personal expenses.

The underlying data used to support this summary was provided to Defendants, and Defendants did not challenge any specific item as not being a personal expense. Based upon Farlow's testimony that this information was maintained in the ordinary course of business and was used by the business for purposes such as the preparation

25

of tax returns, and that Exhibit 48 is a listing of those payments, Plaintiffs have established the foundation required under Rule 1006.

Plaintiffs' Exhibits 49 and 50 are the summaries of GERSTEN'S personal expenses not shown on shareholder receivable accounts which were paid, respectively by North American–Massachusetts and NORTH AMERICAN–FLORIDA. They were prepared in the same manner as Plaintiffs' Exhibit 48, and therefore these exhibits also meet the foundation requirements of Rule 1006.

Plaintiffs' Exhibit 163 is a summary of payments made by GERSTEN FINANCIAL and North American–Massachusetts to pay portions of certain customer premiums that were owed to various insurance companies. Jeffrey Farlow testified that he learned of these payments and the way they were entered into the books and records of the companies as part of his duties as Chief Financial Officer. Exhibit 103 is a list of such payments, which total $29,086.64. Defendants object to the foundation laid for this exhibit since there is no testimony that all petty cash payments were used for this purpose.

The testimony of Farlow that the supporting records document that these funds were used to pay customer premiums to insurance companies, combined with the testimony by deposition of bookkeeper Lori Palladino, establishes that the listed items were payments made for customer premiums. In addition, Defendants object to the characterization of this summary as reflecting the personal expenses of GERSTEN. The Defendants' objection to the characterization of the summary as personal expenses may be well-taken, and may be accepted by the jury, but it does not affect the determination that Plaintiffs have established the foundation required under Rule 1006.

The only summary which is arguably expert testimony in the guise of a summary

26

is Plaintiffs' Exhibit 156. Based upon careful review, however, the undersigned Magistrate Judge concludes that this summary is an accurate compilation of various other summaries listed above, combined with additional summaries of voluminous admissible source materials. This summary was prepared by Ronald Rice, who testified at the evidentiary hearing. An entry by entry analysis was provided at the hearing, a description of which follows. With one exception, which Plaintiffs' agreed was a mistake, Defendants did not challenge the accuracy of the items listed. By determining that this summary meets the foundational requirements of Rule 1006, the undersigned Magistrate Judge is not determining that it is sufficient to prove the damages claimed by Plaintiffs, or that a jury would accept Plaintiffs' evidence.

#### 1997 entry

The only item listed for 9/1/97 through 12/31/97 is the total of the payroll records of GERSTEN FINANCIAL reflecting a salary to ALLAN GERSTEN of $92,500. This number is taken directly from the Quickbooks records of GERSTEN FINANCIAL.

#### 1998 Entries

GERSTEN FINANCIAL Payroll that has been attributed to GERSTEN includes salary to GERSTEN as reflected in Plaintiffs' Exhibit 76 (GERSTEN'S tax return and W-2), and a year-to-date printout of wages paid to family members Amy Gersten and Lisa Gersten from Plaintiffs' Exhibit 88. In addition, the Quickbooks files of NORTH AMERICAN–FLORIDA reflect a check in the amount of $2,774 made payable to GERSTEN.

#### 1999 Entries

GERSTEN FINANCIAL payroll of $54,423.10 attributed to GERSTEN, and derived from the Paychex report contained in Plaintiffs' Exhibit 89 is the first item. The next item is the total of three checks drawn on the account of NORTH AMERICAN–FLORIDA which

are reflected in the Quickbooks records. The next series of items are payments from North American–Massachusetts and consist of the Paychex report reflecting the salaries of GERSTEN and family member Amy Gersten; the IRS Form 1099 income attributed to GERSTEN from the Paychex report, which is an excerpt from Plaintiffs' Exhibit 90, and other checks paid to GERSTEN, as reflected in the Quickbooks records of North American–Massachusetts. The final item is a listing of other income in the amount of $139,799, which is included in the tax return of GERSTEN (Plaintiffs' Exhibit 77). This figure was derived by subtracting the amount included in the Form 1099 from North American–Massachusetts from the total amount reflected on Schedule C of the tax return.

### 2000 Entries

The only entries for the year 2000 with respect to NORTH AMERICAN–FLORIDA are two checks contained in the Quickbooks files which were payable to GERSTEN in the total amount of $18,500.00. With respect to North American–Massachusetts, the payroll records contained in Plaintiffs' Exhibit 91 reflect payments to GERSTEN and family members Linda and Amy; payments totaling $177,035 reflected as IRS Form 1099 income in Plaintiffs' Exhibit 94; and other payments to GERSTEN reflected in the Quickbooks files and which were not included in the amount contained in the Form 1099. In addition, there is an amount derived from the personal bank account of GERSTEN (Plaintiffs' Exhibit 74), which is the total of all electronic funds transfers into this account from an insurance company called Jefferson Pilot.

The remaining items on Plaintiffs' Exhibit 156 are items that were transferred from the summaries previously discussed. These are the personal expenses paid by GERSTEN FINANCIAL and entered into the shareholder receivable account (Plaintiffs'

28

Exhibit 47); the personal expenses paid by GERSTEN Financial, North American–Massachusetts, and NORTH AMERICAN–FLORIDA which were reflected in the Quickbooks files according to the testimony of Farlow, but not included in the shareholders' receivables account (Plaintiffs' Exhibits 48, 49 and 50); health insurance paid for GERSTEN (Plaintiffs' Exhibit 158); payments for commission rebates (the word illegal was stricken from this entry) (Plaintiffs' Exhibit 163); post-termination payments to the Tufts Health Plan (Plaintiffs' Exhibit 122; plaintiff agrees to correct the amount paid to be $3,759.52 as reflected on the exhibit); and payments to Kenneth Shapiro, GERSTEN'S son-in-law, as reflected in Plaintiffs' Exhibit 82.

Thus, the undersigned Magistrate Judge concludes that Plaintiffs' Exhibit 156 is an accurate summary of the records that it purports to summarize, and consists of compilations of voluminous records, which are admissible evidence.

Moreover, the testimony of Ronald Rice demonstrates that he did not testify as an expert witness–he merely looked at voluminous books and records and summarized the contents contained therein by adding numbers.

Therefore, the Defendants' Motion to Strike Plaintiffs' Use of Summaries and the Testimony of Ronald Rice (De #185) is denied. It is recommended that Defendants' Motion to Strike Summary of Damages Claim be denied without prejudice to renew at the appropriate time during the trial.

V.    IT IS RECOMMENDED THAT DEFENDANTS' MOTION TO EXCLUDE EVIDENCE OF DAMAGES (DE #203) BE GRANTED IN PART AND DENIED IN PART

Defendants seek to exclude all evidence of damages claimed by Plaintiffs in their damage summary on the following four grounds:

> (1) Plaintiffs did not seek recovery in their First Amended Complaint under a breach of contract theory. Thus, any

29

> recovery for "excess draws" under an agreement is precluded. Further, the economic loss rule precludes recovery for breach of an agreement. The economic loss rule bars recovery for every count with the exception of the defamation count.
>
> (2) Recovery of damages as alleged by the Plaintiffs is barred because Plaintiffs did not specifically plead special damages as required by Rule 9(g) of the Federal Rules of Civil Procedure;
>
> (3) Plaintiffs may not recover both lost revenues and loss of business value.
>
> (4) Rule of thumb testimony or any other damage testimony by Plaintiff Zalis must be excluded as unreliable and/or unreasonable.

With respect to the request that damage testimony by Plaintiff ZALIS be excluded as unreliable, the motion is granted for the reasons stated above in connection with the specific motion to exclude this testimony.

With respect to the claim that Plaintiffs should be precluded from recovering both lost revenues and loss of business value, the motion is denied as moot, since the evidence of loss of business value, which was based solely on the testimony of ZALIS, has been excluded.

With respect to the claim that Plaintiffs are seeking special damages which were not pled with the specificity required by Rule 9(g), and therefore the damages should be excluded, the undersigned finds that the damages claimed are not special damages, but flowed naturally from the alleged claims for relief, and were adequately pled. Therefore, it is recommended that the motion be denied.

The claim that all damage recovery is barred by the economic loss rule is in essence a dispositive motion for partial summary judgment on this issue. The undersigned Magistrate Judge has determined that if Defendants desired a resolution of this issue before the trial, they should have filed either a Motion to Dismiss or a Motion

30

for Summary within the time allowed in the Scheduling Order. Having failed to do so, for that reason alone, the undersigned Magistrate Judge recommends denial of the motion, without prejudice to renew at the appropriate time during the trial.

At this point, it is unclear whether Plaintiffs will be able to prove any damages at trial, whether or not the economic loss rule precludes recovery of damages. The summaries which Plaintiff has provided appear inadequate to prove the relief sought, and, as stated previously, it is unclear whether those deficiencies will be remedied at trial. Moreover, injunctive or other equitable relief is sought with respect to all counts, and therefore a pretrial ruling on this issue would not avoid the necessity for a trial on those counts.

In essence, Defendants contend that all counts of the Complaint are based upon the breach of the oral agreement between ZALIS and GERSTEN, and that since breach of contract was not alleged in the Complaint, all claims for damages fail as a matter of law.[7] Plaintiffs respond by stating that Defendants have mischaracterized the nature of their claims. Plaintiffs state that they are not relying on breach of contract, but rather that as an officer and director of NORTH AMERICAN–FLORIDA, he breached the duties owed to this company, independent of any contractual duties owed to ZALIS. Plaintiffs emphasize that under Florida law, in the absent consent of the shareholders, a director and officer of a corporation is precluded from making any secret profit or deriving any personal advantage at the expense of the corporation, and is required to disgorge any such ill-gotten gains. Plaintiffs rely on <u>Invo Florida, Inc. v. Somerset Venturer, Inc.</u>, 751 So. 2d 1263 ( Fla. 3rd Dist. Ct. App. 2000) to support the proposition that a cause of action

---

[7] As stated previously, Defendants have opposed Plaintiffs' Motion for Leave to Amend the Complaint for the purpose of adding a breach of contract count.

for breach of fiduciary duty against the directors of a corporation is not barred by the economic loss rule. In addition, citing <u>Comptech Int'l, Inc. v. Milam Commerce Park, Ltd.</u>, 753 So. 2d 1219, 1222 (Fla. 1999), Plaintiffs claim that the economic loss rule is not applicable to the statutory causes of action alleged in the Complaint.

This Court previously has addressed the applicability of the economic loss rule in numerous cases. In <u>Medalie v. FSC Securities Corp.</u>, 87 F. Supp. 2d 1295 (S.D. Fla. 2000), this Court relied upon <u>Interstate Sec. Corp. v. Hayes Corp.</u>, 920 F. 2d 769 (11th Cir. 1991) to dismiss counts brought by investors against a securities broker alleging breach of fiduciary duty. In so doing, however, this Court recognized that in <u>Moransais v. Heathman</u>, 744 So. 2d 973 (Fla. 1999), the Florida Supreme Court had narrowed the types of cases to which the rule should be applied, and stated that if <u>Hayes</u> was not controlling authority directly on point, the Court would hold that breach of fiduciary duty claims were not barred:

> If the court were not bound to follow Eleventh Circuit precedent, it would likely allow the breach of fiduciary duty claim to proceed without being barred by the economic loss rule. First, it appears that the thrust of the Supreme Court of Florida's decision in <u>Moransais</u> is to narrow the types of situations in which the economic loss rule applies. Second, valid public policy concerns weigh in favor of allowing breach of fiduciary duty claims to proceed even when the relationship of the parties was formed pursuant to a contract.

87 F. Supp. 2d 1295 at 1304 n.6.

It is true that in <u>Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.</u>, ___ F. Supp. 2d ___, 2002 WL 1396044, *5 (S.D. Fla. 2002) (Case No. 01-4111-CIV-GOLD), this Court recently dismissed claims based on breach of fiduciary duty, fraudulent inducement and tortious interference against an officer of a corporation on the grounds that these claims were "interwoven with the facts establishing a breach of contract."

32

In the case at bar, however, it appears that the fiduciary duties owed by GERSTEN to NORTH AMERICAN–FLORIDA are independent of the contract between ZALIS and GERSTEN, and would exist by virtue of his position in the company regardless of the terms of any agreement between ZALIS and GERSTEN individually. Thus, the undersigned Magistrate Judge concludes that on the present state of the record, even if the merits were reached, the economic loss rule would not bar the recovery of damages in this case with respect to any of the counts in which NORTH AMERICAN–FLORIDA seeks recovery.

Count 7, however, which is brought by the ZALIS FAMILY PARTNERSHIP against GERSTEN for breach of fiduciary duty, is a much closer question, and if the merits are reached, the undersigned Magistrate Judge reaches the opposite result on the present state of the record. At the time of the oral agreement regarding the new business arrangement, the ZALIS FAMILY PARTNERSHIP was the sole shareholder of NORTH AMERICAN–FLORIDA, and GERSTEN was the sole shareholder of GERSTEN FINANCIAL. Plaintiffs allege that ZALIS, acting individually and on behalf of the ZALIS FAMILY PARTNERSHIP, entered into the oral agreement. The alleged fiduciary duty breached in Count 7 arises directly from this contract, since the basis for the alleged duty is "As an officer, director and 50% shareholder of North American, Gersten owed to the other shareholder, the Zalis Limited Partnership, a duty of utmost good faith and loyalty in the operation of North American." It appears that this duty arises directly from the contract, that breach of contract is an available remedy, and that under the rationale of Excess Risk Underwriters, Inc., supra., recovery for this breach of fiduciary duty is barred by the economic loss rule.

In sum, the undersigned Magistrate Judge recommends that Defendants' Motion

33

to Exclude Evidence of Damages (DE #203) be (1) denied without prejudice as to the claim that damages are barred by the economic loss rule, or in the alternative be denied on the merits with respect to all counts except Count 7, and be granted with respect to Count 7; (2) be denied as to the claim that Plaintiffs are seeking special damages; (3) be denied as moot with respect to the claim that Plaintiffs may not recover both lost revenues and loss of business value; and (4) be denied as moot with respect to the claim that damage testimony by Plaintiff ZALIS must be excluded as unreliable or unreasonable.

VI.    **PLAINTIFFS' MOTION TO EXCLUDE DEFENDANTS' SUMMARIES (DE #183) OBJECTIONS TO PROPOSED TRIAL SUMMARIES (DE # 187) AND MOTION TO PRECLUDE USE OF EXPERT TESTIMONY OF CARL JENKINS (DE #191) ARE DENIED**

Plaintiffs have filed the above related Motions and Objections seeking to preclude Defendants from using expert testimony and summaries, generally on the grounds that Defendants' required disclosures were not timely and the summaries are not based upon admissible evidence. These matters have been fully briefed (DE ## 189, 215, 229, 230, 237, 238, 251, 254), and an evidentiary hearing was held on these matters.

Plaintiffs' Motion to Exclude Defendants' Summaries Not Disclosed Pursuant to the Court's Pretrial Order and order on Motions in Limine and to Strike Those Portions of Defendants' Exhibit List Referring to Said Summaries ( DE #183) is based upon Plaintiffs' claims that Defendants did not timely file their summaries, and that notwithstanding Defendants' notice of compliance with the Court's Order filed on May 28, 2002, as of June 3, 2002, Plaintiffs had still not received copies of Defendants' summaries. Plaintiffs contend that their pretrial preparation was severely prejudiced by the failure to provide those summaries. Plaintiffs received these summaries on June 4, 2002, and filed their

Objections on June 7, 2002 (DE #187). Defendants have responded that the summaries were made available, but Plaintiffs did not avail themselves of the opportunity to review them (DE # 189).

