# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **WESTPORT INSURANCE CORPORATION,** ) ) ) | |
| **Plaintiff** ) | |
| ) | **CA No. 05-11780NMG** |
| **v.** ) | |
| ) | |
| **RICHARD C. HEIDLAGE, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____) | |

## MOTION TO SUBSTITUTE SUMMARY JUDGMENT EXHIBIT

Plaintiff Westport Insurance Corporation ("Westport"), by its undersigned attorneys,

moves to substitute the attached exhibit as Exhibit 1 to its previously filed Motion For Summary

Judgment on its Complaint for Declaratory Judgment and on the Counterclaim of Richard C.

Heidlage.  As grounds therefore, Westport states that by inadvertence the attachment to Exhibit

1, the policy of insurance at issue in this litigation, was not included in its electronic filing.

Respectfully submitted,

Westport Insurance Corporation

By:  /s/sbolotin
One of its Attorneys

Steven J. Bolotin
BBO #564085
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210
(617) 439-7500

Jeffrey A. Goldwater
Robert A. Chaney
Bollinger, Ruberry& Garvey
500 W. Madison St.
Suite 2300

Chicago, Illinois 60661
(312) 466-800
(312) 466-8001 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on June 19, 2006.

/s/sbolotin
Steven J. Bolotin

Page 4 of 23)

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| WESTPORT INSURANCE CORPORATION, | ) ) |
| Plaintiff | ) ) ) |
| v. | ) ) CA No. 05-11780NMG ) |
| RICHARD C. HEIDLAGE, et al., | ) ) |
| Defendants. | ) ) ) |

**AFFIDAVIT OF ELLEN A. MCCARTHY**

I, Ellen A. McCarthy, on oath depose and state that I am competent to testify to the following, and if called as a witness, will testify as follows:

1.    I am employed by Westport Insurance Corporation ("Westport") as a Senior Claims Specialist - Lawyers.

2.    In that capacity, I have claim handling responsibility for the claim of Charles N. Zalis, the Charles N. Zalis Family Limited Partnership, and North American Underwriting Managers, Inc., against Richard Heidlage, as set forth in the lawsuit captioned *Charles N. Zalis, et al, v. Prince, Lobel, Glovsky & Tye, LLP, et al,* Case No. 03-011784 CA 30, in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade county, Florida (the "malpractice lawsuit").

3.    I am familiar with the file materials maintained at Westport concerning the aforementioned claim, and with respect to Westport Policy No. MAL-008857-8, effective March 8, 2002 to March 8, 2003 on a claims made and reported basis, issued to Kotin, Crabtree & Strong, LLP (the "Policy").

4.    Attached hereto is a true and accurate copy of the Policy, including the



EXHIBIT

1

application for the Policy and the New Lawyer Application pertaining to Richard C. Heidlage, which are made part of the Policy.

5.      In the New Lawyer Application signed by him, Mr. Heidlage states that he was of counsel with Prince, Lobel Glovsky & Tye, LLP until he joined Kotin, Crabtree & Strong, LLP on May 1, 2002, in an of counsel capacity.

6.      Westport is defending Richard C. Heidlage in the malpractice lawsuit pursuant to a reservation of rights under the Policy.

7.      Westport is sharing the costs of the defense with Great American Insurance Company, which is defending Mr. Heidlage under Great American policy No. 355-92-33-03 issued to Prince, Lobel Glovsky & Tye, LLP.

8.      I have been informed by my counterpart at Great American that the Great American policy provides a $10,000,000 limit of liability.

Further Affiant Sayeth Not.

Ellen A. McCarthy

Subscribed and Sworn
before me this 15th day
of May , 2006.

Notary Public

APRIL G NERO
NOTARY PUBLIC
HOWARD COUNTY
MARYLAND
My Commission Expires Sept. 6, 2009

2


## WESTPORT INSURANCE
C O R P O R A T I O N

## CUSTOMIZED PRACTICE COVERAGE ᔆᴹ
### DECLARATIONS

**Policy Number:** MAL-008857-8
**Renewal of Policy :** MAL-007412-4

**NOTICE:** This is a Claims-Made and Reported POLICY.    Except as may be otherwise provided herein, this coverage is limited to liability for only those CLAIMS which are first made against the NAMED INSURED and reported to the Company while the POLICY is in force.

**A.** Named Insured:    Kotin, Crabtree & Strong, LLP, Attorneys at Law

**B.** Address:    One Bowdoin Square
Boston, MA 02114

**C.** Policy Period:    From 12:01 A.M. March 08, 2002 To 12:01 A.M. March 08, 2003
Local time at the address stated herein

**D.** Policy Aggregate Limit of Liability for all coverage units:    $5,000,000

**E.** Coverage

| Coverage Unit | Coverage Unit Per Claim Limit of Liability | Coverage Unit Aggregate Limit of Liability | Deductible | Retroactive Date |
|---|---|---|---|---|
| Lawyers Professional Liability | $5,000,000 | $5,000,000 | $10,000 | None |
| Employment Practices Liability | Not Covered | Not Covered | Not Covered | Not Covered |
| Employee Dishonesty | Not Covered | Not Covered | Not Covered | Not Covered |
| Title Insurance Agent Liability | $5,000,000 | $5,000,000 | $10,000 | None |
| Non-Profit Director & Officer Liability | Not Covered | Not Covered | Not Covered | Not Covered |
| Public Officials Liability | Not Covered | Not Covered | Not Covered | Not Covered |

Claims Expenses are included under the Limit of Liability and Deductible

**F.** Total Premium:    $39,791

Date:  03/25/2002

Copyright © 1998 Westport Insurance Corporation. All rights reserved.

The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.

COPY
COR.CPC.1690 I (2/98)


WESTPORT INSURANCE CORPORATION

## CUSTOMIZED PRACTICE COVERAGE ᔤᴹ
### DECLARATIONS

**Policy Number:**      MAL-008857-8
**Renewal of Policy :**   MAL-007412-4

These Declarations together with the application(s) and attachments thereto, POLICY forms and any endorsements shall constitute the contract between the INSURED and the Company. The following forms and endorsements are made a part of this POLICY.

### Forms / Endorsements

| | |
|---|---|
| COR.CPC.1691 MA (6/99) | Massachusetts Customized Practice Coverage - General Terms & Conditions |
| COR.CPC.1692 MA (6/99) | Massachusetts Customized Practice Coverage - Lawyers Professional Liability Coverage Unit |
| COR.CPC.1698 MA (6/99) | Massachusetts Customized Practice Coverage - Title Insurance Agent Liability Coverage Unit |
| COR.CPC.1725 MA (6/99) | Customized Practice Coverage - Claims Expenses within the Limits of Liability Aggregate Loss Only Deductible |
| COR.CPC.1742 (2/98) | Limitation of Individual Prior Acts |
| COR.CPC.1842 (2/98) | Specified Business Exclusion |
| COR.CPC.1968 (3/99) | Amendment of General Terms and Conditions |
| SP 001 200A (05/01) | Amendment of Definition Of 'Wrongful' Acts Endorsement |
| SP 001 355 (01/01) | Definition of 'Predecessor' Amendment |

In witness whereof, the Company issuing this POLICY has caused this POLICY to be signed by its authorized officers, but it shall not be valid unless also signed by the duly authorized representative of the Company.

WESTPORT INSURANCE CORPORATION

_____
Authorized Representative

Copyright © 1998 Westport Insurance Corporation. All rights reserved.

The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.

COPY
COR.CPC.1690 I (2/98)



ENDORSEMENT

## CUSTOMIZED PRACTICE COVERAGE SM

*THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.*

## CLAIMS EXPENSES WITHIN THE LIMITS OF LIABILITY
## AGGREGATE LOSS ONLY DEDUCTIBLE

GENERAL TERMS & CONDITIONS, Section IX. DEDUCTIBLE, is deleted and replaced with the following:

IX.   DEDUCTIBLE

The deductible, as stated below, for the LAWYERS PROFESSIONAL LIABILITY COVERAGE UNIT and the TITLE INSURANCE AGENT LIABILITY COVERAGE UNIT (where applicable)  shall apply to each CLAIM and Aggregate for the POLICY PERIOD and shall be paid by the NAMED INSURED.  The deductible shall be applied to LOSS only as defined in the COVERAGE UNIT.  CLAIMS EXPENSES shall be included within the limit of liability and not in addition thereto.    Payment of the deductible shall be made by the NAMED INSURED within thirty (30) days of receipt of demand by the Company.

Deductible:   $10,000 Each Claim
              $10,000 Aggregate for the Policy Period

If a CLAIM is resolved through the use of formal arbitration or mediation proceedings within 120 days of written notice of a CLAIM, this deductible requirement will be waived.

All other terms and conditions of this POLICY remain unchanged.

Countersigned.

........................................................

Authorized Representative                President                    Secretary

Copyright © 1998 Westport Insurance Corporation. All rights reserved.
The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.
COPY

COR.CPC.1725 MA (06/99)                                              Page 1 of 1



ENDORSEMENT

## CUSTOMIZED PRACTICE COVERAGE SM

*THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.*

## LIMITATION OF INDIVIDUAL PRIOR ACTS

**GENERAL TERMS & CONDITIONS, Section XIV. EXCLUSIONS,** as respects only the LAWYERS PROFESSIONAL LIABILITY COVERAGE UNIT and the TITLE INSURANCE AGENT LIABILITY COVERAGE UNIT (where applicable), is amended to include:

This POLICY does not apply to any CLAIM based upon, arising out of or attributable to, or directly or indirectly resulting from an act, error, omission, circumstance or PERSONAL INJURY committed by the following INSURED(s) prior to the corresponding RETROACTIVE DATE(s):

Laurel H. Siegal          05/29/2001

All other terms and conditions of this POLICY remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

| | | |
|---|---|---|
| **Endorsement Effective:** | **Policy Number:** | **Endorsement No.** |
| March 08, 2002, 12:01 A.M. Standard Time. | MAL-008857-8 | |

**Name Insured:**
Kotin, Crabtree & Strong, LLP, Attorneys at Law          ***WESTPORT INSURANCE CORPORATION***

Countersigned.

...................................................
Authorized Representative          President          Secretary

Copyright © 1998 Westport Insurance Corporation. All rights reserved.
The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.
COPY

COR.CPC.1742 (02/98)          Page 1 of 1

AUG-29-2005  12:12          92%          P.007



## CUSTOMIZED PRACTICE COVERAGE <sup>sm</sup>

*THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.*

### SPECIFIED BUSINESS EXCLUSION

LAWYERS PROFESSIONAL LIABILITY COVERAGE UNIT and TITLE INSURANCE AGENT LIABILITY COVERAGE UNIT (where applicable), EXCLUSIONS is amended to include the following:

> any CLAIM brought by or on behalf of any person or entity including but not limited to clients, customers, investors, shareholders, joint ventures, joint venturers, partners, promoters, officers, directors, employees and representatives, based upon or arising out of or attributable to, or directly or indirectly resulting from any WRONGFUL ACT which is in any way pertaining to, related to or connected with the entity(ies) specifically named below, its parents, subsidiaries, affiliates, predecessors, successors, assigns and any other organization it has formed, acquired or participated in, or which it in any way owns or controls:

Ascend, Inc.

