UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| WESTPORT INSURANCE CORPORATION, ) ) ) ) Plaintiff, ) ) v. ) ) RICHARD C. HEIDLAGE, KOTIN, ) CRABTREE AND STRONG, LLP, AND ) NORTH AMERICAN UNDERWRITING ) MANAGERS, INC. ) ) Defendants. ) ) | CIVIL ACTION NO. 1:05-cv-11780 NMG |

**DEFENDANT RICHARD C. HEIDLAGE'S MEMORANDUM IN OPPOSITION TO WESTPORT INSURANCE CORPORATION'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF HIS CROSS-MOTION FOR SUMMARY JUDGMENT ON WESTPORT'S CLAIMS AND PARTIAL SUMMARY JUDGMENT ON HIS COUNTERCLAIMS**

Defendant Richard C. Heidlage ("Heidlage") submits this memorandum in opposition to Plaintiff Westport Insurance Corporation's ("Westport") Motion for Summary Judgment on its Complaint for Declaratory Judgment and on the Counterclaim of Richard C. Heidlage and in support of his Cross-Motion for Summary Judgment on Westport's Complaint for Declaratory Judgment and for partial summary judgment on his counterclaims to establish his right to attorneys' fees, costs and other expenses of this litigation. In support of his opposition and cross-motion, Heidlage submits the Affidavit of Richard C. Heidlage ("Heidlage Affidavit") with the following exhibits attached: Exhibit A, a copy of Westport's Complaint for Declaratory Judgment ("Westport's Complaint"); Exhibit B a copy of Westport's Answers to Richard C. Heidlage's First Set of Interrogatories ("Westport's Answers to Interrogatories"); Exhibit C, a copy of excerpted portions of the Deposition Transcript of Ellen McCarthy ("McCarthy Dep.

Tr."); Exhibit D, a copy of a letter authored by Martin L. Nathan, dated June 29, 2006; Exhibit E, a copy of a letter authored by Richard M. Bluestein, dated June 29, 2006; and, Exhibit F, a copy of an email authored by Robert Chaney, dated July 5, 2006.

## INTRODUCTION

This case concerns a legal malpractice insurer's duty to defend a malpractice claim. The policy at issue contains an endorsement limiting any covered claims to those based on conduct occurring after May 1, 2002. In the underlying suit, Heidlage's defense counsel elicited deposition testimony from Charles Zalis, one of the plaintiffs and a trustee of the shareholder of the other plaintiffs, suggesting that he did not believe that Heidlage had done anything wrong after May 1, 2002, the period covered by the policy. However, rather than even suggesting to Heidlage's defense counsel in the underlying action any steps that might be taken to preclude the plaintiffs from continuing to assert claims for post May 1, 2002 conduct covered by the policy, Westport sued Heidlage in this action and now attempts to require Heidlage to litigate the import of that testimony in this action. Westport does not claim that any result in this action would have any preclusive effect on the underlying malpractice action pending in the State of Florida. Indeed, Ellen McCarthy ("McCarthy"), Westport's Senior Claims Representative responsible for the Zalis claims, has admitted that she understands that, notwithstanding any result in this action, the plaintiffs in the underlying action could introduce expert evidence that malpractice was committed after the beginning of the May 1, 2002 claims period. McCarthy Dep. Tr. at 95 – 97.

Heidlage has asserted counterclaims on the grounds that Westport's failure to first obtain conclusive preclusion of covered claims in the underlying action before requiring Heidlage to defend this action is a breach of Westport's duty to defend under the malpractice insurance policy and an unfair claims settlement practice in violation of M.G.L. c. 93A and c. 176D.

In summary, Westport's motions for summary judgment must be denied because under applicable Massachusetts law, an insurer has a duty to defend if the allegations of the third party complaint are "'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms" regardless of their ultimate merit. That duty continues until the insurer has established *with conclusive effect on the third party in the third party action* that the third party cannot establish a claim within the coverage of the policy. Westport has not even argued that it has met either of these tests to avoid its obligation to defend. In its moving papers, Westport has not disputed that the allegations of the Second Amended Complaint in the underlying action assert legal malpractice claims falling within the terms of the policy. Nor does it claim that it has obtained judgment in the underlying action dismissing any such post May 1, 2002 claims or established in that action that such claims are conclusively precluded. Rather, Westport seeks to avoid its duty to defend the underlying action by attempting to litigate, and requiring Heidlage to defend in this court, the liability issues in the underlying action. Not only is this not permitted under Massachusetts or any other law cited by Westport, it is an unfair practice prohibited by M.G.L. c. 93A and c. 176D.

