UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| WESTPORT INSURANCE CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) ) | CIVIL ACTION NO. |
| v. | ) ) | 1:05-cv-11780 NMG |
| RICHARD C. HEIDLAGE, KOTIN, CRABTREE AND STRONG, LLP, AND NORTH AMERICAN UNDERWRITING MANAGERS, INC. | ) ) ) ) ) | |
| Defendants. | ) ) | |

**AFFIDAVIT OF RICHARD C. HEIDLAGE**

Defendant Richard C. Heidlage hereby states as follows:

1.      I am a resident of the Commonwealth of Massachusetts and the principal defendant in this action.

2.      This affidavit is based upon my personal knowledge of the facts stated herein except where I note that my statement is based on information and belief.  As to those facts I believe them to be true.

3.      On or about May 14, 2003, Charles N. Zalis ("Zalis"), the Charles N. Zalis Limited Partnership (the "Zalis Limited Partnership"), North American Underwriting Managers, Inc., ("North American Florida") and North American Underwriting Managers Insurance Agency, Inc. ("North American Massachusetts") filed a complaint against me and others in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida, Case No. 03-011784 CA 30 (the "Underlying Malpractice Action").  An Amended Complaint deleted North American Massachusetts as a party.  A Second

Amended Complaint was filed on or about January 3, 2005 (the "Zalis Second Amended Complaint"). The Zalis Second Amended Complaint is currently the operative complaint in the Underlying Malpractice Action.

4.      Attached hereto as Exhibit A is a copy of the Summons and Complaint ("Westport's Complaint") filed in this action. A copy of the Zalis Second Amended Complaint is attached to Westport's Complaint.

5.      Attached hereto as Exhibit B are Westport's Answers to Richard C. Heidlage's First Set of Interrogatories.

6.      Attached hereto as Exhibit C is a copy of the transcript of the deposition of Ellen McCarthy. On information and belief, Ms. McCarthy is Westport's Senior Claims Specialist assigned to handle the Zalis claims against me on Westport's behalf.

7.      In each instance in which the Zalis Second Amended Complaint lists the various acts of negligence which are alleged against me, it includes the phrase "including but not limited to the following" or "among other things." Zalis Second Amended Complaint, ¶¶ 43, 46. Paragraph 7 of the Zalis Second Amended Complaint alleges that the litigation with respect to which the alleged malpractice occurred "was maintained from January 2001 through August 2002 . . . ." Zalis Second Amended Complaint, ¶ 7. Paragraph 12 of the Zalis Second Amended Complaint alleges that "[a]t all times relevant the defendant Heidlage was either acting as of counsel with defendant Prince Lobel or of counsel with the Massachusetts law firm of Kotin, Crabtree & Strong, PA." and "[a]t all times material hereto Heidlage was acting as an agent, representative or employee of Prince Lobel and Kotin, Crabtree & Strong, PA."

8.    The only time I was associated with Kotin, Crabtree & Strong, PA was after May 1, 2002.

9.    Westport is defending the Underlying Malpractice Action under a reservation of rights.

10.    To date, the parties in the underlying malpractice action have not exchanged expert reports or otherwise discovered what expert testimony will be attempted to be introduced at trial.

11.    At no time did Westport request my counsel in the Underlying Malpractice Action (a) to propound interrogatories or requests for admission designed to establish conclusively that no claim was asserted with regard to the period after May 1, 2001 and within the Westport policy period; (b) to move for partial summary judgment in order to establish conclusively that any possible claim falling within the policy is precluded; or (c) suggested to me or my defense counsel any other actions that Westport believed could be taken in the underlying suit that might establish conclusively that I have no liability for any act, error or omission subsequent to May 1, 2002.

12.    According to Westport's Answer to Interrogatory No. 16, on or about April 26, 2006, Counsel for Westport contacted counsel for the plaintiffs in the underlying action to inquire as to whether the plaintiffs "had any interest in a partial settlement with Heidlage for release of any claim Zalis might have against Heidlage arising out of an alleged act, error or omission on or after May 1, 2002." Westport's Answers to Interrogatories, answer to Interrogatory No. 16, p. 10, entry at 4/26/06.

13.    Westport's Answer to Interrogatory No. 16 also states that on June 16, 2006, one of the counsel for Zalis stated that "he believed that Zalis would not settle for less than $100,000." *Id.*, entry at 6/16/06.

14.    Westport did not consult me about these settlement discussions and I did not consent to or participate in them.

15.    On June 20, 2006, my counsel in this action called Westport's counsel and objected to Westport's independent settlement discussions without my participation or permission. Westport's Answers to Interrogatories, Answer to Interrogatory No. 16, p. 10, entry at 6/20/06.

16.    On information and belief, in a telephone conversation on June 21, 2006, my counsel in the Underlying Malpractice Action informed Westport's counsel that a settlement had a potential disadvantage to me "in that the settlement might provide Zalis with a fund to continue the litigation." Westport's Answers to Interrogatories, Answer to Interrogatory No. 16, p. 11, entry at 6/21/06.

17.    According to Westport's Answer to Interrogatory No. 16, on the same day Westport's counsel wrote to Richard Bales, counsel for Zalis in the underlying suit, and offered $50,000 "in exchange for a complete release of Richard Heidlage for any and all claims arising out of alleged acts, errors or omissions committed by Mr. Heidlage on or after May 1, 2002." Westport's Answers to Interrogatories, Answer to Interrogatory No. 16, p. 11, entry at 6/21/06.

18.    On June 22, in a telephone call to Westport's counsel, Zalis' counsel stated that Zalis had rejected the offer of $50,000 and wanted $100,000. Westport's Answers to Interrogatories, Answer to Interrogatory No. 16, p. 11, entry at 6/22/06.

19.    On June 26, 2006, in a telephone call to Zalis' counsel, Westport's counsel made a settlement offer of $75,000.  Westport's Answers to Interrogatories, Answer to Interrogatory No. 16, p. 11, entry at 6/26/06.

20.    On information and belief, on June 29, 2006, Zalis' counsel, Martin L. Nathan, sent the letter that is attached hereto as Exhibit D.  In that letter, Zalis' counsel stated that Zalis was willing to accept $75,000 in exchange for a limited release from me.

21.    As a result of having to defend this action, I have incurred substantial damages and expense including payment of over $20,000 in attorney fees to my counsel, my own time and expense in performing legal research and briefing, and expenses for the court reporter in taking the deposition of Ms. McCarthy.

Signed on the pains and penalties of perjury this 13th day of October, 2006

_____
Richard C. Heidláge

2012\0001\191972.2

# EXHIBIT A

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

District of    MASSACHUSETTS

WESTPORT INSURANCE CORPORATION

## SUMMONS IN A CIVIL ACTION

V.

RICHARD C. HEIDLAGE; KOTIN, CRABTREE AND STRONG, LLP;
CHARLES N. ZALIS, INDIVIDUALLY;
CHARLES N. ZALIS, IN HIS CAPACITY AS    CASE NUMBER:
GENERAL PARTNER OF THE CHARLES N. ZALIS FAMILY
LIMITED PARTNERSHIP and
NORTH AMERICAN UNDERWRITING MANAGERS, INC.

TO: (Name and address of Defendant)

Richard Heidlage
25 Garden Road
Newton, MA 02468

# 05 CV 11780 NMG

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Stephen J. Bolotin, Esq.
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210
617-439-7500

an answer to the complaint which is served on you with this summons, within ___twenty (20)___ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

EXHIBIT

4

09-13-06

SARAH A. THORNTON

CLERK

September 27, 2005

DATE

A TRUE COPY ATTEST

(By) DEPUTY CLERK

DEPUTY SHERIFF
Middlesex County

10-5-05

DATE OF SERVICE

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |

| NAME OF SERVER (PRINT) | TITLE |
|---|---|
| | |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

    Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL $0.00 |
|---|---|---|
| | | |

## DECLARATION OF SERVER

    I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____    _____
                   Date                        *Signature of Server*

                                       _____
                                       *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WESTPORT INSURANCE                    )
CORPORATION,                          )
                                      )
        Plaintiff                     )          Case No.
                                      )
    v.                                )
                                      )
RICHARD C. HEIDLAGE; KOTIN,           )
CRABTREE AND STRONG, LLP;             )
CHARLES N. ZALIS, individually;       )
CHARLES N. ZALIS, in his capacity as  )   05cv 11780 NMG
General Partner of the CHARLES N.     )
ZALIS FAMILY LIMITED PARTNERSHIP;     )
and NORTH   AMERICAN                  )
UNDERWRITING MANAGERS, INC.,          )
                                      )
        Defendants.                   )

## COMPLAINT FOR DECLARATORY JUDGMENT

Westport Insurance Corporation ("Westport"), by its undersigned attorneys, for its

Complaint for Declaratory Judgment, states as follows:

### Jurisdiction and Venue

1.      This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule

57 of the Federal Rules of Civil Procedure.

2.      The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332(a), as this

action is between citizens of different states and the amount in controversy exceeds $75,000.

3.      Venue is proper in the District of Massachusetts pursuant to § 1391(a), as the

insurance coverage dispute concerns a policy issued to a Massachusetts insured.

### The Parties

4.      Westport is an Indiana corporation with its principal place of business in Kansas.

5.      Richard C. Heidlage ("Heidlage") is a citizen of Massachusetts.

6.     Kotin, Crabtree and Strong, LLP is a Massachusetts limited liability partnership with its principal place of business in Massachusetts.

7.     Charles N. Zalis ("Zalis") is a citizen of Florida and a general partner of Charles N. Zalis Family Limited Partnership ("Limited Partnership"), a Virginia limited partnership.

8.     North American Underwriting Managers, Inc. ("NAUM") is a Florida corporation with its principal place of business in Florida.

### Background

9.     On or about May 14, 2003, Zalis; the Limited Partnership; NAUM; and North American Underwriting Managers Insurance Agency, Inc. filed a Complaint against Heidlage and others in the Circuit Court of the 11th Judicial Circuit, in and for Miami-Dade County, Florida, Case No. 03-011784 CA 30. An Amended Complaint deleted North American Underwriting Managers Insurance Agency, Inc. as a party.  A Second Amended Complaint was filed , was filed on or about January 3, 2005.  A true and accurate copy of the Second Amended Complaint ("underlying complaint") is attached hereto as Exhibit A.

10.    In the underlying complaint, Zalis, the Limited Partnership, and NAUM (collectively referred to hereafter as "Zalis") allege that through the Limited Partnership, Charles Zalis owned and operated NAUM, a wholesale life insurance business in Florida.  It is further alleged that in 1997, it was agreed to merge the business with Gersten Financial & Insurance Company ("Gersten Financial"), a Massachusetts retail insurance business owned by Allan Gersten ("Gersten").

11.    Zalis alleges that pursuant to the agreement, the Limited Partnership transferred half of the stock of NAUM to Gersten, and Gersten was to transfer half of the stock of Gersten Financial to the Limited Partnership. It is alleged that in 1999, Zalis and Gersten formed North

American Underwriting Managers Agency, Inc., as one of the corporate vehicles to carry out the jointly-owned businesses.

12.    It is further alleged in the underlying complaint that Gersten failed to assign a substantial amount of commissions to NAUM; falsified the books of NAUM by failing to account for payments made to him, making it appear as though he was still owed that money; registered NAUM's web site and E-mail accounts in his name only; failed to split the net proceeds of the business evenly; used NAUM money to repair an office building owned by him and his wife; paid excessive salaries to his relatives; paid personal expenses out of company funds; refused to pay legitimate expenses associated with NAUM's Florida office; and, in late December 2000, formed a new company, First American Insurance Underwriters, Inc., and transferred to it all of the business, assets, and personnel of NAUM and NAUMIA.

