UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **WESTPORT INSURANCE CORPORATION,** )<br>)<br>) | |
| Plaintiff ) | |
| ) | CIVIL ACTION No. |
| v. ) | 1:05-cv-11780 NMG |
| ) | |
| **RICHARD C. HEIDLAGE, et al.,** ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**WESTPORT'S OPPOSITION TO HEIDLAGE'S CROSS-MOTION FOR SUMMARY JUDGMENT ON WESTPORT'S COMPLAINT AND HEIDLAGE'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON HIS COUNTERCLAIMS**

Plaintiff Westport Insurance Corporation ("Westport") submits this Response to Heidlage's Cross-Motion for Summary Judgment on Westport's Complaint and Heidlage's Cross-Motion for Partial Summary Judgment on Heidlage's Counterclaims.

## INTRODUCTION

Great American issued a professional liability policy to Prince, Lobel, Glovsky & Tye, which is a defendant in the underlying legal malpractice lawsuit against Richard Heidlage. Heidlage was of counsel to Prince, Lobel, until May 1, 2002. On that date, Heidlage left Prince, Lobel and became of counsel to Kotin, Crabtree & Strong. Westport issued a policy to Kotin, Crabtree, which is not a defendant in the underlying lawsuit. The Westport policy contains a Limitation of Individual Prior Acts Endorsement that precludes coverage to Heidlage for any claim "based upon, arising out of or attributable to, or directly or indirectly resulting from an act, error, [or] omission . . .committed prior to May 1, 2002."

Westport contends that it does not have a duty to defend Heidlage in the underlying lawsuit because the Zalis plaintiffs' claim is based on alleged malpractice that occurred, if at all,

prior to May 1, 2002. This is apparent on the face of the underlying complaint. In its motion for summary judgment, Westport also demonstrated that orders and rulings in the Zalis v.Gersten lawsuit further establish that that coverage for the underlying plaintiffs' claim is precluded by the Individual Prior Acts Endorsement. Additionally, underlying plaintiff Charles Zalis has testified that the plaintiffs do not contend that Heidlage did anything wrong after May 1, 2002.

Heidlage's contention that Westport has a duty to defend boils down to two points. First, Heidlage argues that certain boilerplate phrases in the underlying complaint ("including but not limited to," and "by among other things") create doubt as to the scope of the malpractice claim. Courts, however, have rejected the notion that a defense obligation may be triggered by such boilerplate allegations. Second, Heidlage argues that the underlying plaintiffs' expert has not yet been heard from and could change the basis for the plaintiffs' claim. Since the filing of Heidlage's brief, the plaintiffs have disclosed the opinion of their legal expert. The expert's opinion confirms Zalis's testimony that the plaintiffs' claim is limited to alleged malpractice that occurred prior to May 1, 2002.

I.      **COUNTERSTATEMENT OF UNDISPUTED MATERIAL FACTS**

To avoid unnecessary repetition, Westport incorporates the statement of undisputed material facts included in its Memorandum of Law in Support of Motion for Summary Judgment. Westport submits these additional undisputed material facts.

    **A.     The Opinion of the Underlying Plaintiffs' Expert Confirms That Their Claim Against Heidlage is Based on Malpractice Allegedly Committed by Him When He Was of Counsel to Prince, Lobel**

1.      On October 11, 2006, the plaintiffs in the underlying lawsuit served their expert witness disclosures containing the following opinions of their legal expert, Scott Jay Feder:

Substance of Facts and Opinions – Mr. Feder will testify that Richard Heidlage, Esq. and Prince Lobel failed to meet the applicable standard of care regarding:

a. Designation of an expert witness or witnesses;

b. Preparation and filing of the Amended Complaint which deleted the breach of contract and unjust enrichment Counts; and

c. Failure to pursue the claim for preliminary relief after the case was removed from state court to federal court in early 2001.

