UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| WESTPORT INSURANCE CORPORATION, | ) ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| v. | ) ) | 1:05-cv-11780 DPW |
| RICHARD C. HEIDLAGE, KOTIN, CRABTREE AND STRONG, LLP, AND NORTH AMERICAN UNDERWRITING MANAGERS, INC., | ) ) ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANT RICHARD C. HEIDLAGE'S REPLY TO WESTPORT INSURANCE
CORPORATION'S OPPOSITION TO HEIDLAGE'S CROSS-MOTION FOR
SUMMARY JUDGMENT ON WESTPORT'S CLAIMS AND PARTIAL SUMMARY
JUDGMENT ON HIS COUNTERCLAIMS**

Defendant Richard C. Heidlage ("Heidlage") submits this reply memorandum in

opposition to Plaintiff Westport Insurance Corporation's ("Westport") Motion for Summary

Judgment on its Complaint for Declaratory Judgment and on the Counterclaim of Richard C.

Heidlage and in support of his Cross-Motion for Summary Judgment on Westport's Complaint

for Declaratory Judgment and for partial summary judgment on his counterclaims to establish his

right to attorneys' fees, costs and other expenses of this litigation.

## ARGUMENT

I.  **UNDER MASSACHUSETTS LAW AN INSURER'S DUTY TO DEFEND IS DETERMINED BY WHAT CLAIMS *MAY POSSIBLY* BE PROVED WITHIN THE GENERAL ALLEGATIONS OF THE COMPLAINT, NOT BY FACTS ULTIMATELY PROVED AT TRIAL**

   A.  *Under Massachusetts law, the Ultimate Proof of a Case is Irrelevant in Determining the Insurer's Duty to Defend*

One of the plaintiff's experts in the underlying suit has opined that Kotin, Crabtree & Strong, the firm with which Heidlage was Of Counsel after May 1, 2002, did not commit any malpractice. Westport argues that this proffered opinion conclusively establishes that Heidlage did not commit any malpractice after that date and thus Westport is relieved of its duty to defend. Such evidence produced after three years of litigation is, however, patently irrelevant to the issue of Westport's duty to defend. "The obligation of an insurer to defend is not, and cannot be, determined by reference to the facts proven at trial." *Boston Symphony Orchestra Inc., v. Commercial Union Ins. Co.*, 406 Mass. 7, 11, 545 N.E.2d 1156, 1158 (1989). "It is not the belief of any party as to the eventual outcome of a suit that determines a duty to defend, but rather whether the complaint is susceptible of an interpretation that it threatens an insured interest." *Premier Homes, Inc. v. Lawyer's Title Ins. Corp.*, 76 F. Supp.2d 110, 117 (Mass. 1999).

Under settled Massachusetts law, an insurer's duty to defend in a particular case is determined by comparing the allegations in the complaint to the policy provisions. *See Simplex Technologies, Inc. v. Liberty Mut. Ins. Co.*, 429 Mass. 196, 197- 98, 706 N.E.2d 1135, 1136 (1999). "[I]f the allegations of the complaint are 'reasonably susceptible' of an interpretation that they state or adumbrate[1] a claim covered by the policy terms, the insurer must undertake the

---

[1].  The term "adumbrate" means "'to give a sketchy representation of; outline broadly, omitting details (there was only time to *adumbrate* the plan)' or 'to suggest, indicate, or disclose partially and with a purposeful avoidance of precision (the meaning of the poem is *adumbrated* in its

defense." *Continental Cas. Co. v. Gilbane Bldg. Co.*, 391 Mass. 143, 146, 461 N.E.2d 209

(1984)(citing *Vappi & Co., Inc. v. Aetna Cas. & Sur. Co.*, 348 Mass. 427, 431, 204 N.E.2d 273,

275 - 76 (1965). As the First Circuit has noted, under this test, the process is to determine only

what claims "may be proved" within the allegations of the complaint:

> [T]he question of the initial duty of a liability insurer to defend third-party actions against
> the insured is decided by matching the third-party complaint with the policy provisions:
> if the allegations of the complaint are "reasonably susceptible" of an interpretation that
> they state or adumbrate a claim covered by the policy terms, the insurer must undertake
> the defense.... Otherwise stated, the process is one of envisaging what kinds of losses
> *may be proved as lying within the range of allegations of the complaint,* and then seeing
> whether any such loss fits the expectation of protective insurance reasonably generated
> by the terms of the policy.