Plaintiffs also filed a Motion to Preclude Use of Expert Testimony of Carl Jenkins, on the grounds that Defendants had failed to supply the required information concerning the basis and grounds for his opinion (a copy of the expert report issued by Jenkins is attached to this motion) (DE # 191, filed 6/24/02). Specifically, Plaintiffs contend that the expert witness disclosure fails to state the basis and reasons for the opinions proffered and the data or other information considered by the witness in forming the opinions, as required for an expert report under Rule 26. In addition, Plaintiffs contend that the report fails to comply with Local Rule 16.1.K in that it fails to provide information on the standards or rules used by Jenkins in allocating income and expenses between GERSTEN FINANCIAL, NORTH AMERICAN–FLORIDA, and North American–Massachusetts.

The undersigned Magistrate Judge, having reviewed the report submitted by Jenkins, concludes that it adequately complies with the disclosure rules; and, any defects have been remedied by the deposition, the subsequent testimony before the undersigned Magistrate Judge, and the fact that, as stated below, a second deposition will be permitted if deemed necessary by Plaintiffs.

The deposition of Carl Jenkins, Defendants' expert witness who prepared the summaries, was taken on July 2, 2002, and is part of the record in this case (Plaintiffs' Exhibit 5, 7/24/02). Following that deposition, Plaintiffs filed a Supplemental Memorandum in Support of Their Objections to Defendants' Proposed Trial Summaries reiterating their previous objections, and claiming that the summaries were inadmissible

35

because the underlying source materials were not produced and marked as potential trial exhibits, and that the trial summaries are not consistent with the Quickbooks files of the entities which were maintained in the ordinary course of business (DE #229). Defendants replied that all source materials had been marked and made available, and that there is no requirement that the underlying materials be introduced into evidence, only that they be admissible.

With respect to the Motion to Preclude Use of Expert Testimony of Carl Jenkins, following the deposition of Jenkins, Plaintiffs maintain that Defendants have still failed to produce the underlying data upon which Jenkins relied because they have not furnished Plaintiffs with a CD containing the records of commission statements received from insurance companies which Jenkins used as the basis for allocating certain income and expenses, and they had not received the electronic Quickbooks records. These items were present at the deposition; but, due to technical reasons, they could not be downloaded onto a disk during the deposition.

The undersigned Magistrate Judge finds that Jenkins used the electronic Quickbooks records and the electronic version of the commission statements in preparing the summaries and forming his opinions. The Defendants wrongfully failed to provide these electronic versions to Plaintiffs prior to the commencement of Jenkins' deposition, as required by both the District Judge and the undersigned Magistrate Judge. The failure of Defendants to provide these records is disturbing, and the argument that Plaintiffs did not need the electronic version of Quickbooks since they already had a copy from Mr. Farlow rings hollow. Until the day that Jenkins testified that Farlow's version was the same as his version, Defendants had steadfastly objected to the use of the Quickbooks records obtained from Farlow. As recently as their

36

Objections to Plaintiffs' Trial Exhibits, filed on June 28, 2002, Defendants objected to

Exhibit 44, which consists of those records, on grounds of authenticity, hearsay,

relevance and a claim that they are unduly prejudicial (DE #209). However, the trial has

been delayed, the electronic versions of both sets of records have now been provided

(DE #254), and Plaintiffs will have the opportunity to analyze them in preparation for

cross-examination of Jenkins. If Plaintiffs have been prejudiced by the late production

of these records, they may take a further deposition of Jenkins prior to his trial

testimony, at a mutually agreeable date and time, or when the court is not in session on

this case on the Friday of the first trial week if the parties cannot agree.

Likewise, due to the delay in the trial, any prejudice suffered due to late

production of the summaries or identification of the underlying sources of the

information has been cured. The particular objections lodged with respect to each of the

proposed summaries is discussed below. Since Defendants have not yet filed their

revised exhibit list using letters rather than numbers, and since Plaintiffs objections are

listed by the exhibit numbers contained in the existing list, this order refers to the trial

exhibits by number.

Defendants' Exhibit 1 is a Summary of Income and Expenses for the Year 1997 for

NORTH AMERICAN–FLORIDA. Plaintiffs object to Defendants Exhibit 1 on the grounds

that it is inconsistent with the underlying records in that it excludes all corporate

records for the period prior to September 1, 1997, and some of the records for the period

after September 1, 1997. Jenkins testified that he prepared this summary from the

Quickbooks records of NORTH AMERICAN–FLORIDA, and that he verified that it was

consistent with the supporting documents such as checkbooks and expense files. The

summary begins on September 1, 1997, since that is the date that the oral

37

agreement/joint business operations became effective. Plaintiffs did not present any evidence to demonstrate that Jenkins' testimony concerning the accuracy of this summary was incorrect. The only alleged inaccuracy demonstrated is that the column provides the dates of Jan. - Dec. 1997, when the joint operation did not begin until September 1, 1997, and Jenkins explained this by stating that prior to September 1, 1997, the income and expenses for the entity involved in this litigation were not relevant.

Plaintiffs object to Defendants' Exhibits 5, 6, and 7, which summarize income and expenses for NORTH AMERICAN–FLORIDA, North American–Massachusetts, and GERSTEN FINANCIAL, for the year 1999, and to Defendants' Exhibit 32, which is a summary of all marketing and advertising expenditures for 1997through 2000 for NORTH AMERICAN–FLORIDA, on the grounds that the supporting documentary back-up materials for 1999 were destroyed, and therefore the books and records upon which Jenkins relied in preparing these summaries could not be verified. The undersigned Magistrate Judge finds that the Quickbooks records upon which these summaries were based are admissible business records, and therefore the absence of the materials from which those business records were made does not affect the admissibility of the summaries.

Defendants' Exhibit 13 is a Summary of the West Coast Life Insurance Company Commission Statements. Plaintiffs have objected to this summary on the grounds that it is not based on admissible evidence. However, Jenkins testified that this summary was based on the commission statements, which were business records of West Coast Life Insurance Company. Therefore, the underlying source documents are admissible evidence.

Likewise, Defendants' Exhibits 14 and 15 are compiled from the West Coast Life

38

Commission Statements and the First Western Bank Statements for the account opened by ZALIS in the name of NORTH AMERICAN–FLORIDA, which received the deposits reflected in the Commission Statements, and are based on admissible evidence.

Defendants' Exhibit 20 is a Summary of Individual Tax Returns for Charles and Alexandra Zalis for the Year 1997. Plaintiffs objected to Defendants' Exhibit 20 on the ground that it did not accurately reflect the tax return. The only evidence presented on this exhibit at the hearing was the testimony of Jenkins that it was an accurate summary, and he was not impeached. Therefore, the objection is not well-founded.

Defendants' Exhibit 24 is a Summary of Allan Gersten Loans and Deferred Salary. Plaintiffs object to this summary on the grounds that defendants have not provided the underlying information, that the term "deferred salary" mischaracterizes the underlying records, and that all references to 1999 should be removed due to the unavailability of supporting documents. Jenkins testified that this was a summary prepared from the records of NORTH AMERICAN–FLORIDA and North American–Massachusetts with respect to loans and repayments. With respect to the deferred salary portion of the chart, it is a summary which reflects the amount of salary which was not drawn by Gersten out of the account of NORTH AMERICAN–FLORIDA. Although Plaintiffs correctly note that GERSTEN did draw a salary from North American–Massachusetts and GERSTEN FINANCIAL, this chart does not purport to address that money, which is included in the Defendants' supplemental exhibit 2, which shows all money taken by GERSTEN as salary. Thus, the summary chart accurately summarizes the information that it purports to summarize.

Therefore, based upon a review of record as whole, and considering the deposition of Jenkins, as well as his testimony at the evidentiary hearing, the

undersigned Magistrate Judge denies the Motion to Preclude Use of Expert Testimony of Jenkins (DE #191); denies Plaintiffs' Motion to Exclude Defendants' Summaries (DE #189), and determines that a proper foundation for the admission of Defendants' Summaries has been established under Rule 1006. However, to ensure that no prejudice resulted from the late disclosure by Defendants, the undersigned Magistrate Judge will permit a further deposition of Jenkins as stated in the body of this Order. In addition, Defendants are directed to bring all underlying source documents for their summaries to Court so that they are available for Plaintiffs to use in cross-examination.

During the course of the hearing, Plaintiffs made an <u>ore tenus</u> motion to exclude the expert testimony of Jenkins concerning his re-allocation of expenses and income as reflected in the summaries attached to his expert report, arguing that this reallocation was not based on evidence in the case, and lacked reliability. The undersigned Magistrate Judge denied the ore tenus motion, ruling that any <u>Daubert</u> motion would have to be filed in writing, and could not be considered by the undersigned Magistrate Judge absent an Order of Reference from the District Court. Nevertheless, to a limited extent, Plaintiffs were permitted to inquire into the methods used by Jenkins in connection with his preparation of various summaries which utilized this method of allocation.

The undersigned Magistrate Judge finds that the summaries which reallocated the income and expenses, beginning in mid-1999, accurately reflect the underlying source materials; and that Jenkins' testimony about the assumptions upon which these allocations were made is supported by sufficient evidence. His testimony that the assumptions he made are consistent with the methodology employed by experts in his field, including the Internal Revenue Service was not contradicted. Of course, the jury

40

will be free to reject this evidence.

VII.    **CONCLUSION**

Therefore, it is hereby

**ORDERED AND ADJUDGED** that Plaintiffs' Motion for Leave to Amend First Amended Complaint (DE #221, filed 7/12/02) is **DENIED.** It is further

**ORDERED AND ADJUDGED** that Defendants' Motion to Exclude Plaintiffs' Proposed Testimony of its Rule 701 Witness, Charles N. Zalis Regarding Damages (DE #216), and Defendants' Motion to Exclude Testimony of Charles Zalis on Loss of Value of Business (DE #185) are **GRANTED.** It is further

**ORDERED AND ADJUDGED** that Defendants' Motion to Strike Plaintiffs' Use of Summaries and the Testimony of Ronald Rice (DE #185) is **DENIED.** It is further

**ORDERED AND ADJUDGED** that Defendants' Motion to Strike Plaintiffs' Summary of Damages Claim (DE #185) is **DENIED** without prejudice. It is further

**RECOMMENDED** Defendants' Motion to Exclude Evidence of Damages (DE #203) be (1) denied without prejudice as to the claim that damages are barred by the economic loss rule, or in the alternative be denied on the merits with respect to all counts except Count 7, and be granted with respect to Count 7; (2) be denied as to the claim that Plaintiffs are seeking special damages; (3) be denied as moot with respect to the claim that Plaintiffs may not recover both lost revenues and loss of business value; and (4) be denied as moot with respect to the claim that damage testimony by Plaintiff ZALIS must be excluded as unreliable or unreasonable. It is further

**ORDERED AND ADJUDGED** Plaintiffs' Motion to Exclude Defendants'

41

Summaries (De #183) and Objections to Proposed Trial Summaries (DE# 187) are

**DENIED**, as stated in the body of this Order.  It is further

> **ORDERED AND ADJUDGED** that Plaintiffs' Motion to Preclude Use of Expert

Testimony of Carl Jenkins (De #191) is **DENIED**, as stated in the body of this Order.

The parties will have until 5:00 p.m. on Wednesday, July 31, 2002, to file written

objections, or an appeal, if any, for consideration by The Honorable Alan S. Gold,  United

States District Judge.  Failure to file objections timely shall bar the parties from

attacking on appeal any factual findings contained herein.  <u>LoConte v. Dugger</u>, 847 F.2d

745 (11th Cir.), <u>cert. denied</u>, 488 U.S. 958 (1988); <u>RTC v. Hallmark Builders, Inc.</u>, 996 F.2d

1144, 1149 (11th Cir. 1993).

If any party contends that the portions of this Order which constitute rulings

should have been issued in the form of a Recommendation, they shall include that

objection, and request that the Order be treated as a Recommendation for purposes of

review.  Failure to specify such an objection shall be deemed a waiver of that right.

**DONE AND ORDERED** in chambers this ___24th___day of July, 2002.

_Andrea M. Simonton_
**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

Copies to:
The Honorable Alan S. Gold
  United States District Judge
Richard E. Brodsky, Esq., Fax #(305)381-7708 (Counsel for Plaintiffs)
Richard C. Heidlage, Esq., Fax #(617)367-2988 (Counsel for Plaintiffs)
Andrew Hall, Esq. and Adam J. Lamb, Esq., Fax #(305)374-5033 (Counsel for Defendants)
Douglas Otto, Esq. and Nicholas A. Alexander, Esq.,  Fax #(617)439-7590 (Counsel for
    Defendants)

| CHART RE: FIRST AMENDED COMPLAINT | | | | | |
|---|---|---|---|---|---|
| COUNT | DESCRIPTION | PLAINTIFFS | DEFTS. | RELIEF | CHOICE OF LAW |
| 1 | Breach of Fiduciary Duty | **NORTH AMERICAN** | **GERSTEN** | Damage Cat. 1, 2, 3 Injunction | Florida |
| 2 | Diversion of Corporate Opportunities (Breach of Fiduciary Duty) | **NORTH AMERICAN** | **GERSTEN, GERSTEN FINANCIAL, FIRST AMERICAN** | Damage Cat. 1, 2, 3 Injunction | Florida as to **NORTH AMERICAN –FLORIDA** ; Mass. as to **NORTH AMERICAN –MASS.** |
| 3 | Misappropriation of confidential and proprietary information (common law, M.G.L., ch. 93, §§42, 42A and ch. 93A, § 11 | **NORTH AMERICAN** | **GERSTEN** | Damage Cat. 3; Injunction | Mass. |
| 4 | Misappropriation of confidential and proprietary information (common law, M.G.L., ch. 93, §§42, 42A and ch. 93A, § 11 | **NORTH AMERICAN** | **GERSTEN FINANCIAL, FIRST AMERICAN** | Damage Cat. 3; Injunction | Mass. |
| 5 | Misappropriation of confidential and proprietary information (common law and Fla. Unif. Trade Secrets Act, Fla. Stat. § 688.001 et seq.) | **NORTH AMERICAN** | **GERSTEN** | Damage Cat. 3; Injunction | Fla. |

| COUNT | DESCRIPTION | PLAINTIFFS | DEFTS. | RELIEF | CHOICE OF LAW |
|---|---|---|---|---|---|
| 6 | Misappropriation of confidential and proprietary information, interference with contract (common law and Fla. Unif. Trade Secrets Act, Fla. Stat. § 688.001 et seq.) | **NORTH AMERICAN** | **GERSTEN FINANCIAL, FIRST AMERICAN** | Damage Cat. 3; Injunction | Fla. |
| 7 | Breach of Duty of Good Faith and Loyalty | **ZALIS FAMILY PARTNERSHIP** | **GERSTEN** | Damage Cat. 1, 2, 3; Injunction | Fla. |
| 8 | Unfair and Deceptive Trade Practices (M.G.L. ch. 93A, §§2, 11) | **NORTH AMERICAN** | **GERSTEN, GERSTEN FINANCIAL, FIRST AMERICAN** | Damage Cat. 1, 2, 3; Injunction | Mass. |
| 9 | Accounting | **NORTH AMERICAN, ZALIS, ZALIS FAMILY PARTNERSHIP** | **GERSTEN, GERSTEN FINANCIAL, FIRST AMERICAN** | Damages estab, by accting. | Fla. |
| 10 | Constructive Trust | **NORTH AMERICAN** | **GERSTEN, GERSTEN FINANCIAL, FIRST AMERICAN** | Assets identified as misapp. | Fla. |
| 11 | Receivership | ABANDONED | | | |
| 12 | Defamation | **ZALIS** | **GERSTEN** | Per se damages | Fla. |

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA
GENERAL JURISDICTION DIVISION

CASE NO. 03-11784 CA 30

CHARLES N. ZALIS, individually,
and CHARLES N. ZALIS in his
capacity as General Partner of
the CHARLES N. ZALIS FAMILY
LIMITED PARTNERSHIP, et al.,

         Plaintiffs,

vs.