All other terms and conditions of this POLICY remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

**Endorsement Effective:**          **Policy Number:**          Endorsement No.
March 08, 2002, 12:01 A.M. Standard Time.     MAL-008857-8

**Name Insured:**
Kotin, Crabtree & Strong, LLP, Attorneys at Law     **WESTPORT INSURANCE CORPORATION**

Countersigned.

..............................................          _____          _____
Authorized Representative          President          Secretary

Copyright © 1998 Westport Insurance Corporation. All rights reserved.
The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.

COPY
COR.CPC.1842 (02/98)          Page 1 of 1



## CUSTOMIZED PRACTICE COVERAGE SM

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT OF THE GENERAL TERMS & CONDITIONS

**GENERAL TERMS & CONDITIONS, Section XV. DEFINITIONS, Item F. POLICY,** is deleted and replaced with the following:

**XV.    DEFINITIONS**

F.       "POLICY" means the combination of all COVERAGE UNITS issued by the Company to the NAMED INSURED and listed in the Declarations and these GENERAL TERMS & CONDITIONS.

**GENERAL TERMS & CONDITIONS, Section XVII. ENTIRE AGREEMENT** is deleted and replaced with the following:

**XVII.    ENTIRE AGREEMENT**

By acceptance of this POLICY, all INSUREDS reaffirm as of the effective date of this POLICY, that (a) the statements in the application(s) and all information communicated by the INSUREDS to the Company, and all INSUREDS' agreements and representations are true and accurate, (b) this POLICY is issued in reliance upon the truth and accuracy of such representations which are material to the Company's issuance of this POLICY and (c) this POLICY embodies all agreements between all INSUREDS and the Company or any of its agents relating to this insurance. No representations by any person shall have any force or effect, except as included within this written agreement. Notwithstanding any provision in the policy or application, the application should not be considered part of the policy.

Further in the following coverage units (where applicable):

LAWYERS PROFESSIONAL LIABILITY COVERAGE UNIT;
TITLE INSURANCE AGENT LIABILITY COVERAGE UNIT;
EMPLOYEE DISHONESTY COVERAGE UNIT;
EMPLOYMENT PRACTICE LIABILITY COVERAGE UNIT;
NON-PROFIT DIRECTOR & OFFICER LIABILITY COVERAGE UNIT;
PUBLIC OFFICIALS LIABILITY COVERAGE UNIT;

the first paragraph, page 1 is deleted and replaced with the following:

In consideration of the payment of the premium, in reliance upon the statements in the application, its attachments and any materials submitted therewith, and subject to the Declarations, GENERAL TERMS & CONDITIONS and the terms and conditions of this COVERAGE UNIT (including any endorsements hereto), the Company agrees with the NAMED INSURED as follows:

All other terms and conditions of this POLICY remain unchanged.

Copyright © 1998 Westport Insurance Corporation. All rights reserved.
The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.

COPY

COR.CPC.1968 (3/99)

AUG-29-2005  12:13                          92%              P.009



**ENDORSEMENT**

## *CUSTOMIZED PRACTICE COVERAGE* SM

*THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.*

## AMENDMENT OF THE GENERAL TERMS & CONDITIONS

Countersigned.

.......................................................
Authorized Representative                    President                         Secretary

Copyright © 1998 Westport Insurance Corporation. All rights reserved.
The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.

COPY

COR.CPC.1968 (3/99)

Page 2 of 2



| ENDORSEMENT

## CUSTOMIZED PRACTICE COVERAGE SM

*THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.*

## AMENDMENT OF DEFINITION OF "WRONGFUL ACTS" ENDORSEMENT

IT IS AGREED THAT, the Lawyers Professional Liability Coverage Unit section entitled DEFINITIONS at paragraph G. is hereby deleted and replaced as follows:

G.    **"WRONGFUL ACT" WHENEVER USED IN THIS COVERAGE UNIT MEANS** any act, error, omission, circumstance, PERSONAL INJURY or breach of duty in the rendition of legal services for others either for a fee or pro bono in the INSURED'S capacity as a lawyer, and arising out of the conduct of the INSURED'S profession as a lawyer, or as a lawyer acting in the capacity of an Arbitrator, Mediator or other neutral, or Notary Public, or as a member, director or officer of any bar association, its governing board or any of its committees or as a member of a formal accreditation, ethics, peer review, licensing board, standards review or similar professional board or committee relating to the practice of law, or as an Author, Publisher, or Presenter of legal research papers or materials, but only where direct compensation per publication or presentation is less than $5000.00. When an INSURED acts as an administrator, conservator, executor, guardian, trustee, escrow agent, receiver or other court-appointed fiduciary, the INSURED'S wrongful acts in such capacity shall be deemed to be the rendition of legal services for others in the INSURED'S capacity as a lawyer.

All other terms and conditions of this POLICY remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

**Endorsement Effective:**             **Policy Number:**              Endorsement No.
March 08, 2002, 12:01 A.M. Standard Time.    MAL-008857-8

**Name Insured:**
Kolin, Crabtree & Strong, LLP, Attorneys at Law       ***WESTPORT INSURANCE CORPORATION***

Copyright © 1998 Westport Insurance Corporation. All rights reserved.
The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.

COPY
SP 001 200A 0501                                                     Page 1 of 2

AUG-29-2005  12:14                          92%                 P.011



ENDORSEMENT

## CUSTOMIZED PRACTICE COVERAGE ℠

*THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.*

## AMENDMENT OF DEFINITION OF "WRONGFUL ACTS" ENDORSEMENT

Countersigned.

Authorized Representative              President                    Secretary

Copyright © 1998 Westport Insurance Corporation. All rights reserved.
The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.
COPY

SP 001 200A 0501

Page 2 of 2

AUG-29-2005  12:14                          92%                    P.012



**ENDORSEMENT**

*THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.*

## DEFINITION OF "PREDECESSOR" AMENDMENT

It is hereby agreed that the General Terms & Conditions, form number COR.CPC.1691 MA (06/99), Section XV. DEFINITIONS, Definition H. "PREDECESSOR," is deleted in its entirety and replaced with the following:

H.   **"PREDECESSOR" MEANS** a sole proprietor, partnership, professional corporation, professional association, limited liability corporation or limited liability partnership engaged in legal services and:

1.   to whose financial assets and liabilities the firm listed as the NAMED INSURED in the Declarations is the majority successor in interest; or

2.   of which the NAMED INSURED retained 50% or more of the lawyers

All other terms and conditions of this POLICY remain unchanged.

Countersigned.

_Cy L. [signature]_                    _Diane E. Thomas_

...................................................
Authorized Representative          President                    Secretary

Copyright © 1998 Westport Insurance Corporation. All rights reserved.
The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.
COPY
SP 001 355 (01/01)                                                  Page 1 of 1



| | ENDORSEMENT |
| --- | --- |

## CUSTOMIZED PRACTICE COVERAGE SM

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## LIMITATION OF INDIVIDUAL PRIOR ACTS

**GENERAL TERMS & CONDITIONS, Section XIV. EXCLUSIONS,** as respects only the LAWYERS PROFESSIONAL LIABILITY COVERAGE UNIT and the TITLE INSURANCE AGENT LIABILITY COVERAGE UNIT (where applicable), is amended to include:

This POLICY does not apply to any CLAIM based upon, arising out of or attributable to, or directly or indirectly resulting from an act, error, omission, circumstance or PERSONAL INJURY committed by the following INSURED(s) prior to the corresponding RETROACTIVE DATE(s):

Richard C. Heidlage - 05.01.2002

All other terms and conditions of this POLICY remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

| Endorsement Effective: | Policy Number: | Endorsement No. |
| --- | --- | --- |
| May 01, 2002, 12:01 A.M. Standard Time. | MAL-008857-8 | |

**Name Insured:**
Kotin, Crabtree & Strong, LLP, Attorneys at Law          **WESTPORT INSURANCE CORPORATION**

Countersigned.

.................................................
Authorized Representative          President          Secretary

Copyright © 1998 Westport Insurance Corporation. All rights reserved.
The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.

COPY

COR.CPC.1742 (02/98)          Page 1 of 1

## *Westport Insurance Corporation*

(hereinafter called "the Company")

MASSACHUSETTS
*CUSTOMIZED PRACTICE COVERAGE* ℠

### GENERAL TERMS & CONDITIONS

These terms and conditions shall constitute the GENERAL TERMS & CONDITIONS of the POLICY and shall apply to all COVERAGE UNITS issued by the Company as part of the POLICY:

I.    NOTICE

Notice to the Company under the POLICY shall be given to:

> Westport Insurance Corporation
> 181 West Madison
> Suite 2600
> Chicago, Illinois 60602
> Attention: Professional Liability Division

All notices under the POLICY shall be in writing, shall comply with the time requirements as stated in the COVERAGE UNITS, and shall be given by prepaid express courier, U S Mail or confirmed facsimile.

Except as provided in Section V.D. of these GENERAL TERMS & CONDITIONS, any notice shall be effective on the date of receipt by the Company at the above address.

II.   SUBROGATION

The Company shall be subrogated to all INSUREDS' rights of recovery against any person or organization. The INSURED(S) shall execute all papers required by the Company and shall do everything that may be necessary to preserve, secure and pursue such rights for the Company, including the execution of such documents as may be necessary to enable the Company to bring suit in the name of the INSURED(S). All INSUREDS shall cooperate with the Company and do nothing to jeopardize, prejudice or terminate such rights.

III.  CHANGES

No change or modification of this POLICY shall be effective except when made by a written endorsement to this POLICY which is signed by an authorized representative of the Company.

IV.   NO ASSIGNMENT

Neither this POLICY nor any INSURED'S interest in this POLICY may be assigned.

V.    TERMINATION OF COVERAGE

The POLICY shall terminate at the earliest of the following:

A.    if the POLICY is terminated for failure to pay a premium when due, the effective date of cancellation stated in a written notice of termination from the Company to the NAMED INSURED, provided such notice is received by the NAMED INSURED at least thirty (30) days prior to the effective date of cancellation. The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the POLICY PERIOD. Any earned premium shall be computed in accordance with the customary short rate table and procedure;

B    if the POLICY is non-renewed by the Company for any reason, the effective date of non-renewal stated in a written notice of termination from the Company to the NAMED INSURED, provided such notice is received by the NAMED INSURED at least sixty (60) days prior to the effective date of non-renewal. The mailing of such notice shall be sufficient notice and the effective date of non-renewal stated in the notice shall become the end of the POLICY PERIOD. Any earned premium shall be computed pro rata;

C.    upon the receipt by the Company of the POLICY surrendered by the NAMED INSURED. Any earned premium shall be computed in accordance with the customary short rate table and procedure;

D    upon the transmittal to the Company of written notice of termination from the NAMED INSURED stating when thereafter such termination shall be effective. Any earned premium shall be computed in accordance with the customary short rate table and procedure; or

E.    upon expiration of the POLICY PERIOD as set forth in the Declarations.

Individual COVERAGE UNITS may not be terminated separately.