Heidlage is entitled to partial summary judgment on his counterclaims because, under Massachusetts law, Westport's failure to obtain a judgment in the underlying suit precluding any claims covered by the Westport policy prior to bringing this action entitles Heidlage to his attorney fees and other expenses of this action. Heidlage does not here seek summary judgment on his counterclaims as to the extent of Westport's liability under M.G.L. c. 93A and c. 176D.

### COUNTER-STATEMENT OF MATERIAL FACTS DEMONSTRATING THAT WESTPORT IS NOT ENTITLED TO SUMMARY JUDGMENT

**A.     The Underlying Malpractice Action**

1.     On or about May 14, 2003, Charles N. Zalis ("Zalis"), the Charles N. Zalis Limited Partnership (the "Zalis Limited Partnership"), North American Underwriting Managers, Inc., ("North American Florida") and North American Underwriting Managers Insurance Agency, Inc. ("North American Massachusetts") filed a complaint against Heidlage and others in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida, Case No. 03-011784 CA 30 (the "Underlying Action"). An Amended Complaint deleted North American Massachusetts as a party. A Second Amended Complaint was filed on or about January 3, 2005 (the "Zalis Second Amended Complaint"). Heidlage Affidavit, ¶ 3; Westport's Complaint, ¶ 9. A true and accurate copy of the Second Amended Complaint is appended to Westport's Complaint in this action, a copy of which is attached as Exhibit A to the Heidlage Affidavit.

2.     In each instance in which the Zalis Second Amended Complaint lists the various acts of negligence which are alleged against Heidlage, it includes the phrase "including but not limited to the following" or "among other things." Zalis Second Amended Complaint, ¶¶ 43, 46. The Zalis Second Amended Complaint alleges that the litigation with respect to which the alleged malpractice occurred "was maintained from January 2001 through August 2002 . . . ." Zalis Second Amended Complaint, ¶ 7. The Zalis Second Amended Complaint alleges that "[a]t all times relevant the defendant Heidlage was either acting as of counsel with defendant Prince Lobel or of counsel with the Massachusetts law firm of Kotin, Crabtree & Strong, PA." and "[a]t all times material hereto Heidlage was acting as an agent, representative or employee of Prince Lobel and Kotin, Crabtree & Strong, PA." Zalis Second Amended Complaint, ¶ 12. The only

time Heidlage was associated with Kotin, Crabtree & Strong, PA was after May 1, 2002. Heidlage Affidavit, ¶ 8; Westport Complaint, ¶ 24.

3. Westport is defending this action under a reservation of rights. Heidlage Affidavit, ¶ 9; McCarthy Dep. Tr. at 30.

4. In Westport's Complaint against Heidlage in this action, Westport alleges that "Zalis's claim against Heidlage is based on alleged acts, error, or omissions which occurred prior to May 1, 2002 Retroactive Date set forth in the limitation of Individual Prior Acts Endorsement." Westport's Complaint, ¶ 27. Interrogatory No. 2 of Heidlage's First Set of Interrogatories to Westport asked Westport to "state the basis" for these allegations.[1] In its answer to Interrogatory No. 2, Westport stated that "[t]he basis for the allegations made in paragraph 27 of the Complaint is set forth in Westport's Memorandum of Law in support of its Motion for Summary Judgment." Westport's Answers to Interrogatories at 2.

**B.   Westport Admits that the Plaintiffs in the Underlying Suit Could Assert and Introduce Evidence in Support of Claims Covered by the Policy**

5. To date, the parties in the underlying malpractice action have not exchanged expert reports or otherwise discovered what expert testimony will be attempted to be introduced at trial. Heidlage Affidavit, ¶ 10. Westport's McCarthy has admitted on deposition that she is aware that, notwithstanding any result in this action, the plaintiffs in the underlying action could

---

[1] Rule 26.5(c)(8) of the Local Rules of this Court provides that when an interrogatory calls upon a party to "state the basis" of or for a particular claim, assertion, allegation, or contention, the party shall:
    (a) identify each and every document (and, where pertinent, the section, article, or subparagraph thereof), which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory;
    (b) identify each and every communication which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory;
    (c) state separately the acts or omissions to act on the part of any person (identifying the acts or omissions to act by stating their nature, time, and place and identifying the persons involved) which form any part of the party's information regarding the alleged facts or legal conclusions referred to in the interrogatory; and
    (d) state separately any other fact which forms the basis of the party's information regarding the alleged facts or conclusions referred to in the interrogatory.