13.    In January 2001, Gersten, et al. filed suit against Zalis in Massachusetts, and Zalis retained Heidlage, then with Prince Lobel Glovsky & Tye, LLP, as counsel.  Prior to being served in the Massachusetts action, Zalis filed suit against Gersten, et al., in state court in Florida. In the Florida action, Zalis was initially represented by Manuel Kushner, then with Berger, Davis & Singerman, P.S.

14.    Gersten, et al. removed the suit to the U.S. District Court for the Southern District of Florida, where it was assigned Case No. 01-0432-CIV. Zalis alleges that in July 2001, Heidlage appeared on behalf of Zalis in the Florida action.

15.    Zalis alleges as a result of a fee dispute between Zalis and Kushner, in September 2001, Heidlage and the Prince, Lobel firm assumed the role of lead counsel in the suit.

16.    Zalis further alleges in the underlying complaint that in January 2002, the role of lead counsel was assumed by Franklin Zemel and Broad & Cassel.  In March 2002, Zemel and

Broad & Cassel allegedly withdrew as counsel for Zalis, and Richard Brodsky was substituted as co-counsel with Heidlage. Brodsky allegedly initially served as local counsel. Zalis alleges, however, that in early July 2002, Brodsky became lead counsel for trial. Brodsky is not a defendant in the underlying lawsuit.

17.     It is alleged that on the third day of trial in August 2002, the matter was settled. Zalis alleges that malpractice on the part of his counsel resulted in a severe restriction of Zalis's ability to prove liability and damages, and that as a result, Zalis was forced to accept a settlement amount for less than attorneys' fees and costs.

<u>Allegations of Professional Negligence</u>

18.     In the underlying complaint, several allegations of professional negligence are asserted against Heidlage, and the Prince, Lobel firm on the basis that Heidlage was acting as an agent, representative or employee of the Prince, Lobel firm. These allegations are  organized under the following headings: "Inadequacies of the Amended Complaint;" "Failure to name an expert witness or witnesses;"  "Inadequate discovery efforts;" and "Failure to renew claim for preliminary relief."

19.     In the single count (Count I) directed against Heidlage and the Prince, Lobel firm, Zalis alleges that Heidlage and the firm negligently omitted certain "critical" claims for breach of contract and unjust enrichment or quasi contract from the Amended Complaint against Gersten, et al, although those claims had been included in the original Complaint.  Zalis also alleges that the defendants negligently failed to name North American Underwriting Managers Insurance Agency, Inc. as a defendant.

20.     It is alleged that Heidlage and the Prince, Lobel firm negligently failed to name an expert witness either by the deadline of November 2, 2001 imposed by the court, or by the February 15, 2002 extension agreed upon by the parties.

21.     Zalis alleges that Heidlage and the firm negligently conducted discovery, in that they (1) failed to timely move to compel Gersten to produce banking and other financial documents bearing on Gersten's diversion of funds, as a result of which the motion was denied as untimely; (2) failed to depose Gersten's Massachusetts accountant, who was on record as having advised Gersten that he was failing to live up to his obligations to Zalis; and (3) failed to obtain documents from various insurance companies to disprove Gersten's counter-allegations that Zalis had misappropriated funds due the joint venture by depositing funds generated by the joint business into a preexisting NAUM bank account in Florida.

22.     Zalis further alleges that Heidlage and the Prince, Lobel firm negligently failed to renew the motion to appoint a receiver or to otherwise seek emergency relief to freeze substantial funds for end-of-year bonuses and commissions due to be paid, which motion had been made and granted in state court, but then abrogated by the removal to federal court.

### The Westport Policy

23.     Westport issued Policy No. MAL008857 to Kotin, Crabtree and Strong, LLP (the "Policy"). The Policy is effective March 8, 2002 to March 8, 2003 on a claims made and reported basis.

24.     On or about May 1, 2002, Heidlage became associated with Kotin, Crabtree and Strong, LLP in an of counsel capacity. Heidlage is no longer associated with Kotin, Crabtree and Strong, LLP.

25.     The Policy defines "insured," in relevant part, as follows:

B. "INSURED" WHENEVER USE IN THIS COVERAGE UNIT MEANS:

1. the NAMED INSURED;

2. any lawyer who is a past or present partner, officer, director, stockholder, shareholder, employee or "of counsel" of the NAMED INSURED, but only as respects legal services rendered on behalf of the NAMED INSURED;

3. any lawyer listed in the application who is a partner, officer, director, stockholder, shareholder or employee of the NAMED INSURED at the time the CLAIM is made, but only as respects legal services rendered by such individual while associated with a PRIOR FIRM;

26. The Policy contains the following endorsement:

LIMITATION OF INDIVIDUAL PRIOR ACTS

General Terms and Conditions, Section XIV, Exclusions, as respects only the Lawyers Professional Liability Coverage Unit and the Title Insurance Agent Liability Coverage Unit (where applicable) is amended to include:

This POLICY shall not apply to any CLAIM based upon, arising out of, attributable to, or directly or indirectly resulting from an act, error, omission or PERSONAL INJURY committed by the following INSURED(S) prior to the corresponding RETROACTIVE DATE (s):

Richard C. Heidlage – 05.01.2002

All other terms and conditions of the POLICY remain unchanged.

27.     Zalis's claim against Heidlage is based on alleged acts, error, or omissions which occurred prior to the May 1, 2002 Retroactive Date set forth in the Limitation of Individual Prior Acts Endorsement. Therefore, the Policy does not provide coverage for the claim against Heidlage.

28.     Westport is defending Heidlage in the underlying lawsuit under a reservation of rights.

29.     Heidlage is also being defended in the underlying lawsuit by Great American, professional liability insurer for Kotin, Crabtree and Strong, LLP.

30.    Westport contends that it has no obligation to defend or indemnify Heidlage in the underlying lawsuit.  On information and belief,  Heidlage contends that Westport has a duty to defend and indemnify him in the underlying lawsuit.  Therefore, there is an actual controversy between the parties.

Wherefore, Westport respectfully requests that the Court enter judgment in its favor and against the defendants herein, and that the Court declare that Westport has no duty to defend or indemnify Richard C. Heidlage in connection with the underlying lawsuit filed against him, being Case No. 03-011784 CA 30 in the Circuit Court of the 11trh Judicial Circuit in and for Miami-Dade County, Florida.

Westport Insurance Corporation

By: 

Steven J. Bolotin  BBO#564085
Morrison Mahoney LLP
250 Summer Street
Boston, MA  02210
(617) 439-7500

Jeffrey A. Goldwater
Robert A. Chaney
Bollinger, Ruberry& Garvey
500 W. Madison St.
Suite 2300
Chicago, Illinois 60661
(312) 466-800
(312) 466-8001 (fax)

A

)                              ( )                         (7)

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 03-011784 CA 30

CHARLES N. ZALIS, individually,
CHARLES N. ZALIS, in his capacity as
General Partner of the CHARLES N. ZALIS
FAMILY LIMITED PARTNERSHIP, a
Virginia limited partnership, and NORTH
AMERICAN UNDERWRITING
MANAGERS, INC., a dissolved Florida corporation,

     Plaintiffs,

vs.

PRINCE, LOBEL GLOVSKY & TYE, LLP,
a Massachusetts limited liability partnership;
BROAD & CASSEL, P.A., a Florida
professional association, FRANKLIN L. ZEMEL, P.A.,
a Florida professional association;
RICHARD HEIDLAGE, ESQ., and
FRANKLIN L. ZEMEL, ESQ., individually,

    Defendants.
_____/

RECEIVED
JAN 0 3 2005
By _____

## SECOND
## AMENDED COMPLAINT

The Plaintiffs, Charles N. Zalis ("Zalis"), individually, Charles N. Zalis, as General

Partner of the Charles N. Zalis Family Limited Partnership ("the Zalis Family Partnership"), a

Virginia limited partnership, and North American Underwriting Managers, Inc. ("NAUM"), a

dissolved Florida corporation, by and through undersigned counsel, sue the Defendants, Prince,

Lobel Glovsky & Tye, LLP, ("Prince, Lobel") a Massachusetts limited liability partnership,

Broad & Cassel, P.A. ("Broad & Cassel"), a Florida professional association, Franklin L. Zemel,

1

BALES & SOMMERS, P.A.
COURVOISIER CENTRE II · 601 BRICKELL KEY DRIVE · SUITE 702· MIAMI, FLORIDA 33131
Telephone: (305) 372-1200 · Facsimile: (305) 372-9008 · e-mail: rbalesjr@artglobal.net

(1) Resp rank 1·19·05

( )                                      ( )

P.A. ("Zemel, P.A."), a Florida professional association, Richard Heidlage, Esq. ("Heidlage"),

and Franklin L. Zemel, individually ("Zemel"), and "state:

### JURISDICTION AND VENUE

1. This is an action for damages in excess of $15,000.00, exclusive of interest and costs,

   caused by the negligence of various law firms and lawyers in providing legal services to

   the Plaintiffs.

2. Venue is proper in this Court because the events complained of below occurred in

   substantial part in Miami-Dade County, Florida.

### PARTIES

3. Zalis is an individual who resides in Broward County, Florida.

4. Zalis also brings this action as the General Partner of the Charles N. Zalis Family Limited

   Partnership, a Virginia a limited partnership.

5. The Plaintiff North American Underwriting Managers, Inc. ("NAUM") is a dissolved

   Florida corporation which had its principal place of business is in Broward County,

   Florida.

6. The Zalis Family Partnership is the owner and principal shareholder of NAUM.

7. The Defendants, collectively, are various lawyers and law firms who represented Zalis,

   the Zalis Family Limited Partnership and NAUM in connection with claims against a

   former business partner, Allen Gersten, of Needham, Massachusetts, in an action in the

   United States District Court for the Southern District of Florida (Zalis, et al. v. Gersten, et

   al., Case Number 01-432-Civ-GOLD), which was maintained from January 2001 through

   August 2002 (the "Gersten Action").

**BALES & SOMMERS, P.A.**
COURVOISIER CENTRE II · 601 BRICKELL KEY DRIVE · SUITE 702· MIAMI, FLORIDA 33131
Telephone: (305) 372-1200 · Facsimile: (305) 372-9008 · e-mail: rbalesjr@attglobal.net

8.  The Defendant Prince, Lobel is a Massachusetts limited liability partnership which was specially admitted to practice in the United States District Court for the Southern District of Florida for purposes of the Gersten action.

9.  The Defendant Broad & Cassel is a Florida professional association with offices in Miami-Dade County and Broward County, Florida.

10. The Defendant Zemel, P.A. is a Florida professional association with offices in Broward County, Florida.

11. The Defendant Heidlage is an attorney licensed to practice law in the State of Massachusetts, who at all times relevant was specially admitted pro hac vice to practice before the United States District Court for the Southern District of Florida in the Gersten action.