Additionally, Mr. Feder will testify that:

a. Richard Brodsky, Esq. did not depart from the applicable standard of care under the circumstances, including his late involvement and the limited nature of his role until late April, 2002 when he became lead counsel;

b. Kotin Crabtree did not depart from the applicable standard of care under the circumstances;

c. Zemel Franklin, Esq. departed from the applicable standard of care; and

d. Mr. Feder will also testify that in his opinion the negligence of the Defendants was the proximate cause of damage to the Plaintiffs.

*Second Affidavit of Robert A. Chaney* ("*Second Chaney Aff.*"), ¶ 2, Exhibit A, pp.2-3.

**B.  Westport is Not Required to Obtain the Consent of Heidlage to Settle**

2. The Defense, Investigation and Settlement of Claims section of the Westport Policy provides that Westport must obtain the written consent of the Named Insured to settle a claim, not an individual attorney who qualifies as an insured under the definition of "Insured:"

II. DEFENSE, INVESTIGATION AND SETTLEMENT OF CLAIMS

As respects such insurance as is afforded by this COVERAGE UNIT, the Company shall:

* * *

3

  B. not settle any CLAIM without the written consent of the NAMED INSURED, which consent shall not be unreasonably withheld. If, however, the NAMED INSURED refuses to consent to a settlement recommended by the Company and elects to contest the CLAIM or continue legal proceedings in connection with such CLAIM, the Company's liability for the CLAIM shall not exceed the amount for which the CLAIM could have been settled, including CLAIMS EXPENSES incurred up to the date of such refusal, or the applicable limit of liability, whichever is less;

*Affidavit of Ellen A. McCarthy ("McCarthy Aff.")*, ¶¶ 3-4, Exhibit A.

  3.  The Policy defines "Named Insured" as follows;

    A.  "NAMED INSURED" WHENEVER USED IN THIS COVEAGE UNIT MEANS the person or entity listed in the Declarations and any PREDECESSOR FIRM thereof.

*McCarthy Aff.*, ¶¶ 3-4, Exhibit A.

  **C.  Heidlage is Being Defended by Independent Defense Counsel**

  4.  In the underlying lawsuit, Heidlage is being defended by independent defense counsel selected by him. Heidlage's defense is not being controlled by Westport.. *Second Chaney Aff.*, ¶ 3, Exhibit B, pp. 33-36, 38-40.

**II.  ARGUMENT**

  **A.  Boilerplate Allegations Cannot Create a Duty to Defend**

  In arguing that Westport has a duty to defend, Heidlage would have the Court ignore the very specific allegations of malpractice asserted against Heidlage and Great American's insured, Prince, Lobel, in paragraphs 43 and 46. For the reasons set forth in Westport's Memorandum of Law, these alleged acts of malpractice occurred, if at all, prior to May 1, 2002, when Heidlage was of counsel to Prince, Lobel. *See Westport's Mem. of Law*, pp. 12-16.

  Instead of focusing on the factual allegations that are actually included in the underlying complaint, Heidlage, in effect, argues that Westport has a duty to defend on the basis of

allegations that may have been left out of the complaint. Thus, Heidlage contends that there is a defense obligation because the inclusion of the boilerplate phrase "including but not limited to" before the specific acts of malpractice alleged in paragraph 43, and the similar phrase "by among other things" inserted before the malpractice alleged in paragraph 46, create doubt as to the scope of the Zalis plaintiffs' claim.