*Open Software Foundation, Inc. v. U.S. Fidelity and Guar. Co.*, 307 F.3d 11, 15 (1st Cir.

2002)(emphasis added; citations omitted).

B.    ***The Complaint Need Only Show, Through General Allegations, the Possibility
      That a Covered Claim may be Asserted and Any Uncertainty Must be Resolved
      in Favor of the Insured***

As this Court has noted, to create a duty to defend, "the underlying complaint need only

show, through general allegations, a *possibility* that the liability claim falls within the insurance

coverage. There is no requirement that the facts alleged in the complaint specifically and

unequivocally make out a claim within the coverage." *Dash v. Chicago Insurance Company*,

2004 WL 1932760 at *7 (D. Mass. 2004)(emphasis in original)(quoting *SCA Servs., Inc. v.*

*Transp. Ins. Co.*, 419 Mass. 528, 532, 646 N.E.2d 394 (1995); see *also Premier Homes, Inc. v.*

*Lawyers Title Ins. Corp.*, 76 F. Supp.2d at 115. Any uncertainty as to whether the pleadings

include or are reasonably susceptible to an interpretation that they state a claim covered by the

policy terms must be resolved in favor of the insured and the insurer must undertake the defense.

title).'" *Open Software Foundation, Inc. v. U.S. Fidelity and Guar. Co.*, 307 F.3d 11, 14 n. 4 (1st
Cir. 2002).

*Continental Casualty Co. v. Gilbane Bldg. Co.*, 391 Mass. 143, 146 - 47, 461 N.E.2d 209, 212

(1984); *Sterilite Corp. v. Continental Casualty Co.*, 17 Mass.App.Ct. 316, 318, 458 N.E.2d 338,

340 - 341 (1983).

## II.    THE ALLEGATIONS OF THE COMPLAINT ARE REASONABLY SUSCEPTIBLE OF AN INTERPRETATION THAT THEY STATE A CLAIM WITHIN THE POLICY AND THE CASES CITED BY WESTPORT ARE NEITHER CONTROLLING NOR TO THE CONTRARY

### A.    *The Allegations of the Complaint are Reasonably Susceptible of an Interpretation That They State or Adumbrate a Claim Covered by the Policy Terms*

In each instance in which the Zalis Second Amended Complaint lists the various acts of

negligence which are alleged against Heidlage, it includes the phrase "including but not limited

to the following" or a similar phrase.  Zalis Second Amended Complaint, ¶¶ 43, 46.  In *Bagley v.*

*Monticello Ins. Co.*  430 Mass. 454, 457, 720 N.E.2d 813, 816 (Mass.1999), a case relied on by

Westport in its memorandum, the Court held that this very phrase, "including but not limited to"

is "general and non-exclusive."  The Court further held that, by including such language, the

insurance policy exclusion which was at issue, when "read as a whole, by its clear and

unambiguous language, does not limit its application only to the acts of those who are expressly

insured, but rather operates all inclusively."  *Id.*  Likewise, paragraph 46 of the Zalis Complaint

states "the defendants neglected reasonable duties of care owed to the plaintiffs by *among other*

*things . . .* " and then lists a series of alleged failures.  Paragraph 7 alleges that the litigation with

respect to which the alleged malpractice occurred "was maintained from January 2001 through

August 2002 . . . ."  Paragraph 12 alleges that "[a]t all times relevant the defendant Heidlage was

either acting as of counsel with defendant Prince Lobel or of counsel with the Massachusetts law

firm of Kotin, Crabtree & Strong, PA" and "[a]t all times material hereto Heidlage was acting as

an agent, representative or employee of Prince Lobel and Kotin, Crabtree & Strong, PA."  The

only time Heidlage was associated with Kotin, Crabtree & Strong, PA was after May 1, 2002.

Westport Complaint, ¶ 24; Heidlage Affidavit, ¶ 8. The allegations of the Second Amended

Complaint are accordingly "reasonably susceptible of an interpretation that they allege ongoing

professional malpractice" subsequent to May 1, 2002, thus stating a claim covered by the policy.