BERGER SINGERMAN, P.A., f/k/a              ORIGINAL
BERGER DAVIS & SINGERMAN, P.A.;
KAYE SCHOLER LLP; et al.,

         Defendants.

_____


VOLUME IV


THE CONTINUED VIDEOTAPED DEPOSITION


OF


CHARLES N. ZALIS



9130 South Dadeland Boulevard
Penthouse II, Datran 2
Miami, FL  33156



Wednesday, June 1, 2005

9:00 a.m. - 5:30 p.m.


EXHIBIT
L

1          when you believe that happened.

2               MR. BALES:  Same objection.

3               THE WITNESS:  I believe that from

4          May 15th on -- I'm sorry, February 15th

5          on, the time to name an expert was past.

6               In regard to amending the complaint,

7          I believe that was still doable maybe

8          until the first week of March, second

9          week of March, give or take, again, I. . .

10   BY MR. LOWE:

11     Q     Okay.

12     A     I'm not sure what else to say.

13          Again, to the best that I can

14   recollect, the judge had just shut the door on

15   us, and we really were -- that was it.  I mean,

16   we were marching time then.

17     Q     Is it fair to say that as of May 1st,

18   2002, whatever you contend Mr. Heidlage did wrong

19   in his representation of you had already

20   happened?

21               MR. BALES:  Object to the form.

22               THE WITNESS:  In my opinion, yes.

23   BY MR. LOWE:

24     Q     And that he did not do anything wrong

25   in your opinion after that date?

1           MR. BALES:  Object to the form.

2           THE WITNESS:  I don't think it

3      mattered.  Whether it was wrong or right,

4      I think it was over.

5           And I didn't realize this then.

6      This is hindsight now.

7  BY MR. LOWE:

8      Q     Okay, do you believe that Mr. Brodsky

9  did anything wrong during the period of time he

10  was your counsel?

11     A     I've given a lot of thought to that.  I

12  really don't think he did.  I don't think he had

13  opportunity, whether he could have, would have,

14  should have, I don't think he had opportunity.

15  It was over.

16     Q     Do you think he could have amended the

17  complaint in March 2002?

18           MR. BALES:  Object to the form.

19           THE WITNESS:  The biggest problem I

20      see in answering your question is that it

21      presumes that in that first of March

22      period of time he had a good enough

23      understanding to know where we were in

24      the lawsuit.

25           We had 30-plus boxes.  I don't think

CERTIFICATE OF NOTARY
-----------------------------

STATE OF FLORIDA:
                        SS:
COUNTY OF MIAMI-DADE:


         I, CLAUDIA REAM-PINEDO, RPR, a Shorthand

Reporter and Notary Public in and for the State of

Florida at Large, do hereby certify that I reported

in shorthand the deposition of CHARLES N. ZALIS, a

witness called by the defendants in the above-styled

cause; that the witness was first duly sworn by me;

that the reading and signing of the deposition were

waived by the witness; that the foregoing pages,

numbered from 413 to 721 inclusive, constitute a

true record.

         I further certify that I am not an attorney

or counsel of any of the parties, nor related to any

of the parties, nor financially interested in the

action.

         WITNESS my Hand and Official Seal this 9th

day of June, 2005.

                        Claudia Ream-Pinedo
                        Commission #DD370128
                        Expires: Dec 22, 2008
                        Bonded Thru
                        Atlantic Bonding Co., Inc.

KRESSE & ASSOCIATES, INC.
(305) 371-7692

Docket as of June 19, 2004 6:56 am                    Web PACER (v2.4)

## U.S. District Court

## Southern District of Florida (Miami)

## CIVIL DOCKET FOR CASE #: 01-CV-432

### *Zalis, et al v. Gersten, et al*

Filed: 02/02/01
Assigned to: Judge Alan S. Gold
Jury demand: Defendant
Demand: $0,000
Nature of Suit: 190
Lead Docket: None
Jurisdiction: Diversity
Dkt # in 17th Jud Cir Ct : is 01000626-02
Cause: 28:1441 Notice of Removal

```
CHARLES N. ZALIS, individually      Franklin Lewis Zemel
and as general Partner of           FTS 713-0977
Charles N. Zalis Family             [COR LD NTC]
Limited Partnership, a              Broad & Cassel
Virginia limited partnership        100 SE 3rd Avenue
     plaintiff                      Suite 2700 One Financial Plaza
                                    Fort Lauderdale, FL 33394
                                    954-764-7060

                                    Richard Heidlage
                                    FTS 367-2988
                                    [COR LD NTC]
                                    Kotin Crabtree & Strong
                                    1 Bowdoin Square
                                    Boston, MA 02114
                                    617-227-7031

                                    Richard Eugene Brodsky
                                    FTS 442-6744
                                    [COR LD NTC]
                                    Brodsky & Mullin
                                    3059 Grand Avenue
                                    Suite 340
                                    Coconut Grove, FL 33133
                                    305-442-1101


     v.

ALLAN D. GERSTEN                    Andrew Clifford Hall
     defendant                     FTS 374-5033
                                   305-374-5030X222
                                   [COR LD NTC]
                                   Adam Jason Lamb
                                   FTS 374-5033
                                   [COR LD NTC]
```



EXHIBIT

M

```
                              Hall David & Joseph
                              1428 Brickell Avenue
                              8th Floor
                              Miami, FL 33131-9113
                              305-374-5030

                              Nicholas A. Alexander
                              FTS 439-7590
                              [COR LD NTC]
                              Douglas B. Otto
                              FTS 439-7590
                              [COR LD NTC]
                              Morrison Mahoney & Miller
                              250 Summer Street
                              Boston, MA 02210-1181
                              617-439-7500

GERSTEN FINANCIAL & INSURANCE,   Andrew Clifford Hall
INC., a Massachusetts            (See above)
corporation                      [COR LD NTC]
      defendant                  Adam Jason Lamb
                                 (See above)
                                 [COR LD NTC]

                              Nicholas A. Alexander
                              (See above)
                              [COR LD NTC]
                              Douglas B. Otto
                              (See above)
                              [COR LD NTC]


-------------------------

BERGER SINGERMAN                 Anthony J. Carriuolo
      claimant                   FTS 523-2872
                                 [COR LD NTC]
                                 Berger Singerman
                                 Las Olas Centre II
                                 350 E Las Olas Boulevard
                                 Suite 1000
                                 Fort Lauderdale, FL 33301
                                 954-525-9900


-------------------------

=========================

NORTH AMERICAN UNDERWRITING      Franklin Lewis Zemel
□

MANAGERS, INC., a Florida        FTS 713-0977
Corporation                      [COR LD NTC]
      plaintiff                  Broad & Cassel
                                 100 SE 3rd Avenue
                                 Suite 2700 One Financial Plaza
                                 Fort Lauderdale, FL 33394
                                 954-764-7060

                              Richard Eugene Brodsky
                              FTS 442-6744
                              [COR LD NTC]
                              Brodsky & Mullin
                              3059 Grand Avenue
                              Suite 340
                              Coconut Grove, FL 33133
                              305-442-1101
```

```
      v.

FIRST AMERICAN INSURANCE
UNDERWRITERS, INC., a
Massachusetts Corporation
     defendant

===========================

ALLAN D. GERSTEN                 Andrew Clifford Hall
     counter-claimant            FTS 374-5033
                                 305-374-5030X222
                                 [COR LD NTC]
                                 Adam Jason Lamb
                                 FTS 374-5033
                                 [COR LD NTC]
                                 Hall David & Joseph
                                 1428 Brickell Avenue
                                 8th Floor
                                 Miami, FL 33131-9113
                                 305-374-5030

                                 Nicholas A. Alexander
                                 FTS 439-7590
                                 [COR LD NTC]
                                 Douglas B. Otto
                                 FTS 439-7590
                                 [COR LD NTC]
                                 Morrison Mahoney & Miller
                                 250 Summer Street
                                 Boston, MA 02210-1181
                                 617-439-7500

□

GERSTEN FINANCIAL & INSURANCE,   Andrew Clifford Hall
INC.                             (See above)
     counter-claimant            [COR LD NTC]
                                 Adam Jason Lamb
                                 (See above)
                                 [COR LD NTC]

                                 Nicholas A. Alexander
                                 (See above)
                                 [COR LD NTC]
                                 Douglas B. Otto
                                 (See above)
                                 [COR LD NTC]

--------------------------

CHARLES N. ZALIS                 Richard Heidlage
     counter-defendant           FTS 367-2988
                                 [COR LD NTC]
                                 Kotin Crabtree & Strong
                                 1 Bowdoin Square
                                 Boston, MA 02114
                                 617-227-7031

NORTH AMERICAN UNDERWRITING
MANAGERS, INC.
     counter-defendant

□
```

# DOCKET    PROCEEDINGS

| DATE | # | DOCKET    ENTRY |
|------|---|------------------|

2/2/01    1    NOTICE OF REMOVAL from 17th Judicial Circuit, Broward
County, Florida (case number 01000626-02); FILING FEE
$150.00 RECEIPT #836074; A-7; AMS (hd) [Entry date 02/05/01]

2/2/01    --    Magistrate identification:  Magistrate Judge Andrea M.
Simonton (hd) [Entry date 02/05/01]

2/8/01    2    ORDER requiring compliance with Local Rule 16.1 of the
United States District Court for the Southern District of
Florida ( Signed by Judge Alan S. Gold on 2/7/01) CCAP [EOD
Date: 2/9/01] (hd) [Entry date 02/09/01]

2/9/01    3    MOTION with memorandum in support by Allan D. Gersten,
Gersten Financial & to dismiss for lack of personal
jurisdiction, or to transfer case to District of
Massachusetts (hd) [Entry date 02/12/01]

2/9/01    4    AFFIDAVIT of Allan D. Gersten by Allan D. Gersten, Gersten
Financial & Re: [3-1] motion to dismiss for lack of
personal jurisdiction, [3-2] motion to transfer case to
District of Massachusetts (hd) [Entry date 02/12/01]

2/9/01    5    NOTICE of filing affidavit of Allan D. Gersten by Allan D.
Gersten, Gersten Financial & Re: [3-1] motion to dismiss
for lack of personal jurisdiction, [3-2] motion to transfer
case to District of Massachusetts (hd) [Entry date 02/12/01]

2/12/01    6    AMENDED ORDER requiring compliance with Local Rule 16.1 of
the United States District Court for the Southern District
of Florida (see order for additional details) ( Signed by
Judge Alan S. Gold on 2/12/01) CCAP [EOD Date: 2/13/01] (hd)
[Entry date 02/13/01]

2/13/01    7    EMERGENCY MOTION with memorandum in support by Allan D.
Gersten, Gersten Financial & to vacate order entered by
State Court, to enjoin dissemination of order entered by
State Court, and for sanctions (hd) [Entry date 02/14/01]

2/13/01    8    ORDER set telephonic status conference for 3:00 2/15/01
before Judge Alan S. Gold, Response to motion reset to
12:00 2/15/01 for [7-1] motion to vacate order entered by
State Court, reset to 12:00 2/15/01 for [7-2] motion to
enjoin dissemination of order entered by State Court, reset
to 12:00 2/15/01 for [7-3] motion for sanctions; set 4:00
2/14/01 deadline for defendants to submit a legible,
certified copy of State Court's 2/6/01 order (see order for
additional details) ( Signed by Judge Alan S. Gold on
2/13/01) CCAP [EOD Date: 2/14/01] (hd) [Entry date 02/14/01]

2/14/01    9    NOTICE of filing attached certified copy of state court
order i compliance with order dated 2/13/01 by Allan D.
Gersten, Gersten Financial & (hd) [Entry date 02/15/01]

| 2/15/01 | -- | Motion hearing re: [7-1] motion to vacate order entered by State Court, [7-2] motion to enjoin dissemination of order entered by State Court, [7-3] motion for sanctions (hd) [Entry date 02/16/01] [Edit date 02/16/01] |
|---------|----|----|
| 2/15/01 | 10 | Minutes of motion hearing re: [7-1] motion to vacate order entered by State Court, [7-2] motion to enjoin dissemination of order entered by State Court, [7-3] motion for sanctions held before Judge Alan S. Gold on 2/15/01; Court Reporter Name or Tape #: JOSEPH MILLIKAN (hd) [Entry date 02/16/01] |
| 2/15/01 | 11 | EXPEDITED RESPONSE by Charles N. Zalis to [7-1] motion to vacate order entered by State Court, [7-2] motion to enjoin dissemination of order entered by State Court, [7-3] motion for sanctions (hd) [Entry date 02/16/01] |
| 2/16/01 | 12 | AGREED ORDER VACATING STATE COURT ORDER AND ENJOINING ITS DISSEMINATION, granting [7-1] motion to vacate order entered by State Court, granting [7-2] motion to enjoin dissemination of order entered by State Court, granting [7-3] motion for sanctions; all further relief sought by parties in emergency motion and expedited response is denied (see order for additional details) ( Signed by Judge Alan S. Gold on 2/16/01) CCAP [EOD Date: 2/20/01] (hd) [Entry date 02/20/01] |
| 2/27/01 | 13 | MEMORANDUM by Charles N. Zalis in opposition to [3-1] motion to dismiss for lack of personal jurisdiction, [3-2] motion to transfer case to District of Massachusetts (1k) [Entry date 02/28/01] |
| 2/27/01 | 14 | MOTION with memorandum in support by Charles N. Zalis to transfer case to the Fort Lauderdale division (1k) [Entry date 02/28/01] |
| 2/27/01 | 15 | NOTICE of filing affidavit of Charles N. Zalis in opposition to the motion to dismiss for lack of jurisdiction or, in the alternative, to transfer action to the District of Massachusetts by Charles N. Zalis (1k) [Entry date 02/28/01] |
| 2/27/01 | 16 | AFFIDAVIT of Charles N. Zalis by Charles N. Zalis Re: [13-1] opposition memorandum (1k) [Entry date 02/28/01] |
| 3/5/01 | 17 | MOTION by Allan D. Gersten, Gersten Financial & to extend time for response to production request (hd) [Entry date 03/06/01] |
| 3/6/01 | 18 | MEMORANDUM by Charles N. Zalis in opposition to [17-1] motion to extend time for response to production request (hd) [Entry date 03/07/01] |
| 3/7/01 | 19 | AGREED MOTION by Allan D. Gersten, Gersten Financial & to extend time for reply supporting to dismiss for lack of personal jurisdiction, or, to transfer case to District of Massachusetts (hd) [Entry date 03/08/01] |
| 3/8/01 | 20 | ORDER granting [17-1] motion to extend time for response to production request. Response to outstanding discovery on or before 4/4/01. ( Signed by Judge Alan S. Gold on 3/6/01) CCAP [EOD Date: 3/9/01] (1k) [Entry date 03/09/01] |
| 3/12/01 | 21 | RESPONSE by Allan D. Gersten, Gersten Financial & to |