VI.    EXTENDED REPORTING PERIOD OPTION

If the Company or the NAMED INSURED shall cancel or non-renew the POLICY, the NAMED INSURED shall have the right to extend the time for reporting CLAIMS made against any INSURED under the POLICY per the following schedule. The additional premium for the Extended Reporting Period shall be:

| Extended Reporting Period | Additional Premium |
|---|---|
| 12 months | 125% of the last annual premium of this POLICY |
| 24 months | 185% of the last annual premium of this POLICY |
| 36 months | 225% of the last annual premium of this POLICY |
| Unlimited | 285% of the last annual premium of this POLICY |

If the NAMED INSURED exercises the Extended Reporting Period option, the coverage shall apply only to CLAIMS for WRONGFUL ACTS, as defined in each of the attached COVERAGE UNITS, which occurred prior to the end of the POLICY PERIOD and on or after the RETROACTIVE DATE, if any, which are otherwise covered by the POLICY and which are first made against any INSURED and reported to the Company during the Extended Reporting Period.

This right to purchase the Extended Reporting Endorsement is subject to the following conditions:

1.    the POLICY was cancelled or non-renewed for reasons other than non-payment of premium;

2.    any deductible amounts due the Company have been paid;

3.    the INSURED(S), as defined in each of the COVERAGE UNITS, have complied with all of the GENERAL TERMS & CONDITIONS of the POLICY and the terms and conditions of all attached COVERAGE UNITS;

Copyright © 1998 Westport Insurance Corporation. All rights reserved.
The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.

4    the NAMED INSURED must send written notice to the Company of the intention to purchase the Extended Reporting Endorsement accompanied by the additional premium. Written notice and premium payment must be received by the Company no later than sixty (60) days after the termination date of the POLICY PERIOD.

Separate or new limits do not apply to the Extended Reporting Period. This option to extend the reporting period does not extend the POLICY PERIOD. The purchase of the Extended Reporting Period shall not in any way increase the limit of liability stated in the Declarations. If the Extended Reporting Period option is exercised, then such period shall be part of and not in addition to the last POLICY PERIOD. Any CLAIM made during the Extended Reporting Period shall be deemed to have been made during the immediately preceding POLICY PERIOD. The entire premium for this option shall be deemed fully earned at the commencement of the Extended Reporting Period.

VII.    NON-PRACTICING EXTENDED REPORTING PERIOD OPTIONS

A.    Subject to the conditions stated below and in Paragraph E of this Section VII., any individual owner, partner, officer, director, stockholder, shareholder or employee of the NAMED INSURED who, during the POLICY PERIOD, retires or voluntarily ceases, permanently and totally the private practice of law, shall be entitled, at no additional premium, to an unlimited period for reporting CLAIMS first made against this INSURED. The right to this retirement Non-Practicing Extended Reporting Period is subject to the following conditions:

1.    the INSURED has been continuously insured by the Company for at least three full consecutive years;

2.    the POLICY was not cancelled for non-payment of premium or non-renewed;

3.    the INSURED, as defined in each of the COVERAGE UNITS, exercising this option has complied with all of the GENERAL TERMS & CONDITIONS of the POLICY and all terms and conditions of all attached COVERAGE UNITS; and

4.    the INSURED gives written notification of retirement or the termination of the private practice of law, within sixty (60) days after the termination date of the POLICY PERIOD.

This Non-Practicing Extended Reporting Period option is provided until the INSURED resumes the private practice of law.

Under this option only, the deductible requirement of the POLICY will be waived for CLAIMS first made against the INSURED during this Non-Practicing Extended Reporting Period option.

The per claim and aggregate limit of liability of this Non-Practicing Extended Reporting Period option shall be one hundred percent (100%) of the POLICY'S per claim and aggregate limit of liability as shown on the Declarations on the inception date of the expiring POLICY.

Copyright © 1998 Westport Insurance Corporation. All rights reserved.

The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.

B     Subject to the conditions stated below and in Paragraph E of this Section VII, any individual partner, officer, director, stockholder, shareholder or employee of the NAMED INSURED who, during the POLICY PERIOD, retires or otherwise ceases the private practice of law, shall have the right to extend the time for reporting CLAIMS first made against this INSURED per the following schedule. The additional premium for this Non-Practicing Extended Reporting Period shall be:

| Extended Reporting Period | Additional Premium |
|---|---|
| 12 months | 125% of per lawyer annual premium of this POLICY |
| 24 months | 185% of per lawyer annual premium of this POLICY |
| 36 months | 225% of per lawyer annual premium of this POLICY |
| Unlimited | 285% of per lawyer annual premium of this POLICY |

If an INSURED exercises this Non-Practicing Extended Reporting Period option, the coverage shall apply only to CLAIMS for WRONGFUL ACTS, as defined in each of the attached COVERAGE UNITS, which occurred prior to the end of the POLICY PERIOD and on or after the RETROACTIVE DATE, if any, which are otherwise covered by the POLICY and which are first made against this INSURED and reported to the Company during this Non-Practicing Extended Reporting Period.

This right to purchase this Non-Practicing Extended Reporting Endorsement is subject to the following conditions:

1.    the POLICY was not cancelled for non-payment of premium or non-renewed;

2.    the INSURED, as defined in each of the COVERAGE UNITS, exercising this Non-Practicing Extended Reporting Period option has complied with all of the GENERAL TERMS & CONDITIONS of the POLICY and all terms and conditions of all attached COVERAGE UNITS;

3.    the INSURED exercising this Non-Practicing Extended Reporting Period option must send written notice to the Company of the intention to purchase this Non-Practicing Extended Reporting Endorsement accompanied by the additional premium. The Company must receive written notice and premium payment no later than sixty (60) days after the termination date of the POLICY PERIOD.

The per claim and aggregate limit of liability of this Non-Practicing Extended Reporting Period option shall be one hundred percent (100%) of the POLICY'S per claim and aggregate limit of liability as shown on the Declarations on the inception date of the expiring POLICY.

Under this Non-Practicing Extended Reporting Period option only, fifty percent (50%) of the deductible requirement of the POLICY will be waived up to a maximum of $12,500 for CLAIMS first made against the INSURED during the Non-Practicing Extended Reporting Period.

C.    Subject to Paragraph E of this Section VII, if an INSURED dies during the POLICY PERIOD as a result of reasons other than self-inflicted injury, suicide, or alcohol or drug abuse, then the period for reporting CLAIMS is extended at no additional premium until the executor or administrator of the estate is discharged, provided that the estate, heir or administrator gives written notification and written proof of the date of death to the Company within nine (9) months of the death of the INSURED.

Copyright © 1998 Westport Insurance Corporation. All rights reserved
The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.

D    If an INSURED becomes TOTALLY AND PERMANENTLY DISABLED during the POLICY PERIOD, and has been continuously insured by the Company for at least two (2) consecutive years, then the period for reporting CLAIMS is extended at no additional premium until the death of the INSURED or until the INSURED is no longer TOTALLY AND PERMANENTLY DISABLED, provided that:

    1.    the INSURED or the INSURED'S legal guardian provides written notice of the disability to the Company no later than sixty (60) days after the termination date of the POLICY PERIOD;

    2.    the INSURED or the INSURED'S legal guardian provides a physician's written certification of the disability including the date the disability commenced; and

    3    the INSURED agrees to submit to a medical examination at the Company's expense by any physician(s) designated by the Company.

E.    The provisions in A, B, C, & D above that extend the reporting period do not extend the POLICY PERIOD. Any Non-Practicing Extended Reporting Period option shall be part of and not in addition to the last POLICY PERIOD. Non-Practicing Extended Reporting Period shall not in any way increase the limit of liability stated in the Declarations. Any CLAIM made during this Non-Practicing Extended Reporting Period shall be deemed to have been made during the immediately preceding POLICY PERIOD. The entire premium for this option shall be deemed fully earned at the commencement of this Non-Practicing Extended Reporting Period.

The additional premium and deductible requirement for this Non-Practicing Extended Reporting Period will be waived for an INSURED who is leaving the private practice of law to become either a state or federal judge.

## VIII.   LIMITS OF LIABILITY

All limits of liability shall apply in excess of the deductible. All CLAIMS EXPENSES and amounts paid in satisfaction of CLAIMS are subject to the applicable limit of liability.

All CLAIMS EXPENSES shall first be subtracted from the applicable "Per Claim Limit of Liability," with the remainder, if any, being the amount available to pay LOSS, as defined in each of the attached COVERAGE UNITS.

The liability of the Company for the combined total of all LOSS, as defined in each of the attached COVERAGE UNITS, and CLAIMS EXPENSES for a CLAIM covered by a COVERAGE UNIT shall not exceed the amount stated in the Declarations as "Per Claim Limit of Liability" for that COVERAGE UNIT.

**There shall be no stacking of COVERAGE UNIT limits.** If more than one COVERAGE UNIT covers a CLAIM, the Company's liability for the combined total of all LOSS and CLAIMS EXPENSES for the CLAIM shall not exceed the highest single "Per Claim Limit of Liability" as stated in the Declarations for the COVERAGE UNIT(S) which cover the CLAIM.

The liability of the Company for the combined total of all LOSS and CLAIMS EXPENSES for all CLAIMS covered by a COVERAGE UNIT shall not exceed the amount stated in the Declarations as "Aggregate Limit of Liability" for that COVERAGE UNIT.

Copyright © 1998 Westport Insurance Corporation. All rights reserved.
The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.

The liability of the Company under the POLICY for the combined total of all LOSS and CLAIMS EXPENSES for all CLAIMS covered by any and all COVERAGE UNIT(S) shall not exceed the amount stated in the Declarations as "Policy Aggregate Limit of Liability "

IX.    DEDUCTIBLE

The deductible, as stated in the Declarations, for the COVERAGE UNIT providing the limit of liability shall apply to each CLAIM and Aggregate and shall be paid by the NAMED INSURED. The deductible shall be first applied to all CLAIMS EXPENSES with the remainder, if any, being applied to LOSS, as defined in each of the attached COVERAGE UNITS. CLAIMS EXPENSES shall be included within the deductible and the limit of liability and not in addition thereto. Payment of the deductible shall be made by the NAMED INSURED within thirty (30) days of receipt of demand by the Company

This deductible requirement will be waived for any CLAIM which is resolved through the use of formal arbitration or mediation proceedings within 120 days of written notice of such CLAIM.

X.    MULTIPLE INSUREDS, CLAIMS AND CLAIMANTS

The inclusion of more than one INSURED in any CLAIM or the making of CLAIMS by more than one person or organization shall not increase the limits of liability or the deductible. Two or more CLAIMS arising out of a single WRONGFUL ACT, as defined in each of the attached COVERAGE UNITS, or a series of related or continuing WRONGFUL ACTS, shall be a single CLAIM. All such CLAIMS whenever made shall be considered first made on the date on which the earliest CLAIM was first made arising out of such WRONGFUL ACT, as defined in the applicable COVERAGE UNIT, and all such CLAIMS are subject to one "Per Claim Limit of Liability" and deductible.

XI.    OTHER INSURANCE

Except as provided in the Exclusions to the COVERAGE UNITS, if there is other insurance applicable to a CLAIM covered by the POLICY, the POLICY shall be deemed excess insurance over and above the applicable limits of liability of all such other insurance unless such other insurance is specifically written as excess insurance over the limits of liability provided in the POLICY.

XII.    ACTION AGAINST THE COMPANY

No action shall lie against the Company unless, as a condition precedent thereto, the INSUREDS shall have fully complied with all the GENERAL TERMS & CONDITIONS of the POLICY and the terms and conditions of all attached COVERAGE UNITS, and not until the amount of all INSUREDS' obligations to pay has been finally determined either by judgment against the INSUREDS after actual trial or by written agreement of the NAMED INSURED, the claimant and the Company.