introduce expert evidence that malpractice was committed after the beginning of the May 1, 2002 claims period:

> Q.  In your experience as a claims manager in the legal malpractice cases, what's the role of opinion evidence?
>
> MR. CHANEY: Objection to the form of the question.
>
> A   Opinion evidence sets forth the legal theory of the case.
>
> Q   And you don't know what opinion evidence will be offered in this case, do you?
>
> A   By Mr. Zalis?
>
> Q   Sure.
>
> A   No.
>
> Q   You have no idea?
>
> A   Not at this point, no.
>
> Q   As far as you know, Mr. Zalis's expert could offer opinion evidence that whatever it is alleged that Mr. Heidlage did wrong occurred after May 1 of 2002 as well as before, couldn't he?
>
> MR. CHANEY: Objection to the form of the question.
>
> A   Yes.
>
> Q   For example, an expert might say that after May 1, 2002, whatever it is Mr. Heidlage did wrong he might have been able to remedy or fix after that date, mightn't he?
>
> MR. CHANEY: Objection. You are asking for speculation. Of course you are asking for speculation.
>
> A   I suppose an expert could say anything.
>
> Q   An expert could say that in his opinion Mr. Heidlage could have remedied whatever wrong or harm or mistake he had done or created after May 1, 2002?
>
> MR. CHANEY: Objection, form of the question. You are asking for speculation.

6

  A  Again an expert could say that.

McCarthy Dep. Tr. at 95 – 97.

**C. Westport has Taken No Action With Regard to the Underlying Malpractice Action to Preclude a Claim Within the Policy Period**

  6.  At no time did Westport ask Heidlage's counsel in the underlying action to submit interrogatories or requests for admission designed to establish conclusively that no claim within the policy was asserted.  Heidlage Affidavit, ¶ 11; McCarthy Dep. Tr. at 64, 137 – 139.

  7.  At no time did Westport request Heidlage's counsel in the underlying action to move for partial summary judgment in order to establish conclusively that any possible claim falling within the policy is precluded.  Heidlage Affidavit, ¶ 11; McCarthy Dep. Tr. at 137 – 139.

  8.  At no time has Westport suggested to Heidlage or his defense counsel any other actions that it believed could be taken in the underlying suit that might establish conclusively that Heidlage has no liability for any act, error or omission subsequent to May 1, 2002.  Heidlage Affidavit, ¶ 11; McCarthy Dep. Tr. at 64, 137 – 139.

**D. Westport Has Made Unauthorized Unilateral Attempts to Settle With Plaintiffs in the Underlying Suit**

  9.  Westport, through its coverage counsel, undertook to settle potential claims in the underlying suit arising after the critical May 1, 2002 date, by entering into settlement negotiations with counsel for the third-party plaintiff, Zalis.  Heidlage Affidavit, ¶¶ 12 – 22, Westport's Answers to Interrogatories at 8 – 12, Answer to Interrogatory No. 16.

  10.  Westport did not consult Heidlage or his counsel about these negotiations prior to their undertaking, and, as such, neither Heidlage nor his counsel consented to or participated in them.  Heidlage Affidavit, ¶ 14.

11. Zalis, through his counsel, refused to settle the potential post May 1, 2002, claims for less than $75,000. See letter attached to Heidlage Affidavit as Exhibit D; Westport's Answers to Interrogatories at 11, Answer to Interrogatory No. 16, entry at 6/29/06.

12. Although Westport's counsel made a settlement offer of $75,000 the settlement was never consummated as the parties were ultimately unable to negotiate all the terms. Westport's Answers to Interrogatories at 9, Answer to Interrogatory No. 16.

E. **Heidlage Has Incurred Substantial Damages in Defending This Action**

13. Heidlage has incurred substantial damages and expense in defending this action, including payment of over $15,000 in attorney fees to his counsel, his own time and expense in performing legal research and briefing, and expenses for the court reporter in taking the deposition of Ms. McCarthy. Heidlage Affidavit, ¶ 21.