12. At all times relevant the Defendant Heidlage was either acting as of counsel with the Defendant Prince, Lobel, or as of counsel with the Massachusetts law firm of Kotin Crabtree & Strong, P.A. At all times material hereto Heidlage was acting as an agent, representative or employee of Prince, Lobel and Kotin Crabtree & Strong, P.A. with the latter's full knowledge, approval and participation. The Defendant Prince, Lobel did the following acts and/or made the following representations which cloaked the Defendant Heidlage with the apparent authority to act for or on its behalf:

   a.  Prince, Lobel required or permitted the Defendant Heidlage to utilize its firm name and stationery in correspondence to the Plaintiffs which it knew or should have known would be sent to Florida;

   b.  Prince, Lobel required or permitted the Defendant Heidlage to utilize its name on pleadings which it knew would be filed on behalf of the Plaintiffs in the Florida litigation;

3

Case 1:05-cv-11780-DPW    Document 30-2    Filed 10/13/2006    Page 15 of 31
Wednesday 19 of Jan 2005, Faxination                    ->                    Page 6 of
0
of 19)

c.  Prince, Lobel required the Defendant Heidlage to submit to the Plaintiffs in Florida billing statements for fees incurred on its letterhead;

d.  Prince, Lobel accepted the Plaintiffs' checks for fees, some of which were made payable to Prince, Lobel, and then negotiated them through its bank accounts;

e.  Prince, Lobel charged the Plaintiffs for fees incurred by its employees, other than the Defendant Heidlage, for work done on behalf of the Plaintiffs which was intended to benefit the Plaintiffs in their disputes in Florida;

f.  Prince, Lobel failed to set forth in writing to the Plaintiffs the fact that the Defendant Heidlage was allegedly not acting on its behalf, and was, according to Prince, Lobel, no more than an independent contractor;

g.  Prince, Lobel required the Defendant Heidlage to obtain malpractice insurance coverage through Prince, Lobel's malpractice insurance policy.

13. The Plaintiffs justifiably and reasonably relied to their detriment on the acts as described above in believing that the Defendant Heidlage was in fact the agent of Prince, Lobel and therefore it, Prince, Lobel would be responsible for actions of Defendant Heidlage, including acts of negligence committed by the Defendant Heidlage in the course of his representation of the Plaintiffs. The Plaintiffs reasonably and justifiably believed that the Defendant Heidlage had the full cooperation and/or back up of a multi-attorney law firm when, in fact according to Prince, Lobel, the Defendant Heidlage did not have the necessary back up available or, in any event, failed to take advantage of the back up if it existed.

14. The actions of Prince, Lobel as described above which cloaked the Defendant Heidlage with the actual or apparent authority to act on its behalf in connection with the Florida representation, constitute contacts within the State of Florida sufficient to subject Prince,

4

BALES & SOMMERS, P.A.
COURVOISIER CENTRE II · 601 BRICKELL KEY DRIVE · SUITE 702· MIAMI, FLORIDA 33131
Telephone: (305) 372-1200 · Facsimile: (305) 372-9008 · e-mail: rbalesjr@attglobal.net

Lobel to the jurisdiction of this Court pursuant to Florida's "long arm statute," Florida

Statutes §48.193.

15. The Defendant Zemel is an attorney licensed to practice law in the State of Florida who at

all times relevant practiced law through Defendants Zemel, P.A. and Broad & Cassel at

offices in Ft. Lauderdale, Florida.  At all times material hereto, Zemel was acting as an

agent, representative or employee of Zemel, P.A. and Broad & Cassel with the latter's

full knowledge, approval and participation.


## ALLEGATIONS COMMON TO ALL COUNTS

### The Gersten Action

16. In September 1997, Zalis and Allan Gersten ("Gersten"), both licensed insurance agents,

orally agreed to pool their existing life insurance businesses and run them as one

company.  At the time, Zalis, through the Zalis Family Limited Partnership, was the sole

owner of North American Underwriting Managers, Inc. (NAUM), a Florida corporation

with its principal place of business in Broward County, Florida which engaged in the

wholesale end of the life insurance business.  Gersten was the sole owner of Gersten

Financial & Insurance, Inc. ("Gersten Financial"), a Massachusetts corporation with its

principal place of business in Needham, Massachusetts, which engaged primarily in the

retail end of the life insurance business.

17. The arrangement that Zalis and Gersten agreed to was that the Zalis would cause to be

transferred to Gersten a one-half (1/2) interest in NAUM, and the Gersten would transfer

a one-half (1/2) interest in Gersten Financial to Zalis, and ultimately to the Zalis Family

Limited Partnership.

5

(  )                                            (  )

18. Zalis and Gersten agreed that Gersten would handle the operations and financial

management of the combined business and that Zalis would build the business, primarily

by marketing and by locating and developing additional insurance products, brokers, and

businesses. Gersten and Zalis were both to devote full time to this enterprise and to be

compensated equally.

19. All brokerage contracts were to be held by the jointly owned companies, or, if the

contracts were written in the name of an individual licensed broker, then the commissions

or overrides payable to either Zalis or Gersten, individually, with respect to new business

were to be assigned to and pooled in the jointly-owned companies.  All of the revenues

and assets of Gersten Financial were to be contributed to the jointly-held companies,

which, in turn, would pay Gersten Financial's expenses.

20. Gersten was also appointed as an officer and director of NAUM.  The administrative

functions – record-keeping, bill paying, accounting, etc. of NAUM began to be carried

out at Gersten's office in Needham, Massachusetts, rather than in Florida.

21. In 1997 Zalis transferred a one-half interest in NAUM to Gersten.  As Gersten had failed

to transfer a one-half interest in Gersten Financial to the Zalis Family Limited

Partnership, in August, 1998, after meeting with Marvin Klasfeld, C.P.A., the parties

agreed that they would complete the unification of their business by having Gersten

transfer 100% of Gersten Financial to NAUM (of which Gersten already owned one-half

through Zalis' previous transfer to Gersten).

22. In 1999 Zalis and Gersten formed a new entity, North American Underwriting Managers

Insurance Agency, Inc. (NAUMIA), a Massachusetts corporation of which each was half

owner.  NAUMIA  was  formed  as  an  administrative  convenience  because  of

6

Massachusetts licensure restrictions on the ability of NAUM to do business in Massachusetts. Once formed NAUMIA became the entity through which the revenues of the parties' businesses were received and disbursed.

23. During the period September 1997 through December 2000, a large amount of life insurance business was generated by the jointly owned companies, resulting in the further generation of a substantial sum of commissions in excess of several million dollars. Additionally, during this period Zalis and Gersten engaged in the development of a valuable distribution list, a list of life insurance retailers through the United States who had expressed an interest in doing business with the Zalis and Gersten entities and appeared capable of generating profitable and ongoing business.

24. During this period Zalis rarely, if ever, received written financial reports from Gersten, relying instead on oral reports as to the volume of business being generated. Over time, however, Zalis, based on his knowledge of the business he was generating and of the insurance business generally, began to suspect that the compensation being received by him from Gersten did not represent his equal share as agreed upon, and that profits of the business were being siphoned off by Gersten to himself, his family, and Gersten's other businesses.

25. Specifically, (i) Gersten did not assign to NAUM a substantial amount of commissions he or Gersten Financial were to receive (ii) Gersten falsified the books of NAUM by failing to account for payments made to him, making it appear as though he was still owed that money, and (iii) Gersten registered NAUM's web site –Betterideaspeople.com – and e-mail accounts in the name of Gersten, individually.

BALES & SOMMERS, P.A.
COURVOISIER CENTRE II · 601 BRICKELL KEY DRIVE · SUITE 702· MIAMI, FLORIDA 33131
Telephone: (305) 372-1200 · Facsimile: (305) 372-9008 · e-mail: rbalesjr@anglobal.net

26. Further, (i) Gersten did not split the net proceeds of the business evenly with Zalis; (ii) Gersten used NAUM money to repair the office building he and his wife owned (iii) Gersten paid excessive salaries to his relatives, whom he put on the payroll (iv) Gersten paid his personal expenses out of company funds, and (v) Gersten refused to pay legitimate expenses associated with NAUM's Florida office.

27. In 2000 Zalis arranged for the hiring of a new Chief Financial Officer for the jointly owned companies, who was to be based in Florida. When Zalis and the new Chief Financial Officer began to press Gersten for information and documentation, Gersten was uncooperative. Gersten then charged that Zalis had been siphoning off funds for himself through a preexisting NAUM bank account in Florida.

28. These disputes ended the business relationship between Zalis and Gersten and they began to discuss the separation of their interests. However, unbeknownst to Zalis, in late 2000 Gersten had formed a new corporation, First American Insurance Underwriters, Inc., into which Gersten had transferred all of the business, personnel, and assets of NAUM and NAUMIA, including the Distribution List.

### Procedural History of the Gersten Action

29. In December 2000, Zalis retained the South Florida law firm of Berger, Davis & Singerman, P.A. (now known as Berger Singerman, P.A.) to bring an action against Gersten. Manuel Kushner, a partner and/or employee of Berger, Davis & Singerman, P.A. at that time, was assigned primary responsibility for the case.

30. In early January, 2001, Gersten and his various companies filed suit against Zalis and others in Massachusetts state court. Zalis and NAUM retained the Defendants Heidlage and Prince, Lobel to represent him in the Massachusetts case.

BALES & SOMMERS, P.A.
COURVOISIER CENTRE II · 601 BRICKELL KEY DRIVE · SUITE 702· MIAMI, FLORIDA 33131
Telephone: (305) 372-1200 · Facsimile: (305) 372-9008 · e-mail: rbalesjr@attglobal.net

( )                                         ( )

31. On January 11, 2001, while Zalis had notice of the Massachusetts action but had not
been served, Kushner and Berger, Davis & Singerman, P.A. filed suit on behalf of Zalis,
NAUM, and the Zalis Family Limited Partnership in Broward County Circuit Court
against Gersten and Gersten Financial.

32. In late February, 2001, Gersten removed the Broward County action to the United States
District Court for the Southern District of Florida on the basis of diversity of citizenship.
The Gersten action was assigned to the Honorable Alan Gold in the Miami Division of
the Court.

33. On June 11, 2001, Kushner left Berger, Davis & Singerman, P.A. to become a partner
and/or employee of Kaye Scholer, LLP, a New York Limited Liability Partnership with
offices in South Florida. Mr. Kushner took the Gersten Action with him to Kaye Scholer,
LLP. Heidlage and Prince, Lobel moved for leave to appear pro hac vice in the Gersten
Action, which motion was granted on July 25, 2001.

34. On August 28, 2001 Judge Gold entered a pretrial order which, among others:

    a. closed pleadings effective June 1, 2001;

    b. set trial to begin on June 17, 2002;

    c. imposed a general discovery deadline of November 16, 2001; and

    d. required Zalis, the Zalis Family Limited Partnership and NAUM to name their
       expert witnesses by November 2, 2001, and required Gersten to name his
       expert witnesses by December 3, 2001.

35. On September 6, 2001 the Defendants Heidlage and Prince, Lobel and Manuel Kushner
and Kaye Scholer, LLP filed a proposed Amended Complaint. Leave to file the
Amended Complaint was granted.

9

( )                                    ( )

36. At that time, Zalis and Kushner and Kaye Scholer, LLP had a material fee dispute and,

   although Kushner did not immediately seek judicial approval to withdraw from the case,

   by agreement with Zalis, Kushner and Kaye Scholer, LLP thereafter assumed a

   substantially reduced role in representing the Plaintiffs in the Gersten Action.   The

   substantially reduced role of Kushner and Kaye Scholer, LLP as of early September,

   2001 was specifically disclosed to the Defendants Heidlage and Prince, Lobel, who at the

   time agreed to assume the responsibilities of lead counsel in the Gersten Action.

37. In early January 2002, the responsibilities of lead counsel for the Plaintiffs in the Gersten

   Action were assumed by the Defendants, Zemel, Zemel, P.A., and Broad & Cassel. At

   that time, the Defendants Zemel, Zemel, P.A. and Broad & Cassel knew that Kushner and

   Kaye Scholer, LLP had previously assumed a substantially reduced role with the consent

   and agreement of the Plaintiffs.   On January 25, 2002 a formal withdrawal and

   substitution of counsel was filed.   Earlier in January, 2002, Zalis and Gersten, through

   counsel, agreed to an extension of the deadlines in the Court's pretrial order such that

   Zalis would have until February 15, 2002 and Gersten until March 1, 2002 to designate

   expert witnesses, and general discovery would remain open until March 15.   Based

   primarily on the advice of Zemel, the Plaintiffs refused to agree to submit the agreement

   for an extension of time to the Court for approval. Notwithstanding the decision by the

   Defendant Zemel to not formally execute the stipulation, the parties proceeded as per the

   oral agreement for extension and subsequently the Court acknowledged the extension.