This argument runs counter to the rule that the "role of summary judgment is to pierce the boilerplate of the pleadings . . . ." *Quinn v. City of Boston*, 325 F.3d 18, 28 (1st Cir. 2003). Boilerplate phrases such as those relied on by Heidlage "do[ ] not operate as an independent request for relief of any sort, but rather serve[ ] a function similar to allowing amendment of a complaint to conform to the proofs adduced at trial." *Employers Ins. v. Bodi-Wachs Aviation Ins. Agency, Inc.*, 846 F.Supp. 677, 686 (N.D.Ill. 1994). Thus, boilerplate allegations cannot trigger coverage. *See 116 Commonwealth Condo. Trust v. Aetna Cas. & Sur. Co.*, 433 Mass. 373, 377, 742 N.E.2d 76 (2001) (court rejects argument that "inclusion of standard 'boilerplate' requests for attorney's fees" triggers coverage by converting a claim for equitable relief into an action for damages); *See also XXL of Ohio, Inc. v. City of Broadview Heights*, 341 F.Supp.2d 825, 841 (E.D.Ohio 2004) (an "amorphous prayer for 'such other relief as the court deems just and proper'" does not "potentially or arguably raise a claim within the policy's coverage or raise doubt as to whether some theory of recovery within the policy's coverage had been pleaded"); *Continental Ins. Co. v. Alperin, Inc.*, 1998 U.S.Dist. LEXIS 5929, *20 (E.D.Pa.) (court finds that a "boilerplate request for 'other and further relief' d[oes] not give rise to coverage"); *International Envirn. Corp. v. National Union Fire Ins. Co.*, 843 F.Supp. 1218, 1226 n.7 (N.D.Ill. 1993) ("The 'on or about' language is virtually boilerplate in complaints and does not serve to seriously raise doubts about the dates of the leaks at issue.").

Similarly, a duty to defend is not created on the basis that phrases such as "including but not limited to" or "by among other things" suggest that the plaintiffs could seek to amend the complaint to allege acts of malpractice within Westport's coverage. *See Kilgore v. Resumix, Inc.*, 1998 Mass.Super. LEXIS 170, *16 n.6 (the "mere possibility" that a complaint may be amended to bring a claim within coverage is "insufficient to create a duty to defend"); *See also Olympic Club v. Underwriters at Lloyd's*, 991 F.2d 497, 503 (9th Cir. 1993).

Heidlage also attempts to create a duty to defend by reading certain allegations in isolation from the remainder of the complaint. Heidlage points to paragraph 12, in which it is alleged that "[a]t all times relevant the defendant Heidlage was either acting as of counsel with defendant Prince Lobel or of counsel with the Massachusetts law firm of Kotin, Crabtree & Strong, P.A.[,]" and "[a]t all times material hereto Heidlage was acting as an agent, representative or employee of Prince Lobel and Kotin, Crabtree & Strong, P.A." According to Heidlage, plaintiffs' use of the phrases "at all times relevant" or "at all times material," means that some of the alleged malpractice occurred when Heidlage was associated with Kotin, Crabtree. This ignores plaintiffs' allegation that Heidlage's alleged malpractice adversely impacted Zalis's ability to prove liability and damages, leading Zalis to agree to a disadvantageous settlement during trial in August 2002, at a time when Heidlage was of counsel to Kotin Crabtree.[1] *Complaint*, Exhibit A, ¶ 41. As plaintiffs' damages, if any, were incurred in August 2002, the period when Heidlage was of counsel to Kotin, Crabtree is certainly "relevant" and "material" to the plaintiffs' claim.

The remainder of the underlying complaint, however, makes it clear that the plaintiffs contend that Heidlage's malpractice occurred prior to May 1, 2002, when he was of counsel to Prince, Lobel. Each of the specific acts of malpractice alleged against Heidlage is also alleged

---

[1] / In paragraph 41, the trial is erroneously alleged as taking place in August 2001.

against Prince, Lobel. *Complaint*, Exhibit A, ¶ 43. Count I, the only count asserted against Heidlage, is also asserted against Prince, Lobel. Thus, the plaintiffs contend that Prince, Lobel is liable for each of the alleged acts of malpractice of Heidlage. It necessarily follows that the plaintiffs do not contend that Heidlage committed these acts of malpractice when he was associated with Kotin, Crabtree, which the plaintiffs did not sue.