Westport in effect admits that the claimed instances of malpractice that Zalis will attempt

to prove at trial in the underlying action are broader than the specific acts alleged in the

underlying complaint. In describing the opinion of the underlying plaintiffs' expert witness,

Westport states:

> [The expert] also identifies the alleged acts of malpractice of Heidlage and Prince,
> Lobel that he will testify to in support of his opinions. *With the exception of the*
> *omission of the alleged failure to name NAUM as a defendant, and the alleged*
> *inadequate discovery efforts,* the acts identified by [the expert] are identical to
> those alleged in paragraphs 43 and 46 of the underlying complaint.

Westport's Opposition to Heidlage's Cross-Motion for Summary Judgment on Westport's

Compliant and Heidlage's Motion for Partial Summary Judgment on His Counterclaims

("Westport's Opposition") at 9. (Emphasis added.)

Any objection that evidence with regard to these additional allegations should be

excluded at trial because they were not specifically itemized in the underlying complaint would

be frivolous. Thus the general allegations, denigrated by Westport as "boilerplate," are certainly

broad enough to encompass such additional claims that are not specifically listed but that fall

within the relevant time period.

B.    ***The Cases Cited by Westport are Neither Controlling Nor to the Contrary***

      1.    *The General Allegations of the Zalis Complaint are Not the Kind of*
          *"Boilerplate" Considered by the Cases Cited by Westport and May be the*
          *Basis for the Duty to Defend*

Westport argues that the general allegations referred to above, which it labels "boilerplate," cannot be the basis for a determination of a duty to defend. Westport's Opposition at 5 - 6. This argument is without merit and unsupported by the cases cited. First, the allegations referred to above are not the kind of "boilerplate" terms addressed by the cases cited by Westport. The cases cited consider claims for costs and attorney fees or requests for "such other and further relief as the court deems just and proper" which are unrelated to the factual allegations of the Complaint. Second, the cases cited are at best minimally relevant and are generally not controlling for this Court. Finally, the cited cases do not, as Westport argues, stand for the proposition that general allegations could never be the basis of a duty to defend. Rather, these cases stand for the proposition that where general allegations are expressly outside the scope of policy coverage, such claims cannot form the basis of a duty to defend.

Westport cites a decision of the United States District Court for the Northern District of Illinois, *Employers Ins. v. Bodi-Wachs Aviation Ins. Agency, Inc.*, 846 F. Supp. 677 (N.D. Ill. 1994), construing Illinois law. There the issue was whether a declaratory judgment complaint against a third party, in which the defendant insurer Bodi-Wachs had been named only for purposes of discovery and against whom no allegations of liability had been made, constituted a "claim" for "damages" under the defined terms of an insurance policy requiring notice to the insurer. *Id.* The court held that it did not and that the complaint's prayer for "such other and further relief as the court deems fit and proper" was not a claim for damages where no other factual allegations of the complaint supported such a claim. *Id.* at 686 - 87.

In a previous opinion of the same court, *International Environ. Corp. v. National Union Fire Ins. Co.*, 843 F. Supp. 1218 (N.D. Ill. 1993), the court considered the import of the phrase "on or about" in conjunction with specific dates on which the complaint alleged that property

damage due to pipe leakage had occurred.  The court held only that the use of the phrase "on or about" with reference to specific dates did not seriously raise doubts about the dates of the leaks and did not trigger coverage where the allegations of the complaint "make clear that this damage occurred prior to the inception of Hartford's policy." *Id.* at 1226.  No pipe leaks were alleged to have occurred after a date prior to the inception of the coverage period.  *Id.*

*XXL of Ohio v. City of Broadview Heights*, 341 F. Supp.2d 825 (N.D. Ohio 2004) was an action for declaratory judgment and injunctive relief in which the court found that all claims under the substantive law pled in the complaint were excluded by the express terms of the policy.  There, the claimant sought compensation for attorney's fees and costs; however, the policy "clearly and unmistakably excluded coverage for any fees, costs or expenses." *Id.* at 841.  In this narrow context, the court held that it is not "inclined to find that the amorphous prayer for 'such other relief as the court deems just and proper' is sufficient to potentially or arguably raise a claim within the policy's coverage . . . ." *Id.* at 841.