|          |    | [14-1] motion to transfer case to the Fort Lauderdale division (hd) [Entry date 03/13/01] |
|----------|----|---|
| 3/15/01  | 22 | REPLY by Allan D. Gersten, Gersten Financial & to response to [3-1] motion to dismiss for lack of personal jurisdiction, [3-2] motion to transfer case to District of Massachusetts (hd) [Entry date 03/16/01] |
| 3/15/01  | 23 | SECOND AFFIDAVIT of Allan D. Gersten by Allan D. Gersten, Gersten Financial & Re: [22-1] response reply to [3-1] motion to dismiss for lack of personal jurisdiction, [3-2] motion to transfer case to District of Massachusetts (hd) [Entry date 03/16/01] |
| 3/15/01  | 24 | NOTICE of filing second affidavit of Allan D. Gersten by Allan D. Gersten, Gersten Financial & Re: [22-1] response reply to [3-1] motion to dismiss for lack of personal jurisdiction, [3-2] motion to transfer case to District of Massachusetts (hd) [Entry date 03/16/01] |
| 3/15/01  | 25 | AMENDED NOTICE of filing second affidavit of Allan D. Gersten by Allan D. Gersten, Gersten Financial & Re: [22-1] response reply to [3-1] motion to dismiss for lack of personal jurisdiction, [3-2] motion to transfer case to District of Massachusetts (hd) [Entry date 03/16/01] |
| 3/19/01  | 26 | REPLY by Charles N. Zalis to response to [14-1] motion to transfer case to the Fort Lauderdale division (hd) [Entry date 03/20/01] |
| 3/19/01  | 27 | Scheduling Report in compliance with LR 16.1 and 2/12/01 amended order requiring compliance with LR 16.1 by Charles N. Zalis, Allan D. Gersten, Gersten Financial & (hd) [Entry date 03/20/01] |
| 3/20/01  | 28 | ORDER Reply to Response to Motion reset to 3/15/01 for [3-1] motion to dismiss for lack of personal jurisdiction granting [19-1] motion to extend time for reply supporting to dismiss for lack of personal jurisdiction, or, to transfer case to District of Massachusetts ( Signed by Judge Alan S. Gold on 3/20/01) CCAP (EOD Date: 3/21/01) (hd) [Entry date 03/21/01] |
| 3/28/01  | 29 | NOTICE of filing attached AFFIDAVIT of Deborah Farlow in opposition to second affidavit of Allan D. Gersten dated 3/12/01 by Charles N. Zalis (hd) [Entry date 03/29/01] |
| 3/28/01  | 30 | NOTICE of filing attached AFFIDAVIT of Jeffrey Farlow in opposition to second affidavit of Allan D. Gersten dated 3/12/01 by Charles N. Zalis (hd) [Entry date 03/29/01] |
| 3/28/01  | 31 | AFFIDAVIT Marvin Klasfeld by Charles N. Zalis in opposition to second affidavit of Allan D. Gersten dated 3/12/01 by Charles N. Zalis (hd) [Entry date 03/29/01] |
| 3/28/01  | 32 | NOTICE of filing AFFIDAVIT Marvin Klasfeld of in opposition to second affidavit of Allan D. Gersten dated 3/12/01 by Charles N. Zalis (hd) [Entry date 03/29/01] |
| 3/28/01  | 33 | NOTICE of filing attached AFFIDAVIT of Manuel Kushner by Charles N. Zalis as a supplement to [30-1] affidavit of Jeffrey Farlow, [29-1] affidavit of Deborah Farlow, in opposition to second affidavit of Allan D. Gersten dated 3/12/01 (hd) [Entry date 03/29/01] |
| 4/4/01   | 34 | MOTION by Allan D. Gersten, Gersten Financial & to extend |

|          |     |                                                                                                                                                                                                                                                                                                     |
|----------|-----|-----|
|          |     | time for response to request for production (hd) [Entry date 04/05/01] |
| 4/5/01   | 35  | MEMORANDUM by Charles N. Zalis in opposition to [34-1] motion to extend time for response to request for production (sn) [Entry date 04/06/01] |
| 4/9/01   | 36  | REPLY by Allan D. Gersten, Gersten Financial & to response to [34-1] motion to extend time for response to request for production (lk) [Entry date 04/10/01] |
| 4/9/01   | 37  | ORDER granting [34-1] motion to extend time for response to request for production. The defendants shall file a response within 20 days from the date the Court issues its Order regarding pending motion to dismiss. (Signed by Judge Alan S. Gold on 4/5/01) CCAP [EOD Date: 4/10/01] (lk) [Entry date 04/10/01] |
| 4/10/01  | 38  | MOTION by Charles N. Zalis for reconsideration of [37-1] 4/5/01 order granting [34-1] motion to extend time for response to request for production and for teleponic conference (hd) [Entry date 04/11/01] |
| 4/18/01  | 39  | ORDER setting telephonic status conference for 4:30 4/20/01 before Judge Alan S. Gold re: [38-1] motion for reconsideration of [37-1] 4/5/01 order granting [34-1] motion to extend time for response to request for production and for teleponic conference ( Signed by Judge Alan S. Gold on 4/17/01) CCAP [EOD Date: 4/19/01] (hd) [Entry date 04/19/01] |
| 4/20/01  | --  | Telephonic status conference held before Judge Alan S. Gold (hd) [Entry date 04/23/01] |
| 4/20/01  | 40  | Minutes of telephonic status conference before Judge Alan S. Gold on 4/20/01; Court Reporter Name: JOSEPH MILLIKAN (hd) [Entry date 04/23/01] |
| 4/23/01  | 41  | ORDER set telephonic status conference for 8:45 5/8/01 before Judge Alan S. Gold denying [38-1] motion for reconsideration of [37-1] 4/5/01 order granting [34-1] motion to extend time for response to request for production and for teleponic conference, denying [14-1] motion to transfer case to the Fort Lauderdale division (see order for additional details) ( Signed by Judge Alan S. Gold on 4/23/01) CCAP [EOD Date: 4/24/01] (hd) [Entry date 04/24/01] |
| 5/7/01   | 42  | JOINT Scheduling Report of Scheduling Meeting by Charles N. Zalis, Allan D. Gersten, Gersten Financial & (lk) [Entry date 05/08/01] |
| 5/7/01   | 43  | SUPPLEMENT by Charles N. Zalis to: [42-1] Joint Report scheduling (lk) [Entry date 05/08/01] |
| 5/9/01   | 44  | Minutes of telephonic status conference held before Judge Alan S. Gold on 5/8/01; Court Reporter Name or Tape #: JOSEPH MILLIKAN (sk) [Entry date 05/10/01] |
| 5/9/01   | --  | Status conference held before Judge Alan S. Gold (sk) [Entry date 05/10/01] |
| 5/11/01  | 45  | ORDER pursuant to [42-1] Report scheduling, adopting except that (a) responses to discovery requests shall be due 20 days after a request is received; (b) parties will then have 10 days to file a motion to compel; (c) responses to |

|          |    | motions to compel will be due 5 days after receipt; (d) U.S. Magistrate Judge Simonton will held expedited hearings to resolve discovery disputes; see order for details set evidentiary hearing for 9:00 8/13/01 before Judge Alan S. Gold (Signed by Judge Alan S. Gold on 5/8/01) CCAP [EOD Date: 5/14/01] (sn) [Entry date 05/14/01] |
| 5/22/01  | 46 | UNOPPOSED MOTION by Charles N. Zalis to extend time for parties to submit written memorandum regarding discovery issues (lk) [Entry date 05/23/01] |
| 5/22/01  | 47 | AGREED MOTION by Allan D. Gersten, Gersten Financial & to extend time to file jurisdictional discovery issues memorandum (lk) [Entry date 05/23/01] |
| 5/24/01  | 48 | ORDER setting 5/25/01 deadline to file jurisdictional discovery issues memorandum, granting [47-1] motion to extend time to file jurisdictional discovery issues memorandum ( Signed by Alan S. Gold on 5/23/01) CCAP [EOD Date: 5/24/01] (hd) |
| 5/25/01  | 49 | MEMORANDUM by Allan D. Gersten, Gersten Financial regarding discovery issues and potential disputes, re: [45-2] order (sn) [Entry date 05/29/01] |
| 5/25/01  | 50 | MEMORANDUM regarding anticipated Jurisdictional Discovery Issues by Charles N. Zalis re: [45-2] order (sn) [Entry date 05/29/01] |
| 6/1/01   | 51 | AGREED MOTION by Allan D. Gersten, Gersten Financial & to extend time for response to memorandum re: anticipated jurisdiction discovery issues (hd) [Entry date 06/04/01] |
| 6/5/01   | 52 | ORDER setting discovery conference for 10:00 6/18/01 before Magistrate Judge Andrea M. Simonton ( Signed by Magistrate Judge Andrea M. Simonton on 6/5/01) CCAP [EOD Date: 6/6/01] (hd) [Entry date 06/06/01] |
| 6/5/01   | 53 | RESPONSE by Allan D. Gersten, Gersten Financial & to [50-1] memorandum regarding anticipated jurisdictional discovery issues (sn) [Entry date 06/06/01] |
| 6/6/01   | 54 | MOTION by Charles N. Zalis to extend time to file reply to the memorandum regarding discovery issues and potential disputes (lk) [Entry date 06/07/01] |
| 6/7/01   | 55 | ORDER setting 6/5/01 for response, granting [51-1] motion to extend time for response to memorandum re: anticipated jurisdiction discovery issues ( Signed by Judge Alan S. Gold on 6/4/01) CCAP [EOD Date: 6/7/01] (hd) |
| 6/8/01   | 56 | AGREED MOTION by Allan D. Gersten, Gersten Financial & to reschedule discovery conference (hd) [Entry date 06/11/01] |
| 6/8/01   | 57 | OBJECTIONS by Allan D. Gersten, Gersten Financial & to plaintiffs' request for production as to jurisdictional issues (hd) [Entry date 06/11/01] |
| 6/12/01  | 58 | ORDER resetting discovery conference for 2:00 6/22/01 before Magistrate Judge Andrea M. Simonton granting [56-1] motion to reschedule discovery conference ( Signed by Magistrate Judge John J. O'Sullivan for Magistrate Judge Andrea M. Simonton on 6/12/01) CCAP [EOD Date: 6/13/01] (hd) [Entry date 06/13/01] [Edit date 06/13/01] |

| | | |
|---|---|---|
| 6/14/01 | 59 | ORDER setting 6/13/01 to file reply to the memorandum regarding discovery issues and potential disputes, granting [54-1] motion to extend time to file reply to the memorandum regarding discovery issues and potential disputes ( Signed by Judge Alan S. Gold on 6/8/01) CCAP Date: 6/14/01] (hd) |
| 6/15/01 | 61 | REPLY by Charles N. Zalis to [49-1] memorandum regarding discovery issues and potential disputes (sn) [Entry date 06/18/01] [Edit date 06/21/01] |
| 6/18/01 | 60 | ORDER REFERRING CASE (PRE-TRIAL) to  Magistrate Judge Andrea M. Simonton, with the exception of motions for extension of time which would affect the pretrial and trial dates prevsiously established by order of the court ( Signed by Judge Alan S. Gold on 6/13/01) CCAP [EOD Date: 6/18/01] (hd) |
| 6/21/01 | 62 | MOTION by Allan D. Gersten, Gersten Financial & for Nicholas A. Alexander and Douglas B. Otto to appear pro hac vice (hd) [Entry date 06/22/01] |
| 6/21/01 | -- | Filing Fee Paid;  FILING FEE $150.00    RECEIPT #844396 (hd) [Entry date 06/22/01] |
| 6/21/01 | 63 | AFFIDAVIT of Nicholas A. Alexander by Allan D. Gersten, Gersten Financial & Re: [62-1] motion for Nicholas A. Alexander and Douglas B. Otto to appear pro hac vice (hd) [Entry date 06/22/01] |
| 6/21/01 | 64 | AFFIDAVIT of Douglas B. Otto by Allan D. Gersten, Gersten Financial & Re: [62-1] motion for Nicholas A. Alexander and Douglas B. Otto to appear pro hac vice (hd) [Entry date 06/22/01] |
| 6/21/01 | 65 | NOTICE of filing affidavits of Nicholas A. Alexander and Douglas B. Otto by Allan D. Gersten, Gersten Financial & Re: [62-1] motion for Nicholas A. Alexander and Douglas B. Otto to appear pro hac   Financial & (hd) [Entry date 06/22/01] |
| 6/21/01 | 66 | MOTION by Charles N. Zalis to compel production of documents (lk) [Entry date 06/22/01] |
| 6/21/01 | 67 | ERROR IN DOCKETING - SKIPPED NUMBER (dr) [Entry date 06/28/01] |
| 6/22/01 | -- | Discovery conference held before Magistrate Judge Andrea M. Simonton (hd) [Entry date 06/25/01] |
| 6/22/01 | 68 | Minutes of discovery conference held before Magistrate Judge Andrea M. Simonton on 6/22/01; Court Reporter Name or Tape #: 01FX65-1380 and 66-1 to 174 (hd) [Entry date 06/25/01] |
| □ | | |
| 6/25/01 | 69 | ORDER granting [62-1] motion for Nicholas A. Alexander and Douglas B. Otto to appear pro hac vice ( Signed by Judge Alan S. Gold on 6/22/01) [EOD Date: 6/26/01] (hd) [Entry date 06/26/01] |
| 6/27/01 | 70 | ORDER after discovery conference Response to motion reset to 6/28/01 for [66-1] motion to compel production of documents ( Signed by Magistrate Judge Andrea M. Simonton on 6/26/01) [EOD Date: 6/28/01] (hd) [Entry date 06/28/01] |
| 6/28/01 | 71 | NOTICE, with attachments, of filing proposed |

|           |     | confidentiality agreement by Allan D. Gersten, Gersten Financial & (hd) [Entry date 06/29/01] |
|-----------|-----|------|
| 6/28/01   | 72  | RESPONSE by Allan D. Gersten, Gersten Financial &  to [66-1] motion to compel production of documents (hd) [Entry date 06/29/01] |
| 7/9/01    | 73  | REPLY by Charles N. Zalis  to response to [66-1] motion to compel production of documents (hd) [Entry date 07/10/01] |
| 7/13/01   | 74  | NOTICE by Allan D. Gersten, Gersten Financial &  to take deposition of Charles Zalis on 8/2/01 at 10:00 (lk) [Entry date 07/16/01] |
| 7/17/01   | 75  | ORDER granting in part, denying in part [66-1] motion to compel production of documents; on or before 7/27/01 defendants must produce the documents requested in plaintiff's request No. 24, as modified; see order for details (Signed by Magistrate Judge Andrea M. Simonton on 7/17/01) [EOD Date: 7/18/01] (sn) [Entry date 07/18/01] |
| 7/20/01   | 76  | RE-NOTICE by Allan D. Gersten, Gersten Financial &  to take deposition of Charles Zalis 8/2/01 at 10:00am (wc) [Entry date 07/23/01] |
| 7/23/01   | 77  | NOTICE by Charles N. Zalis  to take deposition of Mariella Flores 7/26/01 at 1:30 (see notice for further deponents) (tdj) [Entry date 07/24/01] |
| 7/23/01   | 78  | MOTION by Charles N. Zalis for Richard Heidlage to appear pro hac vice (lk) [Entry date 07/25/01] |
| 7/23/01   | --  | Filing Fee Paid;  FILING FEE $ 75.00  RECEIPT # 846113 (lk) [Entry date 07/25/01] |
| 7/25/01   | 79  | ORDER granting [78-1] motion for Richard Heidlage to appear pro hac vice (Signed by Judge Alan S. Gold on 7/24/01) [EOD Date: 7/26/01] (ra) [Entry date 07/26/01] |
| 7/27/01   | 80  | RE-NOTICE by Charles N. Zalis of taking depositions duces tecum of Steve Azcona, etc., for 1:30 7/26/01, etc. (hd) [Entry date 07/30/01] |
| □         |     |      |
| 7/31/01   | 81  | CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER ( Signed by Judge Alan S. Gold on 7/30/01) [EOD Date: 8/1/01] (hd) [Entry date 08/01/01] |
| 8/2/01    | 82  | SEALED DOCUMENT placed in vault (sp) [Entry date 08/03/01] |
| 8/2/01    | 83  | SEALED DOCUMENT with attached exhibits placed in vault (sp) [Entry date 08/03/01] |
| 8/3/01    | 84  | NOTICE by Allan D. Gersten, Gersten Financial & of continuation of videotape deposition of Charles Zalis for 10:00 8/10/01 (hd) [Entry date 08/06/01] |
| 8/7/01    | 85  | MOTION by Charles N. Zalis for protective order re: continued deposition of Charles N. Zalis (hd) [Entry date 08/08/01] |
| 8/7/01    | 86  | EMERGENCY MOTION by Allan D. Gersten, Gersten Financial & to refer [85-1] motion for protective order re: continued deposition of Charles N. Zalis to Magistrate Judge Andrea M. Simonton for hearing (hd) [Entry date 08/08/01] |
| 8/7/01    | 86  | RESPONSE by Allan D. Gersten, Gersten Financial &  to |