Any person, organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this POLICY to the extent of the insurance afforded by this POLICY.

Nothing contained in the POLICY shall give any person or organization any right to join the Company as a co-defendant in any action against any INSURED to determine any INSURED'S liability. Bankruptcy or insolvency of any INSURED or any INSURED'S estate shall not relieve the Company of any of its obligations hereunder.

Copyright © 1998 Westport Insurance Corporation. All rights reserved.
The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.

XIII.  APPLICABLE LAWS

Any terms of the POLICY which are in conflict with any laws and regulations governing the POLICY are hereby amended to conform to such laws and regulations.

XIV.  EXCLUSIONS

This POLICY shall not apply to any CLAIM based upon, arising out of, attributable to, or directly or indirectly resulting from:

A.    any criminal, dishonest, malicious or fraudulent act, error, omission or PERSONAL INJURY committed by an INSURED. This exclusion does not apply to any INSURED who is not so adjudged;

B.    any violation or breach by any INSURED of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act, the Fair Labor Standards Act, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, the amendments thereto, the rules and regulations promulgated thereunder, or any similar provision of any federal, state or local statute, regulation or ordinance or common law.    This exclusion shall not apply to the LAWYERS PROFESSIONAL LIABILITY COVERAGE UNIT if any INSURED is liable solely by reason of legal services rendered to clients;

C.    injury to, or destruction of tangible property or loss of use thereof;

D.    any INSURED having gained in fact any personal profit or advantage to which he or she was not legally entitled;

E.    the discharge, escape, dispersal or release by any INSURED of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials, or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water, including ground water sources, whether gradual or sudden, intentional or accidental;

F.    the use, handling, sale, distribution, transport, shipment, dispersal, storage or disposal by an INSURED of any nuclear, radioactive or fissionable material, or any alleged violation of any environmental statute, regulation or ordinance with respect to such material; and

G.    The planning, construction, maintenance, operation or use by any INSURED of any nuclear reactor, nuclear waste storage facility or disposal site or any other nuclear facility, or nuclear reaction, nuclear radiation or radioactive contamination, or to any act or condition incident to the forgoing.

XV.  DEFINITIONS

As respects such insurance as is afforded by the POLICY, the following definitions shall apply:

A.    "CLAIM" MEANS a demand made upon any INSURED for LOSS, as defined in each of the attached COVERAGE UNITS, including, but not limited to, service of suit or institution of arbitration proceedings or administrative proceedings against any INSURED;

Copyright © 1998  Westport Insurance Corporation.  All rights reserved.

The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.

B.    "CLAIMS EXPENSES" MEANS:

1.    fees charged by any lawyer, designated by the Company or required by law, to defend the INSUREDS; and

2.    if authorized by the Company, all other fees, costs and expenses resulting from the investigation, adjustment, defense or appeal of any CLAIM, including but not limited to:

    a.    all costs taxed against any INSURED and all interest which accrues after the entry of any judgment and before the Company has tendered or deposited, in court or otherwise, such judgment amount for which any INSURED is liable; and

    b.    premiums on appeal bonds, in an amount not to exceed the Company's Limits of Liability, which are required for the appeal of a covered CLAIM. The Company shall have no obligation to apply for, guarantee or furnish any such bonds.

"CLAIMS EXPENSES" shall not include salaries and expenses of regular employees or officials of the Company or the NAMED INSURED;

C.    "COVERAGE UNIT" MEANS the terms, conditions, definitions and exclusions as stated in each attachment hereto for each of the coverages selected by the INSUREDS and listed in the Declarations including endorsements thereto. Each COVERAGE UNIT is a separate and distinct coverage;

D.    "DISCIPLINARY PROCEEDING" MEANS any proceeding by a disciplinary official or agency to investigate charges alleging professional misconduct;

E.    "PERSONAL INJURY" MEANS assault, battery, false arrest, detention, imprisonment, wrongful entry, eviction or other invasion of private occupancy, or abusive litigation (criminal or civil), abuse of process, libel, slander, defamation and violations of the right of privacy;

F.    "POLICY" MEANS the combination of (1) all COVERAGE UNITS issued by the Company to the NAMED INSURED and listed in the Declarations, (2) these GENERAL TERMS & CONDITIONS, and (3) all applications for insurance submitted by the NAMED INSURED with all supplements;

G.    "POLICY PERIOD" MEANS the period stated in the Declarations, unless terminated earlier pursuant to Section V. of these GENERAL TERMS & CONDITIONS;

H.    "PREDECESSOR" MEANS a sole proprietor, partnership, professional corporation, professional association, limited liability corporation or limited liability partnership engaged in legal services and:

1.    to whose financial assets and liabilities the firm listed as the NAMED INSURED in the Declarations is the majority successor in interest; and

2.    of which the NAMED INSURED retained 50% or more of the lawyers.

Copyright © 1998 Westport Insurance Corporation. All rights reserved.

The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.

I.   "RETROACTIVE DATE" MEANS the date, as specified in the Declarations or in any endorsement attached hereto, on or after which any WRONGFUL ACT, as defined in each of the attached COVERAGE UNITS, must have occurred in order for CLAIMS arising therefrom to be covered under this POLICY. CLAIMS arising from any WRONGFUL ACT, as defined in each of the attached COVERAGE UNITS, occurring prior to this date are not covered by this POLICY;

J.   "TOTALLY AND PERMANENTLY DISABLED" MEANS the INSURED is wholly prevented from working in his or her profession and the disability has continued for at least six (6) months, and an independent medical examiner opines that the disability will be continuous and permanent, and the disability did not result from self-inflicted injury, attempted suicide or alcohol or drug abuse.

## XVI.   WAIVER

The Company's failure to insist on strict compliance with any of the terms, provisions or conditions to coverage of these GENERAL TERMS & CONDITIONS or the attached COVERAGE UNITS or the failure to exercise any right or privilege shall not operate or be construed as a waiver thereof or of any subsequent breach thereof or a waiver of any other terms, provisions, conditions, privileges or rights.

## XVII.   ENTIRE AGREEMENT

By acceptance of this POLICY, all INSUREDS reaffirm as of the effective date of this POLICY that (a) the statements in the application(s) attached hereto and made a part hereof, and all information communicated by the INSUREDS to the Company, and all INSUREDS' agreements and representations, are true and accurate (b) this POLICY is issued in reliance upon the truth and accuracy of such representations which are material to the Company's issuance of this POLICY and (c) this POLICY embodies all agreements between all INSUREDS and the Company or any of its agents relating to this insurance. No representations by any person shall have any force or effect, except as included within this written agreement.

## XVIII.   LIBERALIZATION

If the Company adopts any revision that would broaden coverage under this POLICY without additional premium at any time during the POLICY PERIOD, the broadened coverage will immediately apply to this POLICY except that it will not apply to CLAIMS that were first made against the INSURED prior to the effective date of such revision.

**This POLICY is not valid unless completed by the attachment of the Declarations signed by an authorized representative and these GENERAL TERMS & CONDITIONS.**

*WESTPORT INSURANCE CORPORATION*

President                    Secretary

Copyright © 1998 Westport Insurance Corporation. All rights reserved.
The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.

# *Westport Insurance Corporation*

(hereinafter called "the Company")

MASSACHUSETTS
*CUSTOMIZED PRACTICE COVERAGE*ᔕᴹ

LAWYERS PROFESSIONAL LIABILITY COVERAGE UNIT

In consideration of the payment of the premium, in reliance upon the statements in the application, its attachments and any materials submitted therewith, all of which are made a part hereof, and subject to the Declarations, GENERAL TERMS & CONDITIONS and the terms and conditions of this COVERAGE UNIT (including any endorsements hereto), the Company agrees with the NAMED INSURED as follows:

I.   INSURING AGREEMENTS

A.   The Company shall pay on behalf of any INSURED all LOSS in excess of the deductible which any INSURED becomes legally obligated to pay as a result of CLAIMS first made against any INSURED during the POLICY PERIOD and reported to the Company in writing during the POLICY PERIOD or within sixty (60) days thereafter, by reason of any WRONGFUL ACT occurring on or after the RETROACTIVE DATE, if any. Coverage shall apply to any such CLAIMS arising out of the conduct of the INSURED'S profession as a Lawyer, or as a Lawyer acting in the capacity of an Arbitrator, Mediator or other neutral, or Notary Public or as a member, director or officer of any Bar Association, its governing board or any of its committees, or as a member of a formal accreditation, ethics, peer review, licensing board, standards review or similar professional board or committee relating to the practice of law.

B.   The Company shall reimburse the INSURED up to $10,000 per POLICY PERIOD, for reasonable fees, costs and expenses incurred in defending a DISCIPLINARY PROCEEDING based on a GRIEVANCE first made against any INSURED during the POLICY PERIOD, and reported to the Company in writing during the POLICY PERIOD or within sixty (60) days thereafter. This coverage applies only to such fees, costs and expenses. It does not apply to any monetary awards of any kind, judgments or settlements relating to, or directly or indirectly resulting from the institution or disposition of DISCIPLINARY PROCEEDINGS. The deductible shall not apply to this Insuring Agreement I.B. Any payments made by the Company under this Insuring Agreement I.B. shall be in addition to the applicable limit of liability.

II.  DEFENSE, INVESTIGATION AND SETTLEMENT OF CLAIMS

As respects such insurance as is afforded by this COVERAGE UNIT, the Company shall:

A.   have the right and duty to select counsel and arbitrators and to defend any CLAIM for LOSS against any INSURED covered by Insuring Agreement I.A., even if such CLAIM is groundless, false or fraudulent, and shall have the right to make such investigation, negotiation and settlement, subject to Section II.B. below, of any CLAIM as it deems expedient;

B    not settle any CLAIM without the written consent of the NAMED INSURED, which consent shall not be unreasonably withheld. If, however, the NAMED INSURED refuses to consent to a settlement recommended by the Company and elects to contest the CLAIM or continue legal proceedings in connection with such CLAIM, the Company's liability for the CLAIM shall not exceed the amount for which the CLAIM could have been settled, including CLAIMS EXPENSES incurred up to the date of such refusal, or the applicable limit of liability, whichever is less;

C.    reimburse up to $500 to each INSURED for each day for his or her attendance at the Company's request at trial, court-imposed hearing, mediation, alternate dispute resolution, arbitration proceeding, or Board of Bar Overseers hearing involving a CLAIM, but the total amount so payable shall not exceed $10,000 per CLAIM. The deductible shall not apply to this Section II.C. Any payments made by the Company under this Section II.C. shall be in addition to the applicable limit of liability.

The Company shall not be obligated to pay any LOSS or CLAIMS EXPENSES or defend or continue to defend any CLAIM after the "Per Claim Limit of Liability" or "Aggregate Limit of Liability" under this COVERAGE UNIT has been exhausted by payment of LOSS and/or CLAIMS EXPENSES, or the deposit of sums equal to the applicable limits of liability in a court having jurisdiction.

Except for reasonable fees, costs and expenses incurred in responding to a DISCIPLINARY PROCEEDING, no INSURED shall, without the prior written consent of the Company, incur any CLAIMS EXPENSES, make any admission or payment, admit liability, settle any CLAIMS, assume any obligation, agree to arbitration or any similar means of resolution of any dispute, or waive any rights.