## STANDARD FOR SUMMARY JUDGMENT

A moving party is entitled to summary judgment only in the absence of any genuine issue of material fact and upon a showing that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. In determining whether a genuine factual dispute exists, the court must assess whether the facts are "such that a reasonable jury could return a verdict in favor of the non-moving party." *Stephenson v. State Street Bank & Trust Co.*, 924 F. Supp. 1258, 1272 (D. Mass. 1996), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is considered material "if it might affect the outcome of the suit under the governing substantive law" and the existence of any dispute as to a material fact precludes summary judgment. *Id.* The moving party bears the burden of proving absence of a genuine issue of material fact, *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The Court must "interpret the record in the light most hospitable to the non-moving party, reconciling all competing inferences in that party's

favor." *McIntosh v. Antonio*, 71 F.3d 29, 33 (1st Cir. 1995). *See also F.D.I.C. v. Elder Care Services, Inc.*, 82 F.3d 524, 526-27 (1st Cir. 1996) ("In evaluating the sufficiency of this evidence on summary judgment, inferences are drawn in favor of the nonmoving party.").

## ARGUMENT

I.  **UNDER MASSACHUSETTS LAW, AN INSURER HAS A DUTY TO DEFEND IF THE COMPLAINT IS REASONABLY SUSCEPTIBLE OF INTERPRETATION THAT IT STATES A CLAIM THAT FALLS WITHIN THE POLICY TERMS**

   A.  *Under Massachusetts Law, an Insurer's Duty to Defend is Determined Solely From the Allegations of the Complaint*

Under settled Massachusetts law, an insurer's duty to defend in a particular case is determined by comparing the allegations in the complaint to the policy provisions. *See Simplex Technologies, Inc. v. Liberty Mut. Ins. Co.*, 429 Mass. 196, 197-98 (1999). "[I]f the allegations of the complaint are 'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense." *Continental Cas. Co. v. Gilbane Bldg. Co.*, 391 Mass. 143, 146, 461 N.E.2d 209 (1984); (citing *Vappi & Co., Inc. v. Aetna Cas. & Sur. Co.*, 348 Mass. 427, 431 (1965); *Magoun v. Liberty Mut. Ins. Co.*, 346 Mass. 677, 681-82 (1964); *Terrio v. McDonough*, 16 Mass. App. 163, 166 (1983)); see also *Simplex Technologies, Inc. v. Liberty Mut. Ins. Co.*, 429 Mass. at 197-98; *Premier Homes, Inc. v. Lawyers Title Ins. Corp.*, 76 F. Supp.2d 110, 115-116 (D.Mass.1999); *Dryden Oil Co. of New England, Inc. v. Travelers Indem. Co.*, 91 F.3d 278, 282 (1st Cir.1996); *GRE Ins. Group v. Metropolitan Boston Hous. Partnership, Inc.*, 61 F.3d 79, 81 (1st Cir.1995); *Liberty Mut. Ins. Co. v. SCA Servs. Inc.*, 412 Mass. 330, 588 N.E.2d 1346 (1992). The "complaint need only show, through general allegations, a *possibility* that the liability claim falls within the insurance coverage." *Premier Homes, Inc. v. Lawyers Title Ins. Corp.*, 76 F. Supp.2d at 115, quoting *SCA*

*Servs., Inc. v. Transportation Ins. Co.,* 419 Mass. 528, 532, 646 N.E.2d 394 (1995)(emphasis added).

"The allegations of the complaint, not the insurer's belief as to the merits of the complaint" or the belief of any party as to the eventual outcome of the suit, "determine an insurer's duty to defend." *Premier Homes,* 76 F. Supp.2d at 115, (citing *Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co.,* 406 Mass. 7, 13, 545 N.E.2d 1156 (1989)). The duty still exists even if there appears to be a strong likelihood that the claim will be dismissed. *See Winnacunnet Coop. Sch. Dist. v. National Union Fire Ins. Co. of Pittsburgh, Pa.,* 84 F.3d 32, 36 n. 6 (1st Cir. 1996) ("[A]n insurer may be obligated to defend a groundless lawsuit that ultimately does not give rise to indemnification"); *A. Johnson & Co., Inc. v. Aetna Cas. and Sur. Co.,* 933 F.2d 66, 72 (1st Cir. 1991) ("Even a complaint which is legally insufficient to withstand a motion to dismiss gives rise to a duty to defend if it shows an intent to state a claim within the insurance coverage."); C.T. Drechsler, "Allegations in Third Person's Action Against Insured as Determining Liability Insurer's Duty to Defend," 50 A.L.R.2d 458 § 1 (1956) ("[I]nsurer is bound to defend the insured against all actions brought against him on the allegation of facts and circumstances which are covered by the policy even though such suits are groundless, false, or fraudulent."); 44 Am.Jur.2d *Insurance* § 1409 (1982). Any uncertainty as to whether the pleadings include or are reasonably susceptible to an interpretation that they state a claim covered by the policy terms are resolved in favor of the insured and the insurer must undertake the defense. *Continental Casualty Co. v. Gilbane Bldg. Co.,* 391 Mass. 143, 146-147 (1984); *Sterilite Corp. v. Continental Casualty Co.,* 17 Mass.App.Ct. 316, 318 (1983).