   However, at this time, the Defendant Zemel was made aware that by agreement, he and

   the Plaintiffs had a limited period of time during which an expert could still be named.

   Although Zemel in fact made at least one call to such an expert to determine the expert's

10

**BALES & SOMMERS, P.A.**

COURVOISIER CENTRE II · 601 BRICKELL KEY DRIVE · SUITE 702· MIAMI, FLORIDA 33131
Telephone: (305) 372-1200 · Facsimile: (305) 372-9008 · e-mail: rbalesjr@attglobal.net

( )                                                    ( )

availability, thereby acknowledging the Defendant Zemel's awareness of the significance

of and need for an expert, the Defendant Zemel did nothing to protect the Plaintiffs'

position either by requesting a further extension or designating an expert. The extended

time for Zalis to designate an expert passed without one being named. This occurred

during the time Zemel was lead counsel, that is to say during the time Zemel assumed

primary responsibility for the case.

38. By stipulation dated February 28, 2002, and approved by the Court on March 19, 2002,

Zemel, Zemel, P.A. and Broad & Cassel withdrew as counsel for Zalis, and Richard E.

Brodsky of Miami, Florida was substituted as co-counsel of record with the Defendants

Heidlage and Prince, Lobel. At the outset, Zalis and Brodsky agreed that Brodsky was to

serve only as local counsel and only perform tasks as requested by Heidlage.

39. On May 2, 2002, Heidlage provided notice of a change of firms, from Prince, Lobel to

Kotin, Crabtree & Strong, L.L.P., another Boston law firm.

40. On June 10, 2002, with trial now set to begin in early July, 2002 Zalis and Gersten

attempted, but failed to mediate their dispute. At that point, Brodsky was requested to

assume the role of lead counsel for the trial of the case.

41. Trial was postponed for one month to permit the disposition of numerous pretrial motions

by a United States Magistrate. Trial began on Monday, August 5, 2001. On the third day

of trial the parties agreed to settle, with Zalis accepting a settlement amount which

covered only a portion of his accumulated attorneys' fees and costs and provided him

with no recovery on the underlying claims against Gersten. As set forth below, this

outcome was directly and proximately caused by a series of prior instances of

professional negligence on the part of the Defendants, resulting in severe restrictions on

11

**BALES & SOMMERS, P.A.**
COURVOISIER CENTRE II · 601 BRICKELL KEY DRIVE · SUITE 702· MIAMI, FLORIDA 33131
Telephone: (305) 372-1200 · Facsimile: (305) 372-9008 · e-mail: rbalesjr@attglobal.net

Received    Jan-19-05  12:15pm       From-Faxination              To-                    Page 13

Zalis' ability to prove liability and damages at trial. Were it not for the negligence of the Defendants, as set forth below, Zalis would have prevailed at trial and recovered an amount substantially in excess of the settlement obtained, or would have settled the case for a substantially greater sum.

<u>INSTANCES OF PROFESSIONAL NEGLIGENCE</u>

42. Zalis, the Zalis Family Limited Partnership, and NAUM had valid and substantial claims against Gersten and others. Zalis, the Zalis Family Limited Partnership, and NAUM settled with Gersten under circumstances in which inadequate preparation of the case by the Defendants had placed him in a position where settlement for the amount received failed to compensate fully for their legal expenses and costs, and offered them effectively no recovery on their claims. The settlement obtained was, under the circumstances, the only viable option for Zalis, the Zalis Family Limited Partnership and NAUM.

43. The outcome of the Gersten action and the resulting damage to Zalis, the Zalis Family Limited Partnership and NAUM were the proximate result of various acts and omissions of the Defendants, all violations of applicable standards of due care exercised in the legal community in which these acts occurred, including but not limited to the following:

    a. Inadequacies of the Amended Complaint
       (As to the Defendants Heidlage and Prince, Lobel)

    i. First, certain critical claims for relief, namely breach of contract and unjust enrichment or quasi contract, were inexplicably omitted. Although the original Complaint contained twelve Counts, these critical Counts were not included in the Amended Complaint. Such claims would also have provided a basis pursuant to which

12

**BALES & SOMMERS, P.A.**

COURVOISIER CENTRE II · 601 BRICKELL KEY DRIVE · SUITE 702· MIAMI, FLORIDA 33131
Telephone: (305) 372-1200 · Facsimile: (305) 372-9008 · e-mail: rbalesjr@attglobal.net

Zalis could have recovered damages, individually, at a materially reduced burden of proof;

ii.    Second, a critical party Plaintiff was omitted. Most of the claims were brought solely in the name of NAUM. However, since NAUM ceased to be actively involved in the parties' joint business in 1999, with all revenue and expenses thereafter passing through NAUMIA, NAUM had a substantially reduced connection with Gersten's misappropriation of the money and assets of the joint venture, and therefore its potential damages were severely limited. NAUMIA was not even named as a party, a factor bearing not only on the availability of damages, but also on the issue of federal jurisdiction, since addition of NAUMIA as a Plaintiff would have destroyed diversity jurisdiction and resulted in remand of the case to state court in which it had originally been filed. Further, the only claim for damages alleged on behalf of Zalis, individually, was a damages claim for defamation.

b.    <u>Failure to name an expert witness or witnesses (As to all Defendants)</u>

Zalis, the Zalis Family Limited Partnership, and NAUM required an expert witness or witnesses to testify on at least two issues: (a) the value of the business Gersten misappropriated in December 2000, and (b) the amount of money Gersten misappropriated from the combined entities in excess of what Zalis received during the period prior to the business divorce. Expert testimony on these subjects would have required a detailed study of the available financial records. Zalis' counsel ignored this

13

BALES & SOMMERS, P.A.

COURVOISIER CENTRE II · 601 BRICKELL KEY DRIVE · SUITE 702 · MIAMI, FLORIDA 33131
Telephone: (305) 372-1200 · Facsimile: (305) 372-9008 · e-mail: rbalesjr@attglobal.net

vital element of preparation and never named an expert witness, either by the Court-imposed deadline of November 2, 2001 or by the agreed-upon extension date of February 15, 2002.   In the absence of such an expert witness, the Plaintiffs were effectively foreclosed from presenting evidence as to the major elements of damage.

  c. Inadequate discovery efforts
   (As to the Defendants Heidlage and Prince, Lobel)

   i. In October 2001, counsel for Zalis, the Zalis Family Limited Partnership and NAUM filed a request for production of banking records and other vital financial documents bearing on Gersten's diversion of funds during the course of the joint business venture. However, when these records were not forthcoming, counsel failed to move to compel until May 2002, at which point the motion was denied as untimely.

   ii. Counsel failed to depose Gersten's Massachusetts accountant, Robert Brodsky, who was on record as having advised Gersten that he was failing to live up to his obligations to Zalis.

   iii. Counsel failed to obtain readily available documentation from various insurance companies which would have disproved Gersten's counter-allegations that Zalis had misappropriated funds due the joint venture by depositing funds generated by the joint business into a preexisting NAUM bank account in Florida.

14

d.  Failure to renew claim for preliminary relief
    (As to the Defendants Heidlage and Prince, Lobel)

Once the Gersten Action was removed to federal court, Zalis' counsel failed to renew the Motion to Appoint Receiver or to otherwise seek emergency relief, initially made and granted in state court but then abrogated by the removal to federal court, to freeze substantial funds in the form of end-of-year bonuses and commissions which were due to be paid to the joint venture.

## COUNT I

### PROFESSIONAL LIABILITY
### (Heidlage and Prince, Lobel)

44. The allegations of paragraphs 1 through 43 above are repeated and incorporated herein by reference.

45. The Plaintiffs employed the Defendants to provide professional legal services in the Gersten Action. The Defendants owed to the Plaintiffs a duty to exercise a level of skill and care that, in light of all of the circumstances, is recognized as acceptable and appropriate by similar and reasonably careful commercial litigators.

46. In the conduct of their representation, the Defendants neglected reasonable duties of care owed to the Plaintiffs by, among other things, failure to use due care and to follow accepted standards of due care in the preparation of the Amended Complaint, failure to name an expert witness or witnesses, failure to conduct adequate discovery, failure to renew the Plaintiffs' Motion for the Appointment of a Receiver and emergency relief in federal court, and failure to move for an enlargement of time to allow for the filing of a Second Amended Complaint including claims for breach of contract and unjust enrichment. Additionally, the Defendants Heidlage and Prince, Lobel did not disclose,

15

### BALES & SOMMERS, P.A.
COURVOISIER CENTRE II · 601 BRICKELL KEY DRIVE · SUITE 702 · MIAMI, FLORIDA 33131
Telephone: (305) 372-1200 · Facsimile: (305) 372-9008 · e-mail: rbalesjr@attglobal.net

and the Plaintiffs were not aware of, the lack of experience of Heidlage in matters of a

similar nature to the Gersten action and in the conduct of jury trials.

47. These negligent acts were the proximate cause of damage to the Plaintiffs, serving to

defeat their ability to obtain what otherwise would have been substantial recoveries on

meritorious claims.

WHEREFORE, the Plaintiffs, Charles N. Zalis, individually, and in his capacity as General

Partner of the Charles N. Zalis Family Limited Partnership, seek an award of damages, costs, and

for such other relief as may be appropriate.

## COUNT II

### PROFESSIONAL LIABILITY
### (Zemel, Zemel, P.A. and Broad & Cassel)

48. The allegations of paragraphs 1 through 42 and 43b. above are repeated and incorporated

herein by reference.

49. The Plaintiffs, Charles N. Zalis, individually, and in his capacity as General Partner of the

Charles N. Zalis Family Limited Partnership, employed the Defendants to provide

professional legal services in the Gersten Action. The Defendants owed to the Plaintiffs,

Charles N. Zalis, individually, and in his capacity as General Partner of the Charles N.

Zalis Family Limited Partnership, a duty to exercise a level of skill and care that, in light

of all of the circumstances, is recognized as acceptable and appropriate by similar and

reasonably careful commercial litigators.

50. In the conduct of their representation, the Defendants neglected reasonable duties of care

owed to the Plaintiffs, Charles N. Zalis, individually, and in his capacity as General

Partner of the Charles N. Zalis Family Limited Partnership, by failure to name an expert

16

BALES & SOMMERS, P.A.
COURVOISIER CENTRE II · 601 BRICKELL KEY DRIVE · SUITE 702· MIAMI, FLORIDA 33131
Telephone: (305) 372-1200 · Facsimile: (305) 372-9008 · e-mail: rbalesjr@attglobal.net

witness or witnesses or to protect the Plaintiffs' right to name an expert witness or

witnesses.

51. These negligent acts were the proximate cause of damage to the Plaintiffs, Charles N.

Zalis, individually, and in his capacity as General Partner of the Charles N. Zalis Family

Limited Partnership, serving to defeat their ability to obtain what otherwise would have

been substantial recoveries on meritorious claims.

WHEREFORE, the Plaintiffs, Charles N. Zalis, individually, and in his capacity as General

partner of the Charles N. Zalis Family Limited Partnership, seek an award of damages, costs, and

for such other relief as may be appropriate.

The Plaintiffs demand trial by jury of all issues triable by jury.

BALES & SOMMERS, P.A.
Suite 702, Courvoisier Centre
601 Brickell Key Drive
Miami, Florida 33131
Telephone: 305-372-1200
Facsimile: 305-372-9008
Attorneys for the Plaintiffs
Charles Zalis and the Charles
Zalis Family Limited Partnership


By: _____
        Richard M. Bales, Jr.
        Florida Bar No. 247952

MARTIN L. NATHAN, P.A.
444 Brickell Avenue
Suite 1000
Miami, Florida 33131
Telephone: 305-371-5588
Facsimile: 305-371-2941
Attorneys for the Plaintiff
North American Underwriting
Mangers, Inc.