Heidlage is covered under the Great American policy, but not the Westport policy, for acts, errors or omissions committed while he was of counsel to Prince, Lobel. Therefore, "the allegations in the underlying complaint lie expressly outside the [Westport] policy coverage and its purpose," and Great American has the sole obligation to defend Heidlage. *See Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co.*, 439 Mass. 387, 394-95, 788 N.E.2d 522, 529 (2003), *citing Timpson v. Transamerica Ins. Co.*, 41 Mass.App.Ct. 344, 347, 669 N.E.2d 1092 (1996). Great American, in fact, has agreed that any alleged malpractice on the part of Heidlage occurred while he was associated with Prince, Lobel. *McCarthy Dep.*, pp. 114-115.

    B.    **The Underlying Plaintiffs Have Acknowledged That Their Claim is Not Based on Any Alleged Malpractice of Heidlage When He Was Of Counsel to Kotin, Crabtree**

While Westport contends that the allegations on the face of the of the underlying complaint do not trigger a duty to defend, the undisputed facts also establish that the plaintiffs do not contend that their claim is based on malpractice allegedly committed by Heidlage when he was of counsel to Kotin, Crabtree. Contrary to Heidlage's assertion, Westport is not arguing the merits of the underlying claim, but is rather following the recommended course under Massachusetts law in presenting facts to show that the underlying claim is not covered. *See National Cas. Co. v. Bennett*, 1998 Mass.Super. LEXIS 446. *5-6 ("An insurance company which contests a duty to defend should bring a declaratory judgment action . . . and seek to

determine facts which show that the claim is not covered."). As the evidence presented by Westport does not go to the merits of the underlying plaintiffs' claims, plaintiffs' reliance on *Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka, L.L.P.*, 267 F.supp.2d 601 (E.D.Tex. 2003), is misplaced.

In its support of its motion for summary judgment, Westport cited the court orders and rulings of record in the Zalis v. Gersten lawsuit that relating to the acts of malpractice alleged against Heidlage and Prince, Lobel. *Westport's Mem.*, p. 8-10. Heidlage does not dispute that these orders and rulings establish that the underlying plaintiffs' claim against Heidlage is based on acts, errors or omissions that occurred, if at all, prior to May 1, 2002, and that nothing could have been done after that date to remedy the alleged malpractice.

Westport also referred to the deposition testimony of underlying plaintiff Charles Zalis that Heidlage did nothing wrong after May 1, 2002, with respect to his representation of the plaintiffs in the Zalis v. Gersten lawsuit. *Westport's Mem.*, p. 10. Contrary to Heidlage's assertion, Westport did not rely on Zalis's testimony to establish that no malpractice alleged in the underlying complaint could have occurred after May 1, 2002, but rather that the underlying plaintiffs do not contend that Heidlage committed malpractice after that date.

Heidlage argues that Zalis's testimony is irrelevant because the plaintiffs' expert could contend that Heidlage committed malpractice after May 1, 2002. The underlying plaintiffs have now disclosed the opinions of their legal expert, Scott Jay Feder, on which they will rely. Mr. Feder will testify that (1) "Kotin Crabtree [Westport's insured] did not depart from the applicable standard of care;" and that (2) "Richard Brodsky, Esq. did not depart from the applicable standard of care under the circumstances, including his late involvement and the limited nature of his role until late April, 2002 when he became lead counsel."

Feder's first opinion is significant because the plaintiffs allege in the underlying complaint that Heidlage was "acting as an agent, representative or employee of Prince, Lobel and Kotin Crabteee & Strong, P.A. with the latter's full knowledge, approval and participation." *Complaint*, Exhibit A, ¶ 12. As Kotin Crabtree would therefore be vicariously liable for the alleged malpractice of Heidlage, it follows from Feder's opinion that that the plaintiffs do not contend that Heidlage departed from the standard when he was associated with Kotin, Crabtree beginning on May 1, 2002.