The Massachusetts decision Westport cites on page 5 of its memorandum similarly involves a case where the claims at issue were expressly precluded by the terms of the policy itself.  In *116 Commonwealth Condo. Trust v. Aetna Cas. & Sur. Co.*, 433 Mass. 373, 742 N.E.2d 76 (2001) the issue was whether a complaint for equitable relief was a suit for "damages" within the terms of an insurance policy.  There the policy language stated that "[t]his insurance does not apply to any claim…for anything other than money damages."  433 Mass. at 377, 742 N.E.2d at 79.  The court held that the equity action seeking an injunction was clearly not a suit for damages.  *Id.*  The opinion specifically notes that a "complaint for purely equitable relief that includes counts seeking costs or attorney's fees is not a complaint seeking money damages" and a "boilerplate" request for attorney fees did not bring the claim within the scope of coverage.  *Id.*

at n.4. Significantly, the reference to "boilerplate" cited by Westport is qualified by the phrase "in cases when there is no legal basis for an award of attorney's fees." *Id.* at n.4. Thus, the circumstances of that case are quite dissimilar to the instant matter.

Westport cites yet another decision wherein the insurance policy defines damages to expressly exclude equitable relief. In *Continental Insurance Co. v. Alperin*, 1998 WL 212767 (E.D. Pa. 1998) the court held that a U.S. Department of Labor suit for equitable and injunctive relief with regard to a pension plan was not a covered claim for damages payable to plan beneficiaries, where such claims were explicitly excluded from the insurance policy covering the trustees of the plan,. The addition of the phrase "other and further relief" did not change the claim for equitable relief to one for damages because "[t]he DOL was not seeking 'damages' as defined under Continental's policies. The purpose of the complaint was to reestablish the plan's integrity, not to pay benefit claims." *Id.* at *7.

In short, the cases cited by Westport do not stand for the proposition that general allegations can never invoke a duty to defend. Rather, these decisions merely indicate that where courts have addressed the relevance of "boilerplate" terminology in determining whether there is a duty to defend, they have held only that such terms do not trigger coverage where the policy itself explicitly denies coverage or the allegations of the complaint make it clear that no covered claim is asserted.

2.    *There is no Dispute That the Zalis Complaint Would Not Require Amendment to Permit at Trial Proof of Post-May 1 Malpractice*

Westport's argument at page 6 of its brief that "the 'mere possibility' that a complaint may be amended to bring a claim within coverage is 'insufficient to create a duty to defend'" is irrelevant here. In the cases cited in support of that argument, the courts found the complaints to be completely absent of any factual allegations that could reasonably be interpreted to impose a

duty to defend upon the insurer. In *Kilgore v. Resumix Inc.*, 1998 Mass.Super. LEXIS 170, the policy at issue provided coverage for claims of libel or slander, yet no such claims were even alluded to in the complaint, nor was there any allegation of any statement made or published by the defendants. In *Olympic Club v. Underwriters at Lloyd's London*, 991 F.2d 497 (9th Cir. 1993), a complaint alleging discriminatory acts by Club itself, but not alleging any wrongful acts by the Club's directors, officers or employees, did not come within coverage of a directors' and officers' liability policy.

In the this matter, Westport itself has admitted that under the First Amended Complaint as it now stands, the plaintiffs in the underlying suit would be entitled to pursue claims within the terms of Westport's policy. See McCarthy Dep. Tr. at 95 – 97. There is no serious dispute as to this point.

3.    *Post-May 1 Malpractice Would not Necessarily "Arise out of" the Pre-May 1 Alleged Malpractice*

Westport's argument at page 10 of its memorandum that a failure to remedy pre-policy period malpractice is excluded because it would "arise out of" the prior malpractice is likewise incorrect. Under Massachusetts law, injury resulting from a failure to remedy past malpractice is not considered the "same injury" as that resulting from the prior malpractice and therefore would not "arise out of " the prior malpractice. See *DiMento v. Schultz*, 2005 WL 1412955 at *3 (Mass.App.Ct. 2005)(Unpublished disposition pursuant to Rule 1:28). Indeed, another case relied on by Westport for this proposition at page 10 of its memorandum actually supports Heidlage's position. In that case, *Rischitelli v. Safety Insurance Company*, 423 Mass. 703, 671 N.E.2d 1243 (1996), the Supreme Judicial Court held that the plaintiff's injuries did *not* "arise out of" the operation of a motor vehicle because they were caused by a separate subsequent act, i.e. a battery following the accident. In examining the phrase "arise out of," the Court noted that