|  |  |  |
|---|---|---|
|  |  | [85-1] motion for protective order re: continued deposition of Charles N. Zalis (hd) [Entry date 08/08/01] |
| 8/8/01 | -- | Telephonic motion hearing re: [85-1] motion for protective order re: continued deposition of Charles N. Zalis (hd) [Entry date 08/09/01] |
| 8/8/01 | 87 | Minutes of telephonic motion hearing re: [85-1] motion for protective order re: continued deposition of Charles N. Zalis held before Judge Alan S. Gold on 8/8/01; Court Reporter Name or Tape #: 01FX-91-1 (hd) [Entry date 08/09/01] |
| 8/8/01 | 88 | ORDER OF REFERENCE Referring Motion(s) 8/2/01 Sealed Plaintiffs Motions for Sanctions to Magistrate Judge Simonton for a report and recommendation ( signed by Judge Alan S. Gold on 8/6/01) [EOD Date: 8/9/01] (sp) [Entry date 08/09/01] |
| 8/8/01 | 88 | ORDER granting [82-1] document(s) ( Signed by Judge Alan S. Gold on 8/6/01) [EOD Date: 8/9/01] (sp) [Entry date 08/09/01] |
| 8/9/01 | 89 | ORDER granting [86-1] motion to refer [85-1] motion for protective order re: continued deposition of Charles N. Zalis to Magistrate Judge Andrea M. Simonton for hearing, denying without prejudice to renew [85-1] motion for protective order re: continued deposition of Charles N. Zalis ( Signed by Magistrate Judge Andrea M. Simonton on 8/8/01) [EOD Date: 8/10/01] (hd) [Entry date 08/10/01] |
| 8/10/01 | 90 | ORDER granting [86-1] motion to refer [85-1] motion for protective order re: continued deposition of Charles N. Zalis to Magistrate Judge Andrea M. Simonton for hearing ( Signed by Judge Alan S. Gold on 8/9/01) [EOD Date: 8/13/01] (hd) [Entry date 08/13/01] [Edit date 08/13/01] |
| 8/10/01 | -- | Telephonic status conference  held  before Judge Alan S. Gold (hd) [Entry date 08/13/01] |
| 8/10/01 | 91 | Minutes of telephonic status conference held before Judge Alan S. Gold on 8/10/01; Court Reporter Name or Tape #: JOSEPH MILLIKAN (hd) [Entry date 08/13/01] |
| 8/13/01 | 92 | ORDER dismissing as moot [46-1] motion to extend time for parties to submit written memorandum regarding discovery issues ( Signed by Judge Alan S. Gold on 8/10/01) [EOD Date: 8/14/01] (hd) [Entry date 08/14/01] |
| 8/13/01 | -- | Motion hearing re: [3-1] motion to dismiss for lack of personal jurisdiction, [3-2] motion to transfer case to District of Massachusetts (hd) [Entry date 08/15/01] |
| 8/13/01 | 93 | Minutes of motion hearing re: [3-1] motion to dismiss for lack of personal jurisdiction, [3-2] motion to transfer case to District of Massachusetts held before Judge Alan S. Gold on 8/13/01; Court Reporter Name or Tape #: JOSEPH MILLIKAN (hd) [Entry date 08/15/01] |
| 8/15/01 | 94 | AFFIDAVIT of Muriel Freedman by Allan D. Gersten, Gersten Financial & Re: [3-1] motion to dismiss for lack of personal jurisdiction, [3-2] motion to transfer case to District of Massachusetts (hd) [Entry date 08/16/01] |
| 8/15/01 | 95 | NOTICE of filing affidavit of Muriel Freedman by Allan D. Gersten, Gersten Financial & Re: [3-1] motion to dismiss |

|         |     | for lack of personal jurisdiction, [3-2] motion to transfer case to District of Massachusets (hd) [Entry date 08/16/01] |
|---------|-----|---|
| 8/15/01 | 96  | NOTICE of filing attached affidavits submitted to the Court during the evidentiary hearing for 8/13/01 by Allan D. Gersten, Gersten Financial & (hd) [Entry date 08/16/01] |
| 8/16/01 | 98  | Deposition designations for evidentiary hearing for 8/13/01 re: [3-1] motion to dismiss for lack of personal jurisdiction, [3-2] motion to transfer case to of Massachusetts by Allan D. Gersten, Gersten Financial & (hd) [Entry date 08/17/01] [Edit date 08/17/01] |
| 8/16/01 | 97  | MEMORANDUM by Allan D. Gersten, Gersten Financial &  in opposition to plaintiffs' motion for sanctions (hd) [Entry date 09/10/01] |
| 8/20/01 | 99  | ORDER denying [3-1] motion to dismiss for lack of personal jurisdiction, denying [3-2] motion to transfer case to District of Massachusetts ( Signed by Judge Alan S. Gold on 8/17/01) [EOD Date: 8/21/01] (hd) [Entry date 08/21/01] |
| 8/20/01 | 100 | SCHEDULING ORDER setting Jury trial set for 9:00 6/17/02 Pretrial Stipulation due on or before 4/17/02 Calendar call set for 1:30 6/12/02 Pretrial conference for 9:30 5/17/02 ; ( Signed by Judge Alan S. Gold on 8/17/01) [EOD Date: 8/21/01]  CCAP (hd) [Entry date 08/21/01] |
| 8/20/01 | 101 | ORDER REFERRING DISCOVERY MOTIONS to  Magistrate Judge Andrea M. Simonton ( Signed by Judge Alan S. Gold  on 8/17/01)    CCAP [EOD Date: 8/21/01] (hd) [Entry date 08/21/01] |
| 8/20/01 | 102 | ORDER referring case to mediation.  15 days to appoint mediator ( Signed by Judge Alan S. Gold on 8/17/01) [EOD Date: 8/21/01] (hd) [Entry date 08/21/01] |
| 8/20/01 | 103 | ORDER requiring completion of form consenting to jurisdiction by a US Magistrate Judge for final disposition ( Signed by Judge Alan S. Gold on 8/17/01) [EOD Date: 8/21/01] (hd) [Entry date 08/21/01] |
| 8/20/01 | 104 | PRETRIAL MEMORANDUM by Charles N. Zalis  in opposition to [3-1] motion to dismiss for lack of personal jurisdiction, [3-2] motion to transfer case to District of Massachusetts (hd) [Entry date 08/21/01] |
| 8/28/01 | 105 | REPLY by Charles N. Zalis  to response to motion for sanctions (hd) [Entry date 08/29/01] |
| 8/30/01 | 106 | AGREED MOTION by Allan D. Gersten, Gersten Financial & to extend time to file an answer to complaint (ra) [Entry date 08/31/01] [Edit date 08/31/01] |
| 8/30/01 | 107 | MOTION by Allan D. Gersten, Gersten Financial & for leave to file Surreply in opposition to plaintiffs' reply to defendants' memorandum in opposition to plaintiffs' motion for sanctions and to exceed page limitation (ra) [Entry date 08/31/01] [Edit date 09/10/01] |
| 8/30/01 | 108 | NOTICE of filing deposition in support of their surreply by Allan D. Gersten, Gersten Financial & (ra) [Entry date 08/31/01] |
| 8/30/01 | 109 | DEPOSITION of Jennifer Ducharme (ra) [Entry date 08/31/01] |

| 8/30/01 | 110 | DEPOSITION of Lise M. Van Vooren (ra) [Entry date 08/31/01] |
| 8/30/01 | 111 | DEPOSITION of Lori Palladino (ra) [Entry date 08/31/01] |
| 8/30/01 | 115 | SURREPLY by Allan D. Gersten, Gersten Financial & in opposition to [105-1] plaintiffs' reply supporting motion for sanctions (hd) [Entry date 09/10/01] |
| 9/6/01 | 112 | AMENDED COMPLAINT by Charles N. Zalis, (Answer due 9/17/01 for Gersten Financial &, for Allan D. Gersten) amending adding North American Under, First American Insur (sn) [Entry date 09/07/01] |
| 9/6/01 | 113 | Consent to Jurisdiction by Magistrate Judge for final disposition of motions by Allan D. Gersten, Gersten Financial & (rn) [Entry date 09/07/01] |
| 9/6/01 | 114 | MOTION by Charles N. Zalis for leave to file first amended complaint for injunctive relief and damages (sn) [Entry date 09/07/01] |
| 9/7/01 | 116 | AGREED SECOND MOTION by Allan D. Gersten, Gersten Financial & to extend time for response to complaint (hd) [Entry date 09/10/01] |
| 9/10/01 | 117 | NOTICE of selection of Samuel Heller as Mediator by Charles N. Zalis, North American Under (hd) [Entry date 09/13/01] |
| 9/11/01 | 118 | MEMORANDUM by Charles N. Zalis, North American Under in opposition to [107-1] motion for leave to file Surreply in opposition to plaintiffs' reply to defendants' memorandum in opposition to plaintiffs' motion for sanctions and to exceed page limitation (hd) [Entry date 09/13/01] |
| 9/11/01 | 119 | STIPULATION by Charles N. Zalis, North American Under In Re: consent to jurisdiction by a US Magistrate Judge for final disposition; this consent is not for motions for dismissal, summary judgment, jury or non-jury trial on merits (hd) [Entry date 09/13/01] |
| 9/11/01 | 120 | AGREED ORDER granting [116-1] motion to extend time for response to complaint, granting [106-1] motion to extend time to file answer to complaint ( Signed by Judge Alan S. Gold on 9/10/01) [EOD Date: 9/13/01] (hd) [Entry date 09/13/01] |
| 9/18/01 | 121 | NOTICE of charging lien by Charles N. Zalis, North American Under (hd) [Entry date 09/19/01] |
| 9/19/01 | 122 | NOTICE of withdrawal of opposition to motion for leave to file first amended complaint by Allan D. Gersten, Gersten Financial & (hd) [Entry date 09/20/01] |
| 9/25/01 | 123 | ORDER of reference to Magistrate Judge Andrea M. Simonton to take all necesary and proper action as required by law, and to render a final Order, as appropriate, with respect to the following: motions for costs and for attorney's fees ( signed by Judge Alan S. Gold on 9/24/01) [EOD Date: 9/26/01] (hd) [Entry date 09/26/01] |
| 10/2/01 | 124 | ORDER granting [114-1] motion for leave to file first amended complaint for injunctive relief and damages ( Signed by Judge Alan S. Gold on 9/28/01) [EOD Date: 10/3/01] (hd) [Entry date 10/03/01] |

| | | |
|---|---|---|
| 10/12/01 | 125 | AGREED MOTION by Allan D. Gersten, Gersten Financial & to extend time for response to first amended verified complaint (hd) [Entry date 10/15/01] |
| 10/17/01 | 126 | ORDER reset response to first amended verified complaint for 10/31/01 for First American Insur, for Gersten Financial &, for Allan D. Gersten granting [125-1] motion to extend time for response to first amended verified complaint ( Signed by Judge Alan S. Gold on 10/16/01) [EOD Date: 10/18/01] (hd) [Entry date 10/18/01] |
| 10/25/01 | 127 | Release of exhibits (plaintiff's) to Gary Talerico for Kaye Scholer, LLP (hd) [Entry date 10/26/01] |
| 10/31/01 | 128 | ANSWER and affirmative defenses by Allan D. Gersten, Gersten Financial & to first amended verified complaint; jury demand (hd) [Entry date 11/01/01] |
| 10/31/01 | 128 | COUNTERCLAIM by Allan D. Gersten, Gersten Financial & against Charles N. Zalis, North American Under (hd) [Entry date 11/01/01] |
| 10/31/01 | 129 | MOTION by Allan D. Gersten, Gersten Financial & to strike claims for attorney's fees (hd) [Entry date 11/01/01] |
| 11/26/01 | 130 | ANSWER by Charles N. Zalis, North American Under to [128-1] counter claim (hd) [Entry date 11/27/01] |
| 11/29/01 | 131 | NOTICE of attorney appearance for Allan D. Gersten by Daniel Draper Jr. (hd) [Entry date 11/30/01] |
| 12/5/01 | 132 | NOTICE of Withdrawal of Notice of Appearance by Daniel Draper, Jr. by Allan D. Gersten (wc) [Entry date 12/06/01] |
| 1/30/02 | 133 | NOTICE of charging lien by Charles N. Zalis, North American Under (hd) [Entry date 01/31/02] |
| 2/4/02 | 134 | REPORT AND RECOMMENDATIONS of Magistrate Judge Andrea M. Simonton recommending that [129-1] motion to strike claims for attorney's fees be granted by default. Motion no longer referred. Signed on: 2/1/02   Objections to R and R due by 2/14/02 CCAP (hd) [Entry date 02/05/02] |
| □ | | |
| 2/7/02 | 135 | ORDER approving stipulation for substitution of counsel. ( Signed by Judge Alan S. Gold on 2/6/02) [EOD Date: 2/8/02] (lk) [Entry date 02/08/02] |
| 2/13/02 | 136 | MOTION by Allan D. Gersten, Gersten Financial & to compel responses by plaintiffs to defendants' first request for production of documents and things and first set of interrogatories (hd) [Entry date 02/14/02] |
| 3/1/02 | 137 | Notice of Filing Expert Witness Disclosure by Allan D. Gersten, Gersten Financial &, First American Insur (ra) [Entry date 03/04/02] |
| 3/6/02 | 138 | WITHDRAWAL AND STIPULATION for substitution of co-counsel by Charles N. Zalis; Richard Brodsky substitutes as co-counsel in place of Franklin L. Zemel of Broad and Cassel (hd) [Entry date 03/07/02] |
| 3/6/02 | 138 | NOTICE of attorney appearance for North American Under by Richard Eugene Brodsky (hd) [Entry date 03/07/02] |
| 3/6/02 | 139 | STIPULATION of mootness with regard to motion to compel responses by plaintiffs to defendants' first request for |