If an INSURED is entitled to independent counsel (in those instances where the Company agrees to defend a CLAIM, and the Company reserves its rights to deny coverage on grounds which create a conflict of interests between an INSURED and the Company, and the INSURED does not waive the conflict), then the INSURED may select independent counsel. Such counsel shall have at least five (5) years of experience in the defense of similar CLAIMS, and maintain error and omissions insurance coverage. The INSURED and independent counsel shall provide full information, documentation and cooperation with respect to the defense, investigation and settlement of any CLAIM. The Company shall be liable only for reasonable and necessary defense costs at rates customarily paid by the Company for the defense of similar CLAIMS in the area where the CLAIM is being defended.

## III.    REPORTING AND NOTICE

As a condition precedent to coverage under this COVERAGE UNIT, if a CLAIM is made against any INSURED, or if any INSURED becomes aware of any CLAIM, the INSURED(S) shall, as soon as practicable, but no later than sixty (60) days after termination of the POLICY PERIOD, provide written notice to the Company. However, breach of this condition shall not result in a denial of coverage with respect to any INSURED who had no knowledge of the CLAIM. Nothing contained herein shall be construed as limiting the reporting requirements of Insuring Agreement I.A.

Copyright © 1998 Westport Insurance Corporation. All rights reserved.
The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.

If, during the POLICY PERIOD, any INSURED first becomes aware of a POTENTIAL CLAIM and gives written notice of such POTENTIAL CLAIM to the Company during the POLICY PERIOD, any CLAIMS subsequently made against any INSURED arising from the POTENTIAL CLAIM shall be considered to have been made during the POLICY PERIOD.

The INSURED(S) shall include within any notice of CLAIM or POTENTIAL CLAIM a description of the CLAIM or POTENTIAL CLAIM, the alleged WRONGFUL ACT including date(s) it was committed, a summary of the facts upon which the CLAIM or POTENTIAL CLAIM is based, the alleged or potential damage that may result, the names of actual or potential claimants, the names of INSURED(S) against whom the CLAIM was or may be made, and the date and circumstances by which the INSURED(S) first became aware of the CLAIM or POTENTIAL CLAIM.

IV.    TERRITORY

This COVERAGE UNIT applies to WRONGFUL ACT(S) that occur anywhere in the world, provided that the CLAIM is made and brought in the United States of America, its territories or possessions or Canada.

V.    COOPERATION OF THE INSUREDS

A.    All INSUREDS shall cooperate with the Company in providing information requested by the Company regarding any CLAIM or GRIEVANCE reported under the POLICY. All INSUREDS shall cooperate with the Company in the investigation of any GRIEVANCE and in the defense, investigation and settlement of any CLAIM. Upon the Company's request, the INSURED(S) shall submit to examination or questioning under oath, attend hearings, depositions and trials and assist in effecting settlements, securing and giving evidence and obtaining the attendance of witnesses in the conduct of suits.

B.    All INSUREDS shall assist the Company in effecting any rights of indemnity, contribution or apportionment available to any INSURED or the Company, including the execution of such documents as are necessary to enable the Company to pursue claims in the INSUREDS' names, and shall provide all other assistance and cooperation which the Company may reasonably require.

VI.    EXCLUSIONS

In addition to those Exclusions contained in Section XIV. of the GENERAL TERMS & CONDITIONS, this COVERAGE UNIT shall not apply to any CLAIM based upon, arising out of, attributable to, or directly or indirectly resulting from:

A.    bodily injury to, or sickness, disease or death of any person. This exclusion does not apply to mental illness, emotional distress or humiliation caused by PERSONAL INJURY;

Copyright © 1998 Westport Insurance Corporation. All rights reserved.

The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.

B      any act, error, omission or PERSONAL INJURY committed or alleged to have been committed by any INSURED while that INSURED was a partner, officer, director, stockholder, shareholder or employee of a PRIOR FIRM if there is other valid and collectible insurance, under any other policy or policies covering that INSURED for LOSS and/or CLAIMS EXPENSES for such CLAIM, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise;

C.      any INSURED'S activities as an officer, director, partner, manager or employee of any company, corporation, operation, organization, partnership or association other than the NAMED INSURED or PRIOR FIRM, except as a member, director or officer of any Bar Association, its governing board or any of its committees, or as a member of a formal accreditation, ethics, peer review, licensing board, standards review or similar professional board or committee relating to the practice of law;

D.      any conduct by an INSURED committed within the scope of or while acting in a capacity as a public official or an employee of a municipality or governmental body, subdivision, agency, department or unit;

E.      the certification or acknowledgment by any INSURED, in his or her capacity as a Notary Public, of a signature on a document which the INSURED did not witness being placed on the document;

F.      any act, error, omission, circumstance, PERSONAL INJURY or breach of duty in the rendition of professional services for others in the INSURED'S capacity as a Title Insurance Agent or Title Abstractor or arising out of the conduct of the INSURED as a Title Insurance Agent or Title Abstractor pursuant to an agreement with a licensed title insurance company/companies;

G.      any CLAIM made by any INSURED under this POLICY against any other INSURED under this POLICY unless such CLAIM arises out of legal services by an INSURED rendered to such other INSURED as a client;

H.      any conversion, misappropriation or improper commingling of client funds, except this exclusion shall not apply to any INSURED who is not adjudged to have committed such acts;

I.      any INSURED'S capacity as the beneficiary or distributee of any trust or estate; and

J.      any professional services rendered or that should have been rendered to or on behalf of any entity other than the NAMED INSURED which, at that time, was ten percent (10%) or more owned, controlled, managed or operated by any INSURED or combination of INSUREDS.

. Copyright © 1998 Westport Insurance Corporation. All rights reserved.

The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.

K.    any CLAIM arising out of any act, error, omission or PERSONAL INJURY occurring prior to the effective date of this POLICY if a) the matter had previously been reported to any insurance company or b) if the INSURED at the effective date knew or could have reasonably foreseen that such act, error, omission or PERSONAL INJURY might be expected to be the basis of a CLAIM; provided, however, that subsection b) does not apply to any INSURED who had no knowledge of or could not have reasonably foreseen that any such act, error, omission or PERSONAL INJURY might be expected to be the basis of a CLAIM

## VII.    DEFINITIONS

As respects such insurance as is afforded by this COVERAGE UNIT, the following definitions shall apply:

A.    "NAMED INSURED" WHENEVER USED IN THIS COVERAGE UNIT MEANS the person or entity listed in the Declarations and any PREDECESSOR FIRM thereof.

B.    "INSURED" WHENEVER USED IN THIS COVERAGE UNIT MEANS:

1.    the NAMED INSURED;

2.    any lawyer who is a past or present partner, officer, director, stockholder, shareholder, employee or "of counsel" of the NAMED INSURED, but only as respects legal services rendered on behalf of the NAMED INSURED;

3.    any lawyer listed in the application who is a partner, officer, director, stockholder, shareholder or employee of the NAMED INSURED at the time the CLAIM is made, but only as respects legal services rendered by such individual while associated with a PRIOR FIRM;

4.    any lawyer who has retired from the NAMED INSURED, but only as respects legal services rendered prior to the date of retirement;

5.    the heirs, executors, administrators and legal representatives of any INSURED, but only in their capacity as such in the event of any INSURED'S death, incapacity or bankruptcy, and only for CLAIMS based on legal services rendered prior to such INSURED'S death, incapacity or bankruptcy, and only to the extent that such INSURED would otherwise be covered by this COVERAGE UNIT; and

6.    any past or present non-employee independent contractor attorney of the NAMED INSURED, but only for professional services rendered on behalf of the NAMED INSURED.

Copyright © 1998  Westport Insurance Corporation.  All rights reserved

The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of  Westport Insurance Corporation

C.    "GRIEVANCE" WHENEVER USED IN THIS COVERAGE UNIT MEANS:

    1.    any charges filed by a client, former client or third party with a disciplinary official or agency alleging professional misconduct of an INSURED in rendering or failing to render professional services as a lawyer; or

    2.    any investigation commenced or action brought by a bar association, disciplinary board or any other similar entity alleging violations of the rules of professional responsibility, or any other action to limit, suspend or revoke an INSURED'S license to practice law.

"GRIEVANCE" shall not include charges or actions filed with the Securities Exchange Commission, the Internal Revenue Service or other similar agency.

D.    "LOSS" WHENEVER USED IN THIS COVERAGE UNIT MEANS the monetary and compensatory portion of any judgment, award or settlement, provided always that LOSS shall not include:

    1.    penalties, fees, sanctions or criminal fines;

    2.    matters deemed uninsurable;

    3.    the return by any INSURED of any fees or remuneration paid to any INSURED; or

    4.    any form of non-monetary relief.

E.    "POTENTIAL CLAIM" WHENEVER USED IN THIS COVERAGE UNIT MEANS:

    1.    any act, error, omission, circumstance or PERSONAL INJURY which might reasonably be expected to give rise to a CLAIM against any INSURED under the POLICY; or

    2.    any breach of duty to a client or third party which has not resulted in a CLAIM against an INSURED.

F.    "PRIOR FIRM" WHENEVER USED IN THIS COVERAGE UNIT MEANS any law firm or professional corporation engaged in the private practice of law for which any lawyer listed in the application was a sole proprietor, partner, officer, director, stockholder, shareholder or employee prior to such lawyer joining the NAMED INSURED.

Copyright © 1998 Westport Insurance Corporation. All rights reserved.

The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.

G.   "WRONGFUL ACT" WHENEVER USED IN THIS COVERAGE UNIT MEANS
any act, error, omission, circumstance, PERSONAL INJURY or breach of duty in the
rendition of legal services for others, either for a fee or pro bono, in the INSURED'S
capacity as a lawyer, and arising out of the conduct of the INSURED'S profession as a
lawyer, or as a lawyer acting in the capacity of an Arbitrator, Mediator or other neutral,
or Notary Public, or as a member, director or officer of any bar association, its governing
board or any of its committees or as a member of a formal accreditation, ethics, peer
review, licensing board, standards review or similar professional board or committee
relating to the practice of law. When an INSURED acts as an administrator, conservator,
executor, guardian, trustee, escrow agent, receiver or other court-appointed fiduciary, the
INSURED'S wrongful acts in such capacity shall be deemed to be the rendition of legal
services for others in the INSURED'S capacity as a lawyer.

This COVERAGE UNIT is not valid unless completed by the attachment of the Declarations signed
by an authorized representative and the GENERAL TERMS & CONDITIONS.

*WESTPORT INSURANCE CORPORATION*

President                    Secretary

Copyright © 1998  Westport Insurance Corporation.  All rights reserved.
The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or
hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is
forbidden without the written permission of  Westport Insurance Corporation.