The import of this standard, wherein courts look to the scope of the complaint, is that an insurer may not avoid its duty to defend the underlying suit by seeking to have the merits of the

claims asserted in that action litigated in a coverage declaratory judgment action against its insured. As Chief Judge Young noted in *Premier Homes*, ". . . the valuable security against the expenses and anxiety of litigation provided by a policy obligating the insurer to defend [should not] be lost on the basis that the litigation is unlikely to succeed due to [the existence of potential defenses]. The suit is still a threat to the insured interest." *Premier Homes, Inc. v. Lawyers Title Ins. Corp.*, 76 F. Supp.2d at 118. Thus, in Massachusetts, an insurer's duty to defend an insured is more expansive than its duty to indemnify. *See Ruggerio Ambulance Service, Inc. v. National Grange Ins. Co.*, 430 Mass. 794, 796 (2000).

      B.    ***The Allegations of the Complaint are "'Reasonably Susceptible' of an Interpretation That They State or Adumbrate a Claim Covered by the Policy Terms" and Westport has not Argued to the Contrary***

In each instance in which the Zalis Second Amended Complaint lists the various acts of negligence which are alleged against Heidlage, it includes the phrase "including but not limited to the following" or similar phrase. Zalis Second Amended Complaint, ¶¶ 43, 46. Paragraph 46 states "the defendants neglected reasonable duties of care owed to the plaintiffs *by among other things . . .* " and then lists a series of alleged failures. Paragraph 7 of the Zalis Second Amended Complaint alleges that the litigation with respect to which the alleged malpractice occurred "was maintained from January 2001 through August 2002 . . . ." Paragraph 12 of the Zalis Second Amended Complaint alleges that "[a]t all times relevant the defendant Heidlage was either acting as of counsel with defendant Prince Lobel or of counsel with the Massachusetts law firm of Kotin, Crabtree & Strong, PA." and "[a]t all times material hereto Heidlage was acting as an agent, representative or employee of Prince Lobel and Kotin, Crabtree & Strong, PA." The only time Heidlage was associated with Kotin, Crabtree & Strong, PA was after May 1, 2002. Westport Complaint, ¶ 24; Heidlage Affidavit, ¶ 8. The allegations of the Second Amended

11

Complaint are accordingly "reasonably susceptible of an interpretation that they allege ongoing professional malpractice" subsequent to May 1, 2002, thus stating a claim covered by the policy.

Westport does not dispute this. Ms. McCarthy admitted on deposition that the language "among other things" before listing the specific alleged failures "could raise a question" as to whether the claims included actions during the post-May 1, 2002 time period. McCarthy Dep. Tr. at 81. In Westport's answers to Heidlage's Interrogatories, it states that all grounds for its argument that "Zalis's claim against Heidlage is based on alleged acts, error, or omissions which occurred prior to May 1, 2002 . . . " are "set forth in Westport's Memorandum of Law in support of its Motion for Summary Judgment." Westport's Answers to Interrogatories, Answer to Interrogatory No. 2. However, nowhere in Westport's Memorandum of Law is there any analysis of the allegations of the Zalis Second Amended Complaint referred to above or any argument that the allegations of that complaint are not "reasonably susceptible of an interpretation that they allege ongoing professional malpractice" subsequent to May 1, 2002, and thus that they may state a claim covered by the policy terms. Rather, Westport's Memorandum of Law relies solely on the Zalis testimony, orders entered, and other evidence in the original malpractice action, which it argues, in effect, might support a finding by the trier-of-fact in the malpractice action of no liability after May 1, 2002.