By: _____
        Martin L. Nathan
        Florida Bar No. 124195

17

BALES & SOMMERS, P.A.
COURVOISIER CENTRE II · 601 BRICKELL KEY DRIVE · SUITE 702· MIAMI, FLORIDA 33131
Telephone: (305) 372-1200 · Facsimile: (305) 372-9008 · e-mail: rbalesjr@attglobal.net

Received    Jan-19-05  12:15pm    From-Faxination    To-    Page  19

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was faxed and

mailed this 30th day of December, 2004 to the following named addressees:

Joseph H. Lowe, Esq.
Stephens, Lynn, Klein, LaGava,
Hoffman & Puya, P.A.
9130 S. Dadeland Blvd., PH 1 & 2
Miami, Florida 33156

Isaac J. Mitrani, Esq.
Mitrani, Rynor, Adamsky & MacCaulay
One S.E. Third Avenue, Suite 2200
Miami, Florida 33131

Joseph Beasley, Esq.
Josephs, Jack & Miranda
2950 S.W. 27th Avenue
Miami, Florida 33133

_____
Richard M. Bales, Jr.

18

JS 44   (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Westport Insurance Corporation

## DEFENDANTS

Richard C. Heidlage, Koltin, Crabtree and Strong, LLP, Charles N. Zais, Indiv. and as General Partner of Charles N. Zalis Family Ltd. Partnership and North American Underwriting Managers, Inc.

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Steven J. Bolotin, Morrison Mahoney LLP
250 Summer Street, Boston, MA 02210

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☐ 3  Federal Question (U.S. Government Not a Party)

☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

### CONTRACT
☒ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

### TORTS
**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

**PERSONAL INJURY**
☐ 362 Personal Injury - Med. Malpractice
☐ 365 Personal Injury - Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

### FORFEITURE/PENALTY
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs.
☐ 660 Occupational Safety/Health
☐ 690 Other

### LABOR
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt.Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

### BANKRUPTCY
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

### SOCIAL SECURITY
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

### REAL PROPERTY
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

### CIVIL RIGHTS
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 445 Amer. w/Disabilities - Employment
☐ 446 Amer. w/Disabilities - Other
☐ 440 Other Civil Rights

### PRISONER PETITIONS
☐ 510 Motions to Vacate Sentence
**Habeas Corpus:**
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE  8/29/05

SIGNATURE OF ATTORNEY OF RECORD
Steven J. Bolotin, Esq.

## FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1.  Title of case (name of first party on each side only)  Westport Insurance Corporation v. Richard C. Heidlage, Koltin, Crabtree and Strong, LLP, Charles N. Zais, Individually and as General Partner of Charles N. Zalis Family Ltd. Partnership and North American Underwriting Managers, Inc.

2.  Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local rule 40.1(a)(1)).

- [ ]  I.    160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.

- [ ]  II.   195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
        740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.          for patent, trademark or copyright cases

- [x]  III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
        315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
        380, 385, 450, 891.

- [ ]  IV.   220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,
        690, 810, 861-865, 870, 871, 875, 900.

- [ ]  V.    150, 152, 153.

3.  Title and number, if any, of related cases.  (See local rule 40.1(g)).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

_____

4.  Has a prior action between the same parties and based on the same claim ever been filed in this court?

    YES [ ]    NO [x]

5.  Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC §2403)

    YES [ ]    NO [x]

    If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

    YES [ ]    NO [ ]

6.  Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

    YES [ ]    NO [x]

7.  Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"),  residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

    YES [x]    NO [ ]

    A.   If yes, in which division do all of the non-governmental parties reside?

    Eastern Division [x]        Central Division [ ]        Western Division [ ]

    B.   If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

    Eastern Division [ ]        Central Division [ ]        Western Division [ ]

8.  If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court?  (If yes, submit a separate sheet identifying the motions)

    YES [ ]    NO [ ]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME _____ Steven J. Bolotin, Esq.
ADDRESS _____ Morrison Mahoney LLP, 250 Summer Street, Boston, MA 02210
TELEPHONE NO. _____ 617-439-7500

(CategoryForm.wpd - 5/2/05)

# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WESTPORT INSURANCE CORPORATION, )<br><br>    Plaintiff )<br><br>    v. )<br><br>RICHARD C. HEIDLAGE, et al., )<br><br>    Defendants. ) | CA No. 05-11780NMG |

## WESTPORT'S ANSWERS
## TO RICHARD C. HEIDLAGE'S
## FIRST SET OF INTERROGATORIES

Westport Insurance Corporation ("Westport"), by its undersigned attorneys, submits the following responses to Richard C. Heidlage's First Set of Interrogatories.

1.    For each Interrogatory, identify each person who provided any information on which the response to the interrogatory is based, and with regard thereto, identify the information provided by each such person.

**ANSWER:**    Westport objects to Interrogatory No. 1 on the basis that it is unduly burdensome, and to the extent that it requests information protected under the attorney-client privilege or under the work product doctrine. Subject and without waiving these objections, Westport states that Robert A. Chaney provided information for the responses to contention Interrogatory Nos. 1-6, and to Interrogatory Nos.10 and 16.  Ellen A. McCarthy also provided information for the response Interrogatory No.4.  Ellen A. McCarthy; Art Stirnaman, Counsel, Westport Insurance Corporation; John N. Love of Robins, Kaplan, Miller & Ciresi; and Ian Crawford of Todd & Weld LLP provided information for objection No. 5 to Interrogatory No. 7. Love and Crawford were counsel for Westport and the Massachusetts Bar Association,



EXHIBIT

5
09-13-06

respectively in the lawsuit referred to in objection No. 5.    Ellen A. McCarthy and Robert T. Johnson of Westport provided information for objection No. 2 to interrogatory No. 8., and for the response to Interrogatory No. 15.

    2.    State the basis for the allegations that you made in paragraph 27 of the Complaint that "Zalis's claim against Heidlage is based on alleged acts, error, or omissions which occurred prior to May 1, 2002 Retroactive Date set forth in the limitation of Individual Prior Acts Endorsement."

**ANSWER:**    The basis for the allegations made in paragraph 27 of the Complaint is set forth in Westport's Memorandum of Law in support of its Motion for Summary Judgment.

    3.    State the basis for each of the denials you made in paragraph 7 of your Answer to the Counterclaims of Richard C. Heidlage.

**ANSWER:**    First sentence:    The acts and omissions alleged in Paragraph 43 of the Second Amended Complaint are preceded by the phrase "including, but not limited to the following." The acts or omissions alleged in paragraph 46 are preceded by the phrase "among other things." Therefore, an admission to the first sentence in paragraph 7 of the Counterclaim, as phrased, would have been proper. Westport states, however, that the acts or omissions specified in paragraphs 43 and 46 are followed in Count I, the only count directed against Heidlage, by the allegation in paragraph 47 that "these negligent acts," that is, the acts or omissions specified, "were the proximate cause of damage to the Plaintiffs . . . ." Additionally, even in the absence of the allegation in paragraph 47 that the plaintiffs' damages were proximately caused by the specified acts or omissions, the boilerplate language referred to in paragraph 7 of the Counterclaim does not create a duty to defend when the specified acts or

omissions occurred prior to the May 1, 2002 Retroactive Date in the Limitation of Individual Prior Acts Endorsement.

Second sentence: Westport denied the second sentence in paragraph 7 only to the extent that the second sentence is interpreted as asserting that Zalis, et al. allege in their Second Amended Complaint that Heidlage committed legal malpractice after May 1, 2002, which Westport denies for the reasons set forth in its Memorandum of Law in support of its Motion for Summary Judgment.

Third Sentence: Westport does not agree that the allegations of the Second Amended Complaint are reasonably susceptible to an interpretation that professional malpractice is alleged to have occurred subsequent to May 1, 2002.

4.      State the basis for each of the denials you made in paragraph 8 of your Answer to the Counterclaims of Richard C. Heidlage.

**ANSWER:**    First Sentence: Westport denies the "[n]ot withstanding the foregoing" preface because it implies that Heidlage's allegations in paragraph 7 are correct, and that Westport's contention that it does not have a duty to defend or indemnify Heidlage in the underlying lawsuit is incorrect. Westport denied that "it has refused to participate in the ongoing defense," because Westport is paying for 50% of the cost of defense counsel selected by Richard Heidlage, as well as other litigation costs and expenses incurred by Hedilage in the Zalis lawsuit. Additionally, although Westport had no obligation under the policy to do so, Westport reimbursed Heidlage for travel, lodging and meal expenses incurred by him for at least four trips from Boston to Miami to attend the deposition of Charles Zalis.

5.      State the basis for the denial you made in paragraph 11 of your Answer to the Counterclaims of Richard C. Heidlage.

**ANSWER:**   Westport objects to Interrogatory No. 5 to the extent that it seeks information protected under the work product doctrine. Without waiving and subject to this objection, Westport states that to the extent that it has admitted any of the acts alleged in Heidlage's Counterclaim, such acts do not constitute unfair or deceptive trade practices or willful and knowing violations of G.L. c. 176D and 93A, §§2 and 11.

6.   State the basis for the denial you made in paragraph 12 of your Answer to the Counterclaims of Richard C. Heidlage.

**ANSWER:**   See response to Interrogatory No. 5; further, Westport does not believe that Heidlage has suffered any damages.

7.   Identify each liability insurance policy you issued with regard to legal malpractice for any insured whose place of business is in the Commonwealth of Massachusetts for any policy coverage period after January 1, 2000 and for each such policy state,

a.   The identify of the insured;

b.   The coverage period;

c.   The premium you collected.

**ANSWER:**   Westport objects to Interrogatory No. 7 on the basis that (1) the requested information is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence; (2) the request is unduly burdensome; (3) the request is overbroad; (4) the request could invade the privacy rights and confidentiality of other insureds; and (5) pursuant to the Consent Order entered on April 5, 2005, in *Massachusetts Bar Association, et al. v. Westport Insurance Corporation, et al.*, Civil Action No. 04-1667, Superior Court, Suffolk County, Massachusetts, a copy of which is enclosed, Westport is prohibited from disclosure of the information requested.

4

8.    Identify each instance subsequent to January 1, 2000 in which you asserted that you did not have a duty to defend litigation against an insured under a policy issued by you, and with regard thereto, state

a.    The identity of the insured;

b.    The policy number;

c.    The basis on which you asserted that you did not have a duty to defend; and

d.    The caption, docket number and jurisdiction in which any litigation involving your duty to defend was filed.

9.    Identify the person or persons who have knowledge of the Underlying Action.

**ANSWER:**    Westport objects to Interrogatory No. 8 on the basis that (1) the requested information is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence; (2) the request is unduly burdensome in that a manual search of many thousands of claim files would be required in order to obtain the requested information; (3) the request is overbroad; and (4) the request could invade the privacy rights and confidentiality of other insureds; and (5) pursuant to the Consent Order entered on April 5, 2005, in *Massachusetts Bar Association, et al. v. Westport Insurance Corporation, et al.*, Civil Action No. 04-1667, Superior Court, Suffolk County, Massachusetts, a copy of which is enclosed, Westport is prohibited from disclosure of the some of the information requested.

10.    Identify the person or persons who have knowledge of the basis for your claims in this action.

**ANSWER:**    Richard C. Heidlage; Richard M. Bluestein; Nicholas M. Kelley; Martin Nathan; Richard Bales; Ellen McCarthy (Westport); Robert T. Johnson (Westport); and Robert A. Chaney.