Feder's second opinion confirms this conclusion, as he states that Richard Brodsky, who became lead counsel in late April 2002, did not depart from the applicable standard of care due to "his late involvement." As the plaintiffs contend that lead counsel Brodsky could done have nothing after April 2002 to remedy the alleged malpractice allegedly previously committed by Heidlage and Prince, Lobel, it follows that the plaintiffs do not contend that Heidlage could have done anything on or after May 1, 2002 to reverse the alleged malpractice.

Feder also identifies the alleged acts of malpractice of Heidlage and Prince, Lobel that he will testify to in support of his opinions. With the exception of the omission of the alleged failure to name NAUM as a defendant, and the alleged inadequate discovery efforts, the acts indentified by Feder are identical to those alleged in paragraphs 43 and 46 of the underlying complaint.

Heidlage's assertion that Westport's contention in this action is contradicted by its unsuccessful effort to enter into a partial settlement is, to say the least, disingenuous.[2] If insurers

---

[2] / Although irrelevant to his Motion for Partial Summary Judgment, Heidlage mischaracterizes Westport's efforts to enter into the partial settlement as being "unauthorized." The policy requires the consent of the Named Insured, not an individual attorney employed by, or of counsel to, the Named Insured. Westport obtained the consent of Kotin, Crabtree. Westport also contacted Heidlage's independent defense counsel, who did not object to the proposed partial settlement. Heidlage's coverage counsel was made aware of the settlement discussions, and ultimately suggested that Heidlage had no objection, in principal, to the proposed partial settlement. *See Westport's Answer to Heidlage's Interrogatory No. 16 (Affidavit of Richard C. Heidlage*, Exhibit B).

never attempted to settle claims that they believe are not covered or are without merit, the trial calendars of courts would be hopelessly deluged with cases. Additionally, Heidlage is well aware that the amount offered by Westport was a fraction of Westport's share of future defense costs, and a tiny fraction of the underlying plaintiffs' alleged damages.[3]

The Limitation of Individual Prior Acts Endorsement does not require that all malpractice occur prior to May 1, 2002, for the Endorsement to preclude coverage for a claim. Rather, the claim must be "based upon, arising out of or attributable to, or directly or indirectly resulting from an act, error, [or] omission. . .committed prior to May 1, 2002. Under Massachusetts law, the phrase "arising out of" denotes a greater range of causation than that encompassed by proximate cause under tort law. *See Rischitelli v. Safety Ins. Co.*, 423 Mass. 703, 704 (Mass. 1996); *See also Bagley v. Monticello Ins. Co.*, 430 Mass. 454, 457 (1999), *citing United Nat'l Ins. Co. v. Parish*, 48 Mass.App.Ct. 67, 70-71 (1999) (the phrase "arising out of". . . "suggest[s] a causation more analogous to 'but for' causation"). Thus, even were it assumed that the plaintiffs contend, which they do not, that Heidlage could have done something on or after May 1, 2002, to remedy the malpractice allegedly committed prior to May 1, 2002, coverage would nevertheless be precluded because the plaintiffs' claim would "aris[e] out of] acts, error or omissions that occurred prior to May 1, 2002.

Additionally, the Limitation of Individual Prior Acts Endorsement is not limited to claims "arising out of" acts, errors or omissions occurring prior to May 1, 2002, but also applies when the claim "directly or indirectly result[s] from," such acts, errors or omissions. This broadens the provision even more. *See Allmerica Financial Corp. v. Certain Underwriters at Lloyd's*, 2004

---

[3] / Plaintiff's alleged damages based on a claimed 50% interest in the purported $6,250,000 fair market value of the Gersten-Zalis companies as established by plaintiffs' expert CPA, George R. Levie, are well within Great American's $10,000,000 policy limit. *Second Chaney Aff.*, Exhibit A, pp. 3-4.