"the expression does not refer to all circumstances in which the injury would not have occurred 'but for' the involvement of a motor vehicle." 423 Mass. at 704, 671 N.E.2d at 1245. Likewise in *Bagley v. Monticello Insurance Company,* 430 Mass. 454, 720 N.E.2d 813 (1999), also cited by Westport on page 10, the Court held that a rape, which the plaintiff claimed was permitted to occur by the defendant motel's negligence, did not "arise out of" that negligence, but rather out of the subsequent illegal act of a third party.

Finally, Westport's argument is not supported by the cases it cites for the proposition that the phrase "directly or indirectly results from," which is present in the Westport policy, is broader than the phrase "arising out of." The cases cited all focused on the phrases "in any way involving," or "in any manner related to," or similar broad language not contained in the Westport policy. *Allmerica Financial Corp. v. Certain Underwriters at Lloyd's London,* 2004 WL 2341388 at *6 (Mass.Super. 2004)(construing "directly or indirectly arising out of, or in any way involving"); *Valassis Communications, Inc. v. Aetna Cas. & Sur. Co.,* 97 F.3d 870, 871 (6th Cir.1996)(provision being construed included the phrase "or in any way involving"); *Zunenshine v. Executive Risk Indem., Inc.,* 1998 WL 483475 at *4 (S.D.N.Y. 1998)(construed language includes "or in any way involving any fact, circumstance, situation, transaction, event or Wrongful Act"); *Danis v. Great Am. Ins. Co.,*159 Ohio App.3d 119,134, 823 N.E.2d 59, 71 (Ohio App. 2 Dist. 2004)(construed language includes "or in any manner related to"); *Monroe County v. International Ins. Co.,* 609 N.W.2d 522, 525 (Iowa, 2000)(construing "in any way involving.")

III.   **ONCE THE DUTY TO DEFEND HAS BEEN ESTABLISHED, IT MAY BE
       DISCHARGED ONLY BY ESTABLISHING, WITH PRECLUSIVE EFFECT IN
       THE UNDERLYING ACTION, THAT ANY POTENTIAL CLAIM IS WITHOUT
       MERIT**

In Massachusetts, the duty to defend remains absolute until the insurer proves that its
policy covers no claims remaining in the underlying suit.  See, *Premier Homes*, *supra*, 76 F.
Supp.2d at 118; *Conway Chevrolet Buick, Inc. v. Travelers Indem. Co.*, 136 F.3d 210, 214 (1st
Cir. 1998).  An insurer may withdraw its defense in an ongoing litigation only "from and after
the time when it demonstrates *with conclusive effect on the third party* that as matter of fact - as
distinguished from the appearances of the complaint and policy - the third party cannot establish
a claim within the insurance." *Sterilite Corp. v. Continental Cas. Co.,* 17 Mass.App. 316, 323,
458 N.E.2d 338 (1983).

IV.   **WESTPORT'S POSITION IN THIS CASE IS BELIED BY ITS FAILURE TO
       ATTEMPT TO RESOLVE POST-MAY 1, 2002 CLAIMS AGAINST THE
       PLAINTIFFS IN THE UNDERLYING ACTION**

After three full years of defending this case, Westport has not once attempted to move for
summary judgment or take any other action in the underlying suit to establish that Heidlage has
no potential liability for the post-May 1, 2002 time period covered by Westport's policy.
Presumably this reflects Westport's awareness that such attempts would be futile.

**CONCLUSION**

For the foregoing reasons and as set forth in Heidlage's main brief, Westport's Motion
for Summary Judgment should be denied and Heidlage's Cross-motion for Summary Judgment
on Westport's claims and partial summary judgment on his Counterclaim for attorney fees
should be granted.

RICHARD C. HEIDLAGE
By his attorney,


    \s\ Richard M. Bluestein
Richard M. Bluestein, BBO# 046840
KROKIDAS & BLUESTEIN, LLP
600 Atlantic Avenue
Boston, MA 02210
(617) 482-7211

Dated: December 20, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non registered participants on this 20th day of December, 2006.

/s/ Richard M. Bluestein
_____
Richard M. Bluestein

2012\0001\193422.4