|          |     | production of documents and things and first set of interrogatories by Charles N. Zalis, Allan D. Gersten, Gersten Financial &, North American Under, First American Insur (hd) [Entry date 03/07/02] |
|----------|-----|---|
| 3/11/02  | 140 | ORDER denying as moot [136-1] motion to compel responses by plaintiffs to defendants' first request for production of documents and things and first set of interrogatories ( Signed by Magistrate Judge Andrea M. Simonton on 3/11/02) [EOD Date: 3/13/02] (hd) [Entry date 03/13/02] |
| 3/18/02  | 141 | RE-NOTICE by Allan D. Gersten, Gersten Financial & to take deposition of Charles Zalis for 10:00 4/16/02 (hd) [Entry date 03/19/02] |
| 3/18/02  | 142 | RE-NOTICE by Allan D. Gersten, Gersten Financial & to take deposition duces tecum of Marvin Klasfeld for 11:00 4/18/02 (hd) [Entry date 03/19/02] |
| 3/19/02  | 143 | ORDER granting [138-1] stipulation for substitution of counsel ( Signed by Judge Alan S. Gold on 3/19/02) [EOD Date: 3/20/02] (wc) [Entry date 03/20/02] |
| 3/19/02  | 144 | ORDER affirming [134-1] report and recommendations; granting by default [129-1] motion to strike claims for attorney's fees; Plaintiff's claims for attorneys' fees contained in Counts I, II, V, VI, VII, X, XI and XII are hereby stricken from the Amended Complaint ( Signed by Judge Alan S. Gold on 3/18/02) [EOD Date: 3/20/02] CCAP (wc) [Entry date 03/20/02] |
| 3/29/02  | 145 | ORDER setting 4/15/02 for surreply, granting [107-1] motion for leave to file Surreply in opposition to plaintiffs' reply to defendants' memorandum opposition to plaintiffs' motion for sanctions and to exceed page limitation ( Signed by Magistrate Judge Andrea M. Simonton on 3/29/02) [EOD Date: 4/1/02] (hd) [Entry date 04/01/02] |
| 4/2/02   | 146 | MOTION by Charles N. Zalis, North American Under to substitute Franklin L. Zemel as Attorney (ra) [Entry date 04/03/02] |
| 4/8/02   | 147 | AMENDED ORDER amending [143-1] order approving [138-1] stipulation; Richard Eugene Brodsky is substituted as counsel for Broad and Cassel and Franklin L. Zemel is relieved of all responsibilities ( Signed by Judge Alan S. Gold on 4/3/02) [EOD Date: 4/9/02] (hd) [Entry date 04/09/02] |
| 4/15/02  | 148 | RESPONSE by Charles N. Zalis, North American Under to surreply in opposition to plaintiffs' reply to defendants' opposition memorandum to plaintiffs' motion for sanctions (hd) [Entry date 04/16/02] |
| 4/15/02  | 149 | AMENDMENT TO AMENDED ORDER amending [143-1] order approving [138-1] stipulation; Richard Eugene Brodsky is substituted as counsel for Broad and Cassel, Franklin L. Zemel and Franklin L. Zemel P.A. are relieved of all responsibilities ( Signed by Judge Alan S. Gold on 4/15/02) [EOD Date: 4/16/02] (hd) [Entry date 04/16/02] |
| 4/16/02  | 150 | MOTION by Charles N. Zalis to quash subpoena (ct) [Entry date 04/17/02] |
| 4/17/02  | 151 | MOTION with memorandum in support by Allan D. Gersten, Gersten Financial &, First American Insur for sanctions, |

|         |     | for contempt, or to strike pleadings of plaintiffs for failure to comply with pretrial order, and in limine to exclude plaintiffs' expert witnesses (hd) [Entry date 04/18/02] |
|---------|-----|---|
| 4/18/02 | 152 | MOTION by Charles N. Zalis, North American Under to extend time to file pretrial stipulation and motions in limine (hd) [Entry date 04/19/02] |
| 4/23/02 | 153 | ORDER OF REFERENCE Referring Motion(s) [151-1] motion for sanctions referred  to Magistrate Judge Andrea M. Simonton, [151-2] motion for contempt referred  to Magistrate Judge Andrea M. Simonton, [151-3] motion to strike pleadings of plaintiffs for failure to comply with pretrial order referred  to Magistrate Judge Andrea M. Simonton, [151-4] motion in limine to exclude plaintiffs' expert witnesses referred  to Magistrate Judge Andrea M. Simonton ( signed by Judge Alan S. Gold  on 4/23/02)  [EOD Date: 4/24/02] (hd) |
|         |     | [Entry date 04/24/02] |
| 4/26/02 | 154 | ORDER granting [152-1] motion to extend time to file pretrial stipulation and motions in limine Set pretrial stipulation due for 4/30/02 ( Signed by Judge Alan S. Gold on 04/25/02) [EOD Date: 4/29/02] (ra) [Entry date 04/29/02] |
| 4/30/02 | 155 | RESPONSE by Charles N. Zalis  to [151-1] motion for sanctions, [151-2] motion for contempt, [151-3] motion to strike pleadings of plaintiffs for failure to comply with pretrial order, [151-4] motion in limine to exclude plaintiffs' expert witnesses (hd) [Entry date 05/01/02] |
| 4/30/02 | 156 | MOTION by Allan D. Gersten, Gersten Financial &, First American Insur for reconsideration of [154-2] order granting [152-1] motion to extend time to file pretrial stipulation and motions in limine, or to extend time to file joint pretrial stipulation and motions in limine (hd) [Entry date 05/01/02] |
| 4/30/02 | 157 | MOTION by Charles N. Zalis, North American Under in limine to exclude at trial the testimony of defendants' proposed expert (hd) [Entry date 05/01/02] [Edit date 05/01/02] |
| 4/30/02 | 158 | MOTION by Charles N. Zalis, North American Under in limine to exclude at trial the use of any document called for in discovery but not provided (hd) [Entry date 05/01/02] |
| 5/3/02  | 159 | NOTICE of Change of Address of Attorney by Charles N. Zalis (hd) [Entry date 05/06/02] |
| 5/6/02  | 160 | RESPONSE by Charles N. Zalis, North American Under in opposition to [156-1] motion for reconsideration of [154-2] order granting [152-1] motion to extend time to file pretrial stipulation and motions in limine (hd) [Entry date 05/07/02] [Edit date 05/07/02] |
| 5/6/02  | 160 | CROSS MOTION by Charles N. Zalis, North American Under to require defendants to participate in prepartion of pretrial stipulation (hd) [Entry date 05/07/02] [Edit date 05/07/02] |
| 5/6/02  | 161 | MOTION by Allan D. Gersten, Gersten Financial &, First American Insur to extend time for reply supporting 151-1] motion for sanctions, [151-2] motion for contempt, [151-3] motion to strike pleadings of plaintiffs for failure to comply with pretrial order, [151-4] motion in limine to exclude plaintiffs' expert witnesses (hd) |

<table>
<tr><td></td><td></td><td>[Entry date 05/07/02]</td></tr>
</table>

|         |      |                                                                                                                                                                                                                                                                                                                                                                                                                                        |
|---------|------|------|

□

5/6/02   163   ORDER setting telephonic status conference and hearing date: Motion hearing before Judge Alan S. Gold set for 8:45 5/13/02 for [156-1] motion for reconsideration of [154-2] order granting [152-1] motion to extend time to file pretrial stipulation and motions in limine, set for 8:45 5/13/02 for [156-2] motion to extend time to file joint pretrial stipulation and motions in limine ( Signed by Judge Alan S. Gold on 5/6/02) [EOD Date: 5/8/02] (sp) [Entry date 05/08/02]

5/7/02   162   REPLY by Allan D. Gersten, Gersten Financial &, First American Insur  to response to [151-1] motion for sanctions, [151-2] motion for contempt, [151-3] motion to strike pleadings of plaintiffs for failure to comply with pretrial order, [151-4] motion in limine to exclude plaintiffs' expert witnesses (hd) [Entry date 05/08/02]

5/10/02  164   Sealed Document returned to Richard E. Brodsky Pursuant to Order 5/18/02 (mh) [Entry date 03/17/04] [Edit date 03/17/04]

5/13/02  --    Telephonic status conference  held  before Judge Alan S. Gold (hd) [Entry date 05/14/02]

5/13/02  165   Minutes of telephonic status conference re: [156-1] motion for reconsideration of [154-2] order granting [152-1] motion to extend time to file pretrial stipulation and motions in limine, [156-2] motion to extend time to file joint pretrial stipulation and motions in limine held before Judge Alan S. Gold on 5/13/02; Court Reporter Name or Tape #: JOSEPH MILLIKAN (hd) [Entry date 05/14/02]

5/13/02  166   MOTION by Allan D. Gersten, Gersten Financial & to compel responses by plaintiffs to defendants' first and second requests for production of documents and things; and, first sets of interrogatories (2) by defendants Allan D. Gersten and Gersten Financial, and request for for sanctions (hd) [Entry date 05/14/02]

5/13/02  167   ORDER granting by default [150-1] motion to quash subpoena ( Signed by Judge Alan S. Gold on 5/13/02) [EOD Date: 5/14/02] (hd) [Entry date 05/14/02]

5/13/02  168   ORDER telephonic hearing before Magistrate Judge Andrea M. Simonton set for 4:30 5/15/02 for [151-1] motion for sanctions, set for 4:30 5/15/02 for [151-2] motion for contempt, set for 4:30 5/15/02 for [151-3] motion to strike pleadings of plaintiffs for failure to comply with pretrial order ( Signed by Magistrate Judge Andrea M. Simonton on 5/13/02) [EOD Date: 5/14/02] (hd) [Entry date 05/14/02]

□

5/14/02  169   ORDER Reply to Response to Motion reset to 5/7/02 for [151-1] motion for sanctions, reset to 5/7/02 for [151-2] motion for contempt, reset to 5/7/02 for [151-3] motion to strike pleadings of plaintiffs for failure to comply with pretrial order, reset to 5/7/02 for [151-4] motion in limine to exclude plaintiffs' expert witnesses granting [161-1] motion to extend time for reply supporting 151-1] motion for sanctions, [151-2] motion for contempt, [151-3] motion to strike pleadings of plaintiffs for failure to comply with pretrial order, [151-4] motion in limine to exclude plaintiffs' expert witnesses ( Signed by Judge Alan S. Gold on 5/14/02) [EOD Date: 5/15/02] (hd)

[Entry date 05/15/02]

5/14/02  170    ORDER ON PENDING MOTIONS resetting joint pretrial
                stipulation due for 5:00 5/15/02 denying [160-1] cross
                motion to require defendants to participate in preparation of
                pretrial stipulation, denying [156-1] motion for
                reconsideration of [154-2] order granting [152-1] motion to
                extend time to file pretrial stipulation and motions in
                limine, granting [156-2] motion to extend time to file joint
                pretrial stipulation and motions in limine ( Signed by Judge
                Alan S. Gold on 5/14/02) [EOD Date: 5/15/02] (hd)
                [Entry date 05/15/02] [Edit date 05/15/02]

5/14/02  171    MOTION by Allan D. Gersten, Gersten Financial &, First
                American Insur in limine to exclude at trial the e-mail
                communications containing settlement discussions between
                the parties (hd) [Entry date 05/15/02]

5/14/02  172    RESPONSE by Allan D. Gersten, Gersten Financial &, First
                American Insur  to [158-1] motion in limine to exclude at
                trial the use of any document called for in discovery but
                not provided (hd) [Entry date 05/15/02]

5/14/02  173    RESPONSE by Allan D. Gersten, Gersten Financial &, First
                American Insur  to [157-1] motion in limine to exclude at
                trial the testimony of defendants' proposed expert (hd)
                [Entry date 05/15/02]

5/15/02  174    JOINT PRETRIAL STIPULATION by Charles N. Zalis, Allan D.
                Gersten, Gersten Financial &, North American Under, First
                American Insur (hd) [Entry date 05/16/02]

5/15/02  175    ORDER terminated deadlines: hearing set for 4:30 5/15/02
                for [151-1] motion for sanctions, [151-2] motion for
                contempt, [151-3] motion to strike pleadings of plaintiffs
                for failure to comply with pretrial order denying [151-1]
                motion for sanctions, denying [151-2] motion for contempt,
                denying [151-3] motion to strike pleadings of plaintiffs
                for failure to comply with pretrial order, denying as moot [151-4]
                motion in limine to exclude plaintiffs' expert witnesses (
                Signed by Magistrate Judge Andrea M. Simonton on 5/15/02)
                [EOD Date: 5/16/02] (hd) [Entry date 05/16/02]

5/15/02  176    ORDER denying as untimely filed [166-1] motion to compel
                responses by plaintiffs to defendants' first and second
                requests for production of documents and things; and, first
                sets of interrogatories (2) by defendants Allan D. Gersten
                and Gersten Financial, denying as untimely filed [166-2]
                motion for sanctions ( Signed by Magistrate Judge Andrea M.
                Simonton on 5/15/02) [EOD Date: 5/16/02] (hd)
                [Entry date 05/16/02]

5/16/02  177    ORDER denying [164-1] plaintiffs motion to compel
                production of documents ( Signed by Magistrate Judge Andrea
                M. Simonton on 5/16/02) [EOD Date: 5/20/02] (sp)
                [Entry date 05/20/02]

5/17/02  --     Pre-trial conference  held  before Judge Alan S. Gold (hd)
                [Entry date 05/20/02]

5/17/02  178    Minutes of pre-trial conference held before Judge Alan S.
                Gold on 5/17/02; Court Reporter Name or Tape #: JOSEPH
                MILLIKAN (hd) [Entry date 05/20/02]

5/17/02  179    PRETRIAL ORDER setting final pretrial conference 5:00
                6/27/02 and Jury Trial 7/1/02, reserving for final

pretrial conference [171-1] motion in limine to exclude at
trial the e-mail communications containing settlement
discussions between the parties, denying [158-1] motion in
limine to exclude at trial the use of any document called
for in discovery but not provided, denying [157-1] motion
in limine to exclude at trial the testimony of defendants'
proposed expert ( Signed by Judge Alan S. Gold on 5/17/02)
[EOD Date: 5/20/02] (hd) [Entry date 05/20/02]

5/21/02   180   Transcript filed re: Pretrial Conference held 5/17/02
before Judge Alan S. Gold  Pages: 1-29 (nc)
[Entry date 05/23/02]

5/28/02   181   RESPONSE by Charles N. Zalis, North American Under  in
opposition to [171-1] motion in limine to exclude at trial
the e-mail communications containing settlement discussions
between the parties (hd) [Entry date 05/29/02]

5/28/02   182   Notice of compliance with [179-2] pretrial order, and
Notice, with attachments, of filing witness and exhibit
lists by Allan D. Gersten, Gersten Financial (hd)
[Entry date 05/29/02]

6/3/02    183   MOTION by Charles N. Zalis in limine to exclude
defendants' summaries not disclosed pursuant to court's
pretrial order and order on motions in limine, and to
strike those portions of defendants' exhibit list referring
to said summaries (hd) [Entry date 06/04/02]

6/4/02    184   REPLY by Allan D. Gersten, Gersten Financial &, First
American Insur  to response to [171-1] motion in limine to
exclude at trial the e-mail communications containing
settlement discussions between the parties (hd)
[Entry date 06/05/02]