COR CPC 1692 MA (06/99)

|Application

# *Westport Insurance Corporation*
## *CUSTOMIZED PRACTICE COVERAGE®*

### NEW LAWYER APPLICATION

*This form must be completed when any lawyer joins the firm. Forward to the Program Administrator in your state.*

Name of New Lawyer _Richard C. Headlage_     Name of Insured Firm _Kotu Crabtree + Strong, LLP_

Policy Number _MAL-008857-8_

**The following questions must be completed by the New Lawyer:**

1.  Position in firm: (check one)   ☐ Officer/Director/Shareholder   ☐ Partner   ☐ Sole Proprietor
    ☐ Employed Lawyer   ☒ Of Counsel*   ☐ Independent Contractor*

    Age _58_     Date Admitted to Bar (mm/yy) _12/75_ Massachusetts Bar Number _228940_

    Date of Hire (mm/dd/yy) _05/01/02_ Number of Continuing Legal Education hours attended in the past year. _0_

    How many years have you been continuously insured under a Lawyers Professional Liability Insurance Policy? _26_

    Have you attended an Ethics/Loss Prevention/Risk Management Seminar this past year?   ☐ Yes   ☒ No

    If yes, provide name of sponsoring entity _____

    *If you are an Of Counsel or Independent Contractor, answer the following questions:

    What is the average number of weekly hours you spend working on behalf of the insured firm? _40_

    Are you a prior partner, officer, director, shareholder or employee of the insured firm?   ☐ Yes   ☒ No

    Do you carry your own individual professional liability coverage?   ☐ Yes   ☒ No

2.  Prior Professional Liability Insurance History     No Current Coverage (check here) ☐

    Provide the past five (5) years information:

| Name of Prior Firm | Dates of Employment | Position** | Professional Liability Carrier | Is Firm Still in Existence? Y/N*** | Can you confirm Continuous Coverage? Y/N |
|---|---|---|---|---|---|
| Prince, Lobel, Glovsky+Tye | 5/98 - 5/2002 | Of Counsel | Great American | Y | Y |
| Headlage Ricca | 1983 - 5/98 | Principal | ADN | N | Y |

    ** For Position, refer to question 1 above.
    *** Was an Extended Reporting Period (ERP) endorsement purchased for any firm named above that is no longer in existence?
    ☒ Yes   ☐ No   If yes, provide effective dates: from _5/22/98_ to _Unlim_.

3.  Are you an employee of any organization other than the Named Insured Firm?   ☐ Yes   ☒ No
    If yes, provide details. _____

4.  Have you been denied the right to practice, suspended from practice, disbarred, reprimanded or
    had other disciplinary action taken against you by any court or administrative agency?   ☐ Yes   ☒ No
    If yes, provide details, including dates and current disposition. _____

5.  Have you ever had any application for Lawyers Professional Liability Insurance declined, canceled or non-renewed?
    ☐ Yes   ☒ No
    If yes, provide details, including name of carrier, dates and reason for this action. _____

Copyright © 1998 Westport Insurance Corporation. All rights reserved.
The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.

6. Have any claims or suits been made against you for services you performed during the past five (5) years? ☐ Yes ☒ No
   If yes, complete a Claim Information Supplement.

7. Are you aware of any circumstance, act, error, omission or personal injury **which might be expected** to be the basis
   of a claim or suit against you? ☐ Yes   ☒ No   If yes, complete a Claim Information Supplement.

8. Do you act as a director, officer, partner or trustee for or exercise any form of managerial or fiduciary
   control over, or hold any equity interest in any business enterprise other than the Named Insured Firm? ☒ Yes   ☐ No
   If yes, complete the Directors & Officers/Outside Interests Supplemental Application.

9. State your area of practice specialty(ies). _GENERAL BUSINESS CIVIL LITIGATION_

**The following questions must be completed by an owner, officer or partner of the firm:**

10. Based upon the billable hours projected for this new lawyer, will the firm's areas of practice change?
    ☐ Yes ☒ No

    If yes, explain: _____

11. Regarding the prior acts coverage for this new lawyer, check one of the following. Note, this is subject to underwriting and
    continuous professional liability insurance coverage while associated with any prior law firms.

    ☐ The firm desires to extend coverage for services rendered while this lawyer was associated with
      any prior law firm(s).  A premium assessment may be made for any extension of coverage.
      **The firm has discussed this decision with this lawyer** ☐

    ☒ The firm desires to limit coverage to services rendered only on behalf of the firm and, therefore,
      the date of hire will be the limiting prior acts date for this new lawyer.
      **The firm has discussed this decision with this lawyer** ☒

    I hereby authorize the release of claim information from any prior insurer to Westport Insurance Corporation.

    The undersigned understands and accepts that any policy issued will provide coverage on a claims-made and reported basis
    for only those claims that are made against the insured and reported while the policy is in force and that coverage ceases with
    the termination of the policy. All claims will be excluded that result from any acts, circumstances or situations known prior to the
    inception of coverage being applied for, that could reasonably be expected to result in a claim.

    The undersigned represents and warrants that the statements set forth herein are true, complete and accurate and that there
    has been no attempt at suppression or misstatement of any material facts known, or which should be known, and agrees that
    this application shall become the basis of any coverage and a part of any policy that may be issued by the Company.

    Applicant understands and agrees that the completion of the application does not bind Westport Insurance Corporation to
    issuance of an insurance policy.

    For your protection, the following Fraud Warning is required to appear on this application:

    Any person who knowingly files an application for insurance or statement of claim containing any materially false information
    or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance
    act which is a crime and punishable by criminal and/or civil penalties in certain jurisdictions.

    **THIS APPLICATION MUST BE SIGNED BY A PARTNER, OFFICER and/or OWNER**

    Signature _____    Date _5/1/02_
              Partner, Officer and/or Owner

    Signature _____    Date _05/01/02_
              New Lawyer

    *The applicant understands and agrees that she or he is obligated to report any changes in the information provided in this
    application that occur after the date of the application.*

Copyright © 1998 Westport Insurance Corporation. All rights reserved

SP 001 416D 0201    (MA)                                          PAGE 2 OF 2

Case 1:05-cv-11780-DPW    Document 24-3    Filed 06/19/2006    Page 10 of 21
Tuesday 11 of Apr 2006, KANFAXMP01        ->312 466 8001        Page 11 of 22
age 10 of 21)

Friday 22 of Feb 2002, Faxination        ->        Page 10 of 21
FEB 15 '02 12:06 FR MBA INSURANCE AGENCY 617 350 7687 TO 19136766947    P.09/20



**Westport**
Westport Insurance Corporation
A GE Capital Services Company
Incorporating Scompli-Lenner Pro/HPH
www.corppt-westport.com


**MBA**
**INSURANCE**
**AGENCY**

20 West Street
Boston, MA 02111
617-338-0581

73 State Street
Springfield, MA 01103
413-788-7878

**Lawyers Professional Liability Insurance**
**Claims Made Basis**

Current Policy Information:
Policy #MAL-007412-4  Exp.Date: 03/08/2002
Limits: $4,000,000 each claim $4,000,000 aggregate
Deductible: $10,000 aggregate- damages only

### PLEASE NOTE:
If you know of any claims or incidents that you have not reported, please notify the company prior to renewal.

**Applicant Instructions:**

*MBA INS AGENCY RECEIVED FEB 06 2002*

1. Please read all statements and questions on this application carefully.
2. Answer all questions in ink.
3. *For any yes responses provide full details on a separate attachment.*
4. *Attach a copy of your business stationery.*
5. Application and all attachments must be signed and dated by named Applicant, partner, officer or owner.

| | | |
|---|---|---|
| 1. | Named Insured: **Kotin, Crabtree & Strong, LLP** | |
| | Principal Address **One Bowdoin Square, Boston, MA 02114** | |
| | e-mail address    kcs@kcslegal.com | |

| | | |
|---|---|---|
| 2. | Have the lawyers or number of lawyers in your firm changed from the previous year? | [x] Yes ☐ No |
| | If yes, indicate only the + or - change in the number of lawyers: | + _____ or - 1 |
| | Departed Attorneys – Provide their names and date of termination on separate attachment | |
| | New Attorneys – Complete the new lawyer application form, if not previously reported. | |
| 3. | Requested Limits & Deductibles   Optional Limits:   Optional Deductibles | [x] As Expiring  [x] As Expiring |
| 4. | Has there been a change in the percentage of practice devoted to any area/specialty by 5% or more? | ☐ Yes [x] No  If yes provide details |
| 5.a  b | Have your docket control systems changed in the past 12 months?  Have your internal procedures changed in the past 12 months? | ☐ Yes [x] No  ☐ Yes [x] No  if yes provide details |
| 6. | Have any attorneys in the firm attended Continuing Legal Educational Courses in the past 12 months?   If yes, provide the total number of CLE hours | [x] Yes ☐ No  140 Hours |
| 7. | Has any lawyer with the named insured been the subject of any disciplinary proceedings with in the past 12 months? | ☐ Yes [x] No  If yes provide details |
| 8. | Does your firm provide SEC, Copyright Patent & Trademark, Mergers & Acquisitions services or act as Director, Officer or have equity interest in any other entity besides your law firm.  If yes please contact us for a supplemental application | [x] Yes ☐ No  If yes contact us |

The undersigned represents and warrants that the statements set forth herein are true, complete and accurate and that there has been no attempt at suppression or misstatement of any material facts known, or which should be known, and agrees that this application shall become the basis of any coverage and a part of any policy that may be issued by the Company. The execution of this application does not bind the undersigned to purchase any coverage offered, nor does the receipt and/or review of this application bind the company to offer coverage or issue a policy.

The undersigned understands and accepts that any policy issued will provide coverage on a claims-made and reported basis. Any person who knowingly and with intent to defraud any insurance company or other person, files an application for insurance containing false information or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.

Signature _____ Partner    Date  2/6/02
Partner, Officer and/or Owner  [Please sign in blue ink]
*Please remit with a piece of your letterhead*

## KOTIN, CRABTREE & STRONG, LLP

ATTORNEYS AT LAW

ONE BOWDOIN SQUARE

BOSTON, MASSACHUSETTS 02114-2925

LAWRENCE KOTIN
ROBERT K. CRABTREE
WILLIAM S. STRONG*
DOLPH J. VANDERPOL
ABBOTT L. REICHLIN
ANNE L. JOSEPHSON
JOSEPH B. GREEN
MARIE F. MERCIER
ELIZABETH J. BAILEY
RICHARD F. HOWARD
NICHOLAS M. KELLEY
RENÉ D. VARRIN
SHAREN LITWIN

*ALSO ADMITTED IN NH

TELEPHONE (617) 227-7031

FACSIMILE (617) 367-2988

EMAIL KCS@KCSLEGAL.COM

WWW.KCSLEGAL.COM

OF COUNSEL
EILEEN M. HAGERTY
MAURA J. KELLY

AMY H. WEINSTEIN
MARYANN C. CASSIDY
CHARLES P. WAGNER
LAUREL H. SIEGEL

MBA INS AGENCY
RECEIVED

FEB 06 2002

Lawyers who have left the firm since March 8, 2001:

Joseph R. Schmidt left the firm on April 30, 2001

Kevin J. Redmond left the firm on May 11, 2001

Maura J. Kelly is scheduled to leave the firm prior to March 8, 2002

Abbott Reichler, Postrur 2/6/02

Case 1:05-cv-11780-DPW     Document 24-3     Filed 06/19/2006     Page 12 of 21
Tuesday 11 of Apr 2006, KANFAXMP01          ->312 466 8001        Page 13 of 22
age 12 of 21)

Friday 22 of Feb 2002, Faxination          ->                    Page 12 of 21
     FEB 15 '02 12:07 FR MBA INSURANCE AGENCY 617 350 7687 TO 19136766947     P.11/20

**Application**

# *Westport Insurance Corporation*

## CUSTOMIZED PRACTICE COVERAGE SM
## SUPPLEMENTAL APPLICATION PACKET

This Packet contains four (4) supplemental applications for Directors & Officers/Outside Interests, Financial Institution, Copyright/Patent/Trademark and Securities practices. Based upon responses to questions on the Lawyers Professional Liability Insurance Application, complete the appropriate sections of this packet.