II. **IN MASSACHUSETTS, AN INSURER MAY TERMINATE ITS DUTY TO DEFEND IN ONGOING LITIGATION ONLY AFTER ALL POTENTIALLY COVERED CLAIMS HAVE BEEN CONCLUSIVELY RESOLVED AGAINST THE THIRD PARTY IN THE UNDERLYING ACTION**

    A. *To Discharge its Duty to Defend, Westport Must Establish That Potentially Covered Claims Have Been Conclusively Resolved in the Underlying Action*

In Massachusetts, the duty to defend remains absolute until the insurer proves that its policy covers no claims remaining in the underlying suit. See, *Premier Homes, supra,* 76 F.

Supp.2d at 118; *Conway Chevrolet Buick, Inc. v. Travelers Indem. Co.*, 136 F.3d 210, 214 (1st Cir. 1998). An insurer may withdraw its defense in an ongoing litigation only "from and after the time when it demonstrates *with conclusive effect on the third party* that as matter of fact - as distinguished from the appearances of the complaint and policy - the third party cannot establish a claim within the insurance." *Sterilite Corp. v. Continental Cas. Co.*, 17 Mass.App. 316, 323, 458 N.E.2d 338 (1983) (emphasis added); *Premier Homes, supra,* 76 F.Supp.2d at 118 ("The *Sterilite* mechanism allows an insurer to withdraw 'from and after the time when it demonstrates with conclusive effect on the third party that as matter of fact - as distinguished from the appearances of the complaint and policy - the third party cannot establish a claim within the insurance.'"); *Conway Chevrolet Buick, Inc. v. Travelers Indem. Co.*, 136 F.3d 210, 213-215 (1st Cir. 1998)(insurer properly terminated defense of insured after partial summary judgment was granted with regard to covered claims).

    B.    *Westport Cannot Avoid Its Duty by Forcing the Insured to Litigate in This Case Indemnification Issues That Remain Unresolved in the Underlying Action*

In this case, Westport is attempting to avoid its duty to defend the underlying action and escape the "scope of the pleadings" rule referred to in Part I herein by arguing the merits of the potential underlying claims. In effect, it is arguing that it has no duty to defend because on the evidence adduced to date it seems unlikely it will have a duty to indemnify. This it cannot do. As noted above, the duty to defend still exists even if there appears to be a strong likelihood that the claim will be dismissed. *See Winnacunnet Coop. Sch. Dist., supra.* This Court, in *John Beaudette, Inc. v. Sentry Ins. A Mut. Co.*, 94 F. Supp.2d 77, 103 (D.Mass. 1999), relying on the Massachusetts Appeals Court's decision in *Sterilite, supra,* held that the determination of the scope of indemnification must await resolution of the underlying claim:

Thus, in recognizing that the duty to indemnify is distinct from the duty to defend, the Massachusetts Appeals Court in *Sterilite Corporation v. Continental Casualty Company*, 458 N.E.2d at 341 n. 4, cited and relied upon *Spoor-Lasher Company, Inc. v. Aetna Casualty and Surety Company*, 39 N.Y.2d 875, 386 N.Y.S.2d 221, 352 N.E.2d 139 (1976), wherein the court concluded "that any determination as to the obligation of the insurer to indemnify its insured would now be premature and must await the resolution of the underlying claim." *Spoor-Lasher Company, Inc. v. Aetna Casualty and Surety Company*, 386 N.Y.S.2d 221, 352 N.E.2d at 140.

*See also Northland Casualty Co. v. HBE Corp.*, 160 F. Supp.2d 1348, 1360 (M.D. Fla. 2001) (citing *Bankwest v. Fidelity & Deposit Co. of Md.*, 63 F.3d 974, 981-82 (10h Cir. 1995)) ("Because an insurer's duty to indemnify is dependent on the outcome of a case, any declaration as to the duty to indemnify is premature unless there has been a resolution of the underlying claim"); *Nationwide Ins. v. Zavalis*, 52 F.3d 689.693 (7th Cir. 1995); *Sphere Drake, P.L.C. v. 101 Variety, Inc.*, 35 F. Supp.2d 421, 430-31 (E.D. Pa. 1999); *Carpenter, Weir & Myers v. St. Paul Fire & Marine Ins. Co.*, 1998 WL 976309, 12 (D.Kan. Oct. 30, 1998); *Allstate Indem. Co. v. Lewis*, 985 F. Supp. 1341, 1349 (M.D. Ala. 1997).