11.    Identify any person who may be used at trial to present evidence under Rules 702, 703, or 706 of the Federal Rules of Evidence and with regard thereto provide all disclosures required under Rule 26(2) of the Federal Rules of Civil Procedure.

**ANSWER:**    Westport has not selected an expert witness.

12.    Identify all documents that you contend support any factual or legal assertion in the Complaint in this action.

**ANSWER:**    See documents identified in and attached to Westport's Memorandum of Law in support of its Motion for Summary Judgment; the Affidavit of Ellen A. McCarthy; and the Affidavit of Robert A. Chaney.

13.    Identify all documents relied on or reviewed by any expert identified by you pursuant to F.R. Civ. P. 26(a)(2) in forming or supporting any of the opinions or testimony of any expert that you expect to attempt to introduce at trial.

**ANSWER:**    See Answer to Interrogatory No. 11.

14.    Identify all documents that you intend to attempt to introduce at trial in this matter.

**ANSWER:**    See documents identified in and attached to Westport's Memorandum of Law in support of its Motion for Summary Judgment; the Affidavit of Ellen A. McCarthy; and the Affidavit of Robert A. Chaney.

15.    Please describe any communication between Westport (including, without limitation, its attorneys) and any party (including, without limitation the attorney for such party) in the Underlying Litigation, including by not limited to

a.    the date of the communication;

b.    the identity of each person participating in the communication;

c.    the substance of what was said by each person; and

d.    the identity of any document that constitutes, refers or relates to the said communication.

**ANSWER:**    Westport objects to Interrogatory No. 15 on the basis that (1) the requested information is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence; (2) the request is unduly burdensome; and (3) to the extent that the information requested is subject to the attorney-client or insurer-insured privilege. Subject to and without waiving these objections, Westport states that with the exception of Richard Heidlage and his attorneys, neither Westport nor its attorneys have had communications with any party to the Underlying Litigation or any such party's attorney, except for those communications identified in Westport's response to Interrogatory No. 16, and a few earlier oral and written communications between one of Westport's attorneys (Robert A. Chaney) and the partys' attorneys regarding the Zalis defendants' and North American Underwriting Managers, Inc.,'s ("NAUM") participation in the declaratory judgment. Counsel for the Zalis defendants stated that his clients had no interest in the declaratory judgment action and were dismissed from the case by agreement. Pursuant to Westport's motion, a notice of default against NAUM was entered by the Clerk of Court.

Westport has had no communications with Richard Heidlage, except those that occurred shortly after the filing of the Underlying Litigation, and those that may have occurred during the mediation referred to in Westport's response to Interrogatory No. 16. With respect to the former, notes of oral communications between Westport (Ellen A. McCarthy) and Richard Heidlage are included in the electronic file notes contained within W02363-2450. Except as reflected in the electronic file notes, Westport is unable to identify any other oral communications with

7

Heidlage. Westport's written communications with Richard Heidlage are contained within W00001-02362. Westport is unable to recall the substance of any conversation with Richard Heidlage that may have occurred during the mediation.

Counsel for Westport has had no communications with Richard Heidlage, except those that may have occurred between Robert A. Chaney and Heidlage during the mediation, the substance of which cannot be recalled. Counsel for Westport has had no communications with defense counsel for Heidlage except as referred to in Westport response to Interrogatory No. 16.

16.    If at any time Westport made an effort to settle any aspect of the Underlying Litigation, please state

a.    the date of the offer;

b.    the identity of each person to whom the offer was made;

c.    the terms of the offer;

d.    whether said offer was discussed with Heidlage before it was made;

e.    whether the said offer was approved by Heidlage before it was made;

f.    the substance of the response, if any, that was made to the offer;

g.    the identity of any document that constitutes, refers or relates to the said offer and/or response thereto, including correspondence, memoranda, draft settlement agreements, and draft releases.

**ANSWER:**    Westport objects to Interrogatory No. 15 on the basis that (1) the requested information is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence; and (2) the request is unduly burdensome. Subject to and without waiving these objections, Westport states that in conjunction with Great American Insurance Company, it made an offer to settle the Underlying Litigation during the mediation on September 16, 2005. The

offer was made to Charles N. Zalis and Zalis's attorneys, Richard M. Bales, Jr., and Martin L. Nathan. Richard Heidlage and defense counsel for Heidlage were present and discussed the proposed settlement with representatives of Great American and Westport. Westport did not seek Heidlage's consent (approval) for the offer; however, Heidlage did not object.

Westport, through its attorney, subsequently had communications with various individuals relating to potential settlement. There was no discussion during any of the telephone calls of the merits of the Zalis lawsuit, or of the specific matters advanced by Westport in support of its coverage position under the Limitation of Individual Prior Acts Endorsement. No specific terms of the settlement were discussed other than the settlement amount and the requirement that the settlement include a release of any claim Zalis may have against Heidlage arising out of an alleged act, error or omission on or after May 1, 2002. For ease of reference, this proposed settlement is referred to hereafter as the "partial settlement."

No draft settlement agreement was ever prepared. Ultimately, this partial settlement effort failed because Zalis required Heidlage to be a signatory to the settlement agreement and required the settlement agreement to contain a provision under which Heidlage would provide an assurance to Zalis concerning conduct of the Zalis lawsuit. The nature or details of the required assurance was never discussed. Heidlage was apparently willing, in principal, to sign a settlement agreement in which Zalis would release any claim he might have against Heidlage arising out of an alleged act, error or omission on or after May 1, 2002. Heidlage, however, would agree to do so only if Westport agreed to pay his attorney's fees and expenses in the declaratory judgment action. Additionally, Heidlage demanded that Westport pay his hourly rate for time spent by him in connection with the declaratory judgment action. Westport declined to do so.

9

All nonprivileged communications relating to settlement are summarized below. Heidlage did not consent or approve of the potential partial settlement except to the extent indicated, nor does Westport believe that Heidlage's consent or approval was required with respect to the proposed partial settlement.

4/19/06:   During the Rule 26 conference in this case, Nicholas M. Kelley ("Kelley"), Richard M. Bluestein ("Bluestein") and Robert A. Chaney ("Chaney") discussed potential partial settlement in general terms and seemed to be in agreement that such a settlement would be to the advantage of all concerned.

4/26/06:   In a telephone call to Richard M. Bales, Jr. ("Bales"), Chaney inquired as to whether Zalis had any interest in a partial settlement with Heidlage for release of any claim Zalis might have against Heidlage arising out of an alleged act, error or omission on or after May 1, 2002. No settlement amount was discussed. Bales stated that he would talk to Zalis.

5/3/06:   Letter from Bales to Chaney. See Westport's Response to Heidlage's First Request for the Production of Documents

6/6/06:   Letter from Chaney to Bales. See Westport's Response to Heidlage's First Request for the Production of Documents.

6/16/06:   In a telephone call from Martin L. Nathan ("Nathan") to Chaney, Nathan sought clarification of the basic outline of the potential partial settlement between Zalis and Heidlage. Nathan further stated that he believed that Westport should be granted summary judgment in the declaratory judgment action. In a second telephone call, Nathan stated that he believed that Zalis would not settle for less than $100,000.

6/19/06:   In a telephone call from Chaney to Kelley, Chaney inquired as to whether Kotin, Crabtree & Strong would give its consent, pursuant to the terms of the policy, for Westport to make a $50,000 settlement offer to Zalis for release of any and all claim against Heidlage arising out of alleged acts, errors or omissions occurring on or after May 1, 2002. Either during the call or in a subsequent call the same day, Kelley stated that Kotin, Crabtree & Strong consented.

6/19/06:   Letter from Chaney to Kelley. See Westport's Response to Heidlage's First Request for the Production of Documents.

6/20/06:   Telephone call from Bluestein to Chaney. Bluestein stated that the discussion of settlement was prejudicing Heidlage.

6/21/06:    In a telephone call to Heidlage defense attorney Jeffrey D. Swartz ("Swartz"), Chaney inquired as to his position concerning a potential partial settlement between Zalis and Heidlage. Schwartz stated that from a defense standpoint, he believed that there would be strategic advantages to such a settlement, but also a potential disadvantage in that the settlement might provide Zalis with a fund to continue the litigation. Swartz stated that he believed the benefits of settlement outweighed this concern, but that he would remain neutral concerning the potential partial settlement.

6/21/06:    Letter from Chaney to Bales, with copies to Nathan, Swartz and Bluestein. See Westport's Response to Heidlage's First Request for the Production of Documents.

6/22/06:    In a telephone call to Chaney, Nathan stated that Zalis had rejected the proposed partial settlement of $50,000 and stated that Zalis wanted $100,000. Nathan further stated that were $90,000 offered, Zalis would probably accept it.

6/26/06:    In a telephone call to Nathan, Chaney made a settlement offer of $75,000, subject to the consent of Kotin, Crabtree & Strong, and stated that the offer would remain open for two weeks.

6/29/06:    Letter from Nathan to Chaney. See Westport's Response to Heidlage's First Request for the Production of Documents.

6/29/06:    Letter from Bluestein to Chaney. See Westport's Response to Heidlage's First Request for the Production of Documents.

6/30/06:    E-mail from Chaney to Bluestein. See Westport's Response to Heidlage's First Request for the Production of Documents.

6/30/06:    In a telephone call from Chaney to Kelley, Chaney inquired as to whether Kotin, Crabtree & Strong would give its consent, pursuant to the terms of the policy, for Westport to make a $75,000 settlement offer to Zalis for release of any and all claim against Heidlage arising out of alleged acts, errors or omissions occurring on or after May 1, 2002.

7/1/06:    E-mails from Bluestein to Chaney and Chaney to Bluestein. See Westport's Response to Heidlage's First Request for the Production of Documents.

7/5/06:    E-mails from Bluestein to Chaney and Chaney to Bluestein. See Westport's Response to Heidlage's First Request for the Production of Documents.

7/11/06:    In a telephone call to Chaney, Bluestein stated that Heidlage would object to and not sign a settlement agreement unless Westport agreed to pay attorney's fees incurred by him in the declaratory judgment action. Bluestein stated that Heidlage

would also insist that Westport pay his hourly rate for time spent on the declaratory judgment action.

7/11/06:    E-mail from Bluestein to Chaney

7/11/06:    In a telephone call from Chaney to Kelley, Chaney inquired as to whether Kotin, Crabtree & Strong would provide its consent to a $75,000 partial settlement irrespective of Heidlage's position as to the settlement.

7/12/06:    In a telephone call to Chaney, Kelley confirmed that Kotin, Crabtree & Strong would consent to the proposed settlement irrespective of Heidlage's position concerning payment of his fees in the declaratory judgment action.

7/13/06:    In a telephone call to Nathan, Chaney inquired as to whether Zalis would enter into a partial settlement without Heidlage being a signatory to the settlement agreement. Nathan said he would ask Zalis.

7/14/06:    Letter from Chaney to Bluestein. See Westport's Response to Heidlage's First Request for the Production of Documents.

7/18/06:    Letter from Nathan to Chaney

7/19/06:    Telephone call from Bluestein to discuss potential partial settlement and discovery.

7/24/06:    E-mail from Chaney to Kelley. See Westport's Response to Heidlage's First Request for the Production of Documents.