Mass.Super. LEXIS, *19 (exclusion employing terms "directly or indirectly arising out of, or in any way involving," is "broad in its application" and "excludes claims that are connected in some way to" the subject matter of the exclusion); *See also Valassis Communications, Inc. v. Aetna Cas. & Sur. Co.*, 97 F.3d 870 (6th Cir. 1996); *Zunenshine v. Executive Risk Indem.*, 1998 WL 483475 (S.D.N.Y. 1998); *Danis v. Great American Ins. Co.*, 159 Ohio App.3d 119, 823 N.E.2d 59 (2004); *Monroe County v. International Ins. co.*, 609 N.W.2d 522 (Iowa 2000).

In sum, as the undisputed facts establish that the underlying plaintiffs' claim against Heidlage is "based upon, arising out of or attributable to, or directly or indirectly resulting from an act, error, [or] omission . . .committed prior to May 1, 2002, the Limitation of Individual Prior Acts Endorsement precludes coverage for the underlying lawsuit. Accordingly, Westport should be permitted to withdraw from the shared payment of Heidlage's defense costs. *See Conway Chevrolet-Buick, Inc. v. Travelers Indem. Co.*, 136 F.3d 210, 213-214 (1st Cir. 1998).

### C.   Westport Has No Duty to Indemnify

Heidlage cites *John Beaudette, Inc. v. Sentry Ins.*, 94 F.Supp.2d 77 (D.Mass. 1999), and case law from other jurisdictions for the proposition that a ruling on the duty to indemnify must await the outcome of the underlying lawsuit. In none of the cited cases, however, did the court hold that the insurer had no duty to defend. When the insurer does not have a duty to defend, as here, it "necessarily follows" that the insurer can have no duty to indemnify. *Bagley v. Monticello Ins. Co.*, 430 Mass. 454, 720 N.E.2d 813, 817 (Mass. 1999); *See also Liberty Mut. Ins. Co. v. Metropolitan Life Ins. Co.*, 260 F.3d 54, 62 (1st Cir. 2001); *Transamerica Ins. Co. v. KMS Patriots, L.P.*, 52 Mass.App.Ct. 189, 752 N.E.2d 777, 783 (2001). Accordingly, this Court should also find that Westport has no duty to indemnify Heidlage in the underlying lawsuit.

## CONCLUSION

For the reasons stated above and in Westport's Memorandum of law in Support of Motion for Summary Judgment, Westport respectfully requests that the Court deny Heidlage's Cross-Motion for Summary Judgment on Westport's Complaint and Heidlage's Cross-Motion for Partial Summary Judgment on Heidlage's Counterclaims, and that the Court enter judgment in favor of Westport and against Heidlage and Kotin, Crabtree & Strong, LLP on Westport's Complaint for Declaratory Judgment, and in favor of Westport and against Heidlage on Heidlage's Counterclaim. Westport further requests that the Court declare that Westport has no duty to defend or indemnify Heidlage in the underlying legal malpractice action, and that Westport may withdraw from the defense of Heidlage undertaken jointly with Great American Insurance Company.

Respectfully submitted,

Westport Insurance Corporation

By: /s/sbolotin
    One of its Attorneys

Steven J. Bolotin
BBO #564085
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210
(617) 439-7500

Jeffrey A. Goldwater
George J. Manos
Robert A. Chaney
Bollinger, Ruberry& Garvey
500 W. Madison St.
Suite 2300
Chicago, Illinois 60661
(312) 466-800
(312) 466-8001 (fax)

**CERTIFICATE OF SERVICE**

    I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on November 13, 2006.

                                    /s/sbolotin
                                  Steven J. Bolotin

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WESTPORT INSURANCE CORPORATION, )<br>)<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>RICHARD C. HEIDLAGE, et al., )<br>)<br>Defendants. )<br>) | CIVIL ACTION No.<br>1:05-cv-11780 NMG |

## SECOND AFFIDAVIT OF ROBERT A. CHANEY

I, Robert A. Chaney, on oath depose and state that I have personal knowledge of the matters set forth below, and if called as a witness, would testify as follows:

1. I am a partner with the law firm of Bollinger, Ruberrry & Garvey, and one of the attorneys for Westport Insurance Corporation in this lawsuit.