6/6/02    185   MOTION by Allan D. Gersten, Gersten Financial &, First
American Insur to strike Plaintiffs' summary of damages
claim and use of summaries, to exclude testimony of
Ronald Rice, CPA, and  to exclude testimony of Charles
Zalis on loss of value of business (wc)
[Entry date 06/07/02]

6/7/02    186   NOTICE of Mediation Hearing on 6/10/02 at 4:30 Samuel
Heller added as mediator (cj)

6/7/02    187   OBJECTIONS by Charles N. Zalis, North American Under to
Proposed Trial Summaries (ra) [Entry date 06/10/02]

6/12/02   188   FINAL report of Mediator. Disposition: Impasse (ct)
[Entry date 06/13/02]

6/14/02   189   RESPONSE by Allan D. Gersten  to [183-1] motion in limine
to exclude defendants' summaries not disclosed pursuant to
court's pretrial order and order on motions in limine,
[183-2] motion to strike those portions of defendants'
exhibit list referring to said summaries (cj)
[Entry date 06/17/02]

6/14/02   190   RESPONSE by Charles N. Zalis in opposition to [185-1]
motion to strike Plaintiffs' summary of damages claim and
use of summaries (mh) [Entry date 03/17/04]

6/24/02   191   MOTION by Charles N. Zalis, North American Under in limine
to preclude use of expert testimony of Carl Jenkins (wc)

6/24/02   192   MOTION by Allan D. Gersten, Gersten Financial &, First

American Insur to use multimedia presentation at trial (hd)
[Entry date 06/25/02]

6/24/02  193    AGREED MOTION by Allan D. Gersten, Gersten Financial &,
                First American Insur to extend time for reply supporting
                motion to strike Plaintiffs' summary of damages claim and
                use of summaries, to exclude testimony of Ronald Rice, CPA,
                and to exclude testimony of Charles Zalis on loss of value
                of business (hd) [Entry date 06/25/02]

6/24/02  194    MOTION by Allan D. Gersten, Gersten Financial &, First
                American Insur to use portable computers during trial (hd)
                [Entry date 06/25/02]

6/24/02  195    NOTICE of designation of deposition testimony of Lise M.
                Van Vooren to be read at trial by Charles N. Zalis, North
                American Under (hd) [Entry date 06/25/02]

☐

6/24/02  196    NOTICE of designation of deposition testimony of Lori
                Palladino to be read at trial by Charles N. Zalis, North
                American Under (hd) [Entry date 06/25/02]

6/25/02  197    MOTION by Charles N. Zalis, North American Under for leave
                to use technological equipment for presentation at trial
                and to bring personal computers into court (hd)
                [Entry date 06/26/02]

6/25/02  198    ORDER granting [194-1] motion to use portable computers
                during trial ( Signed by Judge Alan S. Gold on 6/25/02)
                [EOD Date: 6/26/02] (hd) [Entry date 06/26/02]

6/25/02  199    ORDER Reply to Response to Motion reset to 6/27/02 for
                [185-1] motion to strike Plaintiffs' summary of damages
                claim and use of summaries, reset to 6/27/02 for [185-2]
                motion to exclude testimony of Ronald Rice, CPA, reset to
                6/27/02 for [185-3] motion  to exclude testimony of Charles
                Zalis on loss of value of business granting [193-1] motion
                to extend time for reply supporting motion to strike
                Plaintiffs' summary of damages claim and use of summaries,
                to exclude testimony of Ronald Rice, CPA, and to exclude
                testimony of Charles Zalis on loss of value of business (
                Signed by Judge Alan S. Gold on 6/25/02) [EOD Date:
                6/26/02] (hd) [Entry date 06/26/02]

6/26/02  200    NOTICE of designation of deposition testimony of Lori
                Palladino to be read at trial by Allan D. Gersten, Gersten
                Financial &, First American Insur (hd) [Entry date 06/27/02]

6/26/02  201    NOTICE of designation of deposition testimony of Janet
                Fitzgerald to be viewed at trial by Allan D. Gersten,
                Gersten Financial &, First American Insur (hd)
                [Entry date 06/27/02]

6/26/02  202    NOTICE of designation of deposition testimony of Paula Ray
                to be read at trial by Allan D. Gersten, Gersten Financial
                &, First American Insur (hd) [Entry date 06/27/02]

6/27/02  203    MOTION by Allan D. Gersten, Gersten Financial &, First
                American Insur in limine to exclude evidence of damages (hd)
                [Entry date 06/28/02]

6/27/02  204    REPLY by Allan D. Gersten, Gersten Financial &, First
                American Insur  to response to [185-1] motion to strike
                Plaintiffs' summary of damages claim and use of summaries,
                [185-2] motion to exclude testimony of Ronald Rice, CPA,
                [185-3] motion  to exclude testimony of Charles Zalis on

loss of value of business (hd) [Entry date 06/28/02]

6/27/02  205    Notice, with attachments, of filing objections by Allan D.
                Gersten, Gersten Financial &, First American Insur to "A"
                List Exhibits (hd) [Entry date 06/28/02]
□
                [Edit date 06/28/02]

6/27/02  --     Final pre-trial conference  held  before Judge Alan S. Gold
                (hd) [Entry date 06/28/02]

6/27/02  206    Minutes of final pre-trial conference held before Judge
                Alan S. Gold on 6/27/02; Court Reporter Name or Tape #:
                JOSEPH MILLIKAN (hd) [Entry date 06/28/02]

6/28/02  207    SCHEDULING ORDER resetting Jury trial set for 9:00 7/29/02
                Calendar call resetting for 1:30 7/24/02 ( Signed by Judge
                Alan S. Gold on 6/28/02) [EOD Date: 7/1/02] CCAP (hd)
                [Entry date 07/01/02]

6/28/02  207    ORDER OF REFERENCE Referring Motion(s) [203-1] motion in
                limine to exclude evidence of damages referred  to
                Magistrate Judge Andrea M. Simonton, [191-1] motion in
                limine to preclude use of expert testimony of Carl Jenkins
                referred  to Magistrate Judge Andrea M. Simonton, [187-1]
                objections to Proposed Trial Summaries [185-1] motion to
                strike Plaintiffs' summary of damages claim and use of
                summaries referred to Magistrate Judge Andrea M. Simonton,
                [185-2] motion to exclude testimony of Ronald Rice, CPA
                referred  to Magistrate Judge Andrea M. Simonton, [185-3]
                motion  to exclude testimony of Charles Zalis on loss of
                value of business referred  to Magistrate Judge Andrea M.
                Simonton, [183-1] motion in limine to exclude defendants'
                summaries not disclosed pursuant to court's pretrial order
                and order on motions in limine referred  to Magistrate
                Judge Andrea M. Simonton, [183-2] motion to strike those
                portions of defendants' exhibit list referring to said
                summaries referred  to Magistrate Judge Andrea M. Simonton
                ( signed by Judge Alan S. Gold  on 6/28/02)  [EOD Date:
                7/1/02] (hd) [Entry date 07/01/02]

6/28/02  208    NOTICE by Allan D. Gersten, Gersten Financial & to take
                videotape deposition of Charles Zalis 7/3/02 at 10:00 (ct)
                [Entry date 07/01/02]

6/28/02  209    AMENDED NOTICE of filing objections to plaintiff's "A" list
                exhibits by Allan D. Gersten, Gersten Financial & (ct)
                [Entry date 07/01/02]

7/1/02   210    Transcript filed re: pretrial conference held 6/27/02
                before Judge Alan S. Gold  Pages: 1-60 (ga)
                [Entry date 07/02/02]

7/1/02   211    EMERGENCY MOTION by Charles N. Zalis, North American Under
                to require defendants to make expert work papers available
                forthwiht and to postpone Jenkins deposition to Tuesday,
                7/2 (hd) [Entry date 07/02/02]
□

7/1/02   212    ORDER granting in part, denying in part [211-1] motion to
                require defendants to make expert work papers available
                forthwith and to postpone Jenkins deposition to Tuesday,
                7/2 ( Signed by Magistrate Judge Andrea M. Simonton on
                7/1/02) [EOD Date: 7/2/02] (hd) [Entry date 07/02/02]

7/2/02   --     Telephonic status conference  held  before Magistrate Judge
                Andrea M. Simonton (hd) [Entry date 07/03/02]

| | | |
|---|---|---|
| 7/2/02 | 213 | Minutes of telephonic hearing held before Magistrate Judge Andrea M. Simonton on 7/2/02; Court Reporter Name or Tape #: 02FX70-10 (hd) [Entry date 07/03/02] |
| 7/8/02 | 214 | ORDER granting plaintiff's ore tenus motion to permit attendance of Ronald Rice at deposition of defense expert Carl Jenkins ( Signed by Magistrate Judge Andrea M. Simonton on 7/8/02) [EOD Date: 7/9/02] (hd) [Entry date 07/09/02] |
| 7/9/02 | 215 | MEMORANDUM by Allan D. Gersten, Gersten Financial &, First American Insur in opposition to [191-1] motion in limine to preclude use of expert testimony of Carl Jenkins (hd) [Entry date 07/10/02] |
| 7/12/02 | 216 | MOTION with memorandum in support by Allan D. Gersten, Gersten Financial &, First American Insur in limine to exclude plaintiffs' proposed testimony of Rule 701 witness, Charles n. Zalis, re: damages (hd) [Entry date 07/15/02] |
| 7/12/02 | 217 | SUPPLEMENTAL BRIEF by Allan D. Gersten, Gersten Financial &, First American Insur in support of [185-1] motion to strike Plaintiffs' summary of damages claim and use of summaries, [185-2] motion to exclude testimony of Ronald Rice, CPA, [185-3] motion to exclude testimony of Charles Zalis on loss of value of business (hd) [Entry date 07/15/02] |
| 7/12/02 | 218 | PRETRIAL MEMORANDUM of law on issue of an accounting by Allan D. Gersten, Gersten Financial &, First American Insur (hd) [Entry date 07/15/02] |
| 7/12/02 | 219 | PRETRIAL BRIEF on choice of law on damages by Allan D. Gersten, Gersten Financial &, First American Insur (hd) [Entry date 07/15/02] |
| 7/12/02 | 221 | MOTION with memorandum in support by Charles N. Zalis, North American Under to amend [112-1] first amended complaint (hd) [Entry date 07/15/02] |
| 7/12/02 | 222 | MEMORANDUM on summary schedules by Charles N. Zalis, North American Under (hd) [Entry date 07/15/02] |
| 7/12/02 | 223 | MEMORANDUM on accounting and conflicts by Charles N. Zalis, North American Under (hd) [Entry date 07/15/02] |
| 7/12/02 | 235 | MEMORANDUM on Rule 701/Daubert by Charles N. Zalis, North American Under (hd) [Entry date 07/18/02] |
| 7/12/02 | 220 | This pleading number has been skipped over in error. (hd) [Entry date 07/31/02] |
| 7/15/02 | 224 | Notice of filing attached redlined first amended complaint and corrected proposed second amended complaint as EXHIBITS to: [221-1] motion to amend [112-1] first amended complaint by Charles N. Zalis, North American Under (hd) [Entry date 07/16/02] [Edit date 07/16/02] |
| 7/15/02 | 225 | NOTICE, with attachments, of filing summaries as part of memorandum on summary schedules by Charles N. Zalis, North American Under (hd) [Entry date 07/16/02] |
| 7/15/02 | 226 | SECOND AMENDED COMPLAINT for equitable relief and for damages by Charles N. Zalis, North American Under , (Answer |

due 7/25/02 for First American Insur, for Gersten Financial
&, for Allan D. Gersten ) amending [112-1] amended
complaint (hd) [Entry date 07/16/02]

7/16/02  227    ORDER Setting Hearing on pending matters for 7/18/02 at
                2:00 and will continue if necessary on 7/19/02 at 2:00
                (Signed by Magistrate Judge Andrea M. Simonton on 07/15/02)
                [EOD Date: 7/17/02] (ra) [Entry date 07/17/02]

7/16/02  228    ORDER OF REFERENCE Referring Motion(s) [221-1] motion to
                amend [112-1] first amended complaint referred  to
                Magistrate Judge Andrea M. Simonton ( signed by Judge Alan
                S. Gold  on 07/16/02)   [EOD Date: 7/17/02] (ra)
                [Entry date 07/17/02]

7/16/02  229    SUPPLEMENTAL MEMORANDUM by Charles N. Zalis, North American
                Under in support of [187-1] objections to Proposed Trial
                Summaries (hd) [Entry date 07/18/02]
                [Edit date 07/18/02]

7/16/02  229    MOTION by Charles N. Zalis, North American Under to strike
                Proposed Trial Summaries (hd) [Entry date 07/18/02]
                [Edit date 07/18/02]

7/16/02  230    REPLY by Charles N. Zalis, North American Under  to
                response to [191-1] motion in limine to preclude use of
                expert testimony of Carl Jenkins (hd) [Entry date 07/18/02]

7/17/02  231    SUPPLEMENTAL MEMORANDUM by Charles N. Zalis, North American
                Under in response to [218-1] pretrial memorandum of law on
                issue of an accounting (hd) [Entry date 07/18/02]

7/17/02  232    SUPPLEMENTAL MEMORANDUM by Charles N. Zalis, North American
                Under in response to [219-1] pretrial memorandum of law on
                choice of law on damages (hd) [Entry date 07/18/02]

7/17/02  233    RESPONSE by Charles N. Zalis, North American Under  in
                opposition to [203-1] motion in limine to exclude evidence
                of damages (hd) [Entry date 07/18/02]

7/17/02  234    REPLY by Charles N. Zalis, North American Under to [217-1]
                supplemental brief in support of [185-1] motion to strike
                Plaintiffs' summary of damages claim and use of summaries,
                [185-2] motion to exclude testimony of Ronald Rice, CPA,
                [185-3] motion to exclude testimony of Charles Zalis on
                loss of value of business (hd) [Entry date 07/18/02]

7/18/02  236    MEMORANDUM by Allan D. Gersten, Gersten Financial &, First
                American Insur  in opposition to [221-1] motion to amend
                [112-1] first amended complaint (hd) [Entry date 07/19/02]

7/18/02  237    REPLY by Allan D. Gersten, Gersten Financial &, First
                American Insur to [229-1] supplemental memorandum by Charles
                N. Zalis, North American Under in support of [187-1]
                objections to Proposed Trial Summaries (hd)
                [Entry date 07/19/02] [Edit date 07/19/02]

7/18/02  237    REPLY by Allan D. Gersten, Gersten Financial &, First
                American Insur to [229-1] supplemental memorandum by
                Charles N. Zalis, North American Under in support of
                [187-1] objections to Proposed Trial Summaries and to
                [229-1] motion to strike Proposed Trial Summaries (hd)
                [Entry date 07/19/02]