**This addendum is a part of the application and will become a part of any policy issued. Any warranty or fraud statements on the signature page of the application are applicable to the information provided herein.**

Applicant Instructions:

...   Please read carefully all statements and questions for these supplemental applications.
...   Answer all questions in ink. If answer is none, state "none."
..    If space is insufficient to answer all questions fully, use separate sheets of paper.

## DIRECTORS & OFFICERS / OUTSIDE INTERESTS SUPPLEMENTAL APPLICATION SECTION

This supplement must be completed when any lawyer acts as a director, officer, partner or trustee for, exercises any form of managerial or fiduciary control over, owns, manages, has financial control over or equity interest in any business enterprise other than the Applicant Firm.

| Lawyer | Position Held | Name and Nature of Business | Equity Interest | Client Yes No | D&O Insurance Yes No | Non-Profit, Charitable or Civic Organization Yes No |
|---|---|---|---|---|---|---|
| See Attached | | | ___ % | ☐ ☐ | ☐ ☐ | ☐ ☐ |
| | | | ___ % | ☐ ☐ | ☐ ☐ | ☐ ☐ |
| | | | ___ % | ☐ ☐ | ☐ ☐ | ☐ ☐ |
| | | | ___ % | ☐ ☐ | ☐ ☐ | ☐ ☐ |
| | | | ___ % | ☐ ☐ | ☐ ☐ | ☐ ☐ |
| | | | ___ % | ☐ ☐ | ☐ ☐ | ☐ ☐ |
| | | | ___ % | ☐ ☐ | ☐ ☐ | ☐ ☐ |

**ATTACH ADDITIONAL SHEETS IF NECESSARY.**

Copyright © 1998 Westport Insurance Corporation. All rights reserved.
The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation

COR.CPC.1703 (2/98)     _[signature]_, Partner     2/6/02     PAGE 1 OF 6

Case 1:05-cv-11780-DPW   Document 24-3   Filed 06/19/2006   Page 13 of 21
Tuesday 11 of Apr 2006, KANFAXMP01        ->312 466 8001      Page 14 of 22
age 13 of 21)

MBA INS AGENCY
RECEIVED

FEB 0 6 2002

## DIRECTORS & OFFICERS/OUTSIDE INTERESTS SUPPLEMENTAL APPLICATION

Name of Applicant: Kotin, Crabtree & Strong, LLP

| Name of Lawyer | Position Held | Name of Business | Nature of Business | % Equity Interest | Client Yes/No | D&O Ins. Yes/No | Charitable |
|---|---|---|---|---|---|---|---|
| Kotin | Director | Mass. Advocacy Center | Child Advocacy | n/a | No | No | Yes |
| Strong | Clerk | Townscape Institute | Town Planning | n/a | Yes | No | Yes |
| | Treasurer | Navigator | Arts Foundation | n/a | Yes | No | Yes |
| | Trustee | Boston Athenaeum | Library | n/a | Yes | Unknown | Yes |
| | Clerk | Belmont Press, Inc. | Publishing | 0 | Yes | No | No |
| | Clerk | Rare Media Well Done, Inc. | Design | 0 | Yes | No | No |
| | Clerk | Kids Energy, Inc. | Funding Educational Programs | 0 | Yes | No | No |
| | Clerk | Friends of CMJ, Inc. | Arts Organization | n/a | Yes | No | Yes |
| Reichlin | Clerk | Ford-Webb Assoc. | Personnel | 0 | Yes | Unknown | No |
| | Clerk | P.D. Lazarus & CO. | Sales | 0 | Yes | Unknown | No |
| | Clerk | Caterhoc, Inc. | Catering | 0 | Yes | Unknown | No |
| | Clerk | Next Frame, Inc. | Consulting | 0 | Yes | Unknown | No |
| | Clerk | Clearwater Instrumentation | Manufacture | 0 | Yes | No | No |

_Robert Reichlin Partner 2/6/02_

Case 1:05-cv-11780-DPW    Document 24-3    Filed 06/19/2006    Page 14 of 21
Tuesday 11 of Apr 2006, KANFAXMP01              ->312 466 8001        Page 15 of 22
age 14 of 21)

| Name | Title | Company | Business | % | | | |
|---|---|---|---|---|---|---|---|
| Josephson | Clerk | PDQ Distributing, Inc. | Distributor | 0 | Yes | Unknown | No |
| | Clerk | Spring Street Associates, Inc. | Real Estate | 0 | Yes | No | No |
| Kelley | Trustee | Wide Horizons for Children | Adoption Agency | n/a | Yes | Yes | Yes |
| | Director, Vice President | Friends of Sakonnet Lighthouse, Inc. | Lighthouse Restoration | n/a | No | Unknown | Yes |
| | Corporator | Brookline Savings Bank | Savings Bank | 0 | No | Unknown | No |
| Varrin | Stockholder | Gestalt Technologies, Inc. | Computer Software | <2.5% | Former | No | No |
| | President, Exec. Board Member | Lexington Ski Club, Inc. | Non-profit ski club | n/a | No | Yes | Yes |
| Weinstein | Director, Treasurer | Ascend, Inc. | Technology Consulting & Training | 51% | No | No | No |
| Cassidy | Director, Treasurer | The Secret Ingredient, Inc. | Café | 50% | No | No | No |
| Wagner | Board Member | Comprehensive School Age Parenting Program | Counseling | n/a | Yes | Yes | Yes |

The undersigned represents that the statements set forth herein are true, complete and accurate and that there has been no attempt at suppression or misstatement of any material facts known, or should be known, and agrees that this Supplemental Application shall become the basis of any coverage and a part of any policy that may have been issued by the Company.

Date _2/6/02_

Signed _[signature]_

Case 1:05-cv-11780-DPW    Document 24-3    Filed 06/19/2006    Page 15 of 21
Tuesday 11 of Apr 2006, KANFAXMP01        ->312 466 8001    Page 16 of 22
age 15 of 21)

Friday 22 of Feb 2002, Faxination        ->            Page 15 of 21
    FEB 15 '02 12:07 FR MBA INSURANCE AGENCY 617 350 7687 TO 19136766947    P.14/20

### FINANCIAL INSTITUTION SUPPLEMENTAL APPLICATION SECTION

A financial institution may include any bank, savings and loan, savings and loan association, credit union and/or mortgage company/corporation. If the Applicant, or its predecessor firms, currently provides legal services for any financial institution, or has done so within the past five (5) years, complete this supplement.

1.  Have services rendered to any/all financial institution(s) been limited to : bankruptcy, conveyances, collection, foreclosures, loan documentation, loan workout, residential or commercial real estate loan closings, title and/ or trust work?
    ☒ Yes  ☐ No    If YES, you do not need to complete the remainder of this section.

2.  Has any lawyer proposed for this insurance performed the following for any financial institution:
    a.  Initial formation of a financial institution?        ☐ Yes  ☐ No
    b.  Securities work?                                      ☐ Yes  ☐ No
    c.  Prepared responses to regulatory examinations?       ☐ Yes  ☐ No
    d.  Provided advice on regulatory issues?                ☐ Yes  ☐ No
    e.  Approved loans?                                       ☐ Yes  ☐ No

    If yes:  Are loans approved for firm's clients?          ☐ Yes  ☒ No
             Do you abstain from voting on loans for firm's clients?  ☐ Yes  ☐ No
             How many members are on the loan committee?     _____
             What type of loans are/were approved?           _____
             What is the average size of loans approved?     $_____

    If yes to any of the above, complete the following for each entity:

    | Full Name of Entity | City | State | Services Rendered | Dates of Service |
    |---|---|---|---|---|
    | | | | | |
    | | | | | |
    | | | | | |

3.  Indicate if any lawyer has served a financial institution in one or more of the following capacities:
    If yes, describe services rendered:

    a.  Audit Committee        ☐ Yes  ☐ No  _____
    b.  Executive Committee    ☐ Yes  ☐ No  _____
    c.  Loan Committee         ☐ Yes  ☐ No  _____
    d.  Officer                ☐ Yes  ☐ No  _____
    e.  Director               ☐ Yes  ☐ No  _____
    f.  General Counsel        ☐ Yes  ☐ No  _____

    If yes, complete the following for each entity:

    | Name of Lawyer | Name of Entity | City | State | Position | Dates of Service |
    |---|---|---|---|---|---|
    | | | | | | |
    | | | | | | |
    | | | | | | |
    | | | | | | |

**ATTACH ADDITIONAL SHEETS IF NECESSARY.**

COR.CPC.1703 (2/98)        ©1998                    PAGE 2 OF 6

_Abbott P. Reich_ Partner 2/6/02

Friday 22 of Feb 2002, Faxination        ->)        Page 16 of 21
        FEB 15 '02 12:08 FR MBA INSURANCE AGENCY 617 350 7687 TO 19136766947        P.15/20

## COPYRIGHT, PATENT AND TRADEMARK SUPPLEMENTAL APPLICATION SECTION

**Answers are required for questions 1 through 5 for all Applicants. Complete the remaining questions that apply to the firm's specific practice. If one or more of the sections is not applicable, check the "Not Applicable" box in that section.**

1.  Provide a breakdown of the firm's copyright, patent and trademark practice into the following categories:

    a.  Intellectual Property Litigation        50 %
    b.  Patent Infringement Counseling        ____ %
    c.  Domestic Patent Prosecution        ____ %
    d.  Foreign Patent Prosecution        ____ %
    e.  Trademark Registration/Licensing        25 %
    f.  Copyright Registration/Licensing        25 %
    g.  Patent Searches        ____ %

2.  Does the firm have a computerized docketing system to alert the appropriate responsible party specific to:

    a.  statutory bar dates?        n/a        ☐ Yes ☐ No
    b.  fee due dates, whether outsourced or not? n/a        ☐ Yes ☐ No
    c.  response dates?        ☒ Yes ☐ No

3.  Who reviews the docket entries for accuracy?        **Check all that apply.**

    Billing Partner        ☒        Partner in charge of work        ☐        Associate        ☐
    Paralegal        ☒        Secretary        ☐        Docketing Personnel        ☐

4.  Does the firm outsource to other entities for:

    a.  Searches        ☒ Yes ☐ No
    b.  Payment of Maintenance/Annuity fees? n/a        ☐ Yes ☐ No

    **If Yes**, to either a. or b. above, does the firm:

    1.  Verify the outsource entity carries professional liability insurance coverage?        ☐ Yes ☒ No
    2.  Obtain proof of insurance, such as a certificate of insurance?        ☐ Yes ☒ No

5.  How does the firm choose an outsource entity?        **Check all that apply.**

    Review of work product        ☒        Recommendations from other law firms        ☒
    Yellow Pages        ☐        Advertisements in legal publications/law journal        ☐

**Copyright**        ☐ Not Applicable
6.  Does the firm's docket system include dates for:

    a.  copyright renewal filing?        n/a ☐ Yes ☐ No
    b.  responses to an Office Action?        ☒ Yes ☐ No
    c.  infringement action filing?        ☒ Yes ☐ No