This same issue has already been decided against Westport in *Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka, L.L.P.*, 267 F. Supp.2d 601, 612 (E.D. Tex. 2003),[2] a case applying a similar standard for the duty to defend to that at issue here. In that case, the Court noted that under Texas law it would be improper for the court to consider extrinsic evidence of the merits of a claim in making its determination of the duty to defend:

> if courts simply could proceed to the indemnification question and examine extrinsic facts to make coverage determinations there before the underlying suit terminates, then the court would never be constrained by the limitations imposed by the eight corners rule in the duty to defend analysis; it would always be free to skip ahead to decide indemnification. And extrinsic evidence of coverage should not be considered unless it relates to a readily determined fundamental coverage fact that has no possibility of overlapping with factual determinations to be made in the claimants underlying action against the insured . . . . *Id.* at 632-633.

---

[2] While Ms. McCarthy stated in her deposition that she had never heard of this case, in which her employer was the Plaintiff, it is highly improbable that Westport's counsel is unaware of the decision, as Westport was represented in that case by the very same law firm that represents it in the instant action. McCarthy Dep. Tr. at 140.

III.  **ZALIS' TESTIMONY AS TO HIS OPINION THAT ANY MALPRACTICE OCCURRED PRIOR TO MAY 1, 2002 IS BOTH INCOMPETENT AND IRRELEVANT AND WOULD NOT PRECLUDE THE PLAINTIFFS FROM INTRODUCING EVIDENCE OF NEGLIGENCE AFTER THAT DATE**

Westport relies heavily on the testimony Charles Zalis, a plaintiff in the underlying action, in making its argument that "there can be no genuine dispute that the malpractice claim against Heidlage is based on acts, errors or omissions which occurred, if at all, prior to the May 1, 2002 retroactive date . . . ." In that testimony, quoted at page 10 of Westport's Memorandum of Law in support of its Motion for Summary Judgment, Zalis stated that "[i]n [his] opinion" whatever malpractice allegedly occurred, had already happened by May 1, 2002. However, Zalis is neither a lawyer nor an expert on legal malpractice. He is not competent to testify as a legal expert in the underlying malpractice action and indeed is not expected to testify on this point.

In an action for legal malpractice, expert testimony is generally needed to establish both the level of care owed by the attorney under the particular circumstances and the alleged failure to conform to that benchmark. *Wagenmann v. Adams*, 829 F.2d 196, 218 (1st Cir. 1987); *Pongonis v. Saab*, 396 Mass. 1005, 1005, 486 N.E.2d 28, 29 (1985); *Glidden v. Terranova*, 12 Mass.App.Ct. 597, 598, 427 N.E.2d 1169 (1981). Massachusetts courts have recognized an exception to the expert testimony requirement only "where the claimed legal malpractice is so gross or obvious that laymen can rely on their common knowledge or experience to recognize or infer negligence from the facts." *Id.* The jurisprudence of Florida courts, which governs the underlying action, also requires expert testimony in cases where the claimed legal malpractice is strategic or tactical, and not commonly accessible in nature. *See Willage v. Law Offices of Wallace & Breselow, P.A.*, 415 So.2d 767, 768 (Fla.Dist.Ct.App. 1982)(expert testimony required where malpractice case was based on attorney's failure to call a particular witness, when attorney feared damaging cross-examination of witness).

15

In the instant case, Westport relies on the testimony of Zalis, a layperson, to establish that no malpractice as alleged in the underlying action could have occurred after May 1, 2002. Paragraph 45 of the Zalis Second Amended Complaint alleges that Heidlage "owed to the Plaintiffs a duty to exercise a level of skill and care that, in light of all of the circumstances, is recognized as acceptable by similar and reasonably careful commercial litigators." It is unreasonable to assert that what is "acceptable by similar and reasonably careful litigators" is a standard that a layperson would possess common knowledge about. The Complaint further alleges, among other things, the "failure to use due care and follow accepted standards of due care in preparation of the Amended Complaint, failure to conduct adequate discovery, failure to renew the Plaintiffs' Motion for Appointment of a Receiver and emergency relief in federal court, and failure to move for enlargement of time to allow for the filing of a Second Amended Complaint including claims for breach of contract and unjust enrichment." Zalis Second Amended Complaint, ¶ 46. Each of these allegations revolves around the development and application of complex legal strategies. These alleged failures involve tactical decisions requiring legal expertise and understanding of legal standards and trial practices that exceed the scope of knowledge possessed by the average layperson. Thus, the testimony of a layperson, such as Zalis, will be insufficient to evaluate these allegations and establish whether or not any malpractice occurred subsequent to May 1, 2002.