Respectfully submitted,

Westport Insurance Corporation

By _____
One of its Attorneys

Steven J. Bolotin
BBO #564085
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210
(617) 439-7500

12

EXHIBIT A

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS                           SUPERIOR COURT
                                      Civil Action No.: 04-1667 BLS

```
------------------------------------)
MASSACHUSETTS BAR ASSOCIATION, and  )
THE MBA INSURANCE AGENCY            )
                                    )
              Plaintiff,            )
                                    )
v.                                  )        CONSENT ORDER
                                    )
WESTPORT INSURANCE CORPORATION,     )
MASSACHUSETTS ASSOCIATION OF        )
INSURANCE AGENTS and NUMBER ONE     )
INSURANCE AGENCY, INC.              )
                                    )
              Defendant.            )
------------------------------------)
```

     Defendant, Westport Insurance Corporation, its agents,

divisions, successors, assigns, servants, employees and

attorneys, and any persons or entities acting in concert with

it, are restrained and enjoined until January 1, 2009, from

directly or indirectly using any MBA proprietary data with

respect to the identity of any individuals and law firms insured

under the MBA Endorsed Program, including, without limitation,

the names, addresses,  renewal dates, with respect to such

individuals and law firms insured, except: (1) as required for

reporting to governmental regulatory agencies including tax

reporting or as required by any rating bureau; (2) as required

to administer claims under any MBA Endorsed Program policies or

7

administer any MBA Endorsed Program policies issued by Westport that currently remain in force; and (3) Westport's prior use in its February 2004 Massachusetts rate filing for Lawyers CPS Professional Liability Insurance SRB File/Serial # 88053, approved by the Massachusetts Department of Insurance, and Westport's continued sale of policies pursuant to that filing, but Westport may not resubmit that filing or use it in any other way except as set forth in this Consent Order.

Westport Insurance Corporation, its agents, divisions, successors, assigns, servants, employees and attorneys and any persons or entities acting in concert with it are restrained and enjoined until January 1, 2007 from directly using any MBA Endorsed Program proprietary data for the purposes of filing insurance policy rating plans, rates, rules and all supporting documentation in connection therewith in Massachusetts but may use such data indirectly so long as the data is included as part of nationwide data and not specific to Massachusetts.

ENTERED as the Order of this Court this _____ day of _____, 2005.

BY  _____
    Allan van Gestel, Associate
    Justice

Jeffrey A. Goldwater
Robert A. Chaney
Bollinger, Ruberry& Garvey
500 W. Madison St.
Suite 2300
Chicago, Illinois 60661
(312) 466-800
(312) 466-8001 (fax)

## CERTIFICATE OF SERVICE

I, Robert A. Chaney, certify that on August 29, 2006, the foregoing Westport Insurance Corporation's Answers to Richard C. Heidlage's First Set of Interrogatories were served on counsel below by U.S. First Class Mail, postage prepaid.

Robert A. Chaney

Richard M. Bluestein
Krokidas & Bluestein LLP
600 Atlantic Avenue
Boston, MA 02210
(617) 482-7211

Nicholas M. Kelley
Kotin, Crabtree & Strong, LLP
One Bowdoin Square
Boston, MA 02114
(617) 227-7031

## VERIFICATION

I have reviewed the foregoing responses to Defendant Richard C. Heidlage's First Set of Interrogatories to Plaintiff Westport Insurance Corporation. and verify that the responses are true and correct on the basis of my personal knowledge and on the basis of information available to me.

Ellen A. McCarthy
Senior Claims Specialist – Lawyers
Westport Insurance Corporation

Subscribed and Sworn
before me this 28th day
of August , 2006.

Notary Public

APRIL G NERO
NOTARY PUBLIC
HOWARD COUNTY
MARYLAND
My Commission Expires Sept. 6, 2009

14

# EXHIBIT C

# ORIGINAL

VOLUME:   I
PAGES:   1 - 146
EXHIBITS:   1 - 12

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - -x

WESTPORT INSURANCE CORPORATION
           Plaintiff

                                    CIVIL ACTION
           Vs.                       NO. 1:05-CV-11780 NMG

RICHARD C. HEIDLAGE, KOTIN
CRABTREE AND STRONG, LLP, AND
NORTH AMERICAN UNDERWRITING
MANAGERS, INC.
           Defendants

- - - - - - - - - - - - - - -x


                    DEPOSITION OF ELLEN MCCARTHY

taken on behalf of Defendant Richard C. Heidlage

pursuant to the Federal Rules of Civil Procedure, before

Carole M. Wallace, Certified Shorthand Reporter and

Notary Public, at the offices of Krokidas & Bluestein,

LLP, 600 Atlantic Avenue, Boston, Massachusetts   02210,

on Wednesday, September 13, 2006, commencing at 10:01

a.m.


     HENNESSEY CORP. D/B/A ROBERT H. LANGE CO.
  50 Congress Street - Boston, Massachusetts   02109
   Tel: (617) 523-1874          Fax: (617) 523-7343

Page 2

```
 1  │  APPEARANCES:
    │
 2  │
    │
 3  │  Robert A. Chaney, Esq.
    │  Bollinger, Ruberry & Garvey
 4  │  Citicorp Center
    │  500 West Madison Street
 5  │  Suite 2300
    │  Chicago, Illinois    06001
 6  │  (312) 466-8000
    │  On behalf of the Plaintiff
 7  │
    │  Richard M. Bluestein, Esq
 8  │  Krokidas & Bluestein, LLP
    │  600 Atlantic Avenue
 9  │  Boston, Massachusetts    02210
    │  (617) 482-7211
10  │  On behalf of Defendant Richard C. Heidlage
    │
11  │  ALSO PRESENT:
    │
12  │  Richard C. Heidlage
    │
13  │
    │
14  │     ATTORNEY BLUESTEIN RETAINED THE ORIGINAL EXHIBITS
    │
15  │
    │
16  │
    │
17  │
    │
18  │
    │
19  │
    │
20  │
    │
21  │
    │
22  │
    │
23  │
    │
24  │
```

Page 3

1                    I N D E X

2   Witness            Direct  Cross  Redirect  Recross

3   ELLEN MCCARTHY       5     141

4

5

6

7                      *  *  *  *

8

9

10

11                 E X H I B I T S

12  No.              Description              Ident.

13   1       Notes created by the witness . . . . .   21
             W02363 - W02450
14
     2       Itemization from Stephens Lynn . . . .   24
15
     3       Fax of 12-18-03 . . . . . . . . . .   29
16           to Heidlage from McCarthy
             with letter of 2-18-03
17
     4       Second Amended Complaint for . . . . .   78
18           Equitable Relief and for Damages

19   5       Westport's answers to interrogatories   85

20   6       Memorandum of Law in Support of  . . .   86
             Westport's Motion for Summary
21           Judgment

22   7       Notes created by the witness . . . . .   98

23   8       Letter of June 6, 2006,  . . . . . . .  110
             to Bales from Chaney
24

Page 4

| No. | Description | Ident. |
|-----|-------------|--------|
| 9 | Letter of June 29, 2006, . . . . . . to Chaney from Bluestein | 121 |
| 10 | Letter of June 29, 2006 . . . . . . . to Chaney from Nathan | 126 |
| 11 | Letter of May 3, 2006 . . . . . . . . to Chaney from Bales | 132 |
| 12 | E-mail string . . . . . . . . . . . | 136 |

Page 5

```
 1                         ELLEN MCCARTHY,

 2        having been satisfactorily identified by the

 3        production of her driver's license and duly sworn by

 4        the Notary Public, was examined and testified as

 5        follows:

 6                 MR. BLUESTEIN:  Do you need any

 7        stipulations, or are you satisfied with the way the

 8        rules work for us?

 9                 MR. CHANEY:  I'm satisfied with the rules

10        no, problem.

11                 MR. BLUESTEIN:  As am I.

12             DIRECT EXAMINATION BY MR. BLUESTEIN

13   Q    Would you state your name.

14   A    Ellen McCarthy.

15   Q    Where do you live?

16   A    311 Pertch, P E R T C H Road, Severna Park,

17        Maryland.

18   Q    Where is your office?

19   A    525 West Van Buren, Chicago, Illinois.

20   Q    That is quite a commute.

21   A    I'm a teleworker.

22   Q    In a sentence is it fair to say that you work out of

23        your house?

24   A    Yes.
```

Page 29

1   Q   The first of the two notes.  It says there,

2       "Heidlage has an LPA of 5102."

3   A   Right.

4   Q   What does LPA mean?

5   A   Limiting prior acts endorsement.

6   Q   Could you explain what you mean by that?

7   A   Well, it is an endorsement that has what we call a

8       retroactive date where an individual is only insured

9       for acts, errors, omissions or wrongful acts that

10      occurred after the retroactive date.

11  Q   Then it says "I addressed that issue with him."

12  A   Yes.

13  Q   Who is "him"?

14  A   Mr. Heidlage.

15  Q   Is there some note of that conversation?

16  A   That would have been in conjunction with the

17      February 18, 2003, one just that I had with

18      Mr. Reichlin and Mr. Heidlage.

19  Q   At the end of that note it says "I will send out

20      ROR."  What does that mean?

21  A   Reservation of rights letter.

22  Q   Did you do that?

23  A   Yes, I did.

24           [Exhibit 3 marked for identification]

1  Q    I show you a document which has been marked as

2       Exhibit 3, a fax cover sheet to Richard Heidlage

3       from you dated 2-18-03 with a three-page letter

4       following.  Can you identify it?

5  A    Yes, this is a reservation of rights letter that I

6       sent out to Mr. Reichlin and Mr. Heidlage,

7       February 18, 2003.

8  Q    Could you point me in the direction of what the

9       reservation of rights language is?

10 A    Do you know, do you mean where it says "reservation

11      of rights"?

12 Q    Yes.

13 A    It does not specifically say "reservation of

14      rights."

15 Q    What was the purpose of the letter?

16 A    To discuss available coverage.

17 Q    Did you ever send out another reservation of rights

18      letter?

19 A    I don't recall.

20 Q    This is the reservation of rights letter to which

21      you refer in your notes, this exhibit?

22 A    In the February 2003 note?

23 Q    Yes.

24 A    Yes.

Page 31

1  Q   Did you leave out the reservation of rights language

2      in the reservation of rights letter?

3              MR. CHANEY:  Objection to the form of the

4      question.

5  A   If you mean did I not state that this was a

6      reservation of rights letter, no, I did not.

7  Q   Was there some reason why you didn't?

8  A   Because the letter is clear that it is a coverage

9      letter, and I have in here that I'm discussing

10     coverage.

11 Q   In your mind is there any difference between a

12     letter that discusses coverage and a letter that

13     issues a reservation of rights?

14 A   A coverage letter and reservation of rights are

15     interchangeable in my mind.

16 Q   Let's turn to the entry that begins on page 2369.

17     Down at the bottom of the page there do you see

18     under the category Evaluation and the note dated

19     6-3-03, 3:03 p.m.?

20 A   Yes.

21 Q   Could you turn to the next page for the continuation

22     of that note.

23 A   Yes.

24 Q   Could you read into the record the paragraph that

Page 62

1       reserve accordingly.

2   Q   Let's turn to page 2379.  Do you see the entry under

3       the user name Robert D. Johnson, 6-18-04?

4   A   Yes.

5   Q   "I agree with Ellen's proposal to send to BRG to see

6       if we can intervene and file special interrogatories

7       on fault."  Do you see that?

8   A   Yes.

9   Q   What is that a reference to?

10  A   Mr. Johnson reviewed the file and a proposal from me

11      to send this to coverage counsel for opinion.

12  Q   Where is that proposal?

13  A   I don't know.  Perhaps I had a telephone

14      conversation with him.  I don't see anything here.

15  Q   Could you describe the proposal that you made?

16  A   We must have discussed sending this out to coverage

17      counsel for an opinion as to whether we could file

18      special interrogatories in the, I have been calling

19      it the malpractice case, to delineate wrongful acts

20      before and after the retroactive date.

21  Q   Did you seek advice on that question?

22              MR. CHANEY:  Don't respond to that

23      question to the extent that it seeks attorney-client

24      privilege communications.

Page 63

1                MR. BLUESTEIN:  I'm not asking for the

2    substantive communication, I'm simply asking whether

3    she sought advice on this question.  She brought it

4    up.