2. Attached hereto is a true and accurate copy of Plaintiffs' Expert Witness Disclosures, less exhibits, served on October 11, 2006, in *Charles N. Zalis, et al., Plaintiffs vs. Kaye Scholer, LLP, et al., Defendants*, Case No. 03-11784 CA 30, in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade county, Florida.

FURTHER AFFIANT SAYETH NOT.

_____
Robert A. Chaney

Subscribed and Sworn
before me this 13th day
of November, 2006.

_____
Notary Public

OFFICIAL SEAL
ESTHER ANN IANNINO
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:09/15/09

Oct 11 2006 15:37    BALES & SOMMERS, P.A.    3053729008    p.2

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 03-011784 CA 30

CHARLES N. ZALIS, individually, and
CHARLES N. ZALIS in his capacity as
General Partner of the CHARLES N. ZALIS
FAMILY LIMITED PARTNERSHIP, a
Virginia limited partnership, and NORTH
AMERICAN UNDERWRITING
MANAGERS, INC., a Florida corporation,

    Plaintiffs,

vs.

KAYE SCHOLER, LLP, a New York limited liability
partnership, BROAD & CASSEL, P.A., a Florida
professional association, FRANKLIN L. ZEMEL,
P.A., a Florida professional association;
PRINCE LOBEL GLOVSKY & TYE, LLP,
a Massachusetts limited liability partnership;
MANUEL KUSHNER, ESQ., RICHARD
HEIDLAGE, ESQ., FRANKLIN L. ZEMEL, ESQ.,
individually,

    Defendants.
_____/

## PLAINTIFFS' EXPERT WITNESS DISCLOSURES

The Plaintiffs, by and through undersigned counsel, hereby provide their expert witness disclosures pursuant to the Court's Order Setting Trial and pursuant to Rule 1.280 (4) (A) of the Florida Rules of Civil Procedure.

RECEIVED
OCT 1 2 2006
By BIRDIE

1

BALES SOMMERS & KLEIN, P.A.
ONE BISCAYNE TOWER ♦ 2 SOUTH BISCAYNE BOULEVARD ♦ SUITE 1881 ♦ MIAMI, FLORIDA 33131
TELEPHONE (305) 372-1200 ♦ FACSIMILE (305) 372-9008

1. <u>Plaintiff's Expert</u> —  Scott Jay Feder, Esq.
   4649 Ponce de Leon Boulevard, Suite 402
   Coral Gables, Florida 33146

<u>Subject Matter</u>

   a. The nature and scope of the representation undertaken by the Defendants Richard Heidlage, Esq. and Prince Lobel;

   b. The nature and scope of the representation provided by the Defendant Richard Brodsky, Esq.;

   c. The applicable standard of care;

   d. Whether the Defendants Richard Heidlage, Esq. and Prince Lobel, and Richard Brodsky, Esq. failed to adhere to the applicable standard of care;

   e. Whether the negligence of the Defendants proximately caused damage to the Plaintiffs.

<u>Substance of Facts and Opinions</u> — Mr. Feder will testify that Richard Heidlage, Esq. and Prince Lobel failed to meet the applicable standard of care regarding:

   a. Designation of an expert witness or witnesses;

   b. Preparation and filing of the Amended Complaint which deleted the breach of contract and unjust enrichment Counts; and

   c. Failure to pursue the claim for preliminary relief after the case was removed from state court to federal court in early 2001.

Additionally, Mr. Feder will testify that:

   a. Richard Brodsky, Esq. did not depart from the applicable standard of care under the circumstances, including his late involvement and the limited nature of his

role until late April, 2002 when he became lead counsel;

b. Kotin Crabtree did not depart from the applicable standard of care under the circumstances;

c. Zemel Franklin, Esq. departed from the applicable standard of care; and

d. Mr. Feder will also testify that in his opinion the negligence of the Defendants was the proximate cause of damage to the Plaintiffs.