7/18/02  238    SURREPLY by Allan D. Gersten, Gersten Financial &, North
                American Under  to response to [191-1] motion in limine to

|          |     | preclude use of expert testimony of Carl Jenkins (hd) [Entry date 07/19/02] |
|----------|-----|---|
| 7/18/02  | 239 | MOTION by Allan D. Gersten, Gersten Financial &, First American Insur for leave to file surreply supporting [191-1] motion in limine to preclude use of expert testimony of Carl Jenkins (hd) [Entry date 07/19/02] |
| 7/18/02  | 240 | AFFIDAVIT of Charles N. Zalis by Charles N. Zalis (hd) [Entry date 07/19/02] |
| 7/18/02  | 241 | NOTICE of filing affidavit of Charles N. Zalis by Charles N. Zalis (hd) [Entry date 07/19/02] |
| 7/18/02  | --  | Hearing on all pending issues held before Magistrate Judge Andrea M. Simonton (hd) [Entry date 07/22/02] |
| 7/19/02  | 242 | Minutes of hearing on all pending issues held before Magistrate Judge Andrea M. Simonton on 7/18/02; Court Reporter Name or Tape #: n/a (hd) [Entry date 07/22/02] |
| 7/19/02  | 243 | REPLY by Charles N. Zalis, North American Under to response to [221-1] motion to amend [112-1] first amended complaint (hd) [Entry date 07/22/02] |
| 7/19/02  | 244 | MEMORANDUM by Allan D. Gersten, Gersten Financial &, First American Insur re: previous Zalis testimony (hd) [Entry date 07/22/02] |
| 7/19/02  | --  | Hearing/oral argument on all pending issues held before Magistrate Judge Andrea M. Simonton (hd) [Entry date 07/23/02] |
| 7/22/02  | 245 | RESPONSE by Charles N. Zalis, North American Under to [244-1] memorandum re: previous Zalis testimony (hd) [Entry date 07/23/02] |
| 7/22/02  | 246 | Minutes of hearing/oral argument on all pending issues held before Magistrate Judge Andrea M. Simonton on 7/19/02; Court Reporter Name or Tape #: n/a (hd) [Entry date 07/23/02] |
| 7/22/02  | --  | Hearing/oral argument on all pending issues held before Magistrate Judge Andrea M. Simonton (hd) [Entry date 07/24/02] |
| 7/23/02  | 247 | Minutes of hearing/oral argument on all pending issues held before Magistrate Judge Andrea M. Simonton on 7/22/02; Court Reporter Name or Tape #: n/a (hd) [Entry date 07/24/02] |
| 7/23/02  | --  | Hearing/oral argument on all pending issues held before Magistrate Judge Andrea M. Simonton (hd) [Entry date 07/24/02] |
| 7/23/02  | 248 | Minutes of hearing/oral argument on all pending issues held before Magistrate Judge Andrea M. Simonton on 7/23/02; Court Reporter Name or Tape #: n/a (hd) [Entry date 07/24/02] |
| 7/24/02  | --  | Hearing/oral argument on all pending issues held before Magistrate Judge Andrea M. Simonton (hd) [Entry date 07/25/02] |
| 7/24/02  | 249 | Minutes of hearing/oral argument on all pending issues held before Magistrate Judge Andrea M. Simonton on 7/24/02; |



Court Reporter Name or Tape #: n/a (hd)
[Entry date 07/25/02]

7/24/02  --    Calendar call  held  before Judge Alan S. Gold (hd)
               [Entry date 07/25/02]

7/24/02  250   Minutes of calendar call held before Judge Alan S. Gold on
               7/24/02; Court Reporter Name or Tape #: JOSEPH MILLIKAN (hd)
               [Entry date 07/25/02]

7/24/02  251   NOTICE of filing summary of Jenkins Quickbooks disk
               delivered to plaintiffs by defendants on 7/22/02 by Charles
               N. Zalis (hd) [Entry date 07/25/02]

7/24/02  252   ORDER granting [239-1] motion for leave to file surreply
               supporting [191-1] motion in limine to preclude use of
               expert testimony of Carl Jenkins ( Signed by Magistrate
               Judge Andrea M. Simonton on 7/23/02) [EOD Date: 7/25/02] (hd)
               [Entry date 07/25/02]

7/25/02  253   ORDER setting hearing/oral argument on parties' objections
               to and/or appeals of Magistrate Judge's order(s) and/or
               report and recommendations for 4:30 8/1/02 before Judge
               Alan S. Gold, reset Jury trial for 9:00 8/5/02 before
               Judge Alan S. Gold ( Signed by Judge Alan S. Gold on
               7/25/02) [EOD Date: 7/26/02] (hd) [Entry date 07/26/02]

7/26/02  254   NOTICE of providing Quickbooks computer disks by Allan D.
               Gersten, Gersten Financial &, First American Insur (hd)
               [Entry date 07/29/02]

7/29/02  255   OMNIBUS ORDER granting [216-1] motion in limine to exclude
               plaintiffs' proposed testimony of Rule 701 witness, Charles
               n. Zalis, re: damages, denying [185-1] motion to strike
               Plaintiffs' summary of damages claim and use of summaries,
               denying [185-2] motion to exclude testimony of Ronald Rice,
               CPA, granting [185-3] motion  to exclude testimony of
               Charles Zalis on loss of value of business denying [221-1]
               motion to amend [112-1] first amended complaint, denying
               [191-1] motion in limine to preclude use of expert
               testimony of Carl Jenkins, denying [183-1] motion in limine
               to exclude defendants' summaries not disclosed pursuant to
               court's pretrial order and order on motions in limine,
               denying [183-2] motion to strike those portions of
               defendants' exhibit list referring to said summaries
               denying [187-1] objections to Proposed Trial Summaries (
               Signed by Magistrate Judge Andrea M. Simonton on 7/29/02)
               [EOD Date: 7/30/02] (hd) [Entry date 07/30/02]

7/29/02  255   REPORT AND RECOMMENDATIONS of Magistrate Judge Andrea M.
               Simonton recommending that [203-1] motion in limine to
               exclude evidence of damages be denied. Motion no longer
               referred. Signed on: 7/29/02 Objections to R and R due by
               8/8/02 CCAP (hd) [Entry date 07/30/02]

7/30/02  256   REPORT AND RECOMMENDATION RE: ACCOUNTING ISSUES. It is
               recommended the accounting be conducted as a equitable
               proceeding by the Court or a Special Master, following a
               jury determination of the rights and duties of the parties.
               In the exercise of its equity jurisdiction at that time,
               and based upon the evidence adduced at trial, an accounting
               will be appropriate only if the Court first determines that
               Plaintiffs have no adequate remedy at law. ( Signed by
               Magistrate Judge Andrea M. Simonton on 7/30/02) [EOD Date:
               7/31/02] (hd) [Entry date 07/31/02]

| 7/31/02 | 257 | OBJECTIONS to and APPEAL from certain recommendations by Charles N. Zalis, North American Under to [255-1] report and recommendations (lk) [Entry date 08/01/02] |
|---|---|---|
| 7/31/02 | 258 | NOTICE OF APPEAL/ RESPONSE by Allan D. Gersten, Gersten Financial &, First American Insur in opposition to [255-1] Omnibus order and recommendations (lk) [Entry date 08/01/02] |
| 7/31/02 | 259 | Exhibit and Witness List (hd) [Entry date 08/01/02] |
| 8/1/02 | 260 | MOTION by Allan D. Gersten, Gersten Financial &, First American Insur to extend order permitting use of portable computers during trial and permitting multimedia presentation at trial (hd) [Entry date 08/02/02] |
| 8/1/02 | 261 | MOTION by Allan D. Gersten, Gersten Financial &, First American Insur to strike [257-1] objections to and appeal from certain recommendations by Charles N. Zalis, North American Under to [255-1] report and recommendations (hd) [Entry date 08/02/02] |
| 8/1/02 | 262 | RESPONSE by Allan D. Gersten, Gersten Financial &, First American Insur to preliminary objection section of [257-1] objections to and appeal from certain recommendations by Charles N. Zalis, North American Under to [255-1] report and recommendations (hd) [Entry date 08/02/02] |
| 8/1/02 | 263 | Exhibit and Witness List by Allan D. Gersten, Gersten Financial &, First American Insur (hd) [Entry date 08/02/02] |
| 8/1/02 | 264 | NOTICE of filing Exhibit and Witness List by Allan D. Gersten, Gersten Financial &, First American Insur (hd) [Entry date 08/02/02] |
| 8/1/02 | 265 | RESPONSE by Allan D. Gersten, Gersten Financial &, First American Insur to Objections to [255-1] report and recommendations that [203-1] motion in limine to exclude evidence of damages be denied (hd) [Entry date 08/02/02] |
| 8/1/02 | 266 | RESPONSE by Allan D. Gersten, Gersten Financial &, First American Insur to [257-1] objections to and appeal from certain recommendations by Charles N. Zalis, North American Under to [255-1] report and recommendations (hd) [Entry date 08/02/02] |
| 8/1/02 | 267 | RESPONSE by Charles N. Zalis, North American Under to [261-1] motion to strike [257-1] objections to and appeal from certain recommendations by Charles N. Zalis, North American Under to [255-1] report and recommendations (hd) [Entry date 08/02/02] |
| 8/1/02 | -- | Oral argument on parties' objections to and/or appeals of Magistrate Judge's order(s) and/or report and recommendations held before Judge Alan S. Gold (hd) [Entry date 08/02/02] |
| 8/1/02 | 268 | Minutes of oral argument on parties' objections to and/or appeals of Magistrate Judge's order(s) and/or report and recommendations held before Judge Alan S. Gold on 8/1/02; Court Reporter Name or Tape #: JOSEPH MILLIKAN (hd) [Entry date 08/02/02] |
| 8/2/02 | 269 | NOTICE, with attachment, of filing objections to plaintiffs' designation of deposition testimony of Lori |

|          |      | Palladino to be read at trial of by Allan D. Gersten, Gersten Financial &, First American Insur (hd) [Entry date 06/05/02] |
|----------|------|---|
| 8/2/02   | 270  | MEMORANDUM of law objecting to defendants' proposed Rule 608(b) evidence by Charles N. Zalis (hd) [Entry date 08/05/02] |
| 8/2/02   | 271  | Exhibit list by Charles N. Zalis (hd) [Entry date 08/05/02] |
| 8/2/02   | 272  | NOTICE of filing Exhibit List by Charles N. Zalis (hd) [Entry date 08/05/02] |
| 8/2/02   | 273  | NOTICE of filing objections to Defendants' "A" Exhibit List by Charles N. Zalis (hd) [Entry date 08/05/02] |
| 8/2/02   | 274  | ORDER ON PARTIES APPEALS/OBJECTIONS, affirming in part as to that portion denying leave to amend first amended complaint re: [255-1] report and recommendations, [255-1] omnibus order; the Court reserves to consider all other aspects of the order and report and recommendation following further briefing and argument by the parties ( Signed by Judge Alan S. Gold on 8/2/02) [EOD Date: 8/5/02] (hd) [Entry date 08/05/02] |
| 8/2/02   | 276  | ORDER granting [197-1] motion for leave to use technological equipment for presentation at trial and to bring personal computers into court ( Signed by Judge Alan S. Gold on 8/2/02) [EOD Date: 8/5/02] (hd) [Entry date 08/05/02] |
| 8/2/02   | 277  | AMENDED ORDER amending [276-1] order granting [197-1] motion for leave to use technological equipment for presentation at trial and to bring personal computers into court ( Signed by Judge Alan S. Gold on 8/2/02) [EOD Date: 8/5/02] (hd) [Entry date 08/05/02] |
| 8/5/02   | 275  | ORDER granting [260-1] motion to extend order permitting use of portable computers during trial and permitting multimedia presentation at trial ( Signed by Judge Alan S. Gold on 8/1/02) [EOD Date: 8/5/02] (hd) |
| 8/5/02   | 278  | MOTION with memorandum in support by One Beacon Insurance to intervene by One Beacon Insurance (hd) [Entry date 08/06/02] |
| 8/5/02   | 279  | RESPONSE by Charles N. Zalis to [258-1] notice of appeal and/or objections to [255-1] Omnibus order and recommendations (hd) [Entry date 08/06/02] |
| 8/5/02   | 280  | Proposed Jury instructions by Charles N. Zalis (hd) [Entry date 08/06/02] |
| 8/5/02   | 281  | NOTICE, with attachments, of proposed jury verdict forms by Charles N. Zalis (hd) [Entry date 08/06/02] |
| 8/5/02   | --   | Jury trial held before Judge Alan S. Gold (hd) [Entry date 08/06/02] |
| 8/5/02   | 282  | Minutes of jury trial DAY 1 held before Judge Alan S. Gold on 8/5/02; continue Jury trial for 9:00 8/6/02 Court Reporter Name or Tape #: JOSEPH MILLIKAN (hd) [Entry date 08/06/02] |
| 8/6/02   | --   | Jury trial held before Judge Alan S. Gold (hd) [Entry date 08/07/02] |

8/6/02    283    Minutes of jury trial DAY 2 held before Judge Alan S. Gold
                 on 8/6/02; continue Jury trial for 9:00 8/7/02 Court
                 Reporter Name or Tape #: JOSEPH MILLIKAN (hd)
                 [Entry date 08/07/02]

8/6/02    287    Transcript filed re: Jury Trial Proceedings Day 2 held
                 08/06/02  before Judge Alan S. Gold  Pages: 1-254 (vl)
                 [Entry date 08/08/02]

8/6/02    286    Transcript filed re: Jury Trial Day 1 held 08/05/02  before
                 Judge Alan S. Gold  Pages: 1-99 (vl) [Entry date 08/08/02]

8/7/02    --     Jury trial held  before Judge Alan S. Gold (hd)
                 [Entry date 08/08/02]

8/7/02    284    Minutes of jury trial DAY 3 held before Judge Alan S. Gold
                 on 8/7/02; jury trial ends, case settled; Court Reporter
                 Name or Tape #: JOSEPH MILLIKAN (hd) [Entry date 08/08/02]
□

8/7/02    285    MOTION by One Beacon Insurance for Jamie Billotte Moses to
                 appear pro hac vice (hd) [Entry date 08/08/02]

8/7/02    --     Filing Fee Paid;  FILING FEE $150.00   RECEIPT #867046 (hd)
                 [Entry date 08/08/02]

8/9/02    288    ORDER denying as untimely [285-1] motion for Jamie Billotte
                 Moses to appear pro hac vice ( Signed by Judge Alan S. Gold
                 on 8/8/02) [EOD Date: 8/12/02] (hd) [Entry date 08/12/02]
                 [Edit date 08/12/02]

8/16/02   289    NOTICE of Change of Affliation of counsel by Charles N.
                 Zalis, North American Under (hd) [Entry date 08/19/02]

8/22/02   290    NOTICE of Court practice upon notice of settlement and
                 ORDER closing case (Signed by Judge Alan S. Gold on
                 8/20/02) [EOD Date: 8/23/02] (hd) [Entry date 08/23/02]

8/22/02   --     CASE CLOSED. Case and Motions no longer referred to
                 Magistrate. (hd) [Entry date 08/23/02]

9/3/02    291    STIPULATION of settlement by Charles N. Zalis, Allan D.
                 Gersten, Gersten Financial &, North American Under, First
                 American Insur (hd) [Entry date 09/04/02]

9/3/02    291    JOINT MOTION by Charles N. Zalis, Allan D. Gersten, Gersten
                 Financial &, North American Under, First American Insur to
                 dismiss with prejudice (hd) [Entry date 09/04/02]

9/5/02    292    ORDER granting [291-1] joint motion to dismiss with
                 prejudice. Each party to bear its own costs and attorney's
                 fees. Case is CLOSED (Signed by Judge Alan S. Gold on
                 9/4/02) [EOD Date: 9/6/02] (gz) [Entry date 09/06/02]

3/17/04   293    ORDER to return [164-1] sealed document(s) to Richard E.
                 Brodsky ( Signed by Judge Alan S. Gold on 5/18/02) [EOD
                 Date: 3/17/04] (mh)

3/17/04   294    ORDER to unseal documents [190-1] opposition response
                 (Signed by Judge Alan S. Gold on 6/17/02) [EOD Date:
                 3/17/04] (mh)

5/21/04   295    NOTICE of discharge of charging lien by Berger Singerman (hd)
                 [Entry date 05/24/04]