7.  What is the firm's standard time frame for applying for copyright registration on behalf of their client, once instructed to do so by the client?        generally 2-4 weeks

8.  Are transfers of ownership of copyright from one client to another fully documented in writing?        ☒ Yes ☐ No

PAGE 3 OF 6

COR.CPC.1703 (2/98)        ©1998        Rascal, Peiter  2/6/02

APR-11-2006  14:12        01        95%        P.017

Friday 22 of Feb 2002, Faxination      ->                      Page 17 of 21
      FEB 15 '02 12:08 FR MBA INSURANCE AGENCY 617 350 7687 TO 19136766947    P.16/20

**Patent**                          ☒ Not Applicable

9.  Does the firm request written disclosure of specific dates of all printed publications, sales, offers for sale and/or public use of intellectual property from a client, prior to filing of a patent application?     ☐ Yes ☐ No

10. Does the firm request in writing, from all patent clients, the client's intent to pursue or not to pursue a foreign patent application?     ☐ Yes ☐ No

11. Does the firm request in writing, from all patent clients, the client's disclosure of patent applications filed in foreign countries?     ☐ Yes ☐ No

12. Does the firm advise foreign clients of requirements needed to satisfy the establishment of the date of invention for U. S. Patents?     ☐ Yes ☐ No

13. Does the firm disclose in writing to all patent clients, all dates for payment of maintenance fees, annual payments or annuities to be paid by the client to keep an application or patent in force?     ☐ Yes ☐ No

14. Does the firm advise the client in writing to mark the patented product with the appropriate patent number?     ☐ Yes ☐ No

15. Indicate the percentage of the types of Patent Opinions rendered by the firm.
    a.  Patentability     _____ %
    b.  Infringement      _____ %
    c.  Validity          _____ %

16. For the types of patent opinions rendered, does the firm disclose the scope and extent of the search conducted that is the basis for the opinion?     ☐ Yes ☐ No

17. Does the firm guarantee patent opinions rendered?     ☐ Yes ☐ No

18. Does the firm disclose in writing to the client and require the client's written agreement regarding patent applications and strategies taken or to be taken with respect to the GATT Implementation Legislation of June 8, 1995?     ☐ Yes ☐ No

**Trademark**                       ☐ Not Applicable
19. Does the firm's docket system advise regarding dates for:
    a.  response to all PTO actions?     ☒ Yes ☐ No
    b.  declaration of use after registration?     ☒ Yes ☐ No
    c.  statement of incontestability after registration?     ☒ Yes ☐ No
    d.  renewal of trademark?     ☒ Yes ☐ No

20. Does the firm:
    a.  perform searches of the records of the PTO for trademarks?     ☒ Yes ☐ No
    b.  search common law sources, such as publications and business indices for existing trademarks?     ☐ Yes ☒ No
    c.  outsource the searching to an entity to:
        1.  perform PTO searches?     ☒ Yes ☐ No
        2.  search common law sources?     ☒ Yes ☐ No
        Also we perform online searches of 3rd party database

21. Does the firm advise that the trademark search is not guaranteed against all common law sources?     ☒ Yes ☐ No

22. Are transfers of ownership of trademark from one entity to another fully documented in writing?     ☒ Yes ☐ No

23. Are all trademark assignments promptly and properly recorded with the PTO?     ☒ Yes ☐ No

24. Does the firm advise the client in writing of the use of proper trademark notice?     ☒ Yes ☐ No

PAGE 4 OF 6

COR CPC.1703 (2/98)                     ©1998

Case 1:05-cv-11780-DPW    Document 24-3    Filed 06/19/2006    Page 18 of 21
Tuesday 11 of Apr 2006, KANFAXMP01          ->312 466 8001      Page 19 of 22
(age 18 of 21)

## SECURITIES SUPPLEMENTAL APPLICATION

Securities related activities means securities or transactions which are subject to or exempt from the Securities Act of 1933, the Securities Exchange Act of 1934, the Trust Indenture Act of 1939, the Investment Advisors Act of 1940 or State Blue Sky or securities laws or any amendments thereto.

1.  a.  List the names of all lawyers engaged in securities and/or securities related activities:*

| Name | Title | Years in this Specialty | Former S.E.C. Staff Member Yes | No |
|------|-------|------------------------|-------------------------------|-----|
| Rene D. Varrin | Partner | 24 | | X |
| | | | | |

*Securities work is incidental to general corporate practice, not held out as a specialty

   b.  Attach a description of the lawyers qualifications and expertise in this specialty, including any continuing legal education courses taken by these lawyers in the past three years with regard to this specialty.

2.  a.  State the gross income derived from securities and/or securities related activities:
       Last twelve months $ 15,000      Anticipated next twelve months $ 10,000 - 15,000

   b.  Does the Applicant accept securities in lieu of fees as payment for services rendered involving securities and/or securities related activities? If yes, provide details by separate attachment.  ☐ Yes  ☒ No

   c.  Does the Applicant have a policy prohibiting or restricting lawyers from investing with clients or otherwise entering into a business relationship (other than lawyer/client)? If yes, attach a copy of the policy.  ☐ Yes  ☒ No

   d.  Does any lawyer proposed for this insurance have a business relationship (other than lawyer/client) with any person or entity other than those situations identified in the Outside Interests/Directors & Officers Supplemental Application? If yes, provide details by separate attachment.  ☐ Yes  ☒ No

   e.  If the Applicant is a sole practitioner, is a back-up lawyer available in the Applicant's absence who is qualified to handle securities and/or securities related activities?  n/a  ☐ Yes  ☐ No

3.  a.  For each of the past three years, list the percentage of securities and/or securities related activities performed for new clients.
       Year: 1999 less than 5%    Year: 2000 less than 5%    Year: 2001 less than 5%

   b.  Attach a copy of the procedures utilized for screening new clients.

4.  a.  Is any investigation conducted with regard to any litigation that the firm's securities clients may be involved in? If no, explain by separate attachment.  ☐ Yes  ☒ No

   b.  Is any investigation conducted regarding the reputation of the firm's securities clients?  ☐ Yes  ☒ No

5.  a.  Does the Applicant follow any established "due diligence" procedures?  ☐ Yes  ☒ No
       If yes, attach a copy of these procedures including any checklists utilized in conjunction therewith.
       If no, attach a detailed description of steps taken to satisfy the "due diligence" requirements.

   b.  Is a "cold review" of securities transactions by an uninvolved senior member of the firm required prior to release or signature? If no, explain by separate attachment.  ☐ Yes  ☒ No

6.  Does the Applicant make recommendations as to the sale or purchase of any specific stocks, bonds or other securities related investments? If yes, explain by separate attachment.  ☐ Yes  ☒ No

7.  a.  List on the Securities Addendum all securities offerings, private placements, limited partnerships, syndications and bonds handled in the past three years.

   b.  In addition to the transactions listed on the Securities Addendum, is the Applicant involved in any other work involving securities? If yes, explain by separate attachment.  ☒ Yes  ☐ No

COR.CPC.1703 (2/98)          ©1998  Partner 2/6/02          PAGE 5 OF 6

Case 1:05-cv-11780-DPW    Document 24-3    Filed 06/19/2006    Page 19 of 21
Tuesday 11 of Apr 2006, KANFAXMP01      ->312 466 8001      Page 20 of 22
Page 19 of 21)

7(a).  List all securities offerings, private placements, limited partnerships, syndications and bonds handled in the past three years.

| Year | Client | Industry | Size of Offering | Primary (P) or Secondary (S) | Taken up or Not | Type of Transaction |
|------|--------|----------|------------------|------------------------------|-----------------|---------------------|
| 1999 | NTP Management LLC | Real estate development | $2,012,500.00 | P | Fully purchased | Private placement to accredited investors with pre-existing relationship with developer |
| 1999 | Kids Energy, Inc. | Internet-supported educational services | $1,000,000.00 | P | Fully purchased | Private placement to accredited venture capital fund |
| 2000 | Kids Energy, Inc. | Internet-supported educational services | $ 800,044.62 | P | Fully purchased | Private placement to accredited investors |
| 2001 | Kids Energy, Inc. | Internet-supported educational services | $ 212,500.00 | P | Fully purchased | Convertible Bridge Loans to Officers, Director, Existing Stockholder and an Accredited Investor |
| 2001 | Kids Energy, Inc. | Internet-supported educational services | Up to $3,000,000.00 in three tranches | P | Fully purchased | Follow-up investment by existing investor |

7(b).  Occasional advice concerning Investment Advisors Act for a federally registered investment advisor. Blue Sky clearance and federal exemption advice in connection with miscellaneous employee benefit plans, such as qualified stock option plans, for various privately-held companies. Assistance in preparation of Forms 3, 4 and 5 under the Exchange Act for officers and directors of publicly-held companies and miscellaneous legal advice concerning review and exercise of stock options and gifting/sale of shares on exercise.

RDVVddstable of Feb 2002          *(signature)* Porter  2/6/02

Case 1:05-cv-11780-DPW    Document 24-3    Filed 06/19/2006    Page 20 of 21
Tuesday 11 of Apr 2006, KANFAXMP01          ->312 466 8001      Page 21 of 22
age 20 of 21)

Friday 22 of Feb 2002, Faxination          ->                  Page 20 of 21
    FEB 15 '02 12:09 FR MBA INSURANCE AGENCY 617 350 7687 TO 19136766947     P.19/20

Kotin, Crabtree & Strong, LLP
Attachment to Securities Supplemental Attachment

Continuing Legal Education in last three years re: securities:

- Electronic Commerce Update '98, including "Raising Capital On-Line – Direct
  Public Offerings"  12-98

Case 1:05-cv-11780-DPW    Document 24-3    Filed 06/19/2006    Page 21 of 21
Tuesday 11 of Apr 2006, KANFAXMP01        ->312 466 8001        Page 22 of 22
age 21 of 21)

### DUE DILIGENCE

All offerings were to accredited investors or venture capital funds with pre-existing business relationships with the issuer. No commissions or other remuneration was paid in connection with the offerings and no public solicitations were made.

Any offerings in 2002 are anticipated to be similar in size and structure to those in previous years.

The following steps appropriate to offers of this size and scope are taken:

1.    An initial direct interview with principals of the issuer is followed by a letter summarizing the applicable securities laws and exemptions, the offering process, and the necessity of compliance;

2.    Preparation and negotiation of a stock purchase agreement with representations, warranties and disclosure schedules;

3.    Direct review of all supporting documents disclosed on schedules including, but not limited to, review of all minutes of officers and directors meetings and articles of incorporation and by-laws, material contracts, financial statements and tax returns, and litigation material. Material is compiled by client in response to representations and warranties of agreement together with response to due diligence questionnaire. All relevant client records and files in the office are reviewed and schedules are circulated to all attorneys in the firm who have worked on such client's matters for the preceding year.

4.    Patent counsel opinions, from an outside firm other than Kotin, Crabtree & Strong, LLP, are required as necessary on the underlying technology.

5.    Officers' and directors questionnaires are used as appropriate or necessary for directors and officers not directly participating in the preparation of the agreements.

6.    Investors are required to complete an Accredited Investor Questionnaire and, if necessary, an Investment Representative questionnaire, which are reviewed and approved by us.

ALR\IN*\du*