Westport itself admits that the plaintiffs in the underlying malpractice action would not be precluded from introducing evidence, including expert testimony, that malpractice occurred after May 1, 2002. Ms. McCarthy testified on deposition that she is aware that, notwithstanding any result in this action, the plaintiffs in the underlying action could introduce expert evidence that malpractice was committed after May 1, 2002. McCarthy Dep. Tr. at 95 – 97.

IV. **THE SETTLEMENT ATTEMPTS BY WESTPORT AND ZALIS ARE EVIDENCE OF BOTH PARTIES' BELIEFS THAT THERE ARE POST MAY 1, 2002 CLAIMS AT ISSUE IN THE UNDERLYING ACTION**

Westport's assertion that "there can be no genuine dispute that the malpractice claim against Heidlage is based on acts, errors or omissions which occurred, if at all, prior to May 1, 2002," is belied by its and Zalis' actions in attempting to settle these claims. As detailed above in the Counter-Statement of Material Facts Demonstrating that Westport is Not Entitled to Summary Judgment, ¶¶ 9 – 11, Zalis demanded, and Westport agreed to pay, $75,000 for a release of any claims arising out of acts, errors or omissions occurring after May 1, 2002. There would simply be no factual predicate for such a discussion to even occur if Zalis' attorneys did not contemplate the existence of a claim arising after May 1, 2002. Further, it would be highly improper for Zalis' counsel to exact payment from Westport for claims they did not believe to exist. Thus, absent a belief that the "allegations of the underlying complaint are "'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms," it is highly unlikely that Zalis would have been able to demand, and Westport would have been willing to pay, such a large sum to obtain the release of these potential claims.

V. **HEIDLAGE IS ENTITLED TO RECOVERY OF HIS ATTORNEY FEES IN DEFENDING THIS ACTION**

An insured who must litigate the existence of the duty to defend, and prevails, is ordinarily entitled to attorney's fees and expenses occurred in prosecuting the declaratory judgment action. *Liberty Mut. Ins. Co. v. Black & Decker Corp.*, 383 F. Supp.2d 200, 217 (D. Mass. 2004); *Rubenstein v. Royal Ins. Co. of America*, 429 Mass. 355, 360, 708 N.E.2d 639, 643 (1999). The logic behind this exception to the "American Rule" (under which each side ordinarily bears its own litigation expenses) is that the purpose of litigation defense protection is

to relieve the insured from the need to pay for the costs of litigation, and that this purpose is undermined if the insurer itself forces the insured to litigate:

> [T]o preclude such recovery would "permit[ ] the insurer to do by indirection that which it could not do directly. That is, the insured has a contract right to have actions against him defended by the insurer, at its expense. If the insurer can force him into a declaratory judgment proceeding and, even though it loses in such action, compel him to bear the expense of such litigation, the insured is actually no better off financially than if he had never had the contract right mentioned above."

*Rubenstein v. Royal Ins. Co. of America*, 429 Mass. at 357, 708 N.E.2d at 641 (quoting *Preferred Mut. Ins. Co. v. Gamache,* 426 Mass. 93, 97, 686 N.E.2d 989 (1997)).

The fees are a form of damages but do not depend on a breach: they are available even if the insurer *did* defend the insured, but reserved its right to later contest the duty to defend and in fact did so (by hypothesis, unsuccessfully). *Liberty Mut. Ins. Co. v. Black & Decker Corp.*, 383 F. Supp.2d at 217. *See Hanover Ins. Co. v. Golden,* 436 Mass. 584, 588, 766 N.E.2d 838 (2002).

## CONCLUSION

For the foregoing reasons, Westport's Motion for Summary Judgment should be denied and Heidlage's Cross-motion for Summary Judgment on Westport's claims and partial summary judgment on his Counterclaim for attorney fees should be granted.

                                            RICHARD C. HEIDLAGE
                                            By his attorney,

                                            \s\ Richard M. Bluestein
                                            Richard M. Bluestein, BBO# 046840
                                            KROKIDAS & BLUESTEIN, LLP
                                            600 Atlantic Avenue
                                            Boston, MA 02210
                                            (617) 482-7211

Dated: October 12, 2006

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document was served upon counsel of record for plaintiff pursuant to the Court's Electronic Filing system this 13th day of October, 2006.

\s\ Richard M. Bluestein