5                MR. CHANEY:  I think, I still think

6    that's invading the attorney-client privilege.

7                MR. BLUESTEIN:  Whether somebody sought

8    legal advice?

9                MR. CHANEY:  Not if you phrase it like

10    that, no.

11  Q  What's BRG?

12  A  I'm sorry, is that to me?

13  Q  Yes.

14  A  Bollinger, Ruberry & Garvey.

15  Q  That's Mr. Chaney's law firm?

16  A  Yes.

17  Q  Did you seek advice from Mr. Chaney's law firm to

18    see if you could intervene and file special

19    interrogatories on default?

20  A  Yes.

21  Q  Did you get legal advice from that law firm on that

22    question?

23                MR. CHANEY:  Don't answer that question.

24    I think that really is going past the point.

1    Q    Are you declining to answer the question?

2    A    Yes.

3    Q    Did you file special interrogatories on fault?

4    A    No.

5    Q    Did you take any action in the Florida malpractice

6         case to seek a determination relative to fault after

7         your retroactive date?

8    A    No.

9    Q    Why not?

10             MR. CHANEY:  Just bear in mind don't

11        reveal attorney-client privilege communications.

12   A    Well, that's my problem.  I believe answering that

13        question would pertain to attorney-client privilege

14        communications.

15   Q    This may be a useful point to get some clarity on

16        one issue.  Are you asserting a defense to our

17        counterclaim that the actions that we say were taken

18        or not taken were taken based upon advice of

19        counsel?

20             MR. CHANEY:  Are you asking whether or

21        not Westport has a defense to the counterclaim on

22        the basis of advice it sought, it obtained from BRG?

23             MR. BLUESTEIN:  Yes.

24             MR. CHANEY:  No.  I'm speaking for BRG

1       both or was affiliated with both Prince Lobel and

2       Kotin, Crabtree & Strong during the representation

3       of Zalis, but with respect to the allegations of

4       negligence further in the complaint, it appeared to

5       me that all of those allegations pertained

6       specifically when he was with Prince Lobel.

7   Q   The specific allegations described in the complaint

8       addressed a time period when he was with Prince

9       Lobel, is that your statement?

10  A   That's my reading of the complaint, yes.

11  Q   Let's turn to page 15.  Do you see Count I paragraph

12      46 there?

13  A   Yes, sir.

14  Q   Where it says "the defendants neglected reasonable

15      duties of care owed to the plaintiffs by among other

16      things," and then it lists series of failures,

17      alleged failures?

18  A   Yes, I see it.

19  Q   Does the terminology "among other things" weigh at

20      all in your judgment that there were no allegations

21      as to any negligence while Heidlage was at Kotin,

22      Crabtree & Strong?

23  A   Looking at that sentence alone, it could raise a

24      question.

Page 95

1   Q   And that's Mr. Zalis's opinion, is that right?

2   A   It's not an expert opinion.  That's his belief.

3   Q   It's his belief and you put great weight in that?

4            MR. CHANEY:  Objection to the form of the

5      question.

6   A   No, I don't put any more weight in that than I put

7      in the other facts that I have listed.  That is one

8      fact, one basis of many.

9   Q   You already agree that you have no information

10      except what Mr. Lowe provided you that Mr. Zalis is

11      not a truthful witness, is that right?

12   A   Yes.

13   Q   Would that tend to suggest that you should not put a

14      whole lot of weight in his testimony?

15   A   That's why that is not the whole basis of the DJ.

16   Q   As you just pointed out quite aptly, I think you

17      recognize Mr. Zalis is not an expert, is that right?

18   A   Yes.

19   Q   Have there been any expert reports filed in this

20      case to date?

21   A   No.

22   Q   In your experience does the opinion of a lay witness

23      carry more or less weight in a legal malpractice

24      case than an opinion of a legal expert?

1        MR. CHANEY:  Objection to the form of the

2    question.

3  Q  Opinion, not recitation of fact.

4  A  An opinion as to what?

5  Q  As to the nature of malpractice and when it may have

6    occurred.

7  A  Would you rephrase the question.  What you are

8    asking?

9  Q  Sure.  In your experience as a claims manager in the

10    legal malpractice cases, what's the role of opinion

11    evidence?

12        MR. CHANEY:  Objection to the form of the

13    question.

14  A  Opinion evidence sets forth the legal theory of the

15    case.

16  Q  And you don't know what opinion evidence will be

17    offered in this case, do you?

18  A  By Mr. Zalis?

19  Q  Sure.

20  A  No.

21  Q  You have no idea?

22  A  Not at this point, no.

23  Q  As far as you know, Mr. Zalis's expert could offer

24    opinion evidence that whatever it is alleged that

1    Mr. Heidlage did wrong occurred after May 1 of 2002

2    as well as before, couldn't he?

3              MR. CHANEY:  Objection to the form of the

4    question.

5  A    Yes.

6  Q    For example, an expert might say that after May 1,

7    2002, whatever it is Mr. Heidlage did wrong he might

8    have been able to remedy or fix after that date,

9    mightn't he?

10             MR. CHANEY:  Objection.  You are asking

11   for speculation.  Of course you are asking for

12   speculation.

13  A    I suppose an expert could say anything.

14  Q    An expert could say that in his opinion Mr. Heidlage

15   could have remedied whatever wrong or harm or

16   mistake he had done or created after May 1, 2002?

17             MR. CHANEY:  Objection, form of the

18   question.  You are asking for speculation.

19  A    Again an expert could say that.

20  Q    When you reached the conclusion that you reached

21   that in effect there was no coverage because the

22   error or omission occurred before May 1, 2002, you

23   did that by looking at the weight of all the

24   evidence that you have listed, isn't that right?

Page 98

1   A   In which my opinion that apparently there was no

2       coverage available, but we filed the DJ to get a

3       judicial determination to that fact and we continued

4       to defend in the interim.

5   Q   Are you saying you don't know whether there is

6       coverage or not?

7   A   That's for the court to decide.  That is why the DJ

8       has been filed.  My opinion is that based on all the

9       facts that we've already gone through that there is

10      not coverage available.

11          MR. BLUESTEIN:  This would be an

12      appropriate time to take a break while I read the

13      notes that you gave me.

14          [Recess]

15          [Exhibit 7 marked for identification]

16  Q   Ms. McCarthy, I'm going to show you a document which

17      has been marked as Exhibit 7 which is a series of

18      pages constituting as I understand it your notes

19      from and after the last date in Exhibit 1 up to the

20      present time, is that correct?

21  A   Yes.

22  Q*  I am going to direct your attention to just one

23      entry here which is the note dated 8-22-06 at

24      10:35 a.m.  Would you read your note to yourself and

Hennessey Corp d/b/a Robert H. Lange Co.
617-523-1874

Page 137

1   A   No, I don't think so.  I may have seen it.

2   Q   Would you know what letter Mr. Chaney is referring

3       to in the first of the e-mails would be?

4   A   No.

5   Q   If I told you it was Mr. Nathan's letter of the

6       29th, would that refresh your recollection?

7                   MR. CHANEY:   Objection to the form of the

8       question.

9   A   I'm not sure I ever saw this to know.

10  Q   If you come to the next two e-mails which are the

11      substantive parts, is there anything mentioned by

12      Mr. Chaney or me which you disagree with?

13  A   In the middle of the page where you say "we think

14      the actions already taken by Westport are actionable

15      or compensable," I'm not sure I agree with that.

16  Q   I can understand that.  Anything else?

17  A   I agree with everything else.

18  Q   One of the things I asked you earlier was there have

19      been some discussions about the possibility of some

20      sort of, "intervention" was the term used in your

21      notes, and that wasn't done.  And I had asked you

22      why it wasn't done.  I'd like to return to that now.

23  A   Okay.

24  Q   Are you able to tell me why that wasn't done?

Page 138

```
 1   A   Based on discussions with counsel.

 2   Q   What counsel?

 3   A   With Bollinger, Rubbery & Garvey.

 4   Q   Did you ever discuss this with Mr. Lowe?

 5   A   No.

 6   Q   Did you ever discuss with Mr. Lowe at all any

 7       vehicle that might exist in the Florida courts for

 8       getting a dispositive determination relative to the

 9       claims asserted to occur after May 1, 2002?

10   A   No.

11   Q   Why didn't you ever talk to Lowe about this issue?

12   A   I don't know.

13           MR. BLUESTEIN:  Excuse me.

14           [Pause]

15   Q   Do you know if anybody on behalf of Westport other

16       than yourself talked to Mr. Lowe about this idea of

17       intervention or some vehicle to get a determination

18       with regard to the claims asserted after May 1,

19       2002?

20   A   No.

21   Q   That is nobody from Westport did talk to Mr. Lowe?

22   A   Not to my knowledge.

23   Q   You certainly didn't request anybody to?

24   A   No.
```

Page 139

1   Q   Why not?

2                   MR. CHANEY:  Asked and answered.

3                   MR. BLUESTEIN:  I asked her whether she

4        had talked to Mr. Lowe, and I'm asking why didn't

5        she request anybody talk to Mr. Lowe.

6                   Can you answer the question?

7   A   I don't know.

8   Q   You mentioned that you have a practice when you take

9        notes, you incorporate them into the computer

10       program that you have and shred the notes?

11  A   Right.

12  Q   Since the beginning of this case have you shredded

13       any other notes or documents associated with this

14       case?

15  A   Sure.  I don't remember specifically, but my

16       practice is if I take a handwritten note, after I

17       input it into the computer, I put it in a pile for

18       shredding and at the end of the week or so when I

19       get a big pile, I dump it into the shredder.

20  Q   Would that be your correspondence?

21  A   No, all of our correspondence comes electronically.

22       We don't have a paper file, so everything comes in

23       and is imaged and scanned in the system.  Once it's

24       on there, I don't, you can't delete things that are

# EXHIBIT D

*Law Offices of*

## NATHAN & HAUSER

*A Partnership of Professional Associations*

Martin L. Nathan

Suite 700, Rivergate Plaza
444 Brickell Avenue
Miami, Florida 33131

June 29, 2006

Telephone: (305) 371-5588
Facsimile: (305) 371-2941

**VIA FACSIMILE: (312) 466-8001**

Robert A. Chaney, Esquire
Bollinger, Ruberry & Garvey
Citicorp Center
Suite 2300
500 West Madison Street
Chicago, Illinois 60661-2511

RE:    Westport Insurance Company v. Richard C. Heidlage, et al.
        Court No.: 05 CV 11780 NMG

Mr. Chaney:

Mr. Zalis is willing to accept the sum of $75,000 in settlement for any unasserted claims if Westport Insurance Company, Mr. Heidlage and Kotin Crabtree are willing to execute a Limited Release, along with Mr. Zalis, in which it is made as clear as possible:

    a)    The release by Mr. Zalis is limited to matters unasserted by Mr. Zalis and is limited to any actions of Mr. Heidlage and/or Kotin Crabtree that occurred subsequent to May 1st, 2002;

    b)    The settlement proposal and Limited Release were sought by Westport Insurance Company on behalf of Mr. Heidlage and Kotin Crabtree in connection with Westport's lawsuit against Richard Heidlage, et al.;

    c)    The Limited Release is expressly limited to matters occurring subsequent to May 1st, 2002 and nothing about said limited release should or may be interpreted as in any way affecting the claims presently in litigation under the style "Charles N. Zalis, et al. vs. Richard Heidlage, et al" or Mr. Heidlage's or Prince Lobel's responsibility to Mr. Zalis for actions occurring prior to May 1st, 2002.

If these terms are satisfactory, please prepare the Limited Release for our review.

Very truly yours,

Martin L. Nathan

29 JUN '06 AM 9:04



MLN/kpp

W02467

95%