**Summary Of Grounds For Opinions**

Review of pleadings, correspondence, depositions, and deposition exhibits in the underlying case and in this case, conferences with Richard M. Bales, Jr. Esq., Martin Nathan, Esq., and Charles Zalis, review of applicable law, and experience as an attorney and as an expert witness.

**Compensation For Services** – See Fee Agreement attached hereto as Exhibit A.

**General Litigation Experience** – See Curriculum Vitae attached hereto as Exhibit B. Mr. Feder estimates that in any given year approximately 2-10% of his revenue is derived from work performed as an expert witness.

2. The Plaintiff also intends to call Monte Kane, CPA and George R. Levie, CPA/ABV as expert witnesses at trial. The opinions of Mr. Kane and Mr. Levie will be based on their background, training, experience, interviews with Charles Zalis and conferences with Richard M. Bales, Jr., Esq. and Martin Nathan, Esq., depositions, and deposition exhibits provided to them. In the event that liability is determined, Messrs. Kane and Levie are expected to testify concerning damages suffered by the Plaintiffs. Mr. Levie will testify concerning the Fair Market value of 100% of the Gersten-Zalis companies as of January 1, 2001 for the purpose of obtaining an indicated value of the claimed 50% interest of Charles Zalis in the companies. It

3

is anticipated that Mr. Levie will testify that in his opinion the estimated Fair Market Value of the Companies as of January 1, 2001 was $6,250,000.

Mr. Levie has considered asset, income, market and other valuation approaches and has ascertained that the market approach is the approach applicable in this case. In reaching his opinion, Mr. Levie examined 11 completed sales of Companies believed to be comparable to the Gersten-Zalis Companies. Mr. Levie developed ratios/multiples that The Bisys Groups, Inc., paid for the Companies. Mr. Levie compared the Price to Revenues multiples and the Price to EBITA multiples to which he afforded equal weight. Mr. Levie's educational background, experience, etc. are set forth in the Curriculum Vitae attached hereto as Exhibit C.

Mr. Kane will render an opinion as to whether Alan Gersten received draws and benefits in excess of Charles Zalis. It is anticipated that Monte Kane will testify that based upon his review of Quickbook Records of all of the companies, which Mr. Kane believes are the same records utilized by Mr. Jenkins, and after analyzing Mr. Jenkins' Report, and utilizing certain representations made by Mr. Zalis, Mr. Gersten received draws and benefits in excess of Mr. Zalis in the approximate amount of $370,000 (the "equalization amount"). It is also anticipated that Mr. Kane will testify concerning numerous errors and deficiencies by Mr. Jenkins in the conclusions expressed in his Report and in the preparation of his Report, including failure to follow appropriate procedures and failure to obtain sufficient relevant supporting data.

Mr. Kane's educational background, experience, etc. are set forth in the Curriculum Vitae attached hereto as attached hereto as Exhibit D.

Attached hereto as Exhibits E and F are copies of the fee agreements relating to Kane & Company and George Levie.

The Plaintiff reserves the right to supplement and or modify this Expert Witness Disclosure in the event that new or additional information should be discovered.

BALES SOMMERS & KLEIN, P.A.
One Biscayne Tower
2 South Biscayne Boulevard, Suite 1881
Miami, Florida 33131
(305) 372-1200 Telephone
(305) 372-9008 Fax
email: rbalesjr@attglobal.net

By: _____
Richard M. Bales, Jr.
Florida Bar No. 247952

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by United States Mail and Facsimile on this 11th day of October, 2006 to:

Jeffrey D. Swartz, Esq.
Joseph H. Lowe, Esq.
Stephens, Lynn, Klein, LaCava,
Hoffman & Puya, P.A.
9130 S. Dadeland Blvd.
Penthouse II, Datran II
Miami, Florida 33157

Joseph W. Beasley, Esq.
Josephs, Jack & Miranda, P.A.
2950 S.W. 27th Avenue, Suite 100
Miami, Florida 33133

By: _____
Richard M. Bales